## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *EX REL.*<br>**BRANCH CONSULTANTS, L.L.C.,** | **CIVIL ACTION NO.: 06-4091** |
| **Plaintiff** | **SECTION: "R" (1)** |
| **VERSUS** | |
| | **JUDGE: VANCE** |
| **ALLSTATE INSURANCE COMPANY,** *et al.,* | |
| **Defendants** | **MAGISTRATE: SHUSHAN** |

### ANSWER TO FIRST AMENDED COMPLAINT AND THIRD-PARTY DEMAND

COME NOW the Defendants, FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY and FIDELITY NATIONAL INSURANCE COMPANY (hereinafter referred to collectively as "Fidelity"), Write-Your-Own ("WYO") Program insurance carriers participating in the United States government's National Flood Insurance Program ("NFIP"), pursuant to the National Flood Insurance Act of 1968 ("NFIA"), as amended,[1] appearing herein in their "fiduciary"[2] capacity as the "fiscal agent of the United States,"[3] to file this Answer to Plaintiff and *qui tam* relator Branch Consultants, LLC's (hereafter referred to as "Plaintiff" or

---

[1] 42 U.S.C. § 4001, *et seq.*
[2] 44 C.F.R. § 62.23(f).
[3] 42 U.S.C. § 4071(a)(1); *Gowland v. Aetna,* 143 F.3d 951, 953 (5th Cir.1998).

"Branch") First Amended Complaint, as well as these Defendants' Third-Party Demand filed under the rule of alternative pleadings, to assert as follows:

I.  The allegations contained in paragraph 1 of the Plaintiff's First Amended Complaint ("FAC") do not require a response of Fidelity.  However, if such a response is required the allegations are denied.

## I. NATURE OF THE ACTION

II.     The allegations contained in paragraph 2 of the FAC are admitted in that Branch has attempted to bring an action under the False Claims Act.  Fidelity denies that it has any liability for the matters plead, denies that this Court has subject matter jurisdiction, denies that Branch has stated a proper claim, and denies any other remaining allegations.

III.     The allegations contained in paragraph 3 of the FAC are denied. Answering further, Fidelity asks the Court at the outset to call into focus both the central fact, and the central theory, underlying this lawsuit. Factually, Branch admits that every Fidelity property put at issue in this case did in fact sustain significant damage due to flooding. As to each Fidelity-insured property, Branch admits that federal dollars were in fact owed. Theorizing upon its own conjectures which were developed <u>after</u> the facts put at issue had already occurred, Branch claims that within the City of New Orleans itself - - not out along the Mississippi Gulf Coast - - Hurricane Katrina's winds alone were sufficiently strong to have rendered all of the properties constructive total losses <u>before</u> the levees breached. Under this novel theory, Branch contends that the *honest* approach that FEMA's WYO carriers should have taken after Katrina was to declare that all SFIP-insured properties within the City of New Orleans were already ruined derelicts long before the levees breached. Standing upon this theory, Branch asserts that the WYO carriers should then have paid only pennies on the dollar on federal coverages that were

otherwise fully owed to the citizens of New Orleans. Such is the frivolous theory upon which the entire lawsuit is based.

IV.     The allegations contained in paragraph 3 of the FAC are denied.  Answering further, as the first of the series of factual misrepresentations predicating Branch's Complaint against Fidelity, Branch asserts Fidelity was "typically" the issuer of both the homeowners and flood policies purchased by its insureds. This is a false claim. The truth is that Fidelity had both the homeowners and the flood policies on less than one percent of the properties for which it received Katrina flood claims within Louisiana. Fidelity contends that this is such a stark and central point of error predicating Branch's claims, that either Branch was not honest when it claimed that its FAC is predicated upon "many months" (FAC, ¶9) of detailed work on each of the claims it has put at issue in this case, or, Branch filed these claims against Fidelity with actual knowledge of their falsity.

V.     The allegations contained in paragraph 5 of the FAC are denied.  Answering further, after years of investigation, no agency of the United States Government has ever accepted this proposition. Moreover, each of the very few claims in which Fidelity did employ the so-called "expedited claims process" put at issue by paragraph 17 of the FAC was individually re-inspected by FEMA. FEMA has never communicated to Fidelity that any of those claims were improperly handled. Further still, not one of the claims involving Fidelity, that being the claims set forth at paragraph 23 of the Complaint, were adjusted pursuant to the expedited process.

## II. THE FALSE CLAIMS ACT

VI.     The allegations contained in paragraph 6 of the FAC are merely statements of law and require no response of Fidelity.  However, in an abundance of caution, if a response is

required, Fidelity submits that Plaintiff is not entitled to any of the relief outlined in paragraph 6 of the Amended Complaint.

VII.    The allegations contained in paragraph 7 of the FAC are merely statements of law and require no response of Fidelity.  However, in an abundance of caution, if a response is required, the allegations are denied to the extent Branch paraphrases or misstates the law.

VIII.    Fidelity denies that the Plaintiff is entitled to the relief sought in paragraph 8.

### III. PARTIES

IX.    The allegations contained in paragraph 9 of the FAC are denied.  Fidelity denies that Branch has brought a proper claim under the False Claims Act, denies that it has first-hand knowledge, denies that it is an original source, and denies that its employees directly or independently discovered any alleged fraud.  Answering further, Fidelity specifically avers as follows:  For all of Branch's supposed "direct, first-hand knowledge" allegedly developed during "many months of conducting these examinations following the hurricane" where Branch says it "discovered and documented Defendants' scheme as detailed below," Branch either had no knowledge of any of the following facts, or proceeded without caring that it was making false claims as to Fidelity:

> A. Branch claims Fidelity was "typically" the issuer of both policies. This was true in less than one percent of the claims.

