IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>*EX REL.* BRANCH CONSULTANTS, L.L.C., )<br>)<br>Plaintiff, )<br>v. )<br>)<br>FIDELITY NATIONAL INSURANCE )<br>COMPANY, *et al.* )<br>Defendants. )<br>)<br>) | Case No. 2:06-cv-4091<br><br>**ORAL ARGUMENT REQUESTED** |

**BRANCH CONSULTANTS, LLC'S  REPLY IN SUPPORT OF
ITS MOTION TO STRIKE FIDELITY'S THIRD-PARTY COMPLAINT**

**I.     PRELIMINARY STATEMENT**

Rather than rebut the legal bases of Branch's motion to strike, Fidelity spends 25 pages accusing Branch of "calculated acts of deception" and responding to the following straw man argument:

> Plaintiff contends—without any authority whatsoever—that the legal relationship between the Government and its WYO carrier fiscal agents is such that those fiscal agents can only be sued for the purpose of efforts to obtain additional federal funds from the Program, but cannot sue to obtain monies for the Program. This is not true.[1]

Branch is not asking this Court to hold that WYO carriers can never sue their insureds. Instead, Branch argued that Fidelity has no right to sue insureds in connection with this *qui tam* action. The decision to sue homeowners in connection with this case belongs solely to the Government. Fidelity's attempt to sue homeowners, a tactic none of the other WYO-insurer defendants thought necessary, should be rejected.

**II.    *MILLER* DEMONSTRATES THAT *PUBLIC INTEGRITY* IS BOTH GOOD LAW AND APPLICABLE HERE**

Fidelity criticizes *Public Integrity* because it is a "15-year-old decision" and urges the Court instead to follow *Miller v. Bill Harbert Int'l Constr., Inc.*, 505 F.Supp.2d 20 (D.D.C. 2007).[2] The relator in *Miller* moved for judgment on the pleadings with respect to a counterclaim that the *qui tam* defendant asserted against him, arguing that such claims are barred under the False Claims Act ("FCA"). The court, citing *Public Integrity* and *Nardone*,[3] concluded that:

---

[1] Memorandum In Opposition To Branch's Motion To Strike Third-Party Complaint (hereinafter "Opp. Br.") at 6.

[2] *Id.* at 16.

[3] Branch relied on both *Public Integrity* and *United States v. Nardone,* 782 F.Supp. 996 (M.D.Pa.1990) in its opening memorandum. Fidelity does not discuss *Nardone* in its opposition.

> The unavailability of contribution and indemnification for a defendant under the False Claims Act now seems beyond peradventure.[4]

The court granted the relator's motion for judgment on the pleadings, holding that the counterclaim "is barred."[5]

Fidelity's reliance on *Miller* is misplaced. Fidelity argues that *Miller* creates an exception for its Third Party Complaint from the rule espoused in *Public Integrity*. *Miller* does no such thing: *Miller* discusses two categories of <u>compulsory counterclaims against relators</u> that are permissible in FCA cases, whereas the claims at issue in *Public Integrity* are claims by the *qui tam* defendant <u>against third parties</u>. The two categories discussed in *Miller* are:

> The first and most obvious of the two categories is where the conduct at issue is distinct from the conduct underlying the FCA case…..The second category of permissible claims by an FCA defendant is where the defendant's claim, though bound up in the facts of the FCA case, can only prevail if the defendant is found *not* liable in the FCA case.[6]

Neither of those categories is applicable here, nor are any of Fidelity's claims even counterclaims—they are claims against third parties that Fidelity is purporting to bring <u>on behalf of the United States</u>.

*Miller* also did not involve and does not address the concerns underlying the court's holding in *Public Integrity*:

> Allowing the third-party claims to continue during the pendency of the FCA case…would shift the focus of the litigation [from] fraud to reallocation of fault, contrary to the purpose of the FCA. On the other hand, dismissal of the defendants' third-party claims would not prejudice the defendants.[7]

Fidelity's lengthy memorandum says <u>nothing</u> about what prejudice Fidelity would suffer if Branch's motion is granted, and Fidelity's aggressive effort to name the homeowners as parties

---

[4] 505 F.Supp.2d at 26.
[5] *Id.* at 29.
[6] *Id.* at 27 (emphasis in original).
[7] *Public Integrity*, 895 F.Supp. at 296.

996151v1/009717                     2

in this case is precisely an attempt to shift the focus of this litigation away from the relevant issues. *Public Integrity*, which *Miller* acknowledges is good law, is on point and should be followed here.

### III. THERE IS NO BASIS FOR JOINDER OF FIDELITY'S THIRD-PARTY CLAIMS REGARDLESS OF THE LABEL EMPLOYED OR THE RULE INVOKED

#### A. Fidelity's Claims Are Not Counterclaims

Fidelity makes no attempt to controvert Branch's authority establishing that the third-party claims are improper and should be dismissed. Instead, Fidelity attempts to characterize the defect in its pleading as merely an issue of semantics, arguing that the claims are alternatively actionable as counterclaims under Rule 13. This is decidedly not the case.

