```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA


UNITED STATES OF AMERICA EX REL.        CIVIL ACTION
BRANCH CONSULTANTS, L.L.C.


VERSUS                                  NO: 06-4091


ALLSTATE INSURANCE. CO., ET AL.         SECTION: R
```

**ORDER AND REASONS**

Before the Court is defendants' Motion for Certification of Court's October 19, 2009 Order for Interlocutory Appeal (R. Doc. 237). For the following reasons, the motion is DENIED.

**I. Background**

The Court's Order ruling on defendants' Motion to Dismiss, R. Doc. 228, contained extensive background on this suit and its claims. Only a brief overview will appear here. Branch Consultants brought suit under the False Claims Act ("FCA") against several insurance companies participating in the "Write Your Own" insurance program. Under this arrangement, private insurers are allowed to issue government-guaranteed flood insurance policies. The government makes payments for flood damage to covered property and the private insurers are responsible for payments made under policies that cover damage

caused by wind.  Branch alleges that, in the aftermath of Hurricane Katrina when numerous insured homes in southeastern Louisiana were damaged by both wind and flood, defendants fraudulently shifted the costs of policy payments to the government by systematically overstating flood damage and understating wind damage.

Defendants moved to dismiss, and in October of this year this Court issued an Order denying their motion in part and granting it in part.  Specifically, the FCA's "public disclosure" provision bars jurisdiction over certain types of suits.  Applying this provision, the Court found that Branch's suit was "based upon" allegations or transactions of fraud that were "publicly disclosed."  Based on the allegations in its complaint, however, Branch qualified as an "original source" of the information in its complaint, and the Court was therefore not divested of jurisdiction over the suit.  The Court also found that, for most defendants, Branch had met its pleading standards for the alleged violation of two provisions of the FCA, but that it had not met the pleading standard for a third.

Defendants now move for an interlocutory appeal of the Court's determination that Branch is an original source for the purposes of the FCA.  Branch opposes.

## II. Discussion

*A. Legal Standard*

Interlocutory appeals are allowed when a district court that issues a non-final order in a civil case "shall be of the opinion that such order [1] involves a controlling question of law as to which [2] there is substantial ground for difference of opinion and that an immediate appeal from the order [3] may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b) (brackets added); *see also In re Ichinose*, 946 F.2d 1169, 1177 (5th Cir. 1991). The availability of such an appeal under § 1292(b) does not "jeopardiz[e] the usual rule of not permitting an appeal until all the proceedings on the trial court level are complete." 10 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 2658.2 (3d ed. 1998 & 2009 supp.). An interlocutory appeal is "exceptional" and "does not lie simply to determine the correctness of a judgment." *Chauvin v. State Farm Mut. Auto. Ins. Co.*, Nos. 06-7145 & 06-8769, 2007 WL 4365387, at *2 (E.D. La. Dec. 11, 2007) (quoting *Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Const. Co.*, 702 F.2d 67, 68, 69 (5th Cir. 1983)). The moving party bears the burden of demonstrating that interlocutory appeal is appropriate. *In re FEMA Formaldehyde Prods. Liab. Litig.*, No. MDL 07-1873, 2008 WL 4923035, at *2 (E.D. La. Nov. 13, 2009) (citing *In re Complaint of L.L.P. & D. Marine, Inc.*, Nos. 97-1668, 97-2992 & 97-3349, 1998 WL 66100, at *1 (E.D. La.

Feb. 13, 1998)).

B. *Controlling Question of Law*

Defendants contend that a specific question of law controls this matter: "whether a 'sleuth' like Branch, without first-hand involvement in an alleged fraud, can qualify as an 'original source' by providing additional examples of a publicly disclosed, alleged fraudulent scheme." R. Doc. 237 at 2. They ask the Court to certify this question for review by the court of appeals. The parties disagree as to whether defendants' question, as phrased, would cover the facts underlying this case.

