UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

```
-----------------------------------------------------------------x
                                                                 :
UNITED STATES OF AMERICA,                                        :
EX REL. BRANCH CONSULTANTS, L.L.C.,                              :   Case No.: 06-cv-4091 (SSV)
                                                                 :
                              Plaintiff,                         :   Sect.: R
                                                                 :
            v.                                                   :
                                                                 :
ALLSTATE INS. CO., et al.,                                       :
                                                                 :
                              Defendants.                        :
                                                                 :
-----------------------------------------------------------------x
```

**DEFENDANTS' PROPOSED
DISCOVERY PLAN PURSUANT TO DECEMBER 15, 2009 ORDER**

Defendants respectfully submit this proposed discovery plan pursuant to this Court's December 15, 2009 order. For the reasons set forth in Section I below, the discovery approach in *United States ex rel. Rigsby v. State Farm Insurance Co.*, 06-CV-433 (S.D. Miss.), limiting the scope of the action to properties identified by address in the first amended complaint is appropriate in this action and required by *Rockwell International Corp. v. United States,* 549 U.S. 457 (2007). With such a limitation, Defendants believe fact discovery can be completed by the in-place October 1, 2010 cut-off. Further, Defendants respectfully submit that entry of the orders attached hereto as Exhibits A through D and discussed in Section II below will facilitate the timely completion of discovery and minimize disputes.

**I.   INTRODUCTION**

    **A.   Summary of Relevant Procedural History**

Branch initiated this False Claims Act ("FCA") lawsuit on behalf of the United States on the premise that Branch is the "original source" of its allegations against each of the defendants. According to Branch, it inspected certain properties following Hurricane Katrina and, on nearly all of those properties, defendants "maxed out or nearly maxed out the insured's flood policy limits (underwritten by [the National Flood Insurance Program]), irrespective of the actual damage conceivably attributed to flood." FAC ¶ 20. The alleged motive for this fraud was to shift payments due the property owner under a homeowners insurance policy backed by the insurer to a flood insurance policy backed by the Government. The Government has declined to intervene in this case.

On February 18, 2009, the Fifth Circuit affirmed the dismissal of Allstate and State Farm from this case for lack of subject matter jurisdiction under 31 U.S.C. § 3730(b)(5) on the ground that *United States ex rel. Rigsby v. State Farm Insurance Co.*, 06-CV-433 (S.D. Miss.), is a first-filed action as to those defendants. On remand, Judge Vance determined that the Court has subject matter jurisdiction over the claims against the remaining defendants because the allegations in the complaint indicate that Branch is an "original source" within the meaning of 31 U.S.C. § 3730(e)(4), and the first amended complaint states a claim sufficiently against all defendants except NCA Group, Crawford and Company, and Pilot Catastrophe Services under Rules 9(b) and 12(b)(6).[1] On November 19, 2009, Judge Vance issued an ordering setting October 1, 2010 as a fact discovery cut-off. On December 16, 2009, Magistrate Judge Shushan issued an order directing the parties to submit discovery plans by January 8, 2010. In the

---

[1]   On December 30, 2009, Branch moved to file a second amended complaint adding additional parties and new allegations. That motion is noticed for hearing on January 20, 2010.

meantime, the parties have been engaged in written discovery.

On January 8, 2010, Standard Fire moved for an order severing Branch's claims against Standard Fire pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure. The hearing on such motion has been scheduled for February 3, 2010 at 10:00 a.m.

