UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

----------------------------------------------------------------x
:
UNITED STATES OF AMERICA, :
*EX REL.* BRANCH CONSULTANTS, L.L.C., :   Case No.: 06-cv-4091 (SSV)
:
            Plaintiff, :   Sect.: R
:
      v. :
:
ALLSTATE INS. CO., et al., :
:
            Defendants. :
:
----------------------------------------------------------------x

### [PROPOSED] ORDER ESTABLISHING PROTOCOL FOR ELECTRONIC DISCOVERY

Upon Defendants' application and for good cause shown IT IS HEREBY ORDERED that the following protocol for electronic discovery shall apply:

**A.    DEFINITIONS**

1. "Litigation" means the case captioned *United States ex rel. Branch Consultants, LLC v. Allstate Ins. Co., et al.*, No. 06-cv-4091.

2. "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

3. "Paper Discovery" means any document or thing discoverable under Fed. R. Civ. P. 26(b)(1) and Fed. R. Civ. P. 34 that cannot be characterized as ESI.

4. "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes both ESI and Paper Discovery.

5. "E-mail" means an electronic means for communicating written information through non-telephone systems that will send, store, process and receive information.

6. "Format" means the internal structure of a file, which defines the way it is stored and used.

7. "Native Format" means the format of ESI in the application in which such ESI was originally created.

8. "Party" or "Parties" means Plaintiff Branch Consultants, LLC, and Defendants Liberty Mutual Fire Insurance Company, Fidelity National Insurance Company, Fidelity National Property and Casualty Insurance Company, American National Property & Casualty Company American Reliable Insurance Company, The Standard Fire Insurance Company, Simsol Insurance Services, Inc., and Colonial Claims Corporation.

9. "Producing Party" means a Party which produces documents.

10. "Receiving Party" means a Party to whom documents are produced.

11. "Responsive Document" means any document, excluding source code, that is responsive to any document requests served on the Producing Party in the Litigation that the Producing Party has agreed to produce or that the Producing Party has been ordered to produce by the Court.

12. "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

**B.   SCOPE**

1. The procedures and protocols set forth in this Order shall govern the production of Responsive Documents between the Parties in the Litigation. Any practice or procedure set forth herein may be varied by written agreement of the Parties.

2. Nothing in this Order establishes any agreement as to either the temporal or subject matter scope of discovery in the Litigation. Nothing in this Order creates an obligation

by any party to produce ESI, including any ESI on back-up tapes or other long-term storage media that were created strictly for use as a data back-up medium.

3. The Parties reserve the right to request the production of documents, including ESI, from individuals that the requesting Party has a good faith belief possess Responsive Documents.

4. The Parties shall not be obligated under this Order to produce any ESI that is no longer within their possession, custody or control (*i.e.*, lost or deleted) as a result of the routine, good-faith operation of an electronic information system, unless the Party requesting such ESI establishes that there is good cause to believe that the Party from whom such ESI is being requested intentionally failed to preserve, deleted or destroyed the ESI while under an obligation to retain it.

5. Notwithstanding anything to the contrary herein, the following document types are not discoverable in the Litigation except upon a showing of good cause:

    a. Recorded telephone messages, including voice-mail in the Avaya Voice (.lvp) or WAVE (.wav) file formats.

    b. Instant messaging communications.

    c. Back-up tapes or other long-term storage media that were created strictly for use as a data back-up medium.

    d. Temporary data stored in a computer's random access memory or RAM.

6. The Parties shall meet and confer to resolve any disputes that arise under this Order. In the event the Parties cannot reach agreement on a disputed matter, the Parties shall submit the matter to the Magistrate Judge for the Litigation.

**C.    PRODUCTION FORMAT**

1.    **Documents From Other Litigation:** Notwithstanding anything to the contrary herein, any party which produces documents that were previously produced in any other action or matter may produce such documents in the format in which they were produced previously.

2.    **ESI Production Format:** Except as provided in Paragraphs C.1 and C.8, ESI may be produced electronically where practical, as single page, uniquely and sequentially numbered Group IV TIFF files not less than 300 dpi resolution, with a corresponding load file ("Image Load File"). Except with regard to ESI documents that are redacted for privilege, the images shall be accompanied by text files containing the extracted text on a document basis, if available. The text files shall be named to match the endorsed number assigned to the image of the first page of the document. Text files shall be accompanied by a Control List File ("LST"). The images shall also be accompanied by an image cross-reference load file (such as Opticon or "LFP") providing the beginning and ending endorsed number of each document and the number of pages it comprises. The Producing Party shall also provide a data load file ("Data Load File" or "DAT") corresponding to the TIFF files, that shall contain the metadata, as reasonably available, associated with each Production Field specified in Schedule A. For the avoidance of any doubt, there is no obligation on the Producing Party to create metadata where none exists or is not reasonably available. The Parties shall cooperate in producing load files in a useable format.

