UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *EX REL.* BRANCH CONSULTANTS, L.L.C., <br><br> Plaintiff <br><br> VERSUS <br><br> ALLSTATE INSURANCE COMPANY, et. al., <br><br> Defendants | CIVIL ACTION NO.: 06-4091 <br><br> SECTION: "R" (1) <br><br> JUDGE: VANCE <br><br> MAGISTRATE: SHUSHAN |

**MEMORANDUM IN SUPPORT OF**
**LIBERTY MUTUAL FIRE INSURANCE COMPANY'S MOTION TO SEVER**

Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") submits the following memorandum in support of its Motion to Sever claims against Liberty Mutual concerning the two properties allegedly damaged during Hurricane Katrina from the claims against the other seven remaining defendants concerning twenty-five other properties having nothing to do with Liberty Mutual.

**I.   BACKGROUND**

Plaintiff Branch Consultants initiated this False Claims Act ("FCA") lawsuit on behalf of the United States on the premise that it is the "original source" of information about false claims submitted to the Government by each of the defendants. According to Branch, it inspected certain properties following Hurricane Katrina and, on nearly all of those properties, defendants "maxed out or nearly maxed out the insured's flood policy limits (underwritten by [the National Flood Insurance Program]), irrespective of the actual damage conceivably

attributed to flood." First Amended Complaint ("FAC") at ¶ 20. The alleged motive for this fraud was to shift payments due the property owner under a homeowners insurance policy backed by the insurer to a flood insurance policy backed by the Government. There is *no* allegation of a conspiracy between the defendants and there is no joint and several liability among defendants for the allegations in the complaint. The Government has declined to intervene in this case.

The FAC lumps together allegedly false flood damage claims made by numerous defendants in connection with properties in different locations that allegedly had varying levels of flood damage as a result of Hurricane Katrina. The FAC lists two properties that allegedly were serviced by Liberty Mutual. *Id.* ¶ 29. The Complaint also lists twenty-five other properties that were allegedly adjusted and/or serviced by the seven other defendants[1] and have nothing to do with Liberty Mutual. *Id.* ¶¶ 23, 27, 28, 30, 31 and 33. Pending before the Court are motions to add two additional defendants, seven third-party defendants and allegations concerning twenty additional properties, none of which have anything to do with Liberty Mutual. *See* R. Doc. Nos. 247, 280.

The only two Liberty Mutual-associated properties identified in the FAC are located in New Orleans. *Id.* ¶ 29. Branch alleges that flood waters entered into each of these New Orleans properties. *Id.* According to Branch, the flood waters rose to four feet at both the

---

[1] Six of the original fourteen defendants have been dismissed from this action. Allied American Adjusting Company was dismissed on October 2, 2007. *See* R. Doc. No. 178. Two more defendants were dismissed from the case based on the "first-to-file" bar. *See United States ex rel. Branch Consultants LLC v. Allstate Ins. Co.*, 560 F.3d 371, 381 (5th Cir. 2009). On October 19, 2009, the Court dismissed three other defendants without prejudice. *See* R. Doc. No. 228. The remaining eight defendants are: Liberty Mutual, Standard Fire Insurance Company, Fidelity National Insurance Company, Fidelity National Property and Casualty Insurance Company, American National Property & Casualty Company ("American National"), American Reliable Insurance Company of Scottsdale, Simsol Insurance Services, Inc., and Colonial Claims Corporation.

7441 Fieldstone Road and 13656 N. Cavelier Drive properties. *Id.* Liberty Mutual allegedly paid $221,000 in flood damage for these properties while Branch estimated the total flood damage for both of these properties at about $54,000. *Id.* Branch alleges that Liberty Mutual issued the homeowners and flood insurance policies on these properties and therefore had a motive to and did commit fraud. There are no other allegations against Liberty Mutual in the FAC.

The twenty-five other properties allegedly insured or adjusted by other defendants are spread across three Louisiana cities (New Orleans, Chalmette, and Slidell) and several zip codes. *Id.* ¶¶ 23, 27, 28, 30, 31 and 33. These include four New Orleans properties that (according to Branch) experienced no flooding. *Id.* ¶ 27(a)-(d). Other properties in this group experienced flooding as high as 8 feet. *Id.* ¶ 23(c). Branch's estimate of the flood damage at these properties ranges from $0 to $79,000. *Id.* ¶¶ 23, 27, 28, 30, 31 and 33. Liberty Mutual is not alleged to have anything to do with these other properties or defendants.

