UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *EX REAL* BRANCH CONSULTANTS, LLC | * | CASE NO.: 2:06-CV-4091 |
| | * | SECTION: R |
| Plaintiff | * | |
| | * | HON. SARAH VANCE |
| VERSUS | * | |
| | * | MAG. 1 |
| | * | |
| ALLSTATE INS. CO., ET AL. | * | HON. SALLY SHUSHAN |
| | * | |
| Defendants | * | JURY TRIAL REQUESTED |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

### DEFENDANTS' OPPOSITION TO RELATOR'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

**MAY IT PLEASE THE COURT:**

NOW INTO COURT, through undersigned counsel, come Defendants, Liberty Mutual Ins. Co., The Standard Fire Ins. Co., American Reliable Ins. Co., American National Property And Casualty Co., Colonial Claims, Corp. and SIMSOL Ins. Services, Inc. who jointly submit their Opposition to Relator's (hereinafter "Branch's") Motion for Leave to File Second Amended Complaint (Doc. 280) alleging direct and independent knowledge of violations of the False Claims Act by defendants.

The original complaint was filed under seal on August 2, 2006. The first amended complaint was filed on June 22, 2007. The Court found that "Branch's First Amended Complaint alleges the same type of fraudulent conduct as the original complaint." (Doc. 228 at 47). Now, the Government having declined to intervene and its original allegations having proved baseless, Branch's proposed second amended complaint seeks to take this case off in a new direction with public information it has

1

learned through discovery. Accordingly, leave to amend against Liberty Mutual Ins. Co., The Standard Fire Ins. Co., American Reliable Ins. Co., American National Property And Casualty Co., Colonial Claims Corp. and SIMSOL Ins. Services, Inc. should be denied based on undue delay, prejudice to the defendants and futility of amendment.[1]

### 1. Standard of Review for Amendment of Pleadings

The amendment of pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure. "'Although Rule 15 evinces a bias in favor of granting leave to amend, it is not automatic.'" *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, (5th Cir. 2009) (quoting *Southmark Corp. v. Schulte Roth & Zabel*, 88 F.3d 311, 314 (5th Cir. 1996)). "Under Rule 15, the courts consider such equitable factors as '(1) undue delay; (2) bad faith; (3) dilatory motive on the part of the movant; (4) repeated failure to cure deficiencies by any previously allowed amendment; (5) undue prejudice to the opposing party; and (6) futility of amendment.'" *Id.* (quoting *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 268 (5th Cir. 2004)). Defendants' objections to relator's Motion for Leave to File Second Amended Complaint are based upon one or more of these factors as set forth below.

### 2. Branch Mischaracterizes Changes Being Made in the Second Amended Complaint

In its Motion for Leave, Branch represents that the Second Amended Complaint does nothing more than add two previously dismissed parties and "clarify allegations or correct simple mistakes" in the First Amended Complaint (Doc. 279 at p. 6). Defendants respectfully disagree with this characterization. The Second Amended Complaint

---

[1] In the interest of efficiency, if leave is granted and/or new parties are added, current defendants reserve the right to and may address the futility prong with a Rule 12 or other motion, rather than here in opposition to Branch's Rule 15 motion.

purports to add theories and allegations never-before alleged in prior pleadings because the allegations with which Branch survived a motion to dismiss have proven false. As sugar-coated by Branch in its brief: "the [second-hand] information provided by the insureds to Branch verbally [and on which the first amended complaint is based] is incorrect and Branch has not, to date, been able to uncover documentation showing otherwise." (Doc. 279 at p. 6).

Defendants direct the Court's attention to the allegations of Branch's First Amended Complaint. As the Court explained in its Order denying Defendants' Motion to Dismiss (Doc. 228), Branch claimed to be an original source of a two-pronged scheme wherein Defendants allegedly (1) exploited FEMA's relaxed claims handling standards, and (2) "passed off" costs of paying wind damage by improperly claiming damage was caused by flood, thereby defrauding the federal government. A central component of this purported scheme was Branch's allegation that each WYO carrier had allegedly issued the homeowners' and flood policies on each of the properties identified in the Complaint. Discovery disproved this allegation.

Branch now files a Second Amended Complaint, purporting to substantially re-work and re-brand its False Claims Act theories with general allegations based on the very public fact that fees earned by participants in the National Flood Insurance Program are mandated by law to be based on the value of the claim at issue.[2] Branch primarily couches its new theories within paragraphs 4, 15 and 17.[3] Reviewing these proposed

---

[2] See generally, 44 C.F.R.§ 62.23, *et seq.*
[3] In paragraph 4, the phrase, "it substantially increased the amount of fees that defendants received," was added in the middle of the second sentence. The words "many of" were added at the end of the paragraph before the phrase "the insurer defendants have typically issued themselves." In paragraph 15, the phrase "and processing claims, the amount of which is based on the amount of the claim," was added at the end of the fourth sentence. In paragraph 17, the added phrases set forth in bold:

3

amendments, it is apparent the Second Amended Complaint does not simply "clarify" prior allegations. Rather, Branch is alleging entirely new theories based on public information against those parties who did not engage in the originally pled scheme (now proven false) of implementing an expedited claims handling process and writing or adjusting both homeowners and flood policies on the same property identified in the complaint.

Branch now claims these parties: (1) failed to follow unspecified flood adjusting guidelines issued by FEMA; (2) inflated prices and included items in adjustments that did not need to be replaced to increase the fee received from the federal government; and (3) exploited a "host of other" unspecified circumstances to defraud the government. Defendants object to these new theories and allegations as impermissible and unduly prejudicial in light of the time invested in the allegations pending for years. *See generally Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir.1992) (affirming district court's denial of a motion for leave to amend where the proposed amendments would have "established an entirely new factual basis for the plaintiffs' claims"), *reinstated in relevant part*, 37 F.3d 1069, 1073 & n. 8 (5th Cir.1994) (en banc).

---

In the aftermath of Hurricane Katrina and unprecedented volumes of claims following the 2005 hurricane season, FEMA waived the requirement that insureds file a Proof of Loss in connection with Katrina-related claims under NFIP's Standard Flood Insurance Policy. Shortly thereafter, FEMA announced an expedited claim handling process for Katrina-related flood claims. **These circumstances, in part, and a host of others, including the absence of effective monitoring or supervision by FEMA, created an opportunity for defendants to take improper advantage of the Program.** Rather than follow in good faith **the claim policies and flood adjusting guidelines issued by FEMA**, defendants instead systematically adjusted, paid and submitted reimbursement claims to NFIP regarding losses that obviously should not be fully covered by the flood policies. They did so in massive quantities. **For example**, defendants defrauded NFIP by misattributing wind damage and other non-flood losses to the flood policies subsidized or underwritten by the Government rather than correctly attributing such losses to causes that are covered by homeowners policies often underwritten by themselves. **Defendants also defrauded NFIP by grossly exaggerating losses by using inflated prices in the adjustments and by including items in the adjustment that did not need to be replaced. Additionally, by overstating flood damages, defendants were able to significantly increase the amount of fees that they received from FIA for processing and adjusting claims.**

4

The False Claims Act precludes the amendment of a complaint through the help of discovery. *See U.S. ex rel. Bartlett v. Tyrone Hosp., Inc.*, 234 F.R.D. 113 (W.D. Pa. 2006). That is exactly what Branch admits it is trying to do here – for example, stating in its brief, "Branch's information and belief is based on testimony given under oath by an Allstate corporate representative." (Doc. 279 at p. 5); *see also U.S. ex rel. Franklin v. Pfizer, Inc.*, 2002 WL 32128635 (denying leave to amend False Claims Act complaint with new theory years after complaint first filed). In *Rockwell International Corp. v. U.S.*, 127 S.Ct. 1397 (2007), the Supreme Court rejected the practice Branch is employing here of pleading one scheme in initial filings, and then switching to new theories once the initial scheme has been proven baseless in an effort to recover as a qui tam relator. *See, Rockwell*, 127 S.Ct. at pp. 1404-1405, 1409-1410. A qui tam relator is not allowed to assert fraud based on theories learned subsequent to its disclosures to the Government and filing of a complaint. To allow Branch to skirt this statutory rule and Supreme Court precedent would be unduly prejudicial to defendants.

That the Court previously granted Branch leave to amend its allegations against NCA Group, Crawford & Company and Pilot Catastrophe Services only does not save Branch's amendment. Specifically, the Court's order states:

> [Branch] has not pleaded sufficient facts with respect to the adjuster defendants NCA Group, Crawford & Company, and Pilot Catastrophe Services. Those defendants are accordingly DISMISSED WITHOUT PREJUDICE and Branch will be afforded the opportunity to amend its complaint to make adequate allegations against them.

(Doc 228 at p. 69). Branch's proposed second amended complaint makes no allegations against NCA or Crawford and its allegations against Pilot depend entirely on Branch being allowed to add a new party – Allstate – to the case. However, nothing in the

Court's prior order permits Branch to add new parties (like its proposal to add Allstate) or amend its allegations against Liberty Mutual Ins. Co., The Standard Fire Ins. Co., American Reliable Ins. Co., American National Property And Casualty Co., Colonial Claims Corp. and SIMSOL Ins. Services, Inc. The wide-ranging amendments against Liberty Mutual Ins. Co., The Standard Fire Ins. Co., American Reliable Ins. Co., American National Property And Casualty Co., Colonial Claims Corp. and SIMSOL Ins. Services, Inc. were certainly not contemplated by the Court's prior order, are inappropriate in a False Claims Act case like this, and should be denied at this time.

3. **The Amended Complaint Jeopardizes the Court's Scheduling Order**

On November 19, 2009, the Court issued a Scheduling Order establishing, among other things, a discovery deadline and trial date. (Doc. 246). Cognizant of the amount of discovery necessarily involved in this case, Magistrate Judge Shushan subsequently issued an Order directing the parties to draft and file proposed discovery plans by January 8, 2010. (Doc. 277). Judge Shushan also ordered the parties to attend a status conference on January 20, 2010. Granting Branch's Motion for Leave inevitably will jeopardize the Court's Scheduling Order as well as the above discovery plans.

The addition of Allstate and Pilot would exponentially increase the amount of discovery the parties initially contemplated when the Scheduling Order and discovery plans were confected. Branch identified twenty seven properties in its First Amended Complaint. The Second Amended Complaint seeks to add twenty additional properties insured by Allstate, essentially doubling the amount of property-specific discovery the parties must conduct. If, over Defendants' objection, Branch is allowed to conduct discovery as to all of the properties not specifically pled, the addition of Allstate could

increase roughly two-fold from 50,000 to 100,000 properties. Also, the deadline for answering and exchanging Rule 26 Disclosures has already transpired. Adding Allstate and Pilot would necessitate re-opening those phases of the Scheduling Order. Neither Allstate nor Pilot has submitted a discovery plan to Magistrate Judge Shushan. If these parties are joined, they will undoubtedly seek leave to submit plans of their own, further jeopardizing the Scheduling Order. Consequently, Defendants object to Branch's Motion for Leave because there is a substantial likelihood the current scheduling order and discovery plans will be upset if the amendment is permitted.

### 4. The Second Amended Complaint Will Unduly Prejudice Defendants if it Supersedes and Renders the Previous Complaints Without Legal Effect

As noted above, the Second Amended Complaint goes far beyond simply "clarify[ing] allegations or correct[ing] simple mistakes." (Doc. 281 at 6). Branch readily admits that the Second Amended Complaint "has dropped two exemplar properties from those examples listed in the First Amended Complaint because the insurers, ANPAC and Fidelity, have informed Branch that the information provided by the insureds to Branch verbally is incorrect and Branch has not, to date, been able to uncover documentation showing otherwise." (Doc. 286 at p. 6).

Branch also changed substantive allegations for the properties alleged to be insured by ANPAC, now alleging that ANPAC did not pay "policy limits" for two properties (*See*, Doc. 49, ¶ 27 (b) and (d); Doc. 279-2, ¶ 26 (b) and (d)). These statements and requested amendments by Branch readily admit that the First Amended Complaint was based, at best, on second-hand information and that Branch is not the original source of the allegations. Branch also admits that some amendments are based

upon information obtained or discovered through litigation[4]—for which Branch cannot be the original source. *See, United States ex rel. Federal Recovery Services, Inc. v. Crescent City E.M.S., Inc.*, 1993 WL 345655 (E.D. La. Aug. 30, 1993)(Schwartz, J.) ("Public disclosure in pleadings or during discovery in a civil suit constitutes 'public disclosure' under the False Claims Act").

Branch now seeks to "amend away" and erase it's originally plead scheme and allegations regarding certain properties that have now been proven false, which will unduly prejudice Defendants. "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1995). The Second Amended Complaint does not specifically refer to and adopt or incorporate by reference the First Amended Complaint. It is Branch's intent, therefore, to "amend away" those allegations in the First Amended Complaint that have now been proven false to avoid being bound by the legal effect of these allegations. *Id.*; *see, Hibernia National Bank v. Carner*, 997 F.2d 94, 101 (5th Cir. 1993) (holding that "[t]o the extent [plaintiff] did make a 'judicial confession,' that confession was amended away").

Branch seeks to "amend away" these allegations without any explanation as to why it has taken over two years and a third attempt at trying to plead a cause of action against Defendants. The undue delay is because Branch is not the original source of this information, and Branch now seeks to unduly prejudice Defendants by trying to "amend away" those allegations that have been proven false. Defendants, therefore, object to

---

[4] Branch was "informed" by ANPAC about the falsity of the information in the First Amended Complaint through unsealed pleadings filed into the record of these proceedings. (*See*, Rec.Doc. 254).

8

Branch being granted leave to file the Second Amended Complaint because of undue delay and prejudice to Defendants.

5.  **Conclusion**

For the above reasons, Defendants respectfully oppose Branch's Motion for Leave to File Second Amended Complaint, and request that it be DENIED.

                        Respectfully submitted,

                        s/ JAMES C. RATHER, JR.
                        **JAMES C. RATHER, JR., TA** (No.25839)
                        **ALLEN DAVIS** (Bar. No. 29822)
                        **JESSICA FINNAN** (Bar No. 32451)
                        McCRANIE, SISTRUNK, ANZELMO,
                        HARDY, McDANIEL & WELCH
                        195 Greenbrier Boulevard, Suite 800
                        Covington, Louisiana 70433
                        Telephone: (504) 831-0946
                        Facsimile: (985) 809-9677
                        jrather@mcsalaw.com
                        **ATTORNEY FOR DEFENDANT,**
                        **SIMSOL INSURANCE SERVICES, INC.**

                        **-and-**

BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, LLC

/s/ Judy Y. Barrasso
Judy Y. Barrasso (2814)
jbarrasso@barrassousdin.com
John W. Joyce (27525)
jjoyce@barrassousdin.com
LL&E Tower
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone: (504) 589-9700

**Attorneys for Liberty Mutual Insurance Company**

PHELPS DUNBAR LLP

/s Harry Rosenberg
Harry Rosenberg (11465)
rosenbeh@phelps.com
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: (504) 566-1311

SIMPSON THACHER AND BARTLETT LLP
Bryce L. Friedman (*pro hac vice*)
bfriedman@stblaw.com
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000

Deborah L. Stein (*pro hac vice*)
dstein@stblaw.com
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067
Telephone: (310) 407-7500

**Attorneys for The Standard Fire Ins Co.**
***(erroneously named St. Paul Travelers Co.)***

| | |
|---|---|
| LAW OFFICES OF GORDON P. SEROU, JR. LLC | LARZELERE PICOU WELLS SIMPSON LONERO, LLC |
| /s/ Gordon P. Serou, Jr. | /s/ Jay M. Lonero |
| Gordon P. Serou, Jr. (14432) | Jay M. Lonero, T.A. (20642) |
| gps@seroulaw.com | jlonero@lpwsl.com |
| Poydras Center, Suite 1420 | Christopher R. Pennison (22584) |
| 650 Poydras Street | cpennison@lpwsl.com |
| New Orleans, Louisiana 70130 | Angie A. Akers (26786) |
| Telephone: (504) 299-3421 | aakers@lpwsl.com |
| | 3850 N. Causeway Boulevard, Ste 1100 |
| **Attorneys for American Reliable Insurance Company** | Metairie, Louisiana 70002 |
| | Telephone: (504) 834-6500 |
| /s/ Michael L. Martin | **Attorneys for American National Property And Casualty Company** |
| Peter S. Koeppel (1465) | |
| Michael L. Martin (14171) | |
| Best Koeppel Traylor | |
| 2030 St. Charles Avenue | |
| New Orleans, Louisiana 70130 | |
| Telephone: 504-598-1000 | |
| mmartin@bestkoeppel.com | |
| **Attorneys for Colonial Claims Corp.** | |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record via Email (per agreement of counsel) and electronically via the Court's CM/ECF system on this 12th day of January, 2010.

s/ JAMES C. RATHER, JR.