UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA, *EX REL.*        CIVIL ACTION NO.: 06-4091
BRANCH CONSULTANTS, L.L.C.,

                **Plaintiff**        SECTION: "R" (1)

**VERSUS**
                                    JUDGE: VANCE

ALLSTATE INSURANCE COMPANY, *et al.*,

            **Defendants**        MAGISTRATE: SHUSHAN

## FIDELITY'S MEMORANDUM IN OPPOSITION TO MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

COME NOW the Defendants, FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY and FIDELITY NATIONAL INSURANCE COMPANY (hereinafter referred to collectively as "Fidelity"), to respectfully submit this Memorandum in Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint. Fidelity raises four issues.

First, Fidelity will show that Branch has not been candid in its description of the changes made to Branch's claims via the Second Amended Complaint. Beyond adding new parties, Branch completely changes its cause of action against the current Defendants.

Second, the Court is asked to consider that in the Second Amended Complaint Branch removes from its pleadings that particular claim that informed both Judge Vance and the Defendants of exactly what FEMA guideline had been violated by the Defendants and, in its place, pleads a wholly different claim, and does so as amorphously and vaguely as is humanly possible. In other words, Branch went from claiming that the specific post-Katrina expedited claims handling processes had been violated, to now claiming that FEMA's normal and longstanding rules were violated. However, Branch refuses to explain which rules it is talking

about. Undersigned counsel attempted to resolve this problem with Interrogatories, by asking Branch to specify the rules allegedly violated by Fidelity during the outset of written discovery. Branch refuses. Accordingly, Fidelity prays, based upon the consistent caselaw to be explained in this memorandum, that the Court require Branch to "specify exactly" which NFIP requirements the Defendants allegedly violated as a condition of granting Branch's Motion for Leave. See *Bly-Magee, infra.*

Third, Fidelity asks this Court to carefully consider how the amendment will impact the Court's objective of ensuring "that the parties complete discovery within the [October 1, 2010] deadline." (Doc. 277) Branch asserts in its Motion for Leave that it does not harbor "any dilatory motives," and that allowing the amendment would not "prejudice the other parties." (Doc. 281, p. 6) Yet, at the same time, Branch seeks to accomplish three things at once, each of which places the current Rule 16 Order in jeopardy. These are: (a) returning the two largest parties to the case a full two months after Judge Vance's ruling; (b) racing ahead with written discovery seeking production of <u>literally</u> tens of thousands of claims files right now despite this Court's recent Order inquiring as to whether the scope of discovery should be limited in the manner ordered in *Rigsby*; and (c) a total change of theory as to all current Defendants.

Fourth, Fidelity will explain that Branch's effort is prohibited by *Rockwell International Corp. v. United States*, 127 S.Ct. 1397 (2007). Fidelity is <u>not</u> asking this Court to rule upon that jurisdictional problem now. Rather, Fidelity's intention is to make certain that its objection is preserved. Fidelity has already commenced the process of conducting detailed discovery targeted at Branch's supposed status as an "original source." Once that discovery is complete, Fidelity will file a properly supported "factual attack" upon this Court's jurisdiction, in the manner discussed in *R.A. McElmurray v. Consolidated Government of Augusta – Richmond County*, 502

F.3d 1244 (11th Cir. 2007), citing *Williamson v. Tucker*, 645 F.2d 404, 4112 (5th Cir. 1981).

**IN RE: BRANCH'S REPRESENTATIONS**

The Court is asked to compare paragraphs 4, 15, 17, and 20 of the First and Second Amended Complaints. (Docs. 49 and 281) The changes are not just "clarifications."

To understand the import of what has changed, please reexamine how Judge Vance read the First Amended Complaint ("FAC"), as indicated by her October 19, 2009 Order. (Doc. 228) As evidenced by that 69-page ruling, Branch persuaded Judge Vance to deny the Motion to Dismiss by successfully arguing that Branch was an "original source" as to a very specific "scheme" pleaded with particularity under FRCP Rule 9(b) where the Defendants had (A) taken advantage of FEMA's post Katrina relaxation of its claims handling standards (Doc. 228, pp. 3, 4, 25, 29-30, 32, 55 and 62) and (B) each had issued both the homeowners and the flood policies on "each" of the properties put at issue. (*Id*. at 3, 5, 11-15, 30, 51-52, 58)

Moreover, the shifting of wind losses to flood policies was *center stage* in Branch's highly dramatized opposition to the Motion to Dismiss:

> By providing the missing ingredient, Branch has entirely made over the public discourse about the alleged fraud. Before Branch, there were general suspicions – fraud was in the air. But now, **armed with Branch's information and analysis, congressmen are demanding a comparison of flood adjustment files to corresponding wind claims files**, the media is reporting about specific overcharges – often at specific addresses. Government auditors are looking at flood lines and square footage instead of accepting at face value the insurers' summary sheets that merely show flood-damage totals rather than any details of the actual losses. The world has changed. (emphasis added) (Doc. 153, p. 17)

Judge Vance's ruling is filled with passages that show her understanding of Branch's theory. (Doc. 228) The ruling repeatedly indicates that Branch was claiming that the combination of (1) the relaxed claims standards that were implemented just for Katrina, and (2) WYO companies issuing both the flood and homeowners policies, both led to the fraud and was the

mechanism by which it was accomplished. The specific federal standard allegedly violated was

that procedure implemented by FEMA post-Katrina to allow a relaxation of the normal rules.

Mere examples of the many comments on this topic in the Order are as follows:

> Plaintiff Branch Consultants ("Branch") brought this *qui tam* action on behalf of
> the United States government under the False Claims Act. Defendants are WYO
> insurance companies and adjusters that were involved in the adjustment of NFIP
> flood claims after Katrina. Branch alleges that the circumstances after Katrina
> gave defendants complete control over the adjustment and payment of the NFIP
> policies. Specifically, it contends that when defendants adjusted claims arising
> from Hurricane Katrina, they systematically and on a massive scale overstated the
> amount of flood losses to the properties they adjusted. In so doing, defendants
> exaggerated the amount of money that the government should pay under the
> individual flood policies, which in turn reduced the amount that the insurance
> companies would themselves be obligated to pay under wind and rain policies.
> Stated differently, Branch asserts that defendant "passed off" the costs of paying
> for wind damage to the government by fraudulently claiming that the damage was
> caused by flood. Because of the expedited claims-handling process that was put
> into effect after Katrina, many of these claims were allegedly not scrutinized by
> the government as they would have been in more typical circumstances. This
> resulted in the submission of myriad fraudulent insurance claims, which the
> federal government then paid. (Doc 228 at p. 3-4)

*      *      *

> The circumstances following Hurricane Katrina were unusual enough that FEMA
> suspended its regular proof-of-loss standards. The particular allegations concern
> only the WYO insurers who submitted proofs of loss during this time period, in
> this region, and under these extraordinary conditions. (*Id.* at 25)

*      *      *

> Here, there is no doubt that the allegations in the public disclosures are
> substantially similar to those in Branch's Complaint. Both allege that, after the
> proof-of-loss standards were temporarily relaxed during the recovery from
> Hurricane Katrina, WYO insurers overstated flood damage to properties with
> NFIP policies and understated the amount of damage resulting from causes of loss
> for which the insurers had to pay themselves. (*Id.* at 29-30)

*      *      *

> Branch also generally alleges, contrary to defendants' contention, that the
> defendants had wind policies on the listed properties. Such policies provide a

-4-

motive to overstate flood damage for which the government is obligated to pay and to understate wind damage for which the insurance companies are responsible. (*Id.* at 52)

*    *    *

Furthermore, the general allegation that each property was covered by a wind policy provides the incentive for the defendants to engage in the scheme. (*Id.* at 58)

Subsequent to the Court's October 19, 2009 ruling, the following occurred:

On December 12, 2009, Fidelity filed its Opposition to Branch's Motion to Strike Fidelity's Third-Party Demand. (Doc. 269) There, Fidelity argued that Branch's allegations of shifting wind losses to flood policies, and of using the expedited claims process to do this, were both impossible. Fidelity specifically cited FAC paragraphs 4, 17, and 20 as being literally impossible. *Id.* at page 4. Fidelity also provided a sworn affidavit. (Doc 269, Ex. A)

On December 21, 2009, Branch tendered its responses to Fidelity's first round of written discovery. In its responses, Branch admitted that companies other than Fidelity had issued the homeowners policy on each of the Fidelity insured properties in the FAC, and, Branch admitted it knew the names of each of those other companies **when it filed the FAC**. It named each and every one! Further, Branch admitted it does not have one piece of paper showing Fidelity ever touched the expedited claims handling process. As Fidelity claimed in its opposition to Branch's Motion to Strike, Branch had misled the Court to obtain the October 19, 2009 ruling.[1]

The next day, on December 22, 2009, Branch filed its Second Amended Complaint, and pretended in its Motion for Leave that its claim had not been changed.[2] (Doc. 279) In contrast to

---

[1] At page 21 of Fidelity's Opposition to the Motion to Strike, it pointed out that at the November 19, 2009 status conference Branch knew at that time that it claims against the remaining Defendants could not be true. (Doc. 269) At least as to Fidelity, this statement is now proven.

[2] Such was filed without ascertaining the consent or lack thereof of the Defendants. The Court promptly issued a deficiency notice and new motion was filed on December 30, 2009. (Doc 280)

this effort, the Court is asked to review paragraphs 4, 15, 17 and 20 of both Complaints, the import of which will be explained.

In paragraph 4, the phrase, "it substantially increased the amount of fees that defendants received," was added in the middle of the second sentence. Also, the words "many of" were added at the end of the paragraph just before the phrase "the insurer defendants have typically issued themselves."

In paragraph 15, the phrase "and processing claims, the amount of which is based on the amount of the claim," was added at the end of the fourth sentence.

In paragraph 17, Branch did far more than just "clarify" its prior allegations. It added new ones. The new paragraph 17 reads as follows, with the changes set forth in bold print:

> 17.    In the aftermath of Hurricane Katrina and unprecedented volumes of claims following the 2005 hurricane season, FEMA waived the requirement that insureds file a Proof of Loss in connection with Katrina-related claims under NFIP's Standard Flood Insurance Policy. Shortly thereafter, FEMA announced an expedited claim handling process for Katrina-related flood claims. **These circumstances, in part, and a host of others, including the absence of effective monitoring or supervision by FEMA, created an opportunity for defendants to take improper advantage of the Program.** Rather than follow in good faith **the claim policies and flood adjusting guidelines issued by FEMA,** defendants instead systematically adjusted, paid and submitted reimbursement claims to NFIP regarding losses that obviously should not be fully covered by the flood policies. They did so in massive quantities. **For example,** defendants defrauded NFIP by misattributing wind damage and other non-flood losses to the flood policies subsidized or underwritten by the Government rather than correctly attributing such losses to causes that are covered by homeowners policies **often** underwritten by themselves. **Defendants also defrauded NFIP by grossly exaggerating losses by using inflated prices in the adjustments and by including items in the adjustment that did not need to be replaced. Additionally, by overstating flood damages, defendants were able to significantly increase the amount of fees that they received from FIA for processing and adjusting claims.**

In paragraph 20, the word "often' is added at the very bottom of the paragraph within the parenthesis.

Starting with the First Amended Complaint, Fidelity contends that Judge Vance's October 19, 2009 ruling found that the requirements of FRCP Rule 9(b) had been satisfied concerning Branch's claim of a fraudulent "scheme" that had the following components:

- Homeowners and flood policy on each pleaded property issued by the same carrier. (Doc. 49, ¶¶ 4, 17, 20; Doc. 228, pp. 3-4, 29-30, 52, 58)

- A central factual predicate wherein wind damage had "ruined" and "destroyed" the pleaded properties before they were damaged by flood, such that the wind policy should properly have paid for the damage, not the flood policy. (Doc. 49 at ¶¶ 4, 9, 16, 19, 20, 23)

- The Defendants had "passed off" their own wind losses to their own flood policies. (Doc. 228, pp. 3-4, 25, 29-30, 52, 58)

- Failure to follow the expedited claims process promulgated by FEMA specifically for handling the large volume of Hurricane Katrina claims. (Doc. 49, ¶ 17)

- The amount of the fraud is the entire amount of the claim that was misattributed by the Defendants. (Doc. 228, ¶¶ 3-4)

Turning now to the Second Amended Complaint, such is not the claim now sought to be advanced. For those Defendants for whom the first theory will not work - - such as Fidelity - - a brand new and separate idea is pleaded. Its components are as follows:

- The WYO carrier did not issue the corresponding or "matching" homeowners policy. (Doc. 281, ¶¶ 4, 15, 17, 20)

- These Defendants did not "pass off" their own wind losses to flood policies. *Id.*

- The factual dispute over the timing of wind versus water is no longer relevant.

- The alleged violation is not the Katrina-specific expedited claims handling system, but rather it is an as-yet-unidentified group of FEMA's longstanding and normal "claims policies and

flood adjusting guidelines." *Id.* at ¶ 17

- Rather than paying for <u>un</u>covered wind damage, now the carriers defrauded the Government by overpaying <u>covered</u> claims by "inflated prices" and by "including items in the adjustment that did not need to be replaced." *Id.* at ¶17

- The amount of the fraud is not the amount of the full claims payment, but rather the 3.3 percent fee. *Id.* at ¶¶ 4, 15

Plainly, Branch was less than forthcoming in its explanation of what "changes" were to be found within its proposed Second Amended Complaint. Fidelity therefore asks - - if these changes were indeed so trivial that they weren't worth explaining - - *why make them?*

Digressing for a moment, the property added to the Fidelity list at paragraph 25(j) of the Second Amended Complaint bears mention. The owners of that property, Heather Nguyen and Chris Nguyen, filed their own lawsuit seeking <u>MORE</u> federal benefits under their Fidelity issued SFIP. *Nguyen v. Fidelity National Property and Casualty*, 06-11256, (E.D. La. 2006) Fidelity filed a motion for summary judgment based on the Nguyen's lack of a timely signed and sworn proof of loss. The Nguyens did not oppose the motion and a dismissal was entered. *Id.* Based on their Complaint, the Nguyens disagree that their flood claim was overpaid.

## IN RE: FIDELITY'S RIGHT TO DUE PROCESS

Branch accuses Fidelity of fraud. It has sued Fidelity based upon a "punitive" statute.[3] Branch seeks to have this Court punish Fidelity pursuant to the FCA. Branch seeks an enormous amount of money. As such, Fidelity contends that it is absolutely entitled to ask this Court to ensure full protection of Fidelity's due process rights. Fidelity asserts it is entitled to a pleading

---

[3] *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 784 (2000); and *Cook County v. U.S. ex rel. Chandler*, 538 U.S. 119, 129 (2003).

that comports with FRCP Rule 9(b), and that it is entitled to have reasonable advance notice of the actual claims against it before Branch obtains any documents from Fidelity, and certainly before its witnesses submit for depositions.[4]

The First Amended Complaint informs Fidelity that it is accused of failing to follow in good faith "the streamlined procedures that FEMA set up" after Katrina. (Doc. 49, ¶17) However, in the proposed Second Amended Complaint, that phrase that provides notice (both to Judge Vance and the Defendants) of precisely what rule was allegedly violated, is removed. In its place, Branch now asserts amorphously (just after Judge Vance has ruled) a new claim that Fidelity failed to follow in good faith "the claim policies and flood adjusting guidelines issued by FEMA." (Doc. 281, ¶17) Which policies and guidelines are now being put at issue is not divulged.

Initially, how would Fidelity reasonably prepare its Answer to that allegation? To what would it be responding, and of what value would its response be? Further on what basis would the Court commence its evaluation of the new claim?

Branch's new phrase could regard anything. It could be any provision of the flood policy, any federal regulation, any provision of FEMA's claims manual, any guidance posted on FEMA's website, or perhaps something else. Fidelity has taken reasonable steps to attempt to resolve this problem. Fidelity has asked Branch in written discovery requests to divulge precisely what rules of the NFIP were allegedly violated by Fidelity. Branch's counsel refuses to divulge this information, claiming Fidelity seeks a legal opinion. As such, Fidelity is unable - - absent an order of this Court - - to obtain this needed information. Moreover, Branch is of a mindset that

---

[4] Fidelity urges this Court to adopt Judge Senter's concern that "relators are seeking to depend on outside sources to support an imposition of liability against defendants." *United States ex rel. Rigsby v. State Farm Ins. Co.*, No. 06-433 (S.D. Miss. filed Apr. 26, 2006) (4/20/09 Order, p. 2).

Branch may set the depositions of Fidelity's witnesses, and divulge for the very first time in the middle of those depositions, what rules are being put at issue by Branch's pleadings. This literally precludes Fidelity's counsel's ability to represent his clients, and precludes his ability to advise his clients as to what claims are being made against them.

In the specific context of False Claims Act cases, Courts have held that the relator <u>must</u> plead with specificity which regulations or contractual provisions the Defendant allegedly violated. See *U.S. ex rel. Bly-Magee v. Premo*, 333 Fed.Appx. 169, 2009 WL 1396825 (9th Cir. 2009) (failing to "specify exactly" which requirements were allegedly violated precludes the defendants' ability "to prepare an answer"); *U.S. ex rel. Gross v. Aids Research Alliance-Chicago*, 415 F.3d 601, 605 (7th Cir. 2005) (Second Amended Complaint's vague reference to "regulatory framework" insufficient; "it is not incumbent upon the district judge to become an expert in all of the regulations" at issue); *U.S. ex rel. Grosche v. Univ. of Chicago Hospitals.*, 206 WL 516577 *8 (N.D. Ill 2006) (same); and *U.S. ex rel. Fowler v. Casemark RX, Inc.*, 2006 WL 3469537 *6 (N.D. Ill. 2006) (same).

Fidelity asks that the Court deny the Plaintiff's Motion for Leave, and require that Branch resubmit it after it contains sections that "specify exactly" the regulations and/or contractual provisions that Fidelity is alleged to have violated. Solely in the alternative, Fidelity prays that the Court condition granting the Motion for Leave upon Branch's agreement to specifically identify (in writing) all such provisions well before Branch receives any claims file material or other documents from any of the Defendants and certainly well in advance of the date on which Branch takes any depositions of any Defendant.

Both for the formulation of its Answer and to effectively prepare for depositions, Fidelity submits that it will <u>need</u> this basic underlying information in order to defend itself on the

"objective falsehood" element of False Claims Act liability. As is recognized by FCA treatises, "In most cases in which falsity is disputed, the question of falsity is based on the interpretation of a government regulation, contract or agreement, or state or federal law." 1 John T. Boese, *Civil False Claims and Qui Tam Actions* § 2.03[B] (3d ed. 2009). As the Fifth Circuit has made clear, "Whether a claim is valid depends on the contract, regulation, or statute that supposedly warrants it." *U.S. v. Southland Management Corp.*, 326 F.3d 669, 674 (5th Cir. 2003) (*en banc*). As Chief Judge Jones recognized in her concurrence in *Southland*, "Where there are legitimate grounds for disagreement over the scope of a contractual or regulatory provision, and the claimants actions are in good faith, the claimant cannot be said to have knowingly presented a false claim." *Id.* at 684. In *Southland*, the Fifth Circuit sitting *en banc* affirmed summary judgment against the Government because the court found a "wide difference of opinion" concerning what was meant by a provision of the federal contract at issue in that matter. *Id.* at 675. None of the analysis explained in the treatises and in the caselaw can commence until Branch divulges in this case whatever federal standards it claims the Defendants violated. This Court needs the information as much as Fidelity.

In addition, the information Fidelity seeks is just as necessary in regards to the *mens rea* or *scienter* element of FCA liability. As the Fifth Circuit explained in its analysis of whether summary judgment was properly granted against the relator on the *mens rea* element in *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 341 (5th Cir. 2008):

> A jury would conclude that the regulatory environment in which Defendants were operating was not nearly as cut-and-dry as Farmer's proffered evidence suggests. Indeed, during deposition, HUD officials admitted that there is nothing in HUD's CBDG regulations that objectively defined what is a reasonable cost. See R. 1171, 1304. With this information in mind, the jury would be considerably less likely to infer that the alleged overcharges and other misstatements show that Defendants acted "knowingly" for FCA purposes.

Please see also, *Willard v. Human Health Plan of Texas, Inc.*, 336 F.3d 375, 380 (5th Cir. 2003) (relator failed to identify any false claims because defendant's claims were actually valid under federal HMO discrimination regulations; *Matthews v. Health South Corp.*, No. 99-604, 2007 U.S. Dist. LEXIS 52397 (W.D.La. July 18, 2007) (noting that coding of medical records had a "subjective element" and finding that relator had not shown the defendant's coding was incorrect); and finally *U.S. ex rel Gudur v. Deloitte Consulting, LLP*, No. H-00-1169, 2007 WL 836935, at *25 (S.D. Tex. Mar. 15, 2007) (relator failed to cite any specific provisions in state code or state Medicaid plan defining specific rate-setting methodology to be used or to provide any evidence that Deloitte's rate-setting methodology failed to comply with them).

This Court has already expressed its concern that discovery might not actually be completed by October 1, 2010. (Doc. 277) Allowing Branch to avoid declaring such fundamental points about its own case, thereby requiring both the Defendants and the Court to merely guess at Branch's predicates, will only waste time. Inevitably, such would require Defendants to waste resources attempting to defend all manner of possibilities guessing what Branch might actually be claiming is the alleged violation of the rules. Such conduct surely does not advance the Court's objective of getting discovery completed by October 1, 2010.

Two years of expensive and time-consuming effort has been devoted to evaluating Branch's First Amended Complaint. However, just 60 days after the Court ruled, Branch immediately switches its claims to something wholly different and far more amorphous. On due process grounds, and for the specific purpose of obtaining advance notice of the as-yet never-divulged "claim policies and flood adjusting guidelines issued by FEMA" that Fidelity is now alleged to have violated, Fidelity asks that this Court either (1) deny the Motion for Leave until

Plaintiff pleads what rules were violated, or (2) condition the granting of the Motion for Leave upon full and complete disclosure of whatever rules Branch is alleging were violated <u>before</u> Branch obtains any claims files or other written discovery responses from the defendants, and certainly well before any depositions occur.

**IN RE: IMPACT ON THE RULE 16 SCHEDULING ORDER**

Fidelity understands the Second Amended Complaint was filed within the deadlines provided in this matter's Rule 16 Scheduling Order. However, Fidelity points out that if Branch's action precludes the objectives of that Order from being fulfilled, it should be rescinded now. Fidelity prefers that the current deadlines be kept, but only if the Court fashions a discovery control plan where all <u>necessary</u> discovery can actually be completed by October 1, 2010.

Even before the filing of Branch's Motion for Leave, it was clear that cause existed to be concerned about whether the October 1, 2010 discovery cut-off date could be met. Such is evident by this Court's December 15, 2009 Order. (Doc. 277) On January 20, 2010, this Court will take up both the matters addressed in its December 15, 2009 Order (Doc 277), as well as Branch's Motion for Leave to File Second Amended Complaint. (Doc. 281) Branch's Motion for Leave puts the current Rule 16 Scheduling Order at risk for three distinct reasons:

First, the addition of Allstate and Pilot will add monumentally to the amount of discovery involved in this matter. If we are just talking about the listed properties, the parties already had to complete discovery as to 27 distinct properties before the addition of Allstate. The addition of Allstate adds 20 more properties. (Doc. 281, ¶23) That is almost double the current work load.

Second, the addition of Allstate would make the problem concerning the unpleaded properties even more difficult. Without Allstate in its case, the total of the claims adjusted by the

current Defendants exceeds over 50,000 Hurricane Katrina claims. If Allstate is added, that number swells to more than 100,000 such claims.

Third, Branch is at the same time totally changing its theory of the case as to all of the current Defendants. Whereas in the First Amended Complaint Branch's "scheme" concerned a specific mode of operating that was peculiar to just Katrina, now, Branch contends that fraud is rampant throughout the entire WYO industry in FEMA's normal processes. It is sheer pretense if Branch contends that it is not intending a fishing expedition.

Upon all of these considerations, the Court is asked to inquire of Branch at the time of the hearing, why these points were not divulged in Sections D and E of Branch's Memorandum in Support of its Motion for Leave. (Doc. 281) Further, the Court is asked to inquire of Branch how, assuming the Court were to allow the filing of the Second Amended Complaint, Branch perceives that full and proper discovery could be completed within the discovery cut-off date that Branch agreed to in the Rule 16 Scheduling Order. If the Court finds that Branch has not been candid in its Motion for Leave, then Fidelity asks that the Motion for Leave be denied.

**IN RE: JURISDICTION**

Fidelity objects to the filing of the proposed Second Amended Complaint to the extent it presents any new claims, theories or predications, as precluded by *Rockwell International Corp. v. United States,* 127 S.Ct. 1397 (2007). As per *Rockwell,* and as Judge Senter recognized in *States ex. rel. Rigsby v. State Farm Ins. Co.,* 06-CV-433 (S.D. Miss):

> Section 3730(e)(4) [of the FCA] does not permit jurisdiction in gross just because a relator is an original source with respect to some claim. We, along with every court to have addressed the question, conclude that § 3730(e)(4) does not permit such claim smuggling. *Rockwell,* 127 S.Ct. at 1410.

As one recent treatise routinely cited by relators observes, *Rockwell* means that even if

Branch is indeed the original source of the theories pleaded in the First Amended Complaint, that does not mean that the Court's jurisdiction extends to any new theories that the Plaintiff may seek to add now:

> Third, the Court held that the public disclosure bar and its original source exception applied on a claim-by-claim basis. The fact that a relator is the original source of some of the information in the Complaint does not mean that he is the source of information for all of the claims in the Complaint. Claire M. Sylvia, *The False Claims Act: Fraud Against The Government*, § 11:32 (Thompson Reuters 2009)

Judge Vance recognized this same point in her October 19, 2009 ruling. As she stated, "the relator must be the original source of every claim it brings." (Doc. 228, p. 30)

In *Rockwell*, the Supreme Court held that an FCA relator cannot plead one scheme to begin an FCA lawsuit, and then, when those allegations prove baseless, switch to a new theory upon which to proceed to trial. *Rockwell, supra.* 127 S.Ct. at 1404-05 and 1409-10. Yet, that is precisely what is unfolding here.

Rather than admit its original claim was baseless, Branch now asserts in the Second Amended Complaint that Fidelity utilized some undisclosed aspect of FEMA's <u>normal</u> claims handling systems for the purpose of earning additional fees upon FEMA's <u>normal</u> 3.3 percent commission on <u>covered</u> claims payments. (Doc 279-2, paragraph 4, 17 and 20) This is <u>not</u> the claim pleaded pursuant to FRCP Rule 9(b) in the FAC. This <u>is</u> precisely what *Rockwell* prohibits. Also, this effort by Branch establishes that it is indeed the type of parasitic relator Judge Vance discussed at page 28 of the October 19, 2009 Order. (Doc. 228)

## CONCLUSION

Rule 16 Objection: Fidelity OBJECTS to the filing of the Second Amended Complaint unless sufficient limitations on the scope of discovery are imposed so as to allow full and proper discovery to be truly completed within the current deadlines.

Due Process Objection: Fidelity OBJECTS to Branch's motion on due process grounds, and specifically on the basis that the FCA is a punitive statute regarding which FRCP Rule 9(b) is fully applicable. Unless the Court's decision to grant leave is conditioned upon requiring Branch to "specify exactly" what FEMA policies and guidelines are being referenced in paragraph 17 of the Second Amended Complaint, or, alternatively, requires the Plaintiff to "specify exactly" what rules are being referenced at the outset of discovery, Fidelity objects.

Jurisdictional Objection: Fidelity OBJECTS to the filing of the Second Amended Complaint to the extent that it seeks to present any new claims, theories or predictions in violation of *Rockwell*. Fidelity is not asking this Court to deny the Motion for Leave upon this ground at this time. Fidelity raises its objection here specifically for the purpose of preserving it.

Respectfully submitted,

NIELSEN LAW FIRM, LLC

*/s/ Gerald J. Nielsen*
Gerald J. Nielsen (17078)
gjnielsen@aol.com
William T. Treas (26537)
wtreas@nielsenlawfirm.com
3838 North Causeway Blvd, Suite 2850
Metairie, Louisiana 70002
Telephone: (504) 837-2500
**Attorneys for Fidelity National Insurance Company, Fidelity National Property and Casualty Insurance Company**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has this date been served upon all parties to this suit through counsel by filing into the Court's electronic filing system and, for non-participants, by placing same in the U.S. mail, postage prepaid and properly addressed on this 12th day of January, 2010.

/s/ Gerald J. Nielsen