IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *EX REL.* BRANCH CONSULTANTS, L.L.C., <br><br> *Plaintiff* <br><br> v. <br><br> ALLSTATE INSURANCE COMPANY, et al., <br><br> *Defendants* | Case No. 2:06-cv-4091 <br><br> **JURY TRIAL DEMANDED** |

BRANCH CONSULTANTS, LLC'S RESPONSE TO
DEFENDANTS' PROPOSED DISCOVERY PLAN

Plaintiff-Relator Branch Consultants, L.L.C. ("Branch") submits this response to Defendants' proposed discovery plan. Defendants' proposal is unduly narrow in scope and overly restrictive in terms of confidentiality designations and the production of electronically-stored information. Branch respectfully requests that the discovery orders attached hereto as Exhibits 1, 2, 3, 4, and 5 be entered so that discovery of an appropriate scope can be completed efficiently and with an appropriate protective order in place.

I.  **DEFENDANTS' REQUEST THAT DISCOVERY BE LIMITED TO THE EXEMPLAR PROPERTIES SHOULD BE DENIED**

A.  **Defendants' Discovery Plan Will Create Further Delay**

Judge Vance rejected Defendants' original source arguments in their motions to dismiss and denied their request for an interlocutory appeal. Defendants now seek a third bite at the apple: they would like to limit discovery "to determine whether, in fact, Branch is an original source with direct and independent knowledge of allegations of fraud asserted in its complaint."[1]

---

[1] Defendants' Proposed Discovery Plan Pursuant To December 15, 2009 Order (hereinafter "Defs' Discovery Plan") at 4.

1

There is no legitimate basis for limiting discovery to that end and prioritizing Defendants' desire to focus on what they consider jurisdictional discovery to the exclusion of other discovery. The district court already has spoken to this issue:

> This action was filed in August of 2006. It is now December of 2009, and the case has only recently progressed beyond the motion-to-dismiss stage. The Fifth Circuit has already reviewed this case once. There, the court explicitly declined to address this very question "[b]ecause the district court should have the opportunity to address the facts underpinning the claim of public disclosure and original source and make any necessary findings in the first instance." *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 381 (5th Cir. 2009). **The district court has now done so, and it has determined that the litigation should move forward without further delay**.[2]

Defendants' discovery plan will create rather than avoid further delay because it is expressly tailored to bringing yet another round of jurisdictional motions before the district court—presenting questions the district court already has decided—rather than moving this case forward.

**B.**   ***Rockwell* Does Not Require Limiting Discovery To The Exemplar Properties**

Defendants' conclusory assertion that *Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007), "requires" that discovery in this case be limited to the Exemplar Properties lacks merit. *Rockwell* did not hold that discovery in a case alleging a broad fraudulent scheme and identifying specific examples of that fraud should be limited only to the alleged examples. On the contrary, it is well established that where a systematic practice of submitting fraudulent claims is alleged "Plaintiffs are entitled to discovery before being required to list every false claim." *Thompson v. Columbia/HCA Healthcare Corp.*, 20 F. Supp. 2d 1017, 1049 (S.D. Tex. 1998); *see also United States ex rel. Hebert v. Dizney*, 295 Fed. Appx. 717, 723 (5th Cir. 2008) ("Rule 9(b) does not require a qui tam plaintiff alleging a long-running scheme involving many false claims to list

---

[2] Order dated 12/22/2009 (Dkt. # 278) at 10-11 (emphasis added).

every false claim, its dates, [and] the individuals responsible") (quoting *Thompson*, 20 F. Supp. 2d at 1049); *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009) ("If it alleges a systematic practice of submitting fraudulent claims, the FCA complaint 'must provide *some* representative examples of [the] alleged fraudulent conduct'") (emphasis in original) (quoting *United States ex rel. Joshi v. St. Luke's Hosp., Inc.,* 441 F.3d 552, 556-57 (8th Cir. 2006)); *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 510 (6th Cir. Tenn. 2007) ("[W]ere a court to construe the concept of a fraudulent scheme in an excessively narrow fashion, the policies promoted by the rule allowing a relator to plead examples, rather than every false claim, would be undermined.").

In her order denying Defendants' motions to dismiss, the district court found that there was "no question that [Branch] has pleaded the existence of a *broad scheme to defraud the government*, as well as provided numerous individual examples that are allegedly part of the scheme."[3] Likewise, the district court has ruled that Branch's fraud claims are "much broader" and "further-reaching" than Defendants acknowledge.[4] Because Branch's claims encompass a broad, far-reaching scheme to defraud the Government, and those claims have survived Defendants' Rule 9(b) challenge, discovery concerning that scheme and in particular concerning properties beyond those listed as examples in the complaint is appropriate. *See* Fed. R. Civ. P. 26(b)(1) ("the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense").

---

[3] Order dated 10/19/2009 (Dkt. # 228) at 57-58 (emphasis added).

[4] Order dated 7/20/2009 (Dkt. # 223) at 4.

## C. Branch Did Not Limit Its Discovery Responses To The Exemplar Properties

Defendants contend that Branch "has limited its *own* discovery responses to the properties identified in the First Amended Complaint."[5] This contention is false. As Branch expressly advised Fidelity both in writing and on the parties' January 5, 2010 meet and confer call, Branch does not believe discovery in this case should be limited to the Exemplar Properties, and it has not withheld any discovery on the basis of any such limitation.

## D. Discovery In This Case Should Follow The Statistical Sampling Techniques The Government Routinely Uses In Medicare Fraud Cases Rather Than Defendants' Selection Of Their Preferred Aspects Of *Rigsby*

Defendants' proposal is not the one followed in *Rigsby* but, instead, contains those aspects of *Rigsby* Defendants like and, without explanation, ignores those aspects of *Rigsby* Defendants do not like. Judge Senter, for example, ordered State Farm to provide certain discovery concerning all Katrina-related properties meeting three criteria so that he could "know the outer limits of the potential claims involved in this action."[6] The "potential claims" Judge Senter was referring to are the claims that he may allow the relators to pursue "[i]n the event the Relators prevail on the merits of their allegations concerning the McIntosh claim."[7] Defendants ignore these aspects of *Rigsby* and seek a more narrow version of it here.

Rather than limit discovery in this case to those aspects of *Rigsby* preferentially selected by Defendants, the Court should limit discovery to achieve the objective of moving this case forward without further delay. To that end, as discussed in its opening Discovery Plan, Branch suggests that the Court allow discovery concerning a SSRS sample of properties for each

---

[5] Defs' Discovery Plan at 5 (emphasis in original).

[6] *U.S. ex rel. Rigsby v. State Farm Ins. Co., et al.*, Civil Action No. 06-CV-433, Memorandum Opinion dated 8/10/2009 at 10-11.

[7] *Id.* at 10.

Defendant.  As a first step, the Court should order each Defendant to provide the following information:

1. The total number of Katrina-related flood claims adjusted by each Defendant in Louisiana ("Covered Flood Claims"); the total dollar amount of those claims submitted to the Government for payment; the subcontractors / independent adjusters used by each Defendant to adjust Covered Flood Claims; the total number and dollar amount of Covered Flood Claims adjusted by each such subcontractor / independent adjuster (if any); and the total dollar amount of fees paid to each Defendant by the Government for adjusting and processing the Covered Flood Claims.

2. The total number of Katrina-related wind claims adjusted by each Defendant; the total dollar amount paid to insureds on those claims; the total number of Katrina-related wind claims adjusted by each Defendant that are also Covered Flood Claims ("Covered Wind Claims"); and the total dollar amount of Covered Wind Claims paid to insureds.

3. A description of the fields of data associated with Covered Flood Claims and Covered Wind Claims that each Defendant has stored electronically, such as insurance limits, amounts paid, flood adjustment reports, wind adjustment reports, price lists that were used for each adjustment, property elevation, and floodlines assumed for each adjustment.

Using this information, which is analogous in this case to the information Judge Senter required State Farm to submit during pretrial discovery in *Rigsby*, Branch could then determine how many properties are needed for a SSRS sample for each Defendant.  Disclosure of this information also would allow the parties and the Court to know what proportion of Defendants' relevant documents already are stored in searchable, electronic format.  As noted in Branch's Discovery Plan, Branch already has served discovery requests (whose deadlines already have passed) seeking this information.

Using SSRS samples, as the Government routinely does in Medicare cases,[8] is more efficient than tailoring discovery to another round of repetitive jurisdictional motions and having

---

[8] *See United States v. Cabrere-Diaz*, 106 F. Supp. 2d 234, 240 (D.P.R. 2000) (concluding in FCA action to recover damages for false claims submitted to Medicare that "[n]umerous cases involving Medicaid and Medicare overpayments have endorsed proof of damages through use of statistics and statistical sampling."); *United States ex rel. Harris v. Bernad*, 275 F. Supp. 2d 1, 8-9 (D.D.C. 2003) (denying motion to dismiss where complaint identified 12 exemplar patient files but used a statistical sample to

5

multiple trials. For that reason, Branch respectfully requests that the Court enter the order attached hereto as Exhibit 1,[9] the specifics of which are discussed in further detail below.

## II.  TIMING OF AND LIMITATIONS ON DISCOVERY

Branch proposes the following deadlines for discovery:

• By January 27, 2010, Defendants provide the three categories of information listed above.

• By February 3, 2010, Defendants provide documents in electronic format sufficient to allow the selection of a SSRS sample of properties for each Defendant, including a description of each field of data provided. This documentation should include, at a minimum, a list containing the addresses, policy numbers, and claims payments associated with each Covered Flood Claim and Covered Wind Claim.[10] Unless doing so is not technically feasible, the data shall be provided in searchable, sortable Microsoft Excel format.

• By February 24, 2010, assuming Defendants have provided the aforementioned documents in the proper format, Branch shall produce a corresponding list for

---

calculate damages for all 1,649 patients); *see also Ratanasen v. State of Cal. Dept. of Health Services*, 11 F.3d 1467, 1471 (9th Cir. 1993) ("We now join other circuits in approving the use of sampling and extrapolation as part of audits in connection with Medicare and other similar programs, provided the aggrieved party has an opportunity to rebut such evidence. To deny public agencies the use of statistical and mathematical audit methods would be to deny them an effective means of detecting abuses in the use of public funds."); *Chaves County Home Health Service, Inc. v. Sullivan*, 931 F.2d 914, 919 (D.C. Cir. 1991) (noting that "courts have routinely permitted the use of statistical sampling to determine whether there has been a pattern of overpayments spanning a large number of claims where case-by-case review would be too costly."); *Illinois Physicians Union v. Miller*, 675 F.2d 151, 155 (7th Cir. 1982) (concluding that the Illinois Department of Public Aid's use of sampling and extrapolation was permissible in an action seeking recoupment of Medicaid funds).

[9] Branch notes that limited discovery beyond that outlined in Exhibit 1 may be appropriate. For example, Fidelity has requested Branch's files concerning the last 20 properties adjusted by one of Branch's principals because Fidelity believes documents concerning Branch's adjusting practices is discoverable—if such discovery is proper, corresponding discovery directed at Defendants' adjusters also may be appropriate.

[10] Defendants not only maintain this data as part of their regular business practices but also as a result of requirements set forth in federal regulations. *See, e.g.,* 44 C.F.R. § 62.23(j) (requiring a "detailed biennial audit" of the WYOs' "flood insurance financial statements" and further requiring WYOs to "[m]eet the recording and reporting requirements of the WYO Transaction Record Reporting and Processing Plan and the WYO Accounting Procedures Manual," which require recording and reporting of extensive data elements concerning each covered property, including address, coverage, claims payment, and elevation fields); *see also* 44 C.F.R. § 62.23(i)(10) (the "customary content of claim files" must include "coverage verification, normal adjuster investigations,…damage verification and other documentation relevant to the adjustment of claims under the NFIP's and the WYO Company's traditional claim adjustment practices and procedures').

    each Defendant containing a SSRS sample of Covered Flood Claims (the "SSRS Properties").

    • By March 24, 2010, Defendants shall produce the claims files associated with each of the SSRS Properties.

Following production of the SSRS Properties claim files, Branch will prepare a report of those aspects of the Exemplar Properties and SSRS Properties flood adjustments which Branch contends constitute false claims ("Branch's False Claims Contentions"). The deadline for Branch's False Claims Contentions should depend on the number of SSRS Properties and on Defendants' timely compliance with the production of claims files. Branch proposes that the parties return for a status conference on March 31, 2010 and that a deadline for Branch's False Claims Contentions be set at that time. At that time the Court also should set deadlines and limits on remaining discovery concerning the SSRS Properties and Branch's False Claims Contentions. A proposed order reflecting the foregoing discovery plan, as well as those provisions of Defendants' Proposed Order Governing Discovery to which Branch does not object, is attached hereto as Exhibit 1.

## III.    DEFENDANTS' PROPOSED PROTECTIVE ORDER IS OVERLY RESTRICTIVE

    Defendants' proposed protective order ("Defs' PO") is unduly restrictive for the following reasons:

    • It presumes that literally all information produced in this case is either "Confidential" or "Highly Confidential." Defs' PO at ¶¶ 1-2. Every hearing will need to be sealed, every word in every deposition deemed Confidential or Highly Confidential, and every document treated as being subject to a protective order and ultimately destroyed. *Id.* & ¶ 22. Almost nothing will be available to the public under Defendants' proposed order—instead, it will be ***presumed*** that this case should be hidden from the public's view. In fact, Defendants' proposed protective order is more akin to a protective order for a confidential arbitration than for public court, which may explain why Defendants inadvertently failed to delete the reference to "arbitration" in paragraph 14(a) of their proposed order. Defendants' overly broad confidentiality provision is contrary to well established law. *See Blanchard & Co., Inc. v. Barrick Gold Corp.*, 2004 WL 737485 (E.D.

7

> La. 2004) ("[I]nsofar as the defendants' proposed order addresses all discovery, shielding it from public disclosure or restricting its use to this litigation, the defendants' position is without merit and not supported by either the applicable rules or the prevailing jurisprudence. Indeed, the objective should be to protect only material for which there is a clear and significant need for confidentiality.").
>
> • It gives Branch only 30 days to challenge Defendants' confidentiality designations, after which time the confidentiality designation is no longer subject to challenge. *Id.* ¶ 11. There is no reason for such a limitation on Branch's ability to challenge Defendants' confidentiality designations, and if multiple Defendants simultaneously produce a large volume of documents Branch may not be able to bring all necessary challenges within 30 days.
>
> • It does not include the Government on the list of persons who can be shown Confidential Information. *Id.* ¶ 5.
>
> • It does not require Producing Parties to promptly respond to challenges to confidentiality designations. *Id.* ¶¶ 8, 11.

Attached hereto as Exhibit 2 is a proposed protective order addressing the above problems, as well as a redline of Defs' PO reflecting the changes made.

**IV.   DEFENDANTS' PROPOSED ESI ORDER IS OVERLY RESTRICTIVE**

Defendants' Proposed Order Establishing Protocol For Electronic Discovery ("Defs' ESI Order") is overly restrictive for the following reasons:

> • It presumes that fully searchable and sortable databases containing information concerning the subject flood claims will be produced as a non-searchable, non-sortable set of individual pages. Defs' ESI Order ¶¶ C.1, C.2, C.8.
>
> • It does not require the Producing Party to respond to requests that ESI be produced in its Native Format within a specified period of time, and it puts the burden on the Requesting Party to "demonstrate a particularized need for production of that ESI in its Native Format." *Id.* ¶ C.8.
>
> • It presumes that information stored on backup tapes is "not discoverable," but does not require the Producing Party to explain what information is contained on the backup tapes or what burden is associated with accessing those tapes. *Id.* ¶ B.5.
>
> • It does not provide for a deadline for the production of privilege logs. *Id.* § F.

Attached hereto as Exhibit 3 is a proposed order addressing the above problems, as well as a redline of Defs' ESI Order reflecting the changes made.

V. **DEFENDANTS' PROPOSED ORDER CONCERNING AVOIDING DUPLICATION AND NON-WAIVER OF PRIVILEGES**

Branch supports the purpose of this proposed order but believes that many if not most of Defendants' discovery requests in this action should be joint requests. Accordingly, at a minimum, this order should state that Defendants are "strongly encouraged to submit joint discovery requests unless doing so would be impracticable." An appropriate proposed order is attached hereto as Exhibit 4.

VI. **SUBCONTRACTORS' DOCUMENTS**

As Branch noted in its opening Discovery Plan, Defendant American National Property and Casualty Insurance Company ("ANPAC") refused to produce documents related to the Exemplar Properties based on, *inter alia*, the assertion that the responsive documents are in the possession of its subcontractor National Flood Services, Inc. If any Defendant intends to rely on an assertion that its subcontractors have responsive documents and that those documents are not in the Defendant's possession, custody or control, those Defendants should immediately disclose (a) the identity of the subcontractors; (b) what responsive documents Defendants contend are in those subcontractors' possession; and (c) what efforts Defendants have made to obtain the documents from those subcontractors. Defendants also should produce the relevant contracts between them and these subcontractors. Branch e-mailed Defendants on January 6, 2010 requesting this information and, to date, has not received any response. Attached hereto as Exhibit 5 is a proposed order requiring Defendants to make these disclosures and produce these contracts by January 27, 2010.

VII. **CONCLUSION**

Defendants' proposed orders are unduly restrictive and are improperly designed to prioritize yet another round of motions on jurisdictional issues that already have been decided by

the district court.  Branch respectfully requests that, instead, the Court adopt its discovery proposals and enter the orders attached hereto as Exhibits 1 - 5.

DATED:  January 15, 2010                              Respectfully submitted,

SUSMAN GODFREY LLP

By: /s/ Tibor L. Nagy, Jr.
Tibor L. Nagy, Jr. (NY #4508271)
tnagy@SusmanGodfrey.com
654 Madison Ave., 5th Flr
New York, NY 10065

Jonathan Bridges (TX #24028835)
jbridges@SusmanGodfrey.com
901 Main Street, Suite 5100
Dallas, Texas  75202-3775

Matthew R. Berry (WA #37364)
mberry@susmangodfrey.com
1201 Third Avenue, Suite 3800
Seattle, WA 98101

    and

KANNER & WHITELEY L.L.C.

Allan Kanner (LA #20580)
a.kanner@kanner-law.com
701 Camp Street
New Orleans, LA  70130

    and

HERMAN, HERMAN, KATZ & COTLAR, LLP

Stephen J. Herman (LA #23129)
sherman@hhkc.com
Soren E. Gisleson (LA #26302)
sgisleson@hhkc.com
820 O'Keefe Avenue

       New Orleans, Louisiana 70113

       ***Attorneys for Plaintiff/Relator***

## **CERTIFICATE OF SERVICE**

    I hereby certify that on January 15, 2010, a copy of the foregoing was served upon Defendants via electronic mail, pursuant to the parties' agreement on e-mail service. I further certify that a true and correct copy of the above also was sent via electronic mail (pursuant to agreement) to Assistant United States Attorney, Jay D. Majors.

                                                              /s/ Matthew R. Berry