> B. Branch claims Fidelity employed the expedited claims process "in massive quantities." The truth is less than 50 claims.

> C. Branch claims Fidelity defrauded the Government in how it employed the expedited claims process. The truth is the Government has checked each individual claim and has voiced no complaints.

> D. Branch claims Fidelity should have told all City of New Orleans flood policy holders that their homes had been destroyed by wind before the levee breached, and then paid pennies on the dollar for supposedly already ruined and derelict properties. Fidelity asserts that it is Branch's theory that is dishonest.

E. Branch claims dishonesty in ten Fidelity claims. As to each, it will be shown later herein that **Branch got its facts wrong ten out of ten times**. So much for "direct, first-hand knowledge."

X. The allegations contained in paragraph 10 of the FAC are admitted in part and denied in part. Fidelity admits that it and the other entities listed in the paragraph are all WYO carriers participating in the NFIP pursuant to the NFIA. Fidelity further admits that its principal place of business is located in Jacksonville, Florida. All remaining allegations are denied for lack of sufficient information or knowledge to justify a belief therein.

XI. The allegations contained in paragraph 11 of the FAC are denied for lack of sufficient information or knowledge to justify a belief therein.

### IV. JURISDICTION AND VENUE

XII. The allegations contained in paragraph 12 of the FAC are denied. While Branch was able to overcome the Defendants' Rule 9 and Rule 12 Motions because the Court ruled that it was required at that time to assume that Branch's factual allegations were truthful, Fidelity contends that on the merits, Branch will be unable to show that the facts it alleged to obtain the Court's jurisdiction are true.

XIII. The allegations contained in paragraph 13 of the FAC are denied due to vagueness.

### V. THE FALSE CLAIMS

XIV. The allegations contained in paragraph 14 of the FAC are denied. Plaintiff fails to accurately set forth even the basic history of the NFIP.

XV. The allegations contained in paragraph 15 of the FAC are denied. Plaintiff fails also to be able to explain even the basics of how federal funds are handled by WYO carriers. Further, and in response to Plaintiff's decision to affirmatively put at issue the Arrangement that governs

the legal relationship between the WYO carriers and FEMA, FEMA has never sent Fidelity anything suggesting that FEMA agrees with any of Branch's contentions, or that FEMA has any disagreement with the adjustments on any of the Fidelity claims put at issue in the FAC.

XVI. The allegations contained in paragraph 16 of the FAC are denied as written and denied for vagueness.  Answering further, paragraph 16 asserts conclusions of law to which no response is required.  Fidelity avers that the scope of coverage afforded by NFIP policies is established by the instructions, guidelines, manuals, rules, and regulations of the NFIP.

XVII. The allegations contained in paragraph 17 of the FAC are denied. Branch falsely asserts as to Fidelity's implementation of FEMA's post-Katrina "expedited claims handling process" that Fidelity's adjustments made under that process "served as the basis for many thousands of claims submitted to the NFIP," and that through this process false claims were submitted to the NFIP "in massive quantities." Also in this paragraph, Branch again falsely asserts that the motive for this fraudulent scheme was avoidance of loss as "covered by homeowners' policies largely underwritten by themselves."

<u>Because</u> Fidelity did not have the matching homeowners' policy for over 99 percent of its Hurricane Katrina flood claims, it found early on that it could not effectively employ FEMA's expedited claims handling process. In other words, Branch has ascribed to Fidelity a motive that cannot possibly be true, and claimed Fidelity misused a procedure Fidelity chose not to employ. **Either Branch did not do the investigation it claims to have done, or, it has itself knowingly filed false claims against the Government's fiscal agent and fiduciary.**

XVIII. The allegations contained in paragraph 18 of the FAC are denied.  Answering further, Branch demeans the tragic truth of Katrina's unprecedented damage through an unprincipled game of apples and oranges. No prior loss event in NFIP history involved (a)

stagnant water remaining inside the insured properties for weeks in sweltering heat and humidity; (b) a completely evacuated community unable to accomplish any acts of mitigation for weeks if not months after the event; (c) a significant undersupply of contractors, skilled tradesmen and laborers, necessitating an actual migration of thousands of such persons to this area to perform the work, all seeking the highest possible price for both their services and the extra expenses they were encountering; (d) a significant undersupply of virtually all needed building materials together with damage to the facilities of the material suppliers themselves; and (e) the well-known and dramatic run-up in prices following Katrina due to the combined circumstances just listed.

If the estimated claims values appearing at paragraphs 21-31 of the FAC are based upon this same game of apples and oranges, then this is yet one more fabrication upon which this frivolous lawsuit is based.

XIX. The allegations contained in paragraph 19 including sub-paragraphs (a) through (c) of the FAC are denied for lack of sufficient information or knowledge to justify a belief therein. This paragraph puts at issue several matters that will require further exploration during this case. For what purpose was Branch "retained by numerous insureds"? Were the particular persons whose claims appear in the FAC customers of Branch? What did Branch say to these people to gain entry into their homes? What paperwork was provided to Branch by these persons? What did Branch learn from these people? Did Branch inform these persons of its *conclusion* that its customers were, at least as to Fidelity, unlawfully in possession of fraudulently disbursed United States Treasury funds? Did Branch inform its customers that if indeed their flood claim had been overpaid, that those monies had to be returned to the Federal Treasury?

XX. The allegations contained in paragraph 20 of the FAC are denied. Answering further, if it is the truth that "on nearly all of the hundreds of properties inspected by Branch in various areas in and about southern Louisiana" that the facts support Branch's theory, why are only 57 of those "hundreds" of claims referenced in the FAC?

Also in this paragraph, Branch repeats - - a third time - - its false claim of motive. Without any regard for the truth, it writes this as to <u>all</u> of the WYO carrier Defendants:

> At the same time, defendants substantially underpaid for the damage that should have been attributed to wind (underwritten by the insurer defendants) on these same claims. (FAC, ¶20)

**A.     Allstate Insurance Company**

XXI.   The allegations contained in paragraph 21 including sub-paragraphs (a) through (t) of the FAC are directed towards Allstate Insurance Company and require no response of Fidelity.  In the alternative only, Fidelity denies the allegations for lack of sufficient information or knowledge to justify a belief therein.

**B.     Pilot Catastrophe Services**

XXII.  The allegations contained in paragraph 22 of the FAC are directed towards Pilot Catastrophe Services and require no response of Fidelity.  In the alternative only, Fidelity denies the allegations for lack of sufficient information or knowledge to justify a belief therein.

**C.     Fidelity National Insurance Company and Fidelity National Property and Casualty**

XXIII. The allegations contained in paragraph 23 including sub-paragraphs (a) through (j) of the FAC are denied. Answering further, Fidelity specifically denies the "facts" set forth in subparagraphs (a) through (j) as they are incorrect. Plaintiff failed to perform a proper Rule 11 investigation prior to submitting the allegations contained in the First Amended Complaint. Fidelity specifically avers as to each subparagraph the following response:

(a)     The flood policy for this property is 17-2510034891-00 and the policy limits for building coverage was $200,000 not what was listed in the Amended Complaint. Fidelity denied the insured's flood loss claim and did not pay any benefits to the homeowner. Plaintiff's allegation that Fidelity fraudulently paid policy limits of $141,000 is frivolous based on the fact that Fidelity did not pay <u>any</u> benefits under a flood policy or any policy of insurance for this property. **Branch would have paid this insured $62,000 <u>more</u> that Fidelity thought was owed.**

(b)     Fidelity denies the allegation that the floodwaters rose to 3.5 feet inside the building. According to the adjuster's report, the floodwaters rose to 9 feet 5 inches and this is documented by a photograph of the tape measure of the waterline. The floodwaters caused substantial damage that exceeded the policy limits based on the inspection, photos, waterline, and considering that the water remained in the building for at least two weeks. Fidelity denies that the covered flood damages was only $57,000 as alleged by Plaintiff.

(c)     Fidelity specifically avers that the flood waterline was 8 feet 6 inches and stayed in the building for approximately four weeks. The building was approximately 23 years old and underwent a total renovation in 2003 turning it into a tanning and beauty salon. The floodwaters caused substantial damage that exceeded the policy limits based on the inspection, photos, waterline, and considering that the water remained in the building for at least four weeks. Fidelity denies that the covered flood damages was only $44,000 as alleged by Plaintiff.

(d)         Fidelity denies that it paid $136,000 to the insured for this property.  The flood waterline on the interior was approximately 5 feet and stayed in the risk for two weeks.  Mold was all the way to the ceiling.  Fidelity paid the insured $127,857.20 for covered building damage based on the inspection, photos, waterline, and considering that the water remained in the building for so long.  Fidelity denies the Plaintiff's allegation that the flood damage was only $56,000.

(e)         Fidelity did not have a policy in place at the time of Katrina for this property.  Fidelity avers that Plaintiff's allegation that Fidelity fraudulently paid $120,000 is frivolous based on the fact that Fidelity did not pay any benefits under a flood policy for this property.

(f)         Fidelity did not have a policy in place at the time of Katrina for this property.  Fidelity avers that Plaintiff's allegation that Fidelity fraudulently paid $25,000 is frivolous based on the fact that Fidelity did not pay any benefits under a flood policy for this property.

(g)         The flood policy for this property is 17-251001825-01 and the policy limits for building coverage was $82,000 not what was listed in the Amended Complaint.  Fidelity denies the allegation that the floodwaters rose to 2 feet inside the building.  According to the adjuster's report, the floodwaters rose to over 4 feet and this is documented by photographs of the waterline and a visual inspection.  The floodwaters caused substantial damage that exceeded the policy limits based on the inspection, photos, waterline, and considering

that the water remained in the building for several weeks. Fidelity denies that the covered flood damages was only $34,000 as alleged by Plaintiff.

(h)    Fidelity denies the Plaintiff's allegation that the floodwaters rose to 3.5 feet inside the building. According to the adjuster's report, the floodwaters rose to 4 feet 6 inches and this is documented by photographs and a visual inspection. The home was recently remodeled in 1999. The floodwaters caused substantial damage that exceeded the policy limits of $76,000 based on the inspection, photos and the waterline. Fidelity denies that the covered flood damages was only $37,000 as alleged by Plaintiff.

(i)    Fidelity denies the Plaintiff's allegation that the floodwaters rose only to 4 feet inside the building. According to the adjuster's report, the exterior waterline was 5 feet 1 inch and the interior waterline was 4 feet 9 inches which is documented by photographs and a visual inspection. Water sat in the home for nearly three weeks. The floodwaters caused substantial damage that exceeded the policy limits of $75,000 based on the inspection, photos and the waterline. Fidelity denies that the covered flood damages was only $32,000 as alleged by Plaintiff.

(j)    Fidelity denies the Plaintiff's allegation that the floodwaters rose only to 6 inches inside the building. According to the adjuster's report, the exterior waterline was 5 feet 11 inches and the interior waterline was just under 4 feet which is documented by photographs and a visual inspection. The building is approximately 2886 square feet and the a/c units and electrical panels were at ground level. Water sat in the building for approximately 12 days. The

floodwaters caused substantial damage that exceeded the policy limits of $250,000 based on the inspection, photos and the waterline. Fidelity denies that the covered flood damages was only $72,000 as alleged by Plaintiff.

**D.     Allied American Adjusting L.L.C.**

XXIV. The allegations contained in paragraph 24 of the FAC are directed towards Allied American Adjusting L.L.C. and require no response of Fidelity. In the alternative only, Fidelity denies the allegations for lack of sufficient information or knowledge to justify a belief therein. Answering further, Plaintiff's allegation that Allied served as Fidelity's primary adjuster is denied. Again, "direct, first-hand knowledge"?

**E.     State Farm Fire & Casualty**

XXV. The allegations contained in paragraph 25 including sub-paragraphs (a) through (j) of the FAC are directed towards State Farm Fire & Casualty and require no response of Fidelity. In the alternative only, Fidelity denies the allegations for lack of sufficient information or knowledge to justify a belief therein.

**F.     Crawford & Company**

XXVI. The allegations contained in paragraph 26 of the FAC are directed towards Crawford & Company and require no response of Fidelity. In the alternative only, Fidelity denies the allegations for lack of sufficient information or knowledge to justify a belief therein.

**G.     American National Property & Casualty Company**

XXVII. The allegations contained in paragraph 27 including sub-paragraphs (a) through (i) of the FAC are directed towards American National Property & Casualty Company and require no response of Fidelity. In the alternative only, Fidelity denies the allegations for lack of sufficient information or knowledge to justify a belief therein.

**H.    Simsol Insurance Services, Inc.**

XXVIII. The allegations contained in paragraph 28 of the FAC are directed towards Simsol Insurance Services, Inc. and require no response of Fidelity.  In the alternative only, Fidelity denies the allegations for lack of sufficient information or knowledge to justify a belief therein.

**I.    Liberty Mutual Fire Insurance Company**

XXIX. The allegations contained in paragraph 29 including sub-paragraphs (a) and (b) of the FAC are directed towards Liberty Mutual Fire Insurance Company and require no response of Fidelity. In the alternative only, Fidelity denies the allegations for lack of sufficient information or knowledge to justify a belief therein.

**J.    American Reliable Insurance Company of Scottsdale**

XXX.  The allegations contained in paragraph 30 including sub-paragraphs (a) through (c) of the FAC are directed towards American Reliable Insurance Company of Scottsdale and require no response of Fidelity.  In the alternative only, Fidelity denies the allegations for lack of sufficient information or knowledge to justify a belief therein.

**K.    St. Paul Travelers Cos.**

XXXI. The allegations contained in paragraph 31 including sub-paragraphs (a) through (c) of the FAC are directed towards St. Paul Travelers Cos. and require no response of Fidelity. In the alternative only, Fidelity denies the allegations for lack of sufficient information or knowledge to justify a belief therein.

**L.    NCA Group, Inc.**

XXXII. The allegations contained in paragraph 31 including sub-paragraphs (a) through (c) of the FAC are directed towards NCA Group, Inc. and require no response of Fidelity.  In the

alternative only, Fidelity denies the allegations for lack of sufficient information or knowledge to justify a belief therein.

**M.    Colonial Claims Corporation**

XXXIII. The allegations contained in paragraph 33 of the FAC are directed towards Colonial Claims Corporation and requires no response of Fidelity.  In the alternative only, Fidelity denies the allegations for lack of sufficient information or knowledge to justify a belief therein. The allegations as to the Miro property are denied. Fidelity admits that it assigned flood loss claims from Katrina to Colonial. Colonial did serve as the independent adjuster for the Louisa Street property.

## VI. FRAUD IN CONNECTION WITH THE WYO NATIONAL FLOOD INSURANCE PROGRAM
### (<u>Count I</u>)

XXXIV. The allegations contained in paragraph 34 of the FAC are denied for the same reasons set forth in response to paragraphs 1 through 33 above.

XXXV. The allegations contained in paragraph 35 of the FAC are denied.

XXXVI. The allegations contained in paragraph 36 of the FAC are denied.

XXXVII. The allegations contained in paragraph 37 of the FAC are denied.

XXXVIII. The allegations contained in paragraph 38 of the FAC are denied.

XXXIX. The allegations contained in paragraph 39 of the FAC are denied.

XL. The allegations contained in paragraph 40 of the FAC are denied.

## VII. JURY DEMAND

XLI. Fidelity likewise demands a trial by jury.

## VIII. PRAYER

XLII.   Plaintiff is not entitled to the relief sought in the Prayer for Relief in paragraph 42 including sub-parts (a) through (e).

AND NOW come Defendants, Fidelity National Property and Casualty Insurance Company and Fidelity National Insurance Company (hereafter referred to as "Fidelity" collectively), for the purpose of asserting the following affirmative defenses:

### FIRST DEFENSE

No Rule 11 Compliance.   Plaintiff's claims asserted as to Fidelity are frivolous, unwarranted, and not supported by any facts that any reasonable adjuster would believe would provide any reasonable basis for concluding that a fraud had been committed.  They certainly are not supported by the intensive investigation Branch asserted at paragraphs 9, 19 and 20 of the FAC.  These allegations are clearly incorrect, and were calculated to obtain first-to-file and original-source status.  They were further calculated to overcome the anticipated Rule 12 motions of the defendants, so as to obtain later discovery to embark upon a fishing expedition. Under 28 U.S.C. § 1927, Fidelity requests that Branch dismiss Fidelity immediately, or at the very least, admit the truth in response to Fidelity's contemporaneously submitted Request for Admissions.

### SECOND DEFENSE

Reasonable Well Trained NFIP Claims Manager Standard. Federal law, at 44 C.F.R. Pt. 62.23(i) sets the standard of care the Government expects for the adjustment of flood claims. It is the instructions, standards, policies, practices, and judgments of the personnel at the NFIP that set the standard of care as to what constitutes an appropriate claims payment, not the views of

self-interested so-called "public" adjusters. Fidelity complied with all applicable standards of care.

## THIRD DEFENSE

Reasonably Debatable Judgment Calls. The process of adjusting property claims involves the exercise of judgment. If reasonable minds can disagree as to the propriety of a particular claim payment, then no fraud is involved.

## FOURTH DEFENSE

Government Knowledge, Approval, and Consent. Fidelity is unaware of any statement or document emanating from the NFIP that validates Plaintiff's theory of wholesale damage rendering homes in New Orleans constructive total losses before the levees breached. More than four years have elapsed since the storm, and Fidelity remains unaware of anything coming from the NFIP that suggests the NFIP disapproves of the manner in which Fidelity adjusted its NFIP claims. There is nothing known to Fidelity that indicates that the relevant federal agency charged by Congress to operate the NFIP has not approved and consented to Fidelity's adjustment practices.

## FIFTH DEFENSE

After-Acquired Knowledge. Branch cannot seek to prove that Fidelity "knowingly" submitted a false claim using information that Fidelity did not know. Proof that a particular claim was overpaid, without proof that Fidelity had contemporaneous knowledge of the fact of the overpayment (a.k.a. *scienter*), is insufficient to establish liability under the FCA.

## SIXTH DEFENSE

Which Price is Right? From what timeframe has Branch pulled its prices? Prices have moved all over the map since Katrina. A claim of "fraud" should be based on valuing flood

claims at the peak of the post-Katrina repair season so as to properly set a standard of what ought to have been paid.

### SEVENTH DEFENSE

Costs of Litigation. The true cost to the Government, to the Courts, and to the City of New Orleans of the low-balling practices proposed by Branch must be considered. Any reasonable homeowner treated in the manner proposed by Branch would have sued. This would have led to huge additional costs to FEMA, as well as to the judiciary. Moreover, the pointless and inappropriate delay resulting from such a stunt would have further delayed, and made more expensive, the recovery of the City of New Orleans. Avoidance of pointless and costly litigation is a factor in the claims adjustment process.

### EIGHTH DEFENSE

Governance of the Arrangement. The Arrangement, that being the agreement/federal law found at 44 C.F.R. Pt. 62, App. A, which the Plaintiff put at issue at paragraph 15 of the FAC, governs the legal relationship and duties of the parties existing between Fidelity and the United States Government. It is for FEMA to decide whether Fidelity has breached any term of the Arrangement. Thus far, Fidelity has never received anything from FEMA suggesting that FEMA has reached any such conclusion. Moreover, in the event that any determination of a breach occurs, then in that event, Fidelity invokes the mandatory arbitration clause of the Arrangement.

### NINTH DEFENSE

Good Faith. At all times relevant herein, Fidelity did not know, nor did it have any reason to know, that any false claims were made, presented, or submitted in violation of the False Claims Act. It asserts that the Plaintiff's claims lack merit because Fidelity acted in the good

faith belief that its actions were lawful and in conformity with the expectations of the United States Government at all times.

## TENTH DEFENSE

Lack of Damages. The Government has not suffered any actual injury or damages in the facts put at issue in this case.

## ELEVENTH DEFENSE

Heightened Pleadings. Branch has failed to comply with Rules 8 and 9 of the Federal Rules of Civil Procedure. This certainly is true as to any property not specifically indentified in the operative complaint.

## TWELFTH DEFENSE

Failure to State a Claim. Plaintiff's claims fail to state a claim upon which relief can be granted.

## THIRTEENTH DEFENSE

FCA Requirements and Limitations. Some or all of the Plaintiff's claims are barred by some or all of the following: Branch is not an original source; by 31 U.S.C. § 3730(e)(4) and 31 U.S.C. § 3730(b)(5); by documents and information that are a public record; by public disclosure; and by the limitation on remedies contained within the False Claims Act, 31 U.S.C. § 3729, *et seq*.

## FOURTEENTH DEFENSE

No Punitives. No act or omission of Fidelity was malicious, willful, wanton, reckless or grossly negligent and, therefore, any reward of punitive damages is barred. *State Farm v. Campbell*, 123 S.Ct. 1513 (2003).

## FIFTEENTH DEFENSE

Separation of Powers. Some or all of the claims are barred by public policy, judgments and/or by the Separation of Powers Doctrine. *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984).

## SIXTEENTH DEFENSE

Standing. Some or all of the claims are barred by a lack of standing.

## SEVENTEENTH DEFENSE

Knowledge of the Adjusters and Insureds. The First Amended Complaint fails to state a claim upon which relief may be granted to the extent that independent adjusters and/or the homeowners/insureds knowingly, negligently, or innocently made material misstatements of fact to Fidelity in connection with the presentment of the flood loss claim.

## EIGHTEENTH DEFENSE

Necessary and Indispensible Parties. The First Amended Complaint should be dismissed for failure to join necessary and indispensable parties.   This would include any NFIP participant that Branch alleges received an overpayment of United States Treasury funds.

## NINETEENTH DEFENSE

Misjoinder. Fidelity objects to the improper cumulation of all Defendants into one action if Branch in any way seeks to take advantage of its procedural maneuverings in this regard. Fidelity is entitled to take whatever depositions it needs to take, and to ask questions for as long as it needs to, without any regard whatsoever being given to the fact that Plaintiff has added together into one lawsuit multiple parties. If at any time Branch seeks to limit Fidelity's discovery rights, or any way seeks to impact Fidelity's presentment of its case at trial upon any

argument based upon the number of Defendants, then Fidelity asserts that its due process rights are thereby denied.

## TWENTIETH DEFENSE

Imputed Fault. Fidelity affirmatively asserts that it has no liability under any theory for any other parties other than itself in these proceedings.

## TWENTY-FIRST DEFENSE

Adoption by Reference. Fidelity hereby adopts by reference any defense, not otherwise expressly set forth herein that is or will be pleaded by any other Defendant in this action.

WHEREFORE, Defendants, Fidelity National Property and Casualty Insurance Company and Fidelity National Insurance Company, pray that their answer and affirmative defenses be deemed good and sufficient, and that after due proceedings are had, that there be judgment in favor of Fidelity and against the Plaintiff, dismissing this lawsuit against Fidelity, with prejudice and at the Plaintiff's cost.

## THIRD-PARTY COMPLAINT

AND NOW COMES the Defendants, FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY, and FIDELITY NATIONAL INSURANCE COMPANY (hereinafter referred to collectively as "Fidelity"), Write-Your-Own ("WYO") Program insurance carriers participating in the United States government's National Flood Insurance Program ("NFIP"), pursuant to the National Flood Insurance Act of 1968 ("NFIA"), as amended,[4] appearing herein in their "fiduciary"[5] capacity as the "fiscal agent of the United States,"[6] and brings this Third-Party Complaint.  This Third-Party Complaint is being asserted

---

[4] 42 U.S.C. § 4001, *et seq.*
[5]  44 C.F.R. § 62.23(f).
[6] 42 U.S.C. §  4071(a)(1); *Gowland v. Aetna,* 143 F.3d 951, 953 (5th Cir.1998).

against the following Third-Party Defendants in the alternative based on the allegations averred by Branch, and based upon the fact that the Court has held that Branch's FAC asserts viable claims that overpayments did occur.  If it is true that overpayments occurred as to the properties put at issue in paragraph 23 of the FAC (which Fidelity denies), then it is also true that Third-Party Defendants have improperly received and are in possession of United States Treasury benefits for which they have no right or entitlement.   In support of Fidelity's Third-Party Demand, it states more particularly as follows:

1. Third-Party Defendant, Vina Family Medical Clinic, is believed to be a Louisiana corporation conducting business in Louisiana. Vina Family Medical Clinic was at all times the holder of an NFIP/SFIP bearing policy no. 17251005825401 for the property located at 9020 West Judge Perez, Chalmette, Louisiana 70043 at the time of Hurricane Katrina. This is the property put at issue at paragraph 23(b) of Branch's FAC.

2. Third-Party Defendant, Dantam Mui, is a Louisiana resident who at all times material hereto had an NFIP/SFIP No. 1725101551360 in place for his property located at 9135 West Judge Perez Drive, Chalmette, Louisiana 70043 at the time of Hurricane Katrina. This is the property put at issue at paragraph 23(c) of Branch's FAC.

3. Third-Party Defendant, Harry Roark, is a Louisiana resident who at all times material hereto had an NFIP/SFIP No.1777006056890 in place for his property located at 2137 South Lopez Street, New Orleans, Louisiana 70125 at the time of Hurricane Katrina. This is the property put at issue at paragraph 23(d) of Branch's FAC.

4. Third-Party Defendant, Anthony Moon is a Louisiana resident who at all times material hereto had an NFIP/SFIP No. 17251001825201 in place for his property located at 3033

Louisa Street, New Orleans, Louisiana 70119 at the time of Hurricane Katrina. This is the property put at issue at paragraph 23(g) of Branch's FAC.

5. Third-Party Defendant, Alice Augustine, is a Louisiana resident who at all times material hereto had an NFIP/SFIP No. 17770052970702 in place for his property located at 4621 Viola Street, New Orleans, Louisiana 70126 at the time of Hurricane Katrina. This is the property put at issue at paragraph 23(h) of Branch's FAC.

6. Third-Party Defendant, Willie Hubert, is a Louisiana resident who at all times material hereto had an NFIP/SFIP No. 17251011699400 in place for his property located at 7607 Vanderkloot Avenue, New Orleans, Louisiana 70127 at the time of Hurricane Katrina. This is the property put at issue at paragraph 23(i) of Branch's FAC.

7. Third-Party Defendant, Woman's Center, L.L.C., is believed to be a limited liability company doing business in the State of Louisiana. Woman's Center, L.L.C. was at all times the holder of an NFIP/SFIP No. 17251021311600 for the property located at 2625 & 2627 General Pershing Street, New Orleans, Louisiana 70115 at the time of Hurricane Katrina. This is the property put at issue at paragraph 23(j) of Branch's FAC.

8. This Court has original exclusive subject matter jurisdiction over this Third-Party Complaint regardless of the amount in controversy, pursuant to 42 U.S.C. § 4072. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over these Third-Party Defendants pursuant to 28 U.S.C. § 1367.

9. All Third-Party Defendants named herein are citizens of Louisiana and at all times relevant herein had in place an NFIP SFIP which provided coverage for their property at the time of Hurricane Katrina and received U.S. Treasury dollars pursuant to benefits paid under their SFIP as a result of their claim for flood damages. According to Branch, each has received an

overpayment of United States Treasury funds pursuant to their Hurricane Katrina NFIP/SFIP claim handled by Fidelity. Fidelity contends that Branch is wrong.

10. Each Third-Party Defendant is properly describable as a Fidelity insured. However, each Third-Party Defendant is also properly describable as a participant in a federal insurance program.

11. Third-Party Defendant, Vina Family Medical Clinic (Vina), had in place at the time of Hurricane Katrina an NFIP SFIP with policy limits of $275,000 for building coverage and $56,800 for contents coverage for its property at issue. Vina made a claim under its SFIP for flood damages following Hurricane Katrina. According to the adjuster's report, the floodwaters rose to 9 feet 5 inches and this is documented by a photograph of the tape measure of the waterline. The floodwaters caused substantial damage that exceeded the policy limits based on the inspection, photos, waterline, and considering that the water remained in the building for at least two weeks. As a result of Vina's flood claim to Fidelity, Fidelity paid $275,000 for building and $56,800 for contents. Branch asserts that the building payment was the result of fraud. Fidelity disagrees.

12. Third-Party Defendant, Dantam Mui, had in place at the time of Hurricane Katrina an NFIP SFIP with policy limits of $250,000 for building coverage and $5,000 for contents coverage for the property located at 9135 W. Judge Perez Dr., Chalmette, LA 70043. Dantam Mui made a claim under a SFIP following Katrina. According to the adjuster's report, the flood waterline was 8 feet 6 inches and stayed in the building for approximately four weeks. The building was 23 years old and underwent a total renovation in 2003 turning it into a tanning and beauty salon. The floodwaters caused substantial damage that exceeded the policy limits based on the inspection, photos, waterline, and considering that the water remained in the building for

at least four weeks.  As a result of Dantam Mui's flood loss claim, Fidelity paid $250,000 for building and $5,000 for contents. Branch asserts the building payment was the result of fraud. Fidelity disagrees.

13. Third-Party Defendant, Harry Roark, had in place at the time of Katrina an NFIP SFIP with policy limits of $250,000 for building coverage and $15,800 for contents coverage for the property located at 2137 S. Lopez Street, New Orleans, LA  70125.  Roark made a claim under his SFIP following Katrina.  According to the adjuster's report, the flood waterline on the interior was approximately 5 feet and stayed in the risk for two weeks.  Mold was all the way to the ceiling.  As a result of Roark's flood loss claim, Fidelity paid the insured $127,857.20 for covered building damage and $15,800 for contents based on the inspection, photos, waterline, and considering that the water remained in the building for so long. Branch asserts the building payment was the result of fraud. Fidelity disagrees.

14. Third-Party Defendant, Anthony Moon, had in place at the time of Katrina an NFIP SFIP with policy limits of $82,000 for building and $5,000 for contents for the property located at 3033 Louisa St., New Orleans, LA  70126.  Moon made a claim under his SFIP after Katrina.  According to the adjuster's report, the floodwaters rose to over 4 feet and this is documented by photographs of the waterline and a visual inspection.  The floodwaters caused substantial damage that exceeded the policy limits based on the inspection, photos, waterline, and considering that the water remained in the building for several weeks.  As a result of Moon's flood loss claim, Fidelity paid the insured $82,000 for covered building damage and $5,000 for contents. Branch asserts the building payment was the result of fraud. Fidelity disagrees.

15. Third-Party Defendant, Alice Augustine, had in place at the time of Katrina an NFIP SFIP with policy limits of $76,000 for building coverage for the property located at 4621 Viola

St., New Orleans, LA 70126.  Augustine made a claim under her SFIP after Katrina.  According to the adjuster's report, the floodwaters rose to 4 feet 6 inches and this is documented by photographs and a visual inspection. The home was recently remodeled in 1999. The floodwaters caused substantial damage that exceeded the policy limits of $76,000 based on the inspection, photos and the waterline.  As a result of Augustine's flood loss claim, Fidelity paid $76,000 to the insured. Branch asserts the building payment was the result of fraud. Fidelity disagrees.

16. Third-Party Defendant, Willie Hubuert, had in place an NFIP SFIP with policy limits of $75,000 for building coverage and $10,000 for contents at the time of Katrina for the property located at 7607 Vanderkloot Ave., New Orleans, LA 70127 Hubert made a claim under his SFIP following Katrina.  According to the adjuster's report, the exterior waterline was 5 feet 1 inch and the interior waterline was 4 feet 9 inches which is documented by photographs and a visual inspection. Water sat in the home for nearly three weeks.  The floodwaters caused substantial damage that exceeded the policy limits of $75,000 based on the inspection, photos and the waterline.  As a result of Hubert's flood loss claim, Fidelity paid the insured $75,000 for covered building damages and $10,000 for contents. Branch asserts the building payment was the result of fraud. Fidelity disagrees.

17. Third-Party Defendant, Women's Center LLC, had in place an NFIP SFIP with policy limits of $250,000 for building coverage at the time of Katrina for the property located at 2625/2627 General Pershing, New Orleans, LA 70115.  Women's Center LLC made a claim under its SFIP following Katrina.  According to the adjuster's report, the exterior waterline was 5 feet 11 inches and the interior waterline was just under 4 feet which is documented by photographs and a visual inspection.  The building is approximately 2886 square feet and the a/c units and electrical panels were at ground level.  Water sat in the building for approximately 12

days.  The floodwaters caused substantial damage that exceeded the policy limits of $250,000 based on the inspection, photos and the waterline.  As a result of Women's Center LLC's flood loss claim, Fidelity paid the insured $250,000 for covered building damages. Branch asserts the building payment was the result of fraud.  Fidelity disagrees.

18. As to each of the previously listed claims original Plaintiff asserts in its FAC that substantial overpayments of federal funds occurred.  Fidelity maintains these claims are frivolous. However, the Court has now ruled that the FAC states a viable and justiciable claim. Given that Fidelity is the fiscal agent and fiduciary of the United States, it believes these two developments require it to put at issue in the case whether these seven (7) NFIP participants must return the allegedly overpaid federal funds that had been paid to them by Fidelity.

19. All claims made under SFIPs are paid for directly with United States Treasury benefits, not the funds of Fidelity, through a segregated account maintained by Fidelity as part of the requirements for participation in the NFIP. The "reimbursement" scheme alleged by Branch at paragraph 15 of the FAC is wrong. (The Fifth Circuit has been perfectly clear on this point.)

20. Fidelity does not believe any of the Third-Party Defendants received an overpayment. However, and pleading in the alternative, if the Court finds upon review of the merits that any of the above Third-Party Defendants have indeed improperly received an overpayment of their flood claim for which they have no right or entitlement, then Third-Party Defendants are in unlawful possession of federal dollars of which they are not entitled to possess.  Those funds must be returned to the U.S. Treasury.

## COUNT I - BREACH OF CONTRACT/UNJUST ENRICHMENT

21. Third-Party Plaintiff incorporates and asserts paragraphs 1 through 19 as if fully set forth at length herein.

22. Pleading in the alternative only and based upon the allegations of the FAC and the Court's holding thereon, Third-Party Plaintiff must assert that Third-Party Defendants were over-paid under their SFIPs and improperly received and took possession of U.S. Treasury benefits to which Third-Party Defendants were not entitled to receive.

23. Further, if Branch's claim of overpayments is true, then Third-Party Defendants have been unjustly enriched. Third-Party Defendants, by accepting the improper payment of U.S. Treasury benefits, appreciated, accepted and retained the federal monies.

24. Allowing Third-Party Defendants to retain these improper U.S. Treasury benefits (if such occurred) would be an improper benefit and inequitable under the circumstances, as it would result in a Third-Party Defendant obtaining and keeping U.S. Treasury funds to which they have no right or interest in retaining.

WHEREFORE, and in the alternative Third-Party Plaintiff prays for an Order requiring the Third-Party Defendants that in the event the Court finds that Fidelity overpaid any amounts under the SFIPs at issue, that Third-Party Defendants must repay the improper amounts of U.S. Treasury funds in their possession to the government with interest plus all costs and expenses associated with this lawsuit and any other relief the Court deems appropriate.

## COUNT II - DOCTRINE OF PAYMENT BY MISTAKE

25. Third-Party Plaintiff hereby incorporates paragraphs 1 through 23 of the Third-Party Complaint as if fully set forth at length herein.

26. It is indisputable that funds mistakenly outlaid in a federal government program can always be retrieved.

27. In this vein, it is well established that parties receiving such benefits under a mistake of fact or law are liable *ex aequo et bono* to refund them, and that no specific statutory

authorization upon which to base a claimed right of set-off or an affirmative action for the recovery of these monies is necessary.

28.  Thus the common law doctrine of payment by mistake permits recapture of the funds erroneously paid to the Third-Party Defendants.

29. As such, the party to which the mistaken payments flowed is liable for each of the mistaken overpayments.

30. However, only the portion of the payment that was in excess of the actual amount owed must be returned.

31. Pleading in the alternative, Third-Party Plaintiff asserts that if Branch is correct in asserting that overpayments did occur, which is denied, then, in that event, Third-Party Defendants are liable for the return of any overpaid U.S. Treasury benefits.

WHEREFORE, and in the alternative, if the Court finds that the overpayments at issue did occur, then Third-Party Plaintiff Fidelity prays for an Order requiring the Third-Party Defendants to repay the amount of U.S. Treasury benefits that they are in improper possession of, plus interest, all costs and expenses associated with this lawsuit, and any other relief the Court deems appropriate.

Respectfully submitted,

NIELSEN LAW FIRM, LLC

/s/ Gerald J. Nielsen
Gerald J. Nielsen (17078)
gjnielsen@aol.com
William T. Treas (26537)
wtreas@nielsenlawfirm.com
3838 North Causeway Blvd, Suite 2850
Metairie, Louisiana 70002
Telephone: (504) 837-2500

**Attorneys for Fidelity National Insurance
Company, Fidelity National Property and
Casualty Insurance Company**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has this date been served upon all parties to this suit through counsel by filing into the Court's electronic filing system and, for non-participants, by placing same in the U.S. mail, postage prepaid and properly addressed on this 20th of November, 2009.

/s/ Gerald J. Nielsen