Rule 13 allows for counterclaims only "against an opposing party." Here, the claims Fidelity seeks to assert are not against an opposing party but against <u>nonparties</u>. Fidelity's claims are not counterclaims at all.

#### B. The Homeowners Are Not Necessary Parties Under Rule 19

Neither does Rule 19(a)(1)(B) assist Fidelity's attempt to join these nonparties. That rule states in relevant part:

> (a) Persons Required to Be Joined if Feasible.
>
> (1) Required Party.
>
> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> * * *
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or

> (ii) leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest.

Fidelity argues that subsection (i) applies because "these homeowners are about to be set upon by countless lawyers" in discovery in this case.[8] But being a third-party witness does not make one a necessary party under Rule 19. And, as nonparties, the homeowners cannot be bound by any outcome in this case.[9] Accordingly, subsection (i) does not apply.

As to subsection (ii) of Rule 19(a)(1)(B), Fidelity argues that:

> [A]bsent the filing of the Third Party Complaint, Fidelity risks winning this case against Branch and the Department of Justice lawyers, only to then face claims from FEMA lawyers demanding that Fidelity either seek return of the funds from all of the insureds, or pay that overpayment out of its own coffers.[10]

Assuming Fidelity's postulated "second" scenario is feasible (*i.e.*, that there were numerous overpayments but that Fidelity lacked *scienter* under the FCA), there is nothing inconsistent about Fidelity prevailing here, despite overpayments, and then facing non-FCA claims by FEMA related to the overpayments. Nor does Fidelity offer any explanation as to how forcing 7 homeowners to be parties in this *qui tam* action would cure any purported inconsistency.

In sum, there is no need and no basis for Fidelity to add to this case the potential claims of nonparty United States against nonparty homeowners. The Third Party Complaint should be struck. *See Temple v. Synthes Corp.*, 498 U.S. 5, 7 (U.S. 1990) (holding that trial court abused its discretion in concluding that joint tortfeasors were necessary parties under Rule 19); *United States v. Olivarrietta*, 812 F.2d 640 (11th Cir. 1987) (rejecting attempt to implead law school by student sued by Government to collect on student loan); *United States v. Government*

---

[8] Opp. Br. at 13. It was Fidelity's responsibility, not that of the homeowner, to verify the "reasonableness of the payment recommended by the adjusters." 44 C.F.R. 62.23(i). While the homeowners are relevant witnesses, Branch does not believe that third-party discovery needs to be as intrusive as is threatened by Fidelity—discovery should focus on Fidelity, not the homeowners.

[9] *See Taylor v. Sturgell*, 553 U.S. ---, 128 S. Ct. 2161, 2172 (2008) (explaining that nonparties are not subject to res judicata except in six categories of circumstances, none of which are present here).

[10] Opp. Br. at 15.

*Development Bank*, 132 F.R.D. 129, 132 (D.P.R. 1990) (holding that defendant cannot implead a third party on the basis of a claim belonging to the Government due in part to Rule 14(a)'s "respect for plaintiff's litigative decision regarding whom to sue").

### IV. FIDELITY CANNOT SUE INSUREDS FOR ITS OWN NEGLIGENTLY ADJUSTED OVERPAYMENTS

Fidelity says its Third Party Complaint is intended to address the scenario in which Fidelity was negligent but not liable under the FCA (*i.e.*, there were numerous overpayments but no *scienter*).[11] If there were no overpayments (in which case no one would pay), or if Fidelity were liable under the FCA (in which case Fidelity alone would have to pay), Fidelity admits the Third Party Complaint is irrelevant.[12]

As an initial matter, Fidelity offers no explanation as to why it should be allowed to sue homeowners now to address a hypothetical situation that may never occur.

Furthermore, Fidelity has offered no authority that suggests that a WYO carrier who negligently adjusted a claim has the right to recover the overpayment from the insured. Fidelity relies on an affidavit by its Vice President Ms. Deborah Price, but Price states only the following in relevant part:

> I personally know that federal officials at the NFIP do specifically authorize WYO carriers to file lawsuits acting in the role of fiscal agent and fiduciary of the United States to seek recovery of United States Treasury funds.[13]

Price does not say that the NFIP has ever authorized suits against homeowners where the WYO carrier negligently adjusted the claim. Nor does she say that the NFIP authorized Fidelity to file its Third Party Complaint, or explain why Fidelity failed to get that authorization in this case.

---

[11] *Id.* at 5-6.
[12] *Id.*
[13] Price Aff. ¶ 5.

In a June 2000 memorandum FEMA indicated that its understanding is that the WYO carrier, not the homeowner, is responsible for paying for negligent overpayments:

> Write Your Own (WYO) companies are held accountable for claims. The companies sign an agreement with FIA, stating that if they overpay a claim and the overpayment is discovered, the company is responsible to refund the overpayment to the fund.[14]

The sworn deposition testimony which Price gave as Fidelity's 30(b)(6) witness in January 2007 in *Dwyer v. Fidelity National Property & Casualty Insurance Co.*, Civil Action No. 06-04793 (E.D. La.), is consistent with FEMA's understanding:

> Q: Has Fidelity ever had to pay FEMA back for funds that were wrongly disbursed?
>
> A: We have had occasions where they've notified us of a claim error after a re-inspection they've determined something wasn't covered or wasn't flood damaged and required us to pay it back.
>
> Q: What do you mean "pay it back"? Out of your own pocket?
>
> A: Yes, we have to pay the actual damages back out of our own pocket.
>
> * * *
>
> Q: Any mistakes that the independent adjuster makes is going to be borne by Fidelity, correct?
>
> A: If we haven't caught it and corrected it beforehand, yes.
>
> Q: And so Fidelity will be liable for anything that the adjuster does—or any mistake that the adjuster makes that Fidelity hadn't corrected?
>
> A: We would be liable to FEMA and we would probably go back against the adjuster to see if we can recover.[15]

---

[14] FEMA'S NFIP June 2000 Call For Issues Status Report at I-1-3. A copy of the relevant pages of this report is attached as Exhibit 1.

[15] January 25, 2007 Depo. Trans. of Deborah Price at 112:11-21, 114:21-115:8. Price also testified that it was in Fidelity's best interests to pay as much as possible on flood claims:

> Q: If Fidelity is paid three and a half percent of all the—the payouts on loss, isn't it in the best interests of Fidelity to pay as much as possible on a claim?
> A: Absolutely.

*Id.* at 119-16-21. A copy of the relevant excerpts of Price's deposition is attached as Exhibit 2.

Finally, Fidelity argues that Branch's assertion that public records indicate FEMA has made a policy decision not to pursue refunds from insureds was an "attempt to deceive the Court."[16] According to Fidelity, the *Times-Picayune* article cited by Branch "does nothing but bolster Fidelity's contention that it is expected by the Government to recover money if indeed overpayments did occur."[17] Fidelity's reading of the article is misplaced. In the article cited by Branch, FEMA official Ed Pasterick stated that FEMA would not pursue refunds from insureds who were overpaid on flood but who "had more wind damage than was actually accounted for."[18] Fidelity does not dispute this policy, but it interprets this statement to mean that the insured had to both (1) have had more wind damage than was actually accounted for and (2) must have had a homeowner's policy that was issued by the WYO carrier who adjusted the flood claim. In other words, Fidelity assumes that insureds who were underpaid on wind receive the benefit of FEMA's policy *only if* their homeowner's carrier and their WYO carrier were one and the same. Fidelity does not cite any basis to support this narrow interpretation, which excludes the thousands of insureds who were underpaid on wind because their homeowner's carrier relied on inflated flood adjustments by different WYO carriers.

## V.   CONCLUSION

Fidelity's repeated accusations against Branch and its desperate attempt to sue homeowners are precisely the type of effort to "shift the focus of the litigation" away from the relevant issues that the court condemned in *Public Integrity*.[19] There is no basis for Fidelity to

---

[16] Opp. Br. at 9.

[17] *Id.*

[18] A copy of the article is attached as Exhibit 3.

[19] Fidelity makes repeated references to a mistake made by Branch with respect to the property described at ¶ 23(a) of the First Amended Complaint. Branch believes that this is a simple error related to the policy number and intends to fix this error in its forthcoming Second Amended Complaint.

assert claims on behalf of the United States against nonparty insureds in this *qui tam* action. The Third Party Complaint should be struck.

DATED:  December 4, 2009

Respectfully submitted,

SUSMAN GODFREY LLP

By: s/ Tibor L. Nagy, Jr.

Jonathan Bridges (TX #24028835)
jbridges@SusmanGodfrey.com
901 Main Street, Suite 5100
Dallas, Texas  75202-3775

Tibor L. Nagy, Jr. (NY #4508271)
tnagy@SusmanGodfrey.com
654 Madison Ave., 5th Flr
New York, NY 10065

Matthew R. Berry (WA #37364)
mberry@susmangodfrey.com
1201 Third Avenue, Suite 3800
Seattle, WA 98101

	and

KANNER & WHITELY L.L.C.

Allan Kanner (LA #20580)
a.kanner@kanner-law.com
701 Camp Street
New Orleans, LA  70130

	and

HERMAN, HERMAN, KATZ & COTLAR, LLP

Stephen J. Herman (LA #23129)
sherman@hhkc.com
Soren E. Gisleson (LA #26302)
sgisleson@hhkc.com
820 O'Keefe Avenue

> New Orleans, Louisiana 70113
>
> *Attorneys for Plaintiff/Relator*

## Certificate of Service

I hereby certify that on December 4, 2009, a copy of the above and foregoing *Branch Consultants, L.L.C.'s Reply In Support Of Its Motion to Strike Fidelity's Third-Party Complaint* has been served upon all counsel of record in this matter by placing the same in the U.S. Mail, first class postage prepaid and properly addressed, by facsimile and/or by electronic mail using the CM/ECF. I further certify that a true and correct copy of this reply was sent via electronic mail (pursuant to agreement) on December 4, 2009, to Assistant United States Attorney, Jay D. Majors.

s/ Tibor L. Nagy, Jr.