The Court need not resolve this question because district courts do not certify "questions" for the court of appeals upon the grant of a § 1292(b) motion. *See Linton v. Shell Oil Co.*, 563 F.3d 556, 557 (5th Cir. 2009) ("section 1292(b) authorizes certification of orders for interlocutory appeal, not certification of questions"). For the purposes of this Motion, the Court will assume without deciding that there is a purely legal question of whether, on facts similar to these, a relator is categorically excluded from "original source" status under the FCA.

C. *Substantial Ground for Difference of Opinion*

"Substantial ground for difference of opinion," as used in

4

the statute, is not the same as disagreement with a district court's ruling. *In re Babcock & Wilcox*, Nos. 04-302 & 03-1065, 2004 WL 626288, at *2 (E.D. La. Mar. 29, 2004). Rather, the Court is most likely to allow the appeal when there is "an unsettled state of law or judicial opinion." *Id.*

Defendants' primary argument is this: the Supreme Court, in *Rockwell International Corp. v. United States*, 549 U.S. 457, 470-71 (2007), abrogated the Fifth Circuit's "original source" decision in *United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d 346, 356 (5th Cir. 2003). Since then, the Fifth Circuit has issued only one published opinion interpreting the original source clause, *United States ex rel. Fried v. West Ind. Sch. Dist.*, 527 F.3d 439 (5th Cir. 2008), which involved a relator who engaged in an after-the-fact investigation of fraud. There, the court found that the relator was not an original source. Defendants contend that the Court's Order "diverges from *Fried* based on pre-*Rockwell*, out-of-circuit decisions," R. Doc. 237 at 1, and that there is substantial ground for difference of opinion as to whether a relator who initiates an investigation after an alleged fraud can be considered an original source.

The phrasing of defendants' contentions suggests that they are alleging error, which, as noted, is not a proper ground for interlocutory appeal. To the extent that they are not, their

arguments are insufficient to create a substantial ground for difference of opinion.

Initially, although defendants make repeated use of the term "pre-*Rockwell*," they point to nothing in *Rockwell* itself that makes it a watershed decision as to the specific issue they identify. *Rockwell* abrogated the Fifth Circuit's ruling that the phrase "information upon which the allegations are based" in 31 U.S.C. § 3130(e)(4)(A) refers to the publicly disclosed information, and instead held that it refers to the information in a relator's complaint. 549 U.S. at 470-71. The case also held that the phrase "direct and independent knowledge" in 31 U.S.C. § 3130(e)(4)(B) does not encompass a failed prediction or suspicion that something will happen. 549 U.S. at 475-76. This Court's decision runs afoul of neither of these rulings. If *Rockwell* indeed unsettled any relevant issue of law in the Fifth Circuit, defendants have failed to show how it is presented by the Court's Order.

They also suggest that the Order "reli[ed] on pre-*Rockwell*, out-of-circuit precedent rather than *Fried*." R. Doc. 237 at 7. Again assuming that this is a claim for grounds of difference of opinion and not a claim of error, defendants have not shown a "substantial ground for difference of opinion" as to whether *Fried* dictates the outcome of the original-source determination. There are three reasons why this is the case.

First, the Fifth Circuit holds that the determination of whether a relator is an original source is a highly fact-specific inquiry. It instructs courts to "look at the factual subtleties of the case before it and attempt to strike a balance between those individuals who, with no details regarding its whereabouts, simply stumble on a seemingly lucrative nugget and those actually involved in the process of unearthing important information about a false or fraudulent claim." *United States ex rel. Lam v. Tenet Healthcare Corp.*, 287 Fed. App'x 396, 400 (5th Cir. 2008) (quoting *Laird*, 336 F.3d at 356). The determination of whether the relator is an original source is a factually specific one.

Second, *Fried* makes no statement, implied or otherwise, to suggest that relators who gain knowledge of fraud through investigation are categorically prohibited from being original sources. Defendants are therefore incorrect to assert that "*Fried* raised serious questions about when, if ever, a relator's independent investigation of a publicly disclosed allegation of potential fraud could yield direct and independent knowledge sufficient to qualify the relator as an original source." R. Doc. 237 at 7. In fact, the decision in *Fried* is based upon "the factual subtleties of the case before it," in accordance with how the Fifth Circuit analyzes original-source determinations. *Lam*, 287 Fed. App'x at 400. It makes no mention of categorical exemptions for relators who investigate fraud. A case that

7

neither discusses nor applies a legal principle does not "raise a serious question" about whether that principle exists. If anything, the *Fried* court was presented with the opportunity to apply such a principle and instead abided by the Fifth Circuit's instructions to conduct fact-specific, case-by-case determinations.

Finally, as the Court pointed out in its Order, *Fried* is plainly distinguishable on its facts. The public disclosures mentioned in *Fried* included references to thousands of specific instances of the type of fraud the relator alleged, 527 F.3d at 442, and the court noted that "every aspect" of the alleged fraud was in the public domain. *Id.* at 443. Furthermore, the relator's information was secondhand, derived from the Texas Public Information Act or from conversations with employees of the school district that was the alleged perpetrator of fraud. *Id.* at 442-43. Much of his information "duplicate[d] what was uncovered in governmental investigations," and his investigations uncovered trivial facts about the alleged fraud. *Id.*

Here, the public disclosures provide virtually no examples of alleged fraud. "For the most part, the disclosures identified by the defendants, while sufficient to notify the government of the potential for fraud, consist of unsubstantiated accusations and generalized suspicions of fraud, as well as basic descriptions of the possibility, opportunity, and incentives for

8

the [Write-Your-Own] insurers to shift their costs onto the government." R. Doc. 228 at 32. Taking the allegations in Branch's complaint as true, its information did not derive from public records or secondhand information. *Id.* at 35. Rather, it "directly investigated . . . the specific subjects of the allegedly fraudulent claims," *id.*, and uncovered "a host of additional compelling facts about the alleged fraud that were nowhere previously available. *Id.* at 39-40 (quotation marks omitted); *see also id.* at 32-33.

In short, *Fried* does not stand for or approach the rule of law that defendants appear to seek from the court of appeals: that a relator is categorically barred from original-source status because he was not involved in the fraudulent activity and he obtained his information through after-the-fact investigation. Such a rule is not found in the plain language of the statute. Furthermore, in suggesting that there is substantial ground for difference of opinion on this point, defendants have failed to point to a single case in which such a rule was applied. Defendants have therefore not met the standard for a substantial ground for a difference of opinion.

*D. Material Advancement of the Ultimate Termination of the Litigation*

Defendants argue that an interlocutory appeal would materially advance the ultimate termination of the litigation

because a finding that Branch is not an "original source" would terminate the litigation. It is true that every non-final order issued by a federal district court — if reviewed by the court of appeals, reversed, and made subject to a mandate ordering the dismissal of the entire suit — would materially advance the ultimate termination of the litigation. This, however, does not entitle a litigant to interlocutory appeal of every non-final order. Here, defendants have done little more than suggest that, if the Fifth Circuit were to decide every issue in their favor, the case would be over. The Court cannot disagree with this statement. It also, however, cannot disagree with the statement that defendants' motion presents a substantial opportunity for "fragmented, piecemeal appeals" that complicate and delay litigation and are disfavored in federal courts. *See Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218, 1225 (5th Cir. 1990).

This action was filed in August of 2006. It is now December of 2009, and the case has only recently progressed beyond the motion-to-dismiss stage. The Fifth Circuit has already reviewed this case once. There, the court explicitly declined to address this very question "[b]ecause the district court should have the opportunity to address the facts underpinning the claim of public disclosure and original source and make any necessary findings in the first instance." *United States ex rel. Branch Consultants v.*

10

*Allstate Ins. Co.*, 560 F.3d 371, 381 (5th Cir. 2009). The district court has now done so, and it has determined that the litigation should move forward without further delay.

### III. Conclusion

For the foregoing reasons, defendants motion for leave to appeal is DENIED.


New Orleans, Louisiana, this \_\_\_\_22nd\_\_\_\_ day of December, 2009.

*Sarah Vance*
_____
**SARAH S. VANCE
UNITED STATES DISTRICT JUDGE**