**B.    Judge Senter's Approach to Case Management in *United States Ex Rel. Rigsby v. State Farm Insurance Co.*, 06-CV-433 (S.D. Miss.) Is the Correct One**

*United States ex rel. Rigsby v. State Farm Insurance Co.*, 06-CV-433 (S.D. Miss.), is a False Claims Act case currently pending against State Farm alleging the same basic fraud as alleged here. The *Rigsby* complaint identifies a single specific property at which fraud allegedly occurred, the "McIntosh Claim." Judge Senter appropriately limited the scope of discovery and trial in *Rigsby* to the McIntosh Claim because the Supreme Court held in *Rockwell* that the False Claims Act "does not permit jurisdiction in gross just because a relator is an original source with respect to some claim." 549 U.S. at 476. Rather, for subject matter jurisdiction to obtain the "relator must have knowledge of actual facts supporting the theory ultimately proven at trial—in other words, knowledge of the information underlying the prevailing claims." *Id.* at 480 (Stevens, J., dissenting and describing majority opinion). Therefore, a relator should not be permitted to go on a fishing expedition for false claims that he does not know about at the time of filing his complaint, because the Court does not have subject matter jurisdiction over those claims. Such an effort at "claim smuggling" is not permitted by the False Claims Act. *Id.* at 456-57. Applying the rule here as Judge Senter did in *Rigsby*, this Court should limit discovery and trial to the properties identified by address in the first amended complaint.

In *Rigsby*, Judge Senter first allowed discovery and received evidence concerning

the relator Kerri Rigsby's status as an original source. Then, having held a contested evidentiary hearing and deciding that Rigsby was an original source, Judge Senter limited the scope of further discovery and proceedings to the single property/claim identified in the complaint based on the United States Supreme Court's decision in *Rockwell* as follows:

> *Rockwell*, 549 U.S. at 476, indicates any relator in an FCA case is limited to pursuing claims of which he has first hand knowledge…. [T]he allegations of the Amended Complaint identify only one specific instance of misconduct: the McIntosh claim. The McIntosh claim is the only instance of State Farm's having submitted an allegedly false claim of which the Relator Kerri Rigsby has first hand knowledge, i.e., direct and independent knowledge sufficient to support the Court's subject matter jurisdiction in light of the decision of the United States not to intervene…. Accordingly, I will limit the presentation of evidence in this action to facts relevant to the McIntosh claim.

The same approach should obtain here.

In ruling on defendants' motion to dismiss, Judge Vance decided that, based solely on the allegations in the first amended complaint, Branch is an original source. Discovery should proceed, as it did in *Rigsby*, to test those allegations to determine whether, in fact, Branch is an original source with direct and independent knowledge of allegations of fraud asserted in its complaint, and whether those allegations hold any water with respect to the properties at which it allegedly has direct and independent knowledge of fraud. Defendants believe the evidence will unequivocally demonstrate that Branch is not an original source and there is no fraud as alleged in the first amended complaint.

For example, Branch's entire theory is that Defendants fraudulently overpaid flood claims and "underpaid for the damage that should have been attributed to wind." FAC ¶ 20, *see also United States ex rel. Branch Consultants, LLC v. Allstate Ins. Co.,* No. 06-4091, 2009 WL 3353314, at *21 (E.D. La. Oct. 19, 2009) ("Branch also generally alleges, contrary to defendants' contention, that the defendants had wind policies on the listed properties. Such

4

policies provide a motive to overstate flood damage for which the government is obligated to pay and to understate wind damage for which the insurance companies are responsible."). Yet, for instance, of the three Standard Fire properties identified in the first amended complaint as having been insured by Standard Fire for both flood and wind, Standard Fire appears to have issued the flood policies on only 2 and the wind policies on none. The fraud Branch alleges simply cannot exist. These are the kinds of issues that Judge Senter sought to address by limiting the scope of *Rigsby*. Indeed, the most practical and manageable approach is to limit discovery to testing Branch's original source status (*i.e.*, subject matter jurisdiction) and allegations of fraud with respect to the named properties. Any appropriate expansion of the case (which Defendants contend is none) can occur after the specific allegations of the first amended complaint are tested. The scope of *Rigsby* was limited to the properties identified in the first amended complaint and this case should be so limited to the properties identified with respect to the remaining defendants in the first amended complaint.

    **C.**    **Defendants' Proposal Is Consistent with Branch's Conduct in the Case: Branch's Has Limited Its *Own* Discovery Responses to the Properties Identified in the First Amended Complaint**

Notwithstanding that Branch has inappropriately served broad discovery requests seeking information about every claim under every flood insurance and every homeowners insurance policy that involved Hurricane Katrina, Branch's conduct belies such a broad approach to discovery.

First, Branch's initial disclosures pursuant to Rule 26(a)(1)(A)(ii) identify only "documents relating to the properties identified in Branch's pleadings" as ones it may use to support its claims.[2]

---

[2]     A copy of Branch's initial disclosures will be provided to the Court on request.

Second, through a document request, Branch was asked to produce documents regarding the "hundreds of properties" allegedly inspected by Branch, referenced though not specifically identified in paragraph 20 of the first amended complaint. Branch refused.[3]

Third, through a document request, Branch was asked to produce information at the hundreds of properties it inspected but did not specifically identify in the first amended complaint and found <u>no fraud</u>. Again, Branch refused.

Fourth, through a document request, Branch was asked to produce information about the actual flood adjustments performed by Branch on properties damaged during Hurricane Katrina to test Branch's assertion that defendants somehow got it fraudulently wrong in the way they adjusted the flood damage with respect to the properties identified in the first amended complaint (rather than the second-guessing manifest in the complaint). Yet again, Branch refused to provide information about any property not identified in the first amended complaint.

As demonstrated by Branch's responses, the most reasonable approach here is to impose a limitation similar to Judge Senter's approach in *Rigsby*, particularly given that private citizens cannot conduct a fishing expedition looking for false claims in a False Claims Act *qui tam* case. *See Rockwell*, 549 U.S. at 476. This Court should so limit discovery in this to properties identified in the complaint by address.

**D.    Embarking on Unphased, Virtually Limitless Discovery Makes No Sense Here**

Leaving aside the serious jurisdictional issues implicated by Branch's efforts to have expansive discovery on ***all*** Hurricane Katrina flood claims, Defendants also object to

---

[3]    A copy of Branch's December 21, 2009 responses to Fidelity National Property and Casualty Insurance Company's First Request for Production of Documents nos. 20-22 and 33, and its amended responses of December 23, 2009, will be provided to the Court on request.

6

Branch's desire to cram such discovery into a circumscribed time period: while Defendants *can* complete discovery that is properly tailored to the properties identified in the First Amended Complaint by the October 1, 2010 cut-off, there is no practical way to evaluate the facts of hurricane damage to potentially tens of thousands of properties within the nine months currently allotted for fact discovery. Each property suffered different damage, was individually adjusted and, as the Fifth Circuit recently recognized, "many factors can affect measurements in residential repair projects, including the style of home, overages, residential conditions, and the contractor's expertise." *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 340 (5th Cir. 2008). *See also Cresson v. State Farm Fire & Cas. Co.*, No. 06-8788, 2007 WL 1191817, at *2 (E.D. La. Apr. 19, 2007) (severing claim against one insurer relating to Hurricane Katrina losses at one property from claims against another insurer relating to other properties because claims involved "entirely different factual and legal issues," including each property's condition and location before storm, the value of the properties, and the extent of damage sustained); *McFarland v. State Farm Fire & Cas. Co.*, No. 1:06CV466-LTS-RHW, 2006 WL 2577852, at *1 (S.D. Miss. Sept. 6, 2006) ("each property owner . . . is uniquely situated" in that "[t]he nature and extent of the property damage the owners sustain from the common cause, Hurricane Katrina, will vary greatly in its particulars, depending on the location and condition of the property before the storm struck and depending also on what combination of forces caused the damage") (internal quotation marks omitted).

    The parties are not the only ones who would be affected by such expansive discovery. Branch seeks to forage though the thousands of claim files and somehow divine from that information additional circumstances where Defendants supposedly committed fraud. To defend against such accusations, Defendants will likely have to subpoena the property owners to

7

produce documents and provide testimony and potentially inspect the properties themselves. In many cases, properties may have changed ownership, thus potentially involving persons who had no involvement with the flood claims. Certainly these non-party individuals should not be unnecessarily burdened by such an intrusion before Branch's claimed original source status is fully tested on the merits. Moreover, this original source status should be demonstrated before Branch is allowed to co-mingle its pre-suit knowledge with its post-suit knowledge.

## II.    ISSUES IDENTIFIED IN FEDERAL RULE OF CIVIL PROCEDURE 26(F)(3)

This section assumes that discovery is limited to Branch's original source status and allegations of fraud with respect to the properties identified by address in the first amended complaint.

### A.    Disclosures Under Federal Rule of Civil Procedure 26(a)

Initial disclosures under Federal Rule of Civil Procedure 26(a)(1) were made on December 21, 2009 by all parties. Substantial completion of Defendants' production of documents in connection therewith will occur upon entry of a proposed confidentiality/protective order attached as Exhibit A and discussed in more detail in Section II.F below.[4]

### B.    Subjects on Which Discovery May Be Needed, When Discovery Should Be Completed and Whether Discovery Should Be Conducted In Phases

#### 1.    Subjects on Which Discovery May Be Needed

Defendants anticipate that discovery of the following subjects may be needed:

a.    The Court's subject matter jurisdiction under 31 U.S.C. § 3730, including but not limited to Branch's alleged direct and independent knowledge of alleged fraud

---

[4] Counsel for Standard Fire has been conferring with counsel for Branch in an effort to reach an agreed order.

by each defendant and whether Branch is an "original source" within the meaning of the False Claims Act.

    b.  Branch's allegation that each defendant knowingly made false and fraudulent claims, records, statements and certifications to government in order to obtain payments under the National Flood Insurance Program with respect to each property identified in the first amended complaint.

    c.  "[A]ny evidence that will shed light on whether [any flood claim specifically pleaded in the FAC] was overpaid as the Relators have alleged." (Judge Senter's March 20, 2009 Order, at 1.) This may include, as to each of the remaining 27 properties: (i) all of Branch's documents relating to the listed properties; (ii) all documents of the property owners regarding damage to these properties; (iii) documents from the Road Home Program for these properties; (iv) depositions of Branch's employees or consultants involved in the reexamination effort for the property at issue; and (v) depositions of the property owners, along with any of their contractors or public adjusters who prepared estimates for the cost of needed repairs.

  The above list is a summary and is not intended to be a limitation on the subjects on which defendants may take discovery.

  **2.**  **Time for Completion of Discovery**

  Consistent with the Scheduling Order entered by the Court on November 19, 2009, and assuming the scope of discovery is limited to the properties identified by address in the first amended complaint, fact discovery should be completed by October 1, 2010.

**3.     Phasing**

Fact discovery is appropriately phased to substantially complete document productions and resolve document discovery disputes before party depositions commence, as follows:

a.     Document and written discovery:

i.     By March 15, 2010 the parties should substantially complete production in response to requests served by January 30, 2010. The deadline set forth in this section should not preclude any party from making additional follow-up document requests to parties or non-parties after January 30, 2010.

ii.     The parties shall work to ripen written discovery disputes by February 15, 2010. On February 15, 2010 the parties should serve motion papers to compel production concerning outstanding document and/or written discovery disputes. On March 1, 2010 the parties should serve opposition papers, and on March 11, 2010 the parties should serve reply papers. The deadline set forth in this section will not preclude any party from making additional motions that may be appropriate.

b.     Deposition discovery:

i.     On March 1, 2010, the parties shall serve lists of requested party depositions. The deadline set forth in this section will not preclude any party from making additional requests for depositions after March 1, 2010.

ii.     The parties shall work cooperatively from March 1 to March 15, 2010 to schedule party fact depositions during the period.

iii.     Fact depositions may begin on March 15, 2010 subject to any issues related to pending discovery motions.

Defendants request entry of the proposed order governing discovery annexed as Exhibit B.

### C.  Electronically Stored Information

Defendants request entry of the proposed order attached as Exhibit C governing the production of Electronically Stored Information.

### D.  Claims of Privilege/Protection

All parties should timely produce a privilege log in accordance with the requirements set forth in Section F of the proposed order attached as Exhibit C.

### E.  Changes to Limitations on Discovery

1.  The presumptive limitation on the **number of depositions** by defendants set forth in Rule 30(a)(2)(A)(i) should not apply. By way of example: The proposed second amended complaint alleges fraud at 45 separate properties. *See* Proposed SAC ¶¶ 21-31. The fraud allegedly involves, among other things, misrepresentations concerning which roof vents, jack flashing, and shingles blew off dozens of properties, and what damage was caused by flood in each specific property. *See* Proposed SAC ¶¶ 21-31. Each property owner will be deposed regarding the properties and the nature of the damage to their property during Hurricane Katrina and their representations to defendants regarding those losses. Those depositions alone will exceed the presumptive ten deposition limit. Accordingly, defendants should be limited to a reasonable number of depositions as set forth in the proposed order governing deposition discovery in the form annexed as Exhibit B.

2.  The presumptive limitation on the **duration of depositions** by defendants set forth in Rule 30(d)(2) should not apply. By way of example: The first and proposed second amended complaint alleges fraud at 45 separate properties. *See* Proposed SAC ¶¶ 21-31. Each

11

defendant will want to ask Branch's corporate designee witness about the alleged fraud at each property. If the seven (7) hour were to presumptively apply, questioning concerning each property would be limited to an average of less than 8 minutes. This is plainly prejudicial and would deny each defendant an adequate opportunity to explore the allegations against them. Accordingly, defendants should be limited to a reasonable amount of time for each deposition in accordance with the respective knowledge and involvement of the individual involved, in according with the proposed governing deposition discovery in the form annexed as Exhibit B.

F. **Orders That Should Be Entered By the Court Under Rule 26(c) or Rules 16(b) and (c)**

1. Defendants respectfully request that the Court enter the following additional discovery orders, summarized below:

a. **Confidentiality/protective order** in the form annexed as Exhibit A. The Court should enter the attached confidentiality order governing the use of discovery material in this case. The proposed order has two main features: It limits the use of discovery material outside this litigation and affords the parties protection against inadvertent privilege waivers pursuant to Federal Rule of Evidence ("FRE") 502. First, typical concerns about sensitive commercial and proprietary information apply in this case and the proposed order addresses those legitimate concerns. Further, this is an unusual case in that Branch is attempting to discover and litigate about sensitive, personal information of individual homeowners. It also appears that the homeowners are being dragged unknowingly into this suit by Branch by putting their flood insurance claims at issue. Accordingly, it is appropriate to limit the use of the discovery information outside this litigation. Second, FRE 502 contemplates an order at the outset of a case to protect the parties from inadvertent waivers of privilege to make the discovery process more efficient and less costly. Section 13 of the proposed order is such an order.

b. **Order governing discovery** in the form annexed as Exhibit B. The Court should enter the attached order governing discovery to address the orderly completion of document discovery (and related motion practice) and then deposition discovery, as well as the scheduling of depositions, number of depositions, duration of depositions, place of deposition, costs and accommodations and objections to depositions. Defendants believe this order will avoid unnecessary disputes later in the case and allow the parties to proceed in an orderly fashion.

c. **Order governing electronic discovery, document production and privilege logs** annexed as Exhibit C. The Court should enter the attached order governing electronic discovery, document production and privilege logs to avoid gamesmanship and disputes about these issues.

d. **Order directing the avoidance of duplication and non-waiver of privileges** in the form annexed as Exhibit D. The Court should enter this order directing all parties to make efforts to cooperate and avoid duplication of efforts in the deposing of witnesses, production of documents, and other discovery matters, and to ensure that such cooperation does not lead to an inappropriate claim of a privilege or work product waiver.

## **CONCLUSION**

Defendants request that the Court adopt the foregoing discovery plan and enter the orders annexed as Exhibits A-D.

Dated: January 8, 2010

Respectfully submitted,

| | |
|---|---|
| BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, LLC | PHELPS DUNBAR LLP |
| /s/ Judy Y. Barrasso_____ | /s/ Harry Rosenberg_____ |
| Judy Y. Barrasso (2814) | Harry Rosenberg (11465) |
| jbarrasso@barrassousdin.com | rosenbeh@phelps.com |
| John W. Joyce (27525) | 365 Canal Street, Suite 2000 |
| jjoyce@barrassousdin.com | New Orleans, Louisiana 70130 |
| LL&E Tower | Telephone: (504) 566-1311 |
| 909 Poydras Street, Suite 2400 | |
| New Orleans, Louisiana 70112 | SIMPSON THACHER AND BARTLETT LLP |
| Telephone: (504) 589-9700 | Bryce L. Friedman (*pro hac vice*) |
| | bfriedman@stblaw.com |
| **Attorneys for Liberty Mutual Insurance Company** | 425 Lexington Avenue |
| | New York, New York 10017 |
| | Telephone: (212) 455-2000 |
| | |
| | Deborah L. Stein (*pro hac vice*) |
| | dstein@stblaw.com |
| | 1999 Avenue of the Stars, 29th Floor |
| | Los Angeles, California 90067 |
| | Telephone: (310) 407-7500 |
| | |
| | **Attorneys for The Standard Fire Insurance Company** (*erroneously named as St. Paul Travelers Co.*) |

NIELSEN LAW FIRM, LLC

/s/ Gerald J. Nielsen
Gerald J. Nielsen (17078)
gjnielsen@aol.com
William T. Treas (26537)
wtreas@nielsenlawfirm.com
3838 North Causeway Boulevard, Suite 2850
Metairie, Louisiana 70002
Telephone: (504) 837-2500

**Attorneys Fidelity National Insurance Company, Fidelity National Property and Casualty Insurance Company**

MCCRANIE, SISTRUNK, ANZELMO, HARDY, MAXWELL AND MCDANIEL PC

/s/ James C. Rather
James C. Rather (25839)
jrather@mcsalaw.com
195 Greenbriar Blvd., Suite 200
Covington, LA 70433
(504) 831-0946

**Attorneys for Simsol Insurance Services, Inc.**

LAW OFFICES OF GORDON P. SEROU, JR., L.L.C.

/s/ Gordon P. Serou, Jr.
Gordon P. Serou, Jr. (14432)
gps@seroulaw.com
Poydras Center, Suite 1420
650 Poydras Street
New Orleans, Louisiana 70130
Telephone: (504) 299-3421

**Attorneys for American Reliable Insurance Company**

LARZELERE PICOU WELLS SIMPSON LONERO, LLC

/s/ Jay M. Lonero
Jay M. Lonero, T.A. (20642)
jlonero@lpw-law.com
Christopher R. Pennison (22584)
cpennison@lpw-law.com
Angie A. Akers (26786)
aakers@lpw-law.com
3850 N. Causeway Boulevard, Ste 1100
Metairie, Louisiana 70002
Telephone: (504) 834-6500

**Attorneys for American National Property And Casualty Company**

BEST KOEPPEL

/s/ Peter S. Koeppel
Peter S. Koeppel
Michael L. Martin
2030 St. Charles Ave.
New Orleans, Louisiana 70130
Telephone: (504) 598-1000
**Attorneys for Colonial Claims Corporation**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has this date been served upon all parties to this suit through counsel by filing into the Court's electronic filing system and, for non-participants, by placing same in the United States mail, postage prepaid and properly addressed on this 8th of January, 2010.

/s/ Harry Rosenberg