3.    **Production of Paper Discovery:** At the discretion of the Producing Party, Paper Discovery may be produced in electronic form. Paper Discovery produced in electronic form need not be rendered text searchable via OCR or other means by the Producing Party. Nor is there any obligation to produce metadata fields associated with such documents. A Party need not produce a non-electronic duplicate of any Paper Discovery produced in electronic form,

except that upon a reasonable request by the Receiving Party and a showing of good cause (*e.g.*, problems with legibility or formatting), the Producing Party must produce the Paper Discovery in its original format at a mutually agreeable time and place.

    4.    **Appearance and Content:** Subject to any necessary redaction, each document's TIFF image file shall contain the same information and same physical representation as the document did in its original format, whether paper or electronic, consistent with the processing specifications set forth in Paragraph D. Documents that present imaging or formatting problems that the Producing Party has not been able to resolve at the time of production shall be promptly identified by the Producing Party by e-mail to the Receiving Party within ten (10) days of the production containing the problematic document(s). The Producing Party has no obligation to investigate whether documents it is producing present imaging or formatting problems prior to the production of the documents.

    5.    **Document Unitization:** If a document is more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes shall be maintained as it existed when collected by the Producing Party. If unitization cannot be maintained, the original unitization shall be documented in a load file or otherwise electronically tracked.

    6.    **Color:** Documents containing color need not be produced in color unless the Receiving Party makes a reasonable request pursuant to Paragraph C.8 for the production of ESI in Native Format or pursuant to Paragraph C.3 for the production of Paper Discovery in its original format, as applicable.

    7.    **Document Numbering for TIFF Images:** Each page of a document produced in TIFF file format shall have a legible, unique numeric identifier ("Document Number") not less

than six (6) digits electronically "burned" onto the image at a place on the document that does not obscure, conceal or interfere with any information originally appearing on the document. The Document Number for each document shall be created so as to identify the Producing Party and the Document Number (*e.g.*, "QCM 0000000"). Each Party shall have a unique identifying name.

8. **Production of ESI in Native Format:** In the event that production of a document in TIFF image file format would be impracticable, the Producing Party shall have the option of producing such document in Native Format. In all other instances, after initial production of ESI in TIFF image file format, a party must demonstrate a particularized need for production of that ESI in its Native Format. In the event that a Receiving Party requests production of Native Format ESI, the Producing Party and the Receiving Party shall negotiate in good faith about the timing, cost and method of such production. However, nothing in this Paragraph, except pursuant to Paragraph C.9, is to be read as requiring any Producing Party, absent agreement or court order, to produce ESI in Native Format. No document produced in Native Format shall be intentionally manipulated to change the appearance or substance of the document prior to its collection.

9. **Native File Exceptions:** Notwithstanding Paragraph C.8, to the extent a Producing Party produces video, animation or audio files such documents shall be produced in their Native Format.

10. **De-duplication:** To the extent identical copies of documents (*i.e.*, documents with identical hash values) appear in the files of a Custodian designated and agreed-upon under Paragraph G, the Producing Party shall produce only one such identical copy for that Custodian.

11. **Production Media:** The Producing Party shall produce document images, load files and metadata on hard drives, CDs, DVDs or other mutually agreeable media ("Production Media"). Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of documents on the Production Media and the Document Number ranges of the documents in that production (*e.g.*, "Branch Production March 1, 2010, B 00001 - B 00456"). The Production Media shall indicate that the Production Media includes information designated as confidential or the like under any order entered in the Litigation. Production Media shall include text referencing the case name and number. Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement and cross-reference the Document Number range that is being replaced. Production Media that is capable of write protection should be write-protected before production. Production Media may be encrypted, with the Parties to agree on a decryption key prior to production. If any piece of Production Media is known to have any physical defect, electronic defect or damaged data or is infected with any virus or other harmful software of any kind, it should be clearly labeled so that appropriate care can be taken during its examination. Alternatively, a Party may remove any virus or defect before production but must inform any Receiving Party of any such efforts.

12. **Original Documents:** Nothing in this Order shall eliminate or alter any Party's obligation to retain Native Format copies, including associated metadata, of all ESI produced in the Litigation and original hard copy documents for all Paper Discovery produced in the Litigation.

13. **Third-Party Software:** To the extent that documents produced pursuant to this Order cannot be rendered or viewed without the use of proprietary third-party software, the

Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party.

14. **ESI of Limited Accessibility:** If a Producing Party contends that any responsive ESI, excluding back-up tapes or other long-term storage media that were created strictly for use as a data back-up medium, is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide the Requesting Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, the likely costs that might be incurred in producing such ESI, the method used for storage of such ESI (*e.g.*, the type of system used to store the ESI) and the places in which such ESI is kept. The parties shall negotiate in good faith concerning the production of any such ESI. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Magistrate Judge for the Litigation, who shall determine what burdens may be imposed upon the Producing or Receiving Parties in order to resolve the dispute, and whether or to what extent the costs of such production shall be borne by the Producing or Receiving Parties.

D.   **PROCESSING SPECIFICATIONS**

The Producing Party shall collect and process documents using forensically sound methods that avoid spoliation of data. The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:

1. All tracked changes shall be maintained, to the extent reasonably feasible upon collection, so that all changes to a document are evident.

2. OLE Embedded files shall not be extracted as separate documents.

3. Author comments shall remain or be made visible, to the extent reasonably feasible upon collection.

4. Hidden columns and rows shall be made visible, to the extent reasonably feasible upon collection.

5. Presenter notes shall be made visible, to the extent reasonably feasible upon collection.

6. Auto-populated fields, with the exception of auto-populating "page-number" fields, shall be replaced with text indicating the field name. For example, auto-populating "date" fields shall be replaced with the text "DATE" and auto-populating "file path" fields shall be replaced with the text "PATH".

7. To the extent documents in a foreign language are produced consistent with Paragraph E.1, processing of such documents shall be unicode-compliant.

**E.   ADDITIONAL ISSUES**

1. **English Language:** To the extent any document exists in more than one language, the document shall be produced in English, if available. If no English version of a document is available, the Producing Party does not have an obligation to produce an English translation of that document and does not have an obligation to render that document text searchable via OCR or other means.

2. **Cost Shifting:** All costs associated with production of documents pursuant to this Order and related directly to the properties identified by address in the first amended complaint shall be borne by the Producing Party. However, the Court will apportion the costs of electronic discovery upon a showing of good cause by the party seeking apportionment.

3.  **Protective Order:** The terms of any order filed with the Court governing the inadvertent production of privileged information also govern all production pursuant to this Order.

F.  **PRIVILEGE LOG**

1.  Consistent with Federal Rule of Civil Procedure 26(b)(5)(A), a Party withholding or redacting any Responsive Document on the grounds of privilege, immunity or any similar claim shall provide to the Receiving Party a log containing the information described in Paragraph F.2 ("Privilege Log"). The Parties shall not be required to provide a Privilege Log for any withheld privileged communications or work product involving outside counsel of record in the Litigation and related solely to the Litigation, and which was created or sent on or after the unsealing of the First Amended Complaint in the Litigation; however, if good cause can be demonstrated, the parties may request a log of such documents.

2.  For each document withheld or redacted, the Privilege Log shall contain the following information: (i) the date of the document; (ii) the document's author and/or signatory; (iii) the identity of all persons designated as addressees or copyees; (iv) a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity; (vi) the type or nature of the privilege asserted (*e.g.*, attorney-client privilege, work product doctrine, etc.); and (vii) the document numbers corresponding to the first and last page of any withheld or redacted document, if the document has been assigned any such document numbers.

3.  Each individual e-mail communication in an e-mail stream (*i.e.*, a series of e-mails linked together by e-mail responses and forwarding) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be separately logged. The parties shall

not be required to log identical e-mail communications that are included in different or duplicative e-mail streams provided the individual e-mail communication that is being withheld or redacted has been logged in accordance with this Paragraph.

Dated: _____   SO ORDERED:

_____
United States Magistrate Judge

**Schedule A:
Production Fields**

| Field Name | Description (E-Mail) | Description (Non-e-mail) |
|---|---|---|
| Beg Bates | Number endorsed on first page of document. | Number endorsed on first page of document. |
| End Bates | Number endorsed on last page of document. | Number endorsed on last page of document. |
| Page Count | Total number of pages in document. | Total number of pages in document. |
| Beg Attach | Number endorsed on first page of first document in a family (*i.e.*, documents and all attachments thereto). | Number endorsed on first page of first document in a family (*i.e.*, documents and all attachments thereto). |
| End Attach | Number endorsed on last page of last document in a family (*i.e.*, documents and all attachments thereto). | Number endorsed on last page of last document in a family (*i.e.*, documents and all attachments thereto). |
| Confidential Designation | The confidential designation endorsed on the document. If no designation is present, a default value of "None" will be coded. | The confidential designation endorsed on the document. If no designation is present, a default value of "None" will be coded. |
| Author(s) | All information contained in the "From" field of the e-mail. | If available, the person(s) who created, wrote, reviewed, signed, or approved the document. If no author is present, a default value of "None" will be coded. |
| Recipient(s) | All information contained in the "To" field of the e-mail. | N/A |
| CC | All information contained in the "CC" field of the e-mail, as well as all other discernable copyees. | N/A |
| BCC | All information contained in the "BCC" field of the e- | N/A |

12

|  | mail, as well as all other discernable blind copyees. |  |
|---|---|---|
| Title / Subject | Verbatim subject or re: line, as stated in the e-mail. | If available, verbatim subject or re: line, or discernable document title appearing on the document's first page. |
| Date Sent | Date the E-mail was sent, including month, date and year. | N/A |
| Time Sent | Time the E-mail was sent, including hour, minute, second and time zone. | N/A |
| Source(s) | Custodial or non-custodial source(s) identified pursuant to Paragraph G from which the document was collected. | Custodial or non-custodial source(s) identified pursuant to Paragraph G from which the document was collected. |
| File Name | Original file name. | Original file name. |
| Document Type | Describes the type of document (*e.g.*, Lotus Notes E-mail). | Describes the type of document (*e.g.*, Microsoft Word Document). |
| OCR/Extracted Text | Full text of the e-mail. | Full text of the document. |

13