## II. LAW AND ARGUMENT

Claims against a party may be severed if that party has been improperly joined or to avoid prejudice or serve the interests of judicial economy. *See* Fed. R. Civ. P. 20-21; *Applewhite v. Reichhold Chemicals.*, 67 F.3d 571, 574 (5th Cir. 1995) ("Under Rules 20 and 21, the district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice."); *F.D.I.C. v. Selaiden Builders, Inc.*, 973 F.2d 1249, 1253 (5th Cir. 1992) (affirming grant of severance where claims were unrelated, did not arise at the same time and did not involve the same parties); *Frankland v. State Farm Fire & Cas. Co.*, No. 2:07-cv-1767, 2008 WL 4072819, at *3-5 (W.D. La. July 2, 2008) (severance granted where defendant was misjoined). A district court has "broad discretion" to sever improperly joined parties. *Brunet v.*

*United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994). In this case, the claims against Liberty Mutual should be severed because Liberty Mutual has been improperly joined, severance would serve the interests of judicial economy and convenience, and because it is necessary to avert prejudice to Liberty Mutual.

> **A.    The claims against Liberty Mutual should be severed because Liberty Mutual was improperly joined.**

Joinder is proper if: (1) any right to relief is asserted against the defendant jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, *and* (2) any question of law or fact common to all defendants will arise in the action. *See* Fed. R. Civ. P. 20(a)(2); *Cresson v. State Farm Fire & Cas. Co.*, No. 06-8788, 2007 WL 1191817, *1 (E.D. La. Apr. 19, 2007); *Porter v. Milliken & Michaels, Inc.*, No. 99-0199, 2000 WL 1059849, at *1-2 (E.D. La. Aug. 1, 2000). Neither of these requirements is satisfied as to Liberty Mutual here.

First, no right to relief is or can be asserted against Liberty Mutual jointly or severally. Branch does not allege that Liberty Mutual and any other defendant are *together* responsible for any particular false claim. *See, e.g., United States v. Board of Educ. of City of Union City*, 697 F. Supp. 167, 172 (D.N.J. 1988) (defendants in FCA action are jointly and severally liable if they "are found responsible for a particular false claim").[2] Nor does Branch allege that Liberty Mutual conspired with other defendants to handle any Katrina flood claims. Accordingly, Liberty Mutual has been misjoined and severance is proper. *See United States ex rel. Grynberg v. Alaskan Pipeline Co.*, No. Civ. 95-725(TFH), 1997 WL 33763820, at *2

---

[2] *See also Frankland*, 2008 WL 4072819, at *3 (no joint and several liability between insurer and adjuster defendants where insurer was not party to contract between homeowner and adjuster, and adjuster was not party to contract between the homeowner and insurer).

(D.D.C. Mar. 27, 1997) ("[I]t is not enough for plaintiff to allege that each defendant violated the False Claims Act or even that each violated the FCA in a similar manner. . . . Instead, ***plaintiff must allege that defendants somehow acted in concert.***") (emphasis added); *United States ex rel. N. Santiam Watershed Council v. Kinross Gold USA, Inc.*, No. C 96-3673 TEH, 1998 WL 118176, at *2 (N.D. Cal. Mar. 9, 1998) (eighteen defendants in FCA action "accused of engaging in similar activities" were misjoined because alleged conduct occurred at different times and places and there was no allegation of concerted action).

Furthermore, the claims asserted against Liberty Mutual do not involve the same transactions or occurrences as the claims against the other defendants. Each NFIP payment for flood insurance coverage is a separate transaction to be separately considered under the FCA. The payments made with respect to the twenty-seven properties allegedly at issue occurred at different times and were made by different companies to different property owners in different locations. The transactions at issue with respect to Liberty Mutual are necessarily distinct from the transactions involving other defendants. *See United States ex rel. N. Santiam Watershed Council*, 1998 WL 118176, at *2 (eighteen defendants which allegedly obtained mining patents from government through fraudulent statements in patent applications were misjoined because these "allegedly unlawful acts occurred at different times and in various locations over the course of thirteen years"); *United States ex rel. Grynberg*, 1997 WL 33763820, at *2 (60 defendants which allegedly underpaid royalties due for natural gas were misjoined because complaint "merely allege[d] that defendants committed similar actions at different times and different places, and that they submitted distinct and separate false statements on different contracts").

Indeed, whether Branch is an "original source" with respect to allegedly false claims by Liberty Mutual — *i.e.*, whether the Court has subject matter jurisdiction over each

150169

allegedly false claim — must be established on a claim-by-claim basis. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 476 (2007) ("Section 3730(e)(4) does not permit jurisdiction in gross just because a relator is an original source with respect to some claim."). Thus, whether Branch is an original source for claims relating to one property involving Liberty Mutual is not relevant to its purported original source status for claims relating to any other property allegedly involving another defendant. To take just one example, Branch's allegation that it is an original source of allegations that Liberty Mutual overstated flood damage at property where "flood waters eventually rose to approximately 4 feet inside the dwelling" is separate and distinct from the allegation that Branch is an original source of an allegation American National overstated flood damage at a property where "there was no flooding." *See* FAC at ¶¶ 27(a) and 29. The allegedly false claims made by Liberty Mutual simply do not involve the same transactions or occurrences as those made by the other defendants.[3]

Second, the claims of actual fraud against Liberty Mutual do not share common questions of fact or law with the claims against other defendants. Properties that Liberty Mutual allegedly serviced under the NFIP involve unique factual issues. Those issues include but are not limited to the structure of each property, its pre-Katrina condition, the extent of flood damage that it experienced as a result of Katrina, the nature and extent of any adjustments of the property following Katrina, and any claims submitted in connection with the property under homeowners or NFIP policies. *See, e.g., Cresson*, 2007 WL 1191817, at *2 (severing claim against one insurer relating to Hurricane Katrina losses at one property from claims against another insurer

---

[3]  Of course, merely because Branch's allegations of fraud all relate to Hurricane Katrina does not mean that there is a common issue. Hurricane Katrina "alone cannot serve as a common transaction or occurrence because the effects of the hurricane were unevenly felt." *Rohr v. Metro. Ins. & Cas. Co.*, No. 06-10511, 2007 WL 163037, at *3 (E.D. La. Jan. 17, 2007).

150169

relating to other properties because claims involved "entirely different factual and legal issues," including each property's condition and location before storm, the value of the properties, and the extent of damage sustained). Testimony regarding the degree of flooding at one property in New Orleans at one time would not be relevant to the degree of flooding at a property in another city at another time. *See United States ex rel. N. Santiam Watershed Council*, 1998 WL 118176, at *2 (where FCA defendants' allegedly unlawful acts occurred at different times and locations, "the determination of facts and the scope of testimony with respect to one defendant would have little relevance to issues raised by another defendant"); *McFarland v. State Farm Fire & Cas. Co.*, No. 1:06CV466-LTS-RHW, 2006 WL 2577852, at *1 (S.D. Miss. Sept. 6, 2006) (factors relevant to severance include "whether different witnesses and documentary proof are required for separate claims"). These fact issues will differ from property to property and, therefore, from defendant to defendant. Simply because Hurricane Katrina caused the property damage in question is not sufficient to satisfy the transaction or occurrence requirement in Rule 20(a). *See Sucherman v. Metro. Prop. & Cas. Ins. Co.*, Nos. 06-8765, 05-6456 2007 WL 1484067, at *1 (E.D. La. May 21, 2007) (Vance, J.) (citing cases).

Determining whether any claims relating to the two alleged Liberty Mutual properties were false (including any relevant discovery and/or fact investigation concerning these three properties) will not be relevant to determining whether any claims submitted by other defendants with respect to other properties were false. Severance is appropriate given the unique factual issues presented by the two Liberty Mutual properties. *See Ducree v. Liberty Mut. Ins. Co.*, No. 06-8286, 2007 WL 781968, at *2 (E.D. La. Mar. 12, 2007) (severing claims because properties were located in three different areas of Orleans Parish, were separately insured and suffered varying degrees of damage); *Rohr*, 2007 WL 163037, at *1 (granting severance where

plaintiffs' properties were not of equal value and condition, did not suffer identical property damage, and were in different parts of St. Bernard Parish). *See also McFarland*, 2006 WL 2577852, at *1 (severing claims regarding hundreds of properties arising out of Hurricane Katrina damage because "each property owner . . . is uniquely situated" in that "[t]he nature and extent of the property damage the owners sustain from the common cause, Hurricane Katrina, will vary greatly in its particulars, depending on the location and condition of the property before the storm struck and depending also on what combination of forces caused the damage") (internal quotation marks omitted).

In sum, Liberty Mutual was misjoined. Severance is therefore appropriate.

**B.    Severance of claims against Liberty Mutual is also appropriate because it will promote judicial economy and convenience and because it is necessary to avoid prejudice to Liberty Mutual.**

Severance is also appropriate when it is (1) in furtherance of convenience, (2) necessary to avoid prejudice, or (3) conducive to judicial economy. *See Applewhite*, 67 F.3d at 574. All of these factors weigh in favor of severing the claims against Liberty Mutual here. *See also McFarland*, 2006 WL 2577852, at *1 (factors relevant to severance include "whether different witnesses and documentary proof are required for separate claims").

First, severance will promote judicial economy and convenience. The FAC involves eight defendants and twenty-seven properties allegedly damaged in Hurricane Katrina spread across three cities and eleven zipcodes. Pending before the Court is a motion to expand the litigation to ten parties and forty-five properties. The burden on Liberty Mutual in participating in such an expansive suit and on the Court of managing these claims all together in a single lawsuit is unnecessary and wasteful. *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 214 F.R.D. 152, 157 (S.D.N.Y. 2003) (severing claims in stock fraud case

furthered judicial economy because discovery burdens and associated expenses would operate expansively absent severance); *In re CFS-Related Sec. Fraud Litig.*, 213 F.R.D. 435, 438 (N.D. Okla. 2003) (severing claims in securities fraud action because severance would permit greater ease in handling of motions and court could more easily handle service issues); *Rohr*, 2007 WL 163037, at *3 (finding severance appropriate given "the burden imposed on [Defendant] in defending multiple claims, with different factual scenarios, in one trial").

For example, by misjoining Liberty Mutual with the seven other defendants, Branch has profoundly and unnecessarily increased the cost of discovery to Liberty Mutual. The length of depositions of witnesses will likely be orders of magnitude longer as the scope of depositions will relate to the nature and amount of damage to at least *twenty-seven* different properties—not just the two that allegedly concern Liberty Mutual.[4] And Branch has already sought discovery well beyond the properties identified in the FAC, seeking information on *every* Hurricane Katrina flood claim in Louisiana and Mississippi. Although Liberty Mutual disputes Branch's entitlement to such discovery, if Branch were permitted to embark on such discovery, the corresponding depositions could be completely unmanageable in length. Moreover, Liberty Mutual will have to bear the cost of participation in depositions of *all* of the other parties, which would be completely unnecessary but for Branch's misjoinder of Liberty Mutual.[5] Finally, certain defendants have sought to expand the scope of this litigation by joining as third-party

---

[4]   This assumes that the seven-hour deposition rule would not apply in this case. Of course, if the rule were to apply, Liberty Mutual could be significantly prejudiced by such limitation.

[5]   While the testimony of the fact witnesses of other defendants should not, in theory, impact Liberty Mutual, Liberty Mutual cannot anticipate what questions Branch will ask such witnesses and thus would plan to attend such depositions in an abundance of caution.

150169

defendants the property owners to whom they paid flood losses. This, too, may increase the cost and burden of this litigation on Liberty Mutual.

Second, severance is necessary to avoid prejudice to Liberty Mutual. In a jury trial of this action, aggregating the large number of claims (and the individualized proof necessary to support each claim) into one lawsuit could confuse the jury and will significantly prolong Liberty Mutual's trial. *See, e.g., Klimaski v. Parexel Intern.*, No. Civ.A. 05-298, 2005 WL 857350, at *5 (E.D. Pa. Apr. 4, 2005) (finding severance was necessary to prevent prejudice to defendants because (i) allowing claims to proceed in single action would deflect jury's attention from merits of each claim, (ii) evidence admissible for one party's claim may not be admissible for other claims, and (iii) it would be extremely difficult for jury to consider each party's claim independently of others); *Rohr*, 2007 WL 163037, at *2 (in determining whether severance is appropriate, "[a] court may also consider whether jury confusion would result from the volume of evidence if the plaintiffs were joined"). Severance of the claims against Liberty Mutual would permit jurors to focus on the claims relating to the two Liberty Mutual properties at issue and the individualized proof necessary to support these claims. It would prevent the prejudice inherent in claims of fraud asserted against other defendants.

## III. CONCLUSION

For the reasons set forth above, Liberty Mutual Fire Insurance Company prays that the Court grant its motion and enter an order severing plaintiff's claims against it pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure.

150169

Respectfully submitted,

BARRASSO, USDIN, KUPPERMAN
FREEMAN & SARVER, LLC

/s/ Keith L. Magness
Judy Y. Barrasso, TA (2814)
jbarrasso@barrassousdin.com
John W. Joyce (27525)
jjoyce@barrassousdin.com
Keith L. Magness (29962)
kmagness@barrassousdin.com
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701

Attorneys for defendant,
Liberty Mutual Fire Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has this date been served upon all parties to this suit by filing into the Court's ECF system and, for non-participants, by electronic transmission, facsimile and/or placing same in the United States Mail, properly addressed and postage prepaid, on this 12th day of January, 2010.

/s/ Keith L. Magness
KEITH L. MAGNESS

150169