# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

UNITED STATES OF AMERICA,  )
*EX REL.* BRANCH CONSULTANTS, L.L.C., )
            )
       *Plaintiff* )  Case No. 2:06-cv-4091
v.             )
            )
AMERICAN NATIONAL PROPERTY & )  **JURY TRIAL DEMANDED**
CASUALTY COMPANY, *et al.*   )
       *Defendants* )

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT AMERICAN NATIONAL PROPERTY & CASUALTY COMPANY

TO: Defendant, AMERICAN NATIONAL PROPERTY & CASUALTY COMPANY, by and through their attorneys of record, Larzelere Picou Wells Simpson Lonero, LLC, Two Lakeway Center, 3850 North Causeway Blvd., Suite 100, Metairie, LA 70002.

  Pursuant to Rule 33 of the Federal Rules of Civil Procedure, plaintiff and *relator* Branch Consultants, L.L.C. ("Branch") hereby requests that defendant American National Property & Casualty Company ("ANPC") answer the following interrogatories, in writing and under oath, within thirty (30) days after service of this first set of interrogatories.

### DEFINITIONS & INSTRUCTIONS

  As used in these Interrogatories, the following terms are defined as follows:

1. "You" or "Your" means Defendant American National Property & Casualty Company, its predecessors, successors, affiliates, subsidiaries, divisions, parent companies, partners, agents, employees, officers, directors, representatives, or beneficiaries.

2. "Federal Emergency Management Agency" or "FEMA" means the federal government agency that contains those government divisions, branches, and programs responsible for the National Flood Insurance Program, including the Mitigation Division

1

and any and all of its branches, divisions, departments, programs, and employees wherever located.

3. "National Flood Insurance Program" or "NFIP" means the federal government program that backs flood insurance policies issued to homeowners across the United States and any and all of its branches, divisions, departments, programs, and employees wherever located.

4. "WYO Insurer" or "Write-Your-Own Insurer" means any insurance company that participated in the W.Y.O. insurance program and issued or sold federally backed Standard Flood Insurance Policies in Louisiana or Mississippi that were in effect at the time of Hurricane Katrina in August of 2005 and includes any such insurance companies' successors, subsidiaries, departments, divisions and affiliates, and any organization or entity which each such insurance company manages or controls, together with all present and former directors, officers, employees, agents, or representatives.

5. "Claim File" means, without limitation, all documents, all electronically stored information, all communications, and any other materials associated with a particular claim made by an insured under an insurance policy issued by You, including but not limited to federally backed flood insurance policies sold or serviced by You. For federally backed flood insurance policies, Claim File includes all FEMA forms, including but not limited to forms 81-40, 81-41, 81-41A, 81-43, 81-57, 81-58, 81-41, 81-42, 81-44, 81-42A, 81-98, 81-109, and any re-inspection reports. Claim File also includes all estimates of damage, including preliminary estimates, final estimates, and supplemental estimates.

6.    "Communication" means, without limitation, oral or written communications of any kind, such as electronic communications, e-mail, facsimiles, telephone communications, correspondence, exchanges of written or recorded information, or face-to-face meetings.

7.    "Document" or "electronically stored information" means, without limitation, the original and all non-identical copies of all items subject to discovery under Rule 34 of the Federal Rules of Civil Procedure and includes letters, correspondence, memoranda, legal pleadings, calendars, diaries, travel records, summaries, records of telephone conversations, telegrams, notes, reports, compilations, notebooks, work papers, graphs, charts, blueprints, books, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, photographs, videotapes, audiotapes, film and sound reproductions, electronic data, e-mails, internal or external websites, videos, CDs, DVDs, computer files and disks, agreements, stored recordings, minutes or other records of meetings, all written or graphic records or representations of any kind, and all mechanical or electronic data, records or representations of any kind.

8.    "Identity" or "identify" shall mean when used with reference to:

   a.    An individual person:

      (i)    his or her full name;

      (ii)    his or her present or last known complete home address;

      (iii)    his or her present or last known complete business address;

      (iv)    his or her present or last known position, business affiliation and job description; and

3

        (v)    his or her position, business affiliation and job description at the time in question with respect to the document request involved;

    b.    A document:

        (i)    its author;

        (ii)    its subject matter, title, date and total number of pages;

        (iii)    its type (e.g., letter, memorandum, report, diary) or some other means of recognizing it;

        (iv)    each and every addressee;

        (v)    each and every person to whom copies were sent, by whom copies were received, and who you believe may have knowledge of its contents;

        (vi)    its present location and custodian; and

        (vii)    its disposition, if no location or custodian is specified.

    c.    A communication or meeting:

        (i)    all persons involved in such communication or meeting;

        (ii)    the date and location of such communication or meeting;

        (iii)    the substance of the communication; and

        (iv)    all documents related to such communication or meeting (including, without limitation, all documents recording or summarizing such communication or meeting).

9.    "Including" is used to emphasize certain types of documents requested and should not be construed as limiting the request in any way.

10.  "Native format" means as to all documents that are created in digital format (including databases, word processing files, spreadsheets, presentations, and e-mail), their native file format – that is, the format designed specifically for the most efficient use of the information (the associated file structure defined by the original creating application). "Native format," the original digital format of a file or electronically stored information, typically allows the editing of the file by the software that created it. For example, if a file was created in Microsoft Word and was saved as a Microsoft file, the native format is the Microsoft Word format with the extension ".doc".

11.  "Or" should be construed so as to require the broadest possible response. If, for example, a request calls for information about "A" or "B", you should produce all information about A and all information about B, as well as all information about, collectively, A and B. In other words, "or" should be read as "and/or."

12.  "Person" means, without limitation, any natural person, government entity, corporation, partnership, limited liability company, proprietorship, joint venture, association, group or other legal form of legal entity.

13.  "Relating to," "referring to," "regarding," or "with respect to" means, without limitation, the following concepts: discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting or otherwise involving, in whole or in part.

14.    "Hurricane Katrina" means the hurricane that made landfall in southern Louisiana and Mississippi on or about August 29, 2005 and caused damage in Louisiana and Mississippi.

15.    "Government" refers to the United States federal government and all of its agencies, including but not limited to FEMA.

16.    "Covered Flood Properties" means properties serviced by You under the NFIP for which a claim was made against the NFIP flood policy in connection with Hurricane Katrina.

17.    "Covered Flood Claims" means NFIP claims submitted by You to the Government on Covered Flood Properties as a result of claims made in connection with Hurricane Katrina.

18.    "Covered Wind Properties" means those Covered Flood Properties for which you provided insurance against wind damage that was effective on August 29, 2005.

19.    "Covered Wind Claims" means claims paid by You on Covered Wind Properties as a result of wind damage that occurred in connection with Hurricane Katrina.

20.    Unless otherwise noted, the relevant time period for these Interrogatories is July 1, 2005 to the present.

## INTERROGATORIES

1.  What are the total number and dollar amount of Covered Flood Claims submitted by You to the Government?

2.  What are the total number and dollar amount of Covered Wind Claims paid by You?

3.  What is the total amount of fees paid to You by the Government for servicing the Covered Flood Claims?

4.  Describe in detail all estimates made by You of the total losses You expected to incur as a result of damage caused by Hurricane Katrina, including but not limited to reserves set aside by You for Katrina losses, the date each such estimate was prepared and by whom.

Dated: November 20, 2009                    Respectfully submitted,

                                            KANNER & WHITELY L.L.C.

                                            By: _____

                                            Allan Kanner (LA #20580)
                                            a.kanner@kanner-law.com
                                            Cynthia St. Amant (LA #24439)
                                            c.stamant@kanner-law.com
                                            Melissa M. Fuselier (LA #31163)
                                            m.fuselier@kanner-law.com
                                            701 Camp Street
                                            New Orleans, LA  70130
                                            Telephone (504) 524-5777
                                            Fax: (504) 524-5763

                                            *and*

                                            SUSMAN GODFREY LLP

                                            Jonathan Bridges (TX #24028835)
                                            jbridges@SusmanGodfrey.com
                                            901 Main Street, Suite 5100
                                            Dallas, Texas  75202-3775
                                            Telephone:  (214) 754-1900
                                            Fax:  (214) 665-0856

Tibor Nagy (NY #4508271)
tnagy@SusmanGodfrey.com
654 Madison Ave., 5th Flr
New York, NY 10065
Telephone:  (212) 336-8332
Fax:  (212) 336-8340

Matthew R. Berry (WA #37364)
mberry@susmangodfrey.com
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 373-7394
Fax: (206) 516-3883

*and*

HERMAN, HERMAN, KATZ & COTLAR,
LLP

Stephen J. Herman (LA #23129)
sherman@hhkc.com
Soren E. Gisleson (LA #26302)
sgisleson@hhkc.com
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax: (504) 561-6024

***Attorneys for Plaintiff/Relator***

## Certificate of Service

I hereby certify that on November 20, 2009, a copy of the above and foregoing Plaintiff's First Set of Interrogatories to Defendant American National Property & Casualty Company has been served upon all counsel of record in this matter by placing the same in the U.S. Mail, first class postage prepaid and properly addressed, by facsimile and/or by electronic mail. I further certify that a true and correct copy of this document was sent via electronic mail (pursuant to agreement) on November 20, 2009, to Assistant United States Attorney, Jay D. Majors.

Allan Kanner

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*EX REL.* BRANCH CONSULTANTS, L.L.C.,<br><br>Plaintiff<br><br>VERSUS<br><br>ALLSTATE INSURANCE COMPANY, et. al.,<br><br>Defendants | CIVIL ACTION NO.: 06-4091<br><br>SECTION: "R" (1)<br><br>JUDGE: VANCE<br><br>MAGISTRATE: SHUSHAN |

### LIBERTY MUTUAL FIRE INSURANCE COMPANY'S
### RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), by and through its undersigned counsel, responds to Plaintiff's First Set of Interrogatories as follows:

### GENERAL OBJECTIONS

Liberty Mutual makes the following General objections to the Interrogatories. The General Objections set forth below apply to each individual Interrogatory. The assertion of the same, similar, or additional objections in response to specific Interrogatories does not waive any of Liberty Mutual's General Objections:

1. Liberty Mutual objects to the Interrogatories to the extent they seek discovery of information that is protected by the attorney-client privilege, joint defense privilege or other applicable privilege, protection, or immunity or which otherwise constitutes attorney work product material prepared in anticipation of litigation.

2. Liberty Mutual objects to the Interrogatories to the extent they seek to impose obligations on Liberty Mutual that are inconsistent with or greater than the obligations

1

imposed by the Federal Rules of Civil Procedure or any court order that may be entered that governs discovery.

3.     Liberty Mutual objects to the Interrogatories to the extent they seek the disclosure of information that is exclusively with the possession, custody or control of third parties.

4.     Liberty Mutual objects to the Interrogatories to the extent they seek information that is a matter of public record or to which Branch has equal access.

5.     Liberty Mutual objects to the Interrogatories to the extent they seek information concerning insurance policies other than those that may be applicable to properties identified in paragraph 29 of the First Amended Complaint.  Such information is proprietary, confidential, and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

6.     Liberty Mutual objects to the Interrogatories to the extent they seek information protected from disclosure by any protective order or non-disclosure agreement that is binding on Liberty Mutual.

7.     Liberty Mutual reserves the right to challenge the relevance or materiality of its response to the Interrogatories in any subsequent proceeding or trial or this or any other action.

8.     Liberty Mutual's failure to object to the Interrogatories on a particular ground shall not be construed as a waiver of its right to object on that ground or any other ground at a later time.

9.     With respect to any documents that Liberty Mutual may identify in response to the Interrogatories, Liberty Mutual does not waive, and specifically preserves, its

2

right to object to the authenticity and/or admissibility of any such documents in any subsequent proceeding, including the trial or this or any other action.

10.     Liberty Mutual reserves the right to supplement or amend its responses to the Interrogatories.

## OBJECTIONS TO DEFINITIONS & INSTRUCTIONS

1.     Liberty Mutual objects to Branch's Definitions and Instructions to the extent they would impose obligations on Liberty Mutual that are inconsistent with or greater than the obligations imposed by the Federal Rules of Civil Procedure or any court order that may be entered that governs discovery.

2.     Liberty Mutual objects to the definition of "You" and "Your" on the grounds that it identifies Liberty Mutual and to the extent it encompasses any entity other than Liberty Mutual and would require Liberty Mutual to provide information that is not within its possession, custody or control.

3.     Liberty Mutual objects to the definition of "WYO Insurer" and "Write-Your-Own Insurer" to the extent it encompasses any entity other than Liberty Mutual or would require Liberty Mutual to provide information that is not within its possession, custody, or control.

4.     Liberty Mutual objects to the definition of "Claim File" to the extent it would impose obligations on Liberty Mutual that are inconsistent with or greater than the obligations imposed by the Federal Rules of Civil Procedure or any court order that may be entered that governs discovery.  Liberty Mutual further objects to the definition of "Claim File" to the extent it encompasses documents and information for insurance policies other than those concerning properties identified in paragraph 29 of the First Amended Complaint.

3

148210

5.     Liberty Mutual objects to the definition of "Document" and "electronically stored information" to the extent it would impose obligations on Liberty Mutual that are inconsistent with or greater than the obligations imposed by the Federal Rules of Civil Procedure or any court order that may be entered that governs discovery.  Liberty Mutual further objects to the definition of "Document" and "electronically stored information" on the grounds that it is overbroad and unduly burdensome.

6.     Liberty Mutual objects to the definition of "Native format" to the extent it would impose obligations on Liberty Mutual that are inconsistent with or greater than the obligations imposed by the Federal Rules of Civil Procedure or any court order that may be entered that governs discovery.  Liberty Mutual further objects to the definition of "Native format" on the grounds that it is overbroad and unduly burdensome.

7.     Liberty Mutual objects to the definition of "Covered Flood Properties" to the extent it encompasses properties that have not been identified in paragraph 29 of the First Amended Complaint.

8.     Liberty Mutual objects to the definition of "Covered Flood Claims" to the extent it encompasses claims related to properties that have not been identified in paragraph 29 of the First Amended Complaint.  Liberty Mutual uses "Covered Flood Claims" in its responses to mean claims for Hurricane Katrina flood damage submitted to Liberty Mutual for those properties identified in paragraph 29 of the First Amended Complaint and for which Liberty Mutual issued flood insurance policies.

9.     Liberty Mutual objects to the definition of "Covered Wind Properties" to the extent it encompasses properties that have not been identified in paragraph 29 of the First Amended Complaint.

4

148210

10.     Liberty Mutual objects to the definition of "Covered Flood Properties" to the extent it encompasses claims for properties that have not been identified in paragraph 29 of the First Amended Complaint.  Liberty Mutual uses "Covered Flood Properties" in its responses to mean claims for Hurricane Katrina flood damage submitted to Liberty Mutual or an affiliated company for those properties identified in paragraph 29 of the First Amended Complaint and for which Liberty Mutual or an affiliated company issued flood insurance policies

11.     Liberty Mutual objects to the relevant time period for the Interrogatories as overbroad, unduly burdensome, not relevant to the claim or defense of any party, and not calculated to lead to the discovery of admissible evidence.  In responding to the Interrogatories, Liberty Mutual will treat the relevant time period as commencing no July 1, 2005 and continuing through to the filing of the complaint in this action on August 2, 2006.

## RESPONSE TO INTERROGATORIES

**INTERROGATORY NO. 1**:  What are the total number and dollar amount of Covered Flood Claims submitted by You to the Government?

### RESPONSE TO INTERROGATORY NO. 1:

Liberty Mutual objects to Interrogatory No. 1 as overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence insofar as Interrogatory No. 1 seeks information concerning claims other than those that may be applicable to properties identified in Paragraph 29 of the First Amended Complaint. Subject to these objections, Liberty Mutual will produce documents reflecting the total number and dollar amount of Covered Flood Claims submitted by Liberty Mutual to the Government regarding the properties identified in Paragraph 29 of the First Amended Complaint subject to an appropriate confidentiality order.

5

148210

**INTERROGATORY NO. 2**:  What are the total number and dollar amount of Covered Wind Claims paid by You?

### RESPONSE TO INTERROGATORY NO. 2:

Liberty Mutual objects to Interrogatory No. 2 as overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence insofar as Interrogatory No. 2 seeks information concerning claims other than those that may be applicable to properties identified in Paragraph 29 of the First Amended Complaint. Subject to these objections, Liberty Mutual states that with regard to the properties identified in Paragraph 29: (a) the property identified in Paragraph 29(a) of the First Amended Complaint suffered no legitimate wind damage, and the homeowners did not pursue their homeowners claim, and (b) the property identified in Paragraph 29(b) of the First Amended Complaint was not insured by Liberty Mutual on August 29, 2005 because the homeowner policy was canceled in 2003 due to non-payment.  Therefore, as to the properties identified in Paragraph 29 of the First Amended Complaint, Liberty Mutual made no payments on wind claims.

**INTERROGATORY NO. 3**:  What is the total amount of fees paid to You by the Government for servicing the Covered Flood Claims?

### RESPONSE TO INTERROGATORY NO. 3:

Liberty Mutual objects to Interrogatory No. 3 as overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence insofar as Interrogatory No. 3 seeks information concerning claims other than those that may be applicable to properties identified in Paragraph 29 of the First Amended Complaint. Subject to these objections, Liberty Mutual will produce documents reflecting the terms of payment for servicing Covered Flood Claims regarding the properties identified in Paragraph 29 of the First Amended Complaint subject to an appropriate confidentiality order.

148210

**INTERROGATORY NO. 4**:  Describe in detail all estimates by You of the total losses You expected to incur as a result of damage caused by Hurricane Katrina, including but not limited to reserves set aside by You for Katrina losses, the date each such estimate was prepared and by whom.

### RESPONSE TO INTERROGATORY NO. 4:

Liberty Mutual objects to Interrogatory No. 4 as overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence insofar as Interrogatory No. 4 seeks information concerning claims other than those that may be applicable to properties identified in Paragraph 29 of the First Amended Complaint. Further, Liberty Mutual objects to Interrogatory No. 4 as seeking information which is confidential or proprietary in nature.  Subject to these objections, Liberty Mutual will produce documents, if any, reflecting the estimates of damages for claims related to the properties identified in Paragraph 29 of the First Amended Complaint subject to an appropriate confidentiality order.

Respectfully submitted,

BARRASSO, USDIN, KUPPERMAN
FREEMAN & SARVER, LLC

Judy Y. Barrasso, T.A. (2814)
jbarrasso@barrassousdin.com
John W. Joyce (27525)
jjoyce@barrassousdin.com
Keith L. Magness (29962)
kmagness@barrassousdin.com
909 Poydras Street, 24th Floor
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:   (504) 589-9701

Attorneys for defendant,
Liberty Mutual Fire Insurance Company

148210

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all counsel of record by electronic transmission on this 4th day of January, 2010.

KEITH L. MAGNESS

148210

## **VERIFICATION**

_____, being duly sworn, deposes and says:

I am a duly authorized representative of defendant Liberty Mutual Fire Insurance Company. I verify that I have read the foregoing LIBERTY MUTUAL FIRE INSURANCE COMPANY'S RESPONSES TO PLAINTIFF'S FIRST INTERROGATORIES and hereby declare under penalty of perjury that the answers are true and correct to the best of my personal knowledge and belief.


_____


Sworn to and subscribed before me, this _____
day of _____, 20___.


_____
                Notary Public
Notary No. _____
My Commission expires: _____

9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, *EX REL.* BRANCH CONSULTANTS, L.L.C., | CIVIL ACTION NO.: 06-4091 |
| Plaintiff | SECTION: "R" (1) |
| VERSUS | JUDGE: VANCE |
| ALLSTATE INSURANCE COMPANY, et. al., | |
| Defendants | MAGISTRATE: SHUSHAN |

### RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES BY AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY

**NOW INTO COURT,** through undersigned counsel, comes defendant, American National Property and Casualty Company ("ANPAC"), incorrectly referred to as "American National Property & Casualty Company," and for response to Interrogatories propounded by plaintiff-relator, Branch Consultants, L.L.C., provides as follows:

### PREFACE

At the onset of providing responses to these Interrogatories, any and all documents and/or information provided herewith are produced subject to and pending issuance of a Protective Order in this matter. Any and all documents and information produced with these Interrogatories are confidential and should be considered as "Confidential Information" or "Highly Confidential

Information," or other similar language that clearly and expressly identifies the confidential and protected nature of the documents and or information. These documents and information shall be subject to the terms and conditions of the Protective Order issued by this Honorable Court.

Furthermore, the information being produced in connection with these Interrogatories may not include electronically stored information ("ESI") and/or information from electronically stored documents that may be in the possession of ANPAC because this information is not reasonably accessible because of undue burden or cost. "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. Rule Civ. Pro. 26(b)(2)(B). ANPAC specifically reserves any and all rights to object to discovery seeking information and/or documents from electronically stored information under the Federal Rules of Civil Procedure, the Federal Rules of Evidence and any and all applicable laws.

**INTERROGATORY NO. 1:**

What are the total number and dollar amount of Covered Flood Claims submitted by You to the Government?

**ANSWER TO INTERROGATORY NO. 1:**

ANPAC objects to Interrogatory No. 1 on the basis that it is vague, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. ANPAC further objects to Interrogatory No. 1 because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. Rule Civ. Pro. 26(b)(1). The aggregate data or information requested by plaintiff for all "Covered Flood Claims" is neither relevant nor calculated to lead to the discovery of

admissible evidence for the claims presented against ANPAC, which are limited to the properties identified in Paragraph 27 of the First Amended Complaint.

This discovery request improperly seeks information regarding the "total number and dollar amounts" for all "Covered Flood Claims" without limitation and regardless of whether plaintiff is the "original source" for each of these claims and/or "Covered Flood Properties." *See Rockwell International Corp. v. United States*, 549 U.S. 457, 476, 127 S.Ct. 1397, 1410, 167 L.Ed.2d 190 (2007) ("Section 3730(e)(4) does not permit jurisdiction in gross just because a relator is an original source with respect to some claim. We, along with every court to have addressed the question, conclude that § 3730(e)(4) does not permit such claim smuggling"). "As then-Judge Alito explained, '[t]he plaintiff's decision to join all of his or her claims in a single lawsuit should not rescue claims that would have been doomed by section (3)(4) if they had been asserted in a separate action." *Id.* (citing *United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 102 (3rd Cir. 2000). This discovery request does not even attempt to limit its scope to the properties identified in Paragraph 27 of the First Amended Complaint and, instead, requests discovery from ANPAC on matters that are barred by the prohibition on "claim smuggling."

Furthermore, ANPAC objects to Interrogatory No. 1 to the extent it seeks electronically stored information and/or information from electronically stored documents for all "Covered Flood Claims" without limitation, as this information is "not reasonably accessible because of undue burden and cost." *See* Fed. Rule Civ. Pro. 26(b)(2)(B). ANPAC objects to all "Definitions & Instructions" that improperly expand the discovery request beyond what is relevant and/or allowed under the Federal Rules of

Civil Procedure.  ANPAC further objects to providing any responses or information that includes or is based upon "Confidential Information" or "Highly Confidential Information," which shall be subject to the terms and conditions of a Protective Order.

ANPAC further objects based upon the *Order* dated 16 December 2009 (Rec.Doc. 277) in which Magistrate Judge Shushan requested the submission of discovery plans that "shall address whether the discovery orders in [United] States *ex rel.* Rigsby v. State Farm Insurance Co., 06-CV-433 (S.D.Miss) are appropriate for use in this action."  The discovery orders in *Rigsby* precluded the relator from obtaining discovery on any matter that did not directly relate to the flood claim identified in the pleadings.

Subject to all of these objections, ANPAC did not "submit" any claims "to the Government."  ANPAC contracted with an independent contractor to administer the flood policies issued through the WYO Program and to administer, handle and oversee the adjustment, presentment and payment of all claims made under those flood policies. ANPAC further avers that National Flood Services, Inc. ("NFS") is an authorized and approved vendor of the federal government and an independent contractor.  NFS is the third party administrator for all ANPAC flood policies issued through the WYO Program and, *inter alia*, administers, handles and/or oversees the adjustment, presentment and payment of all claims made under those flood policies.  NFS engages and assigns independent flood adjusters for the investigation, inspection and adjustment of claims made under flood policies issued by ANPAC—these independent flood adjusters worked separately from those adjusters who investigated, inspected and adjusted claims under any applicable homeowners' insurance policy.  All presentments or claims made to the federal government for payment under flood policies issued by ANPAC through the

4

WYO Program were made independently and directly by NFS to the federal government based upon the investigations, inspections and adjustments made and documents prepared by independent flood adjusters engaged by NFS.

In further responding, and subject to all objections, ANPAC refers to the documents identified in Section (II)(1) through (14) of its *Initial Disclosure Statement* regarding the properties identified in Paragraph 27 of the First Amended Complaint. ANPAC did not issue a flood insurance policy for the property located at 109 Lighthouse Point, Slidell, Louisiana 70458, as identified in subpart (e) of Paragraph 27 in the First Amended Complaint. ANPAC also did not issue a flood insurance policy for the property located at 7562 Horizon Drive, New Orleans, Louisiana 70129, as set forth in subpart (i) of Paragraph 27 in the First Amended Complaint. No flood payments were made by ANPAC for the properties identified in subparts (e) and (i) of Paragraph 27 in the First Amended Complaint.

**INTERROGATORY NO. 2:**

What are the total number and dollar amount of Covered Wind Claims paid by You?

**ANSWER TO INTERROGATORY NO. 2:**

ANPAC objects to Interrogatory No. 2 on the basis that it is vague, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. ANPAC further objects to Interrogatory No. 2 because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. Rule Civ. Pro. 26(b)(1). The aggregate data or information requested by plaintiff for all "Covered Wind Claims" is neither relevant nor calculated to lead to the discovery of

admissible evidence for the claims presented against ANPAC, which are limited to the properties identified in Paragraph 27 of the First Amended Complaint.

This discovery request improperly seeks information regarding the "total number and dollar amounts" for all "Covered Wind Claims" without limitation and regardless of whether plaintiff is the "original source" for each of these claims and/or "Covered Wind Properties." *See Rockwell International Corp. v. United States*, 549 U.S. 457, 476, 127 S.Ct. 1397, 1410, 167 L.Ed.2d 190 (2007) ("Section 3730(e)(4) does not permit jurisdiction in gross just because a relator is an original source with respect to some claim. We, along with every court to have addressed the question, conclude that § 3730(e)(4) does not permit such claim smuggling"). "As then-Judge Alito explained, '[t]he plaintiff's decision to join all of his or her claims in a single lawsuit should not rescue claims that would have been doomed by section (3)(4) if they had been asserted in a separate action." *Id.* (citing *United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 102 (3ʳᵈ Cir. 2000). This discovery request does not even attempt to limit its scope to the properties identified in Paragraph 27 of the First Amended Complaint and, instead, requests discovery from ANPAC on matters that are barred by the prohibition on "claim smuggling."

Furthermore, ANPAC objects to Interrogatory No. 2 to the extent it seeks electronically stored information and/or information from electronically stored documents for all "Covered Flood Claims" without limitation, as this information is "not reasonably accessible because of undue burden and cost." *See* Fed. Rule Civ. Pro. 26(b)(2)(B). ANPAC objects to all "Definitions & Instructions" that improperly expand the discovery request beyond what is relevant and/or allowed under the Federal Rules of

Civil Procedure, including, but not limited to, "Definition & Instruction" No. 1 which improperly requests responses to written discovery from individuals, associations and/or entities that have not been made a party to this litigation—a practice that is prohibited under the Federal Rules of Civil Procedure.  ANPAC further objects to providing any responses or information that includes or is based upon "Confidential Information" or "Highly Confidential Information," which shall be subject to the terms and conditions of a Protective Order.

ANPAC further objects based upon the *Order* dated 16 December 2009 (Rec.Doc. 277) in which Magistrate Judge Shushan requested the submission of discovery plans that "shall address whether the discovery orders in [United] States *ex rel.* Rigsby v. State Farm Insurance Co., 06-CV-433 (S.D.Miss) are appropriate for use in this action."  The discovery orders in *Rigsby* precluded the relator from obtaining discovery on "wind claims" or any other matter that did not directly relate to the flood claim identified in the pleadings.

Subject to all of these objections, ANPAC did not provide "insurance against wind damage" for the properties identified in Paragraph 27 of the First Amended Complaint.

**INTERROGATORY NO. 3:**

What is the total amount of fees paid to You by the Government for servicing the Covered Flood Claims?

**ANSWER TO INTERROGATORY NO. 3:**

ANPAC objects to Interrogatory No. 3 on the basis that it is vague, unduly burdensome, and not calculated to lead to the discovery of admissible evidence.  ANPAC

7

further objects to Interrogatory No. 3 because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. Rule Civ. Pro. 26(b)(1). The "fees paid . . . by the Government for servicing the Covered Flood Claims" is neither relevant nor calculated to lead to the discovery of admissible evidence for the claims presented against ANPAC, which are limited to the properties identified in Paragraph 27 of the First Amended Complaint.

This discovery request improperly seeks information regarding the "fees paid . . . by the Government for servicing the Covered Flood Claims" without limitation and regardless of whether plaintiff is the "original source" for each of the "Covered Flood Claims." *See Rockwell International Corp. v. United States*, 549 U.S. 457, 476, 127 S.Ct. 1397, 1410, 167 L.Ed.2d 190 (2007) ("Section 3730(e)(4) does not permit jurisdiction in gross just because a relator is an original source with respect to some claim. We, along with every court to have addressed the question, conclude that § 3730(e)(4) does not permit such claim smuggling"). "As then-Judge Alito explained, '[t]he plaintiff's decision to join all of his or her claims in a single lawsuit should not rescue claims that would have been doomed by section (3)(4) if they had been asserted in a separate action." *Id.* (citing *United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 102 (3rd Cir. 2000). This discovery request does not even attempt to limit its scope to the properties identified in Paragraph 27 of the First Amended Complaint and, instead, requests discovery from ANPAC on matters that are barred by the prohibition on "claim smuggling."

Furthermore, ANPAC objects to Interrogatory No. 3 to the extent it seeks electronically stored information and/or information from electronically stored

documents for all "Covered Flood Claims" without limitation, as this information is "not reasonably accessible because of undue burden and cost." *See* Fed. Rule Civ. Pro. 26(b)(2)(B). ANPAC objects to all "Definitions & Instructions" that improperly expand the discovery request beyond what is relevant and/or allowed under the Federal Rules of Civil Procedure. ANPAC further objects to providing any responses or information that includes or is based upon "Confidential Information" or "Highly Confidential Information," which shall be subject to the terms and conditions of a Protective Order.

ANPAC further objects based upon the *Order* dated 16 December 2009 (Rec.Doc. 277) in which Magistrate Judge Shushan requested the submission of discovery plans that "shall address whether the discovery orders in [United] States *ex rel.* Rigsby v. State Farm Insurance Co., 06-CV-433 (S.D.Miss) are appropriate for use in this action." The discovery orders in *Rigsby* precluded the relator from obtaining discovery on any matter that did not directly relate to the flood claim identified in the pleadings.

## INTERROGATORY NO. 4:

Describe in detail all estimates made by You of the total losses You expected to incur as a result of damage caused by Hurricane Katrina, including but not limited to reserves set aside by You for Katrina losses, the date each such estimate was prepared and by whom.

### ANSWER TO INTERROGATORY NO. 4:

ANPAC objects to Interrogatory No. 4 on the basis that it is vague, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. ANPAC further objects to Interrogatory No. 4 because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. Rule Civ. Pro. 26(b)(1). Any purported "estimates" and "reserves" are neither relevant nor

calculated to lead to the discovery of admissible evidence for the claims presented against ANPAC, which are limited to the properties identified in Paragraph 27 of the First Amended Complaint.

This discovery request improperly seeks information regarding purported "estimates" and "reserves" without limitation and regardless of whether plaintiff is the "original source" for each and/or all of the claims for which this information is requested. *See Rockwell International Corp. v. United States*, 549 U.S. 457, 476, 127 S.Ct. 1397, 1410, 167 L.Ed.2d 190 (2007) ("Section 3730(e)(4) does not permit jurisdiction in gross just because a relator is an original source with respect to some claim. We, along with every court to have addressed the question, conclude that § 3730(e)(4) does not permit such claim smuggling"). "As then-Judge Alito explained, '[t]he plaintiff's decision to join all of his or her claims in a single lawsuit should not rescue claims that would have been doomed by section (3)(4) if they had been asserted in a separate action." *Id.* (citing *United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 102 (3rd Cir. 2000). This discovery request does not even attempt to limit its scope to the properties identified in Paragraph 27 of the First Amended Complaint and, instead, requests discovery from ANPAC on matters that are barred by the prohibition on "claim smuggling."

Furthermore, ANPAC objects to Interrogatory No. 4 to the extent it seeks electronically stored information and/or information from electronically stored documents for any purported "estimates" and "reserves" without limitation, as this information is "not reasonably accessible because of undue burden and cost." *See* Fed. Rule Civ. Pro. 26(b)(2)(B). ANPAC objects to all "Definitions & Instructions" that

improperly expand the discovery request beyond what is relevant and/or allowed under the Federal Rules of Civil Procedure. ANPAC further objects to providing any responses or information that includes or is based upon "Confidential Information" or "Highly Confidential Information," which shall be subject to the terms and conditions of a Protective Order.

ANPAC further objects based upon the *Order* dated 16 December 2009 (Rec.Doc. 277) in which Magistrate Judge Shushan requested the submission of discovery plans that "shall address whether the discovery orders in [United] States *ex rel.* Rigsby v. State Farm Insurance Co., 06-CV-433 (S.D.Miss) are appropriate for use in this action." The discovery orders in *Rigsby* precluded the relator from obtaining discovery on any matter that did not directly relate to the flood claim identified in the pleadings.

Respectfully submitted,

**LARZELERE PICOU WELLS
SIMPSON LONERO, LLC**
Suite 1100 - Two Lakeway Center
3850 N. Causeway Boulevard
Metairie, LA 70002
Telephone:    (504) 834-6500
Fax:  (504) 834-6565

BY:    _____

**JAY M. LONERO, T.A. (No. 20642)**
   **jlonero@lwpsl.com**
**CHRISTOPHER R. PENNISON (No. 22584)**
   **cpennison@lwpsl.com**
**ANGIE ARCENEAUX AKERS (No. 26786)**
   **aakers@lwpsl.com**

**ATTORNEYS FOR AMERICAN NATIONAL
PROPERTY AND CASUALTY COMPANY**

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of December, 2009, I served a copy of the foregoing pleading upon all counsel of record by e-mailing, faxing, and/or mailing the same by United States mail, properly addressed and first class postage prepaid.

_____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

```
-----------------------------------------------------------------x
                                            :
                                            :
UNITED STATES OF AMERICA,                   :
EX REL. BRANCH CONSULTANTS, L.L.C.,         :        Case No.: 06-cv-4091 (SSV)
                                            :
                      Plaintiff,            :           Sect.: R
                                            :
            v.                              :
                                            :
ALLSTATE INS. CO., et al.,                  :
                                            :
                      Defendants.           :
                                            :
-----------------------------------------------------------------x
```

**AMERICAN RELIABLE INSURANCE COMPANY'S RESPONSE TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Now comes American Reliable Insurance Company ("American Reliable"), and

respectfully offers the following response to Plaintiff's First Set of Interrogatories, dated

November 20, 2009:

### GENERAL OBJECTIONS

1.      American Reliable reserves: (1) all objections as to competency, privilege,

relevancy, materiality and the admissibility of these responses, in whole or part, or the subject

matter thereof; (2) the right to object to the use of any of said responses, in whole or in part or

the subject matter covered thereby, in any subsequent step or proceeding in this action, on any or

all of the foregoing grounds whether or not enumerated herein; (3) the right to object on any and

all proper grounds, at any time, to other discovery requests or other discovery procedures

involving or related to the subject matter of the discovery requests answered herein; and (4) the

right to supplement, revise, correct or clarify the following responses.

2.     American Reliable rejects any obligation to search for, or produce, information or documents in the possession or control of persons other than itself, and any intention or obligation to respond on behalf of any entity other than itself.

3.     American Reliable objects to plaintiff's discovery requests insofar as they seek to require defendant to make legal conclusions, including the relationship of third parties to itself, and agency and employment relations.

4.     American Reliable objects to searching its files and providing information or documentation for any period of time not reasonably related to the claim in question on the grounds that such disclosure is unduly burdensome.  To the extent that the plaintiff may be requesting information and documents regarding other periods of time, defendant objects on the basis that the requests are not reasonably calculated to lead to the discovery of admissible evidence.

5.     American Reliable objects to the discovery of information and documents that are protected by the attorney-client privilege, joint defense privilege or other applicable privilege, protection, or immunity or which otherwise constitutes attorney work-product material prepared in anticipation of litigation.

6.     American Reliable objects to plaintiff's discovery requests to the extent that they seek information that is a matter of public record or to which plaintiff has equal access.

## RESPONSES

**Interrogatory No. 1:**

What are the total number and dollar amount of Covered Flood Claims submitted by You to the Government?

**Objection and Response to Interrogatory No. 1:**

Objection: This interrogatory is vague, overly broad and unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence. See claim files for information related to the properties identified in suit.

**Interrogatory No. 2:**

What are the total number and dollar amount of Covered Wind Claims paid by You?

**Objection and Response to Interrogatory No. 2:**

Objection: This interrogatory is vague, overly broad and unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence.

**Interrogatory No. 3:**

What is the total amount of fees paid to You by the Government for servicing the Covered Flood Claims?

**Objection and Response to Interrogatory No. 3:**

Objection: This interrogatory is vague, overly broad and unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence.

**Interrogatory No. 4:**

Describe in detail all estimates made by You of the total losses You expected to incur as a result of damage caused by Hurricane Katrina, including but not limited to reserves set aside by You for Katrina losses, the date each such estimate was prepared and by whom.

**Objection and Response to Interrogatory No. 4:**

Objection: This interrogatory is vague, overly broad and unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to the objection and without waiving the same, American Reliable did not insure the three properties identified in suit for damage sustained by wind.

Respectfully submitted:

_____
GORDON P. SEROU, JR. (No. 14432)
JULIA P. MCLELLAN (No. 22113)
Law Offices of Gordon P. Serou, Jr., L.L.C.
gps@seroulaw.com
650 Poydras Street, Suite 1420
New Orleans, Louisiana 70130
Phone No.: 504-299-3421

**Attorneys for American Reliable
Insurance Company**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all parties to this suit through counsel by electronic mail on this 23rd day of December, 2009.

_____
GORDON P. SEROU, JR.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| UNITED STATES OF AMERICA, EX REL. BRANCH CONSULTANTS, L.L.C., | CIVIL ACTION NO.: 06-4091 |
| Plaintiff | SECTION: "R" (1) |
| VERSUS | JUDGE: VANCE |
| ALLSTATE INSURANCE COMPANY, et al., | |
| Defendants | MAGISTRATE: SHUSHAN |

## FIDELITY DEFENDANTS' RESPONSE TO
## PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendants, Fidelity National Property and Casualty Insurance Company and Fidelity National Insurance Company, Write-Your-Own ("WYO") Program carriers participating in the U.S. Government's National Flood Insurance Program ("NFIP") pursuant to the National Flood Insurance Act of 1968, as amended (the "NFIA")(42 U.S.C. § 4001 *et seq*.), appearing herein in their "fiduciary"[1] capacity as the "fiscal agent of the United States,"[2] pursuant to Rule 33 if the Federal Rules of Civil Procedure provides the following objections and responses to Plaintiff's First Set of Interrogatories, dated November 20, 2009 as follows:

---

[1] 44 C.F.R. §62.23(f).

[2] 42 U.S.C. §4071(a)(1); *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998).

**SPECIFIC OBJECTIONS TO PLAINTIFF'S DEFINITIONS & INSTRUCTIONS**

1.     Fidelity objects to Branch's Definitions and Instructions to the extent they would impose obligations on Fidelity that are inconsistent with or greater than the obligations imposed by the Federal Rules of Civil Procedure or any court order that may be entered that governs discovery.

2.     Fidelity objects to the definition of "WYO Insurer" and "Write-Your-Own Insurer" to the extent it encompasses any entity other than Fidelity or would require Fidelity to produce documents that are not within its possession, custody, or control

3.     Fidelity objects to the definition of "Claim File" to the extent it would impose obligations on Fidelity that are inconsistent with or greater than the obligations imposed by the Federal Rules of Civil Procedure or any court order that may be entered that governs discovery. Fidelity further objects to the definition of "Claim File" to the extent it encompasses documents and information for insurance policies other than those concerning properties identified in paragraph 23 of the First Amended Complaint.

4.     Fidelity objects to the definition of "Document" and "electronically stored information" to the extent it would impose obligations on Fidelity that are inconsistent with or greater than the obligations imposed by the Federal Rules of Civil Procedure or any court order that may be entered that governs discovery.  Fidelity further objects to the definition of "Document" and "electronically stored information" on the grounds that it is overbroad and unduly burdensome.

5.     Fidelity objects to the definition of "Native format" to the extent it would impose obligations on Fidelity that are inconsistent with or greater than the obligations imposed by the Federal Rules of Civil Procedure or any court order that may be entered that governs discovery.

Fidelity further objects to the definition of "Native format" on the grounds that it is overbroad and unduly burdensome.

6.    Fidelity objects to the definition of "Covered Flood Properties" to the extent it encompasses properties that have not been identified in paragraph 23 of the First Amended Complaint.

7.    Fidelity objects to the definition of "Covered Flood Claims" to the extent it encompasses claims related to properties that have not been identified in paragraph 23 of the First Amended Complaint. Fidelity uses "Covered Flood Claims" in its responses to mean claims for Hurricane Katrina flood damage submitted to Fidelity for those properties identified in paragraph 23 of the First Amended Complaint and for which Fidelity issued flood insurance policies.

8.    Fidelity objects to the definition of "Covered Wind Properties" to the extent it encompasses properties that have not been identified in paragraph 23 of the First Amended Complaint.

9.    Fidelity objects to the definition of "Covered Wind Claims" to the extent it encompasses claims for properties that have not been identified in paragraph 23 of the First Amended Complaint. Fidelity uses "Covered Wind Claims" in its responses to mean claims for Hurricane Katrina wind damage submitted to Fidelity for those properties identified in paragraph 23 of the First Amended Complaint and for which Fidelity issued homeowner's insurance policies.

10.    Fidelity objects to the relevant time period for the Interrogatories as overbroad, unduly burdensome, not relevant to the claim or defense of any party, and not calculated to lead to the discovery of admissible evidence. In responding to the Interrogatories, Fidelity will treat

the relevant time period as commencing on July 1, 2005 and continuing through to the filing of the complaint in this action on August 2, 2006.

**INTERROGATORY NO. 1:**

What are the total number and dollar amount of Covered Flood Claims submitted by You to the Government?

**ANSWER:**

First objection. Plaintiff's Interrogatory No.1 exceeds the scope of the Court's current jurisdiction of this case which is currently limited to the specific properties listed in the First Amended Complaint. Second Objection. Plaintiff's Interrogatory No. 1 is overly broad and unduly burdensome. Third objection. Plaintiff's Interrogatory No. 1 is outside the scope of the allegations contained within Plaintiff's First Amended Complaint and the properties listed therein. Fourth objection. Plaintiff's Interrogatory No. 1 is irrelevant and not reasonably calculated to lead to admissible evidence regarding any properties other than those specifically identified in Plaintiff's First Amended Complaint. Without waiving any objections, see Fidelity's claim files produced in conjunction with its Rule 26 Disclosures subject to an appropriate confidentiality order agreed upon by the parties.

**INTERROGATORY NO. 2:**

What are the total number and dollar amount of Covered Wind Claims paid by You?

**ANSWER:**

First objection. Plaintiff's Interrogatory No.2 exceeds the scope of the Court's current jurisdiction of this case which is currently limited to the specific properties listed in the First Amended Complaint. Second Objection. Plaintiff's Interrogatory No. 2 is overly broad and unduly burdensome. Third objection. Plaintiff's Interrogatory No. 2 is outside the scope of the

allegations contained within Plaintiff's First Amended Complaint and the properties listed therein.   Third objection.   Plaintiff's Interrogatory No. 2 is irrelevant and not reasonably calculated to lead to admissible evidence regarding any properties other than those specifically identified in Plaintiff's First Amended Complaint.   Without waiving any objections, Fidelity responds as follows: regarding the properties specifically identified in Plaintiff's First Amended Complaint, the answer is none.

**INTERROGATORY NO. 3:**

What is the total amount of fees paid to You by the Government for servicing the Covered Flood Claims?

**ANSWER:**

First objection.   Plaintiff's Interrogatory No.3 exceeds the scope of the Court's current jurisdiction of this case which is currently limited to the specific properties listed in the First Amended Complaint. Second objection.   Plaintiff's Interrogatory No. 3 is overly broad and unduly burdensome.   Third objection.   Plaintiff's Interrogatory No. 3 is outside the scope of the allegations contained within Plaintiff's First Amended Complaint and the properties listed therein.   Fourth objection.   Plaintiff's Interrogatory No. 3 is irrelevant and not reasonably calculated to lead to admissible evidence regarding any properties other than those specifically identified in Plaintiff's First Amended Complaint.  Fifth objection.   Plaintiff's Interrogatory No. 3 is vague as the term "fees" is not specifically identified or defined.   Without waiving any objections, Fidelity responds as follows: pursuant to federal law in place at the time of Hurricane Katrina, WYO carriers such as Fidelity were to receive a 3.3% commission of all moneys paid to an insured based upon a flood loss claim.   *See Eddins v. Omega Ins. Co.*, 825 F.Supp. 752 (N.D.Miss. 1993).   In addition, please see Fidelity's Rule 26 Disclosures regarding the amount of

U.S. Treasury dollars paid to the named insureds for the properties identified in Plaintiff's First Amended Complaint subject to the Consent Protective Order.

**INTERROGATORY NO. 4:**

Describe in detail all estimates made by You of the total losses You expected to incur as a result of damage caused by Hurricane Katrina, including but not limited to reserves set aside by You for Katrina losses, the date each such estimate was prepared and by whom.

**ANSWER:**

First objection. Plaintiff's Interrogatory No.4 exceeds the scope of the Court's current jurisdiction of this case which is currently limited to the specific properties listed in the First Amended Complaint. Second objection. Plaintiff's Interrogatory No. 4 is overly broad and unduly burdensome. Third objection. Plaintiff's Interrogatory No. 4 is outside the scope of the allegations contained within Plaintiff's First Amended Complaint and the properties listed therein. Fourth objection. Plaintiff's Interrogatory No. 4 is irrelevant and not reasonably calculated to lead to admissible evidence. Fifth objection. Plaintiff's Interrogatory No. 4 is vague as the term "reserves" is not specifically identified or defined. Without waiving any objections, Fidelity responds as follows: please see Fidelity's Rule 26 Disclosures for the estimates, the date of the estimates and who prepared said estimates for the properties specifically identified in Plaintiff's First Amended Complaint subject to the Consent Protective Order.

Fidelity reserves the right to supplement and/or amend its responses to these Interrogatories.

Dated this 23 day of December, 2009.

Respectfully submitted,

NIELSEN LAW FIRM, LLC

*William T. Treas*

Gerald J. Nielsen (17078)
gjnielsen@aol.com
William T. Treas (26537)
wtreas@nielsenlawfirm.com
3838 North Causeway Boulevard, Suite 2850
Metairie, Louisiana 70002
P: (504) 837-2500      F: (504) 832-9165
Attorneys for Fidelity National Insurance Company
and Fidelity National Property and Casualty
Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has this date been served upon all parties to this suit through counsel via electronic mail and/or by placing same in the United States mail, postage prepaid and properly addressed on this 23 day of December, 2009.

*William T. Treas*

William T. Treas

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

----------------------------------------------------------------x
                                              :

UNITED STATES OF AMERICA,
*EX REL.* BRANCH CONSULTANTS, L.L.C.,      :      Case No.: 06-cv-4091 (SSV)
                                           :

                             Plaintiff,     :            Sect.: R
                                           :

                        v.               :

ALLSTATE INS. CO., et al.,                  :
                                           :

                            Defendants.   :
                                           :
----------------------------------------------------------------x

### THE STANDARD FIRE INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, The Standard Fire Insurance Company ("Standard Fire"), named as St. Paul Travelers Companies, by and through its undersigned counsel, provides the following objections and responses to Plaintiff's First Set of Interrogatories, dated November 20, 2009 (the "Interrogatories").

### GENERAL OBJECTIONS

Standard Fire makes the following General Objections to the Interrogatories. The General Objections set forth below apply to each individual Interrogatory. The assertion of the same, similar, or additional objections in response to specific Interrogatories does not waive any of Standard Fire's General Objections:

1.      Standard Fire objects to the Interrogatories to the extent they seek discovery of information from St. Paul Travelers Companies. No company named "St. Paul Travelers Companies" currently exists or issued flood insurance policies in Louisiana.

2.      Standard Fire objects to the Interrogatories to the extent they seek discovery of information that is protected by the attorney-client privilege, joint defense privilege or other applicable privilege, protection, or immunity or which otherwise constitutes attorney work product material prepared in anticipation of litigation.

3.      Standard Fire objects to the Interrogatories to the extent they seek to impose obligations on Standard Fire that are inconsistent with or greater than the obligations imposed by the Federal Rules of Civil Procedure or any court order that may be entered that governs discovery.

4.      Standard Fire objects to the Interrogatories to the extent they seek the disclosure of information that is exclusively within the possession, custody or control of third parties.

5.      Standard Fire objects to the Interrogatories to the extent they seek information that is a matter of public record or to which Branch has equal access.

6.      Standard Fire objects to the Interrogatories to the extent they seek information concerning insurance policies other than those that may be applicable to properties identified in paragraph 31 of the First Amended Complaint.  Such information is proprietary, confidential, and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

7.      Standard Fire objects to the Interrogatories to the extent they seek information protected from disclosure by any protective order or non-disclosure agreement that is binding on Standard Fire.

8.     Standard Fire reserves the right to challenge the relevance or materiality of its responses to the Interrogatories in any subsequent proceeding or trial of this or any other action.

9.     Standard Fire's failure to object to the Interrogatories on a particular ground shall not be construed as a waiver of its right to object on that ground or any other ground at a later time.

10.    With respect to any documents that Standard Fire may identify in response to the Interrogatories, Standard Fire does not waive, and specifically preserves, its right to object to the authenticity and/or admissibility of any such documents in any subsequent proceeding, including the trial of this or any other action.

11.    Standard Fire reserves the right to supplement or amend its responses to the Interrogatories.

## **OBJECTIONS TO DEFINITIONS & INSTRUCTIONS**

1.     Standard Fire objects to Branch's Definitions and Instructions to the extent they would impose obligations on Standard Fire that are inconsistent with or greater than the obligations imposed by the Federal Rules of Civil Procedure or any court order that may be entered that governs discovery.

2.     Standard Fire objects to the definition of "You" and "Your" on the grounds that it identifies St. Paul Travelers Companies and to the extent it encompasses any entity other than The Standard Fire Insurance Company and would require Standard Fire to provide information that is not within its possession, custody, or control.

3.     Standard Fire objects to the definition of "WYO Insurer" and "Write-Your-Own Insurer" to the extent it encompasses any entity other than The Standard Fire

3

Insurance Company or would require Standard Fire to provide information that is not within its possession, custody, or control.

4.      Standard Fire objects to the definition of "Claim File" to the extent it would impose obligations on Standard Fire that are inconsistent with or greater than the obligations imposed by the Federal Rules of Civil Procedure or any court order that may be entered that governs discovery.  Standard Fire further objects to the definition of "Claim File" to the extent it encompasses documents and information for insurance policies other than those concerning properties identified in paragraph 31 of the First Amended Complaint.

5.       Standard Fire objects to the definition of "Document" and "electronically stored information" to the extent it would impose obligations on Standard Fire that are inconsistent with or greater than the obligations imposed by the Federal Rules of Civil Procedure or any court order that may be entered that governs discovery.  Standard Fire further objects to the definition of "Document" and "electronically stored information" on the grounds that it is overbroad and unduly burdensome.

6.      Standard Fire objects to the definition of "Native format" to the extent it would impose obligations on Standard Fire that are inconsistent with or greater than the obligations imposed by the Federal Rules of Civil Procedure or any court order that may be entered that governs discovery.  Standard Fire further objects to the definition of "Native format" on the grounds that it is overbroad and unduly burdensome.

7.      Standard Fire objects to the definition of "Covered Flood Properties" to the extent it encompasses properties that have not been identified in paragraph 31 of the First Amended Complaint.

8.      Standard Fire objects to the definition of "Covered Flood Claims" to the extent it encompasses claims related to properties that have not been identified in paragraph 31 of the First Amended Complaint.  Standard Fire uses "Covered Flood Claims" in its responses to mean claims for Hurricane Katrina flood damage submitted to Standard Fire for those properties identified in paragraph 31 of the First Amended Complaint and for which Standard Fire issued flood insurance policies.

9.      Standard Fire objects to the definition of "Covered Wind Properties" to the extent it encompasses properties that have not been identified in paragraph 31 of the First Amended Complaint.

10.     Standard Fire objects to the definition of "Covered Wind Claims" to the extent it encompasses claims for properties that have not been identified in paragraph 31 of the First Amended Complaint.  Standard Fire uses "Covered Wind Claims" in its responses to mean claims for Hurricane Katrina wind damage submitted to Standard Fire or an affiliated company for those properties identified in paragraph 31 of the First Amended Complaint and for which Standard Fire or an affiliated company issued homeowners insurance policies.

11.     Standard Fire objects to the relevant time period for the Interrogatories as overbroad, unduly burdensome, not relevant to the claim or defense of any party, and not calculated to lead to the discovery of admissible evidence.  In responding to the Interrogatories, Standard Fire will treat the relevant time period as commencing on July 1, 2005 and continuing through to the filing of the complaint in this action on August 2, 2006.

## RESPONSES

**Interrogatory No. 1:**

What are the total number and dollar amount of Covered Flood Claims submitted by You to the Government?

**Objection and Response to Interrogatory No. 1:**

Subject to, incorporating and without waiving its objections set forth above, Standard Fire will produce documents reflecting the total number and dollar amount of Covered Flood Claims submitted by Standard Fire to the Government upon entry of an appropriate confidentiality order.

**Interrogatory No. 2:**

What are the total number and dollar amount of Covered Wind Claims paid by You?

**Objection and Response to Interrogatory No. 2:**

Subject to, incorporating and without waiving its objections set forth above, Standard Fire states that its records do not reflect that it issued a homeowners policy covering a property identified in paragraph 31 of the First Amended Complaint.  Therefore, Standard Fire paid no Covered Wind Claims.

**Interrogatory No. 3:**

What is the total amount of fees paid to You by the Government for servicing the Covered Flood Claims?

**Objection and Response to Interrogatory No. 3:**

Subject to, incorporating and without waiving its objections set forth above, Standard Fire states that it will produce documents sufficient to reflect the terms of payment for servicing Covered Flood Claims upon entry of an appropriate confidentiality order.

**Interrogatory No. 4:**

Describe in detail all estimates made by You of the total losses You expected to incur as a result of damage caused by Hurricane Katrina, including but not limited to reserves set aside by You for Katrina losses, the date each such estimate was prepared and by whom.

**Objection and Response to Interrogatory No. 4:**

Standard Fire objects to Interrogatory No. 4 as overbroad, unduly burdensome, not relevant, not calculated to lead to the discovery of admissible evidence and seeking Standard Fire's confidential and proprietary information.  Subject to, incorporating, and without waiving its

objections set forth herein and above, Standard Fire will produce a document reflecting a preliminary estimate of certain Hurricane Katrina losses made on or about September 23, 2005 by The St. Paul Travelers Companies, Inc. (then Standard Fire's ultimate parent).

Dated: December 23, 2009

AS TO OBJECTIONS:

PHELPS DUNBAR LLP

Harry Rosenberg (11465)
rosenbeh@phelps.com
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: (504) 566-1311

SIMPSON THACHER AND BARTLETT LLP

Bryce L. Friedman (*pro hac vice*)
bfriedman@stblaw.com
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000

Deborah L. Stein (*pro hac vice*)
dstein@stblaw.com
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067
Telephone: (310) 407-7500

**Attorneys for The Standard Fire Insurance Company *(named as St. Paul Travelers Co.)***

## VERIFICATION

Edward A. Charlebois, being duly sworn, deposes and says:

I am a duly authorized representative of defendant The Standard Fire Insurance Company. I verify that I have read the foregoing THE STANDARD FIRE INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES and hereby declare under penalty of perjury that the answers are true and correct to the best of my personal knowledge and belief.

Edward A. Charlebois

Sworn to before me this
21st day of December 2009

Date Commission Expires : 7/31/2014   Notary Public

8

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing THE STANDARD FIRE

INSURANCE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST

SET OF INTERROGATORIES has been served upon all parties to this suit through counsel

identified on the attached service list by electronic mail on this 23rd of December, 2009.

## SERVICE LIST

KANNER & WHITELY, L.L.C.
Allan Kanner, Esq.
a.kanner@kanner-law.com
Conlee Schell Whitely, Esq.
c.whitely@kanner-law.com
Michael Casey, Esq.
r.casey@kanner-law.com
Melissa McConnell Fuselier, Esq.
m.fuseliere@kanner-law.com
701 Camp Street
New Orleans, LA 70130


SUSMAN GODFREY, LLP
Tibor L. Nagy, Esq.
tnagy@susmangodfrey.com
590 Madison Avenue
8th Floor
New York, NY 10022
Jonathan Bridges, Esq.
jbridges@susmangodfrey.com
901 Main Street
Suite 5100
Dallas, TX 75202
Matthew R. Berry, Esq.
mberry@susmangodfrey.com
1201 Third Ave.
Suite 3800
Seattle, WA 98101


HERMAN, HERMAN, KATZ & COTLAR, LLP
Soren Erik Gisleson, Esq.
sgisleson@hhkc.com
Stephen J. Herman, Esq.
sherman@hhkc.com
820 O'Keefe Avenue
New Orleans, LA 70113

**Attorneys for Branch Consultants, L.L.C.**

BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, LLC
Judy Y. Barrasso, Esq.
jbarrasso@barrassousdin.com
John W. Joyce, Esq.
jjoyce@barrassousdin.com
Keith L. Magness, Esq.
kmagness@barrassousdin.com
LL&E Tower
909 Poydras Street, Suite 2400
New Orleans, LA 70112

VINSON & ELKINS, LLP
Russell R. Yager, Esq.
ryager@velaw.com
Trammell Crow Center
2001 Ross Avenue
Suite 700
Dallas, TX 75201

**Attorneys for Liberty Mutual Insurance Company**

NIELSEN LAW FIRM, LLC
Gerald J. Nielsen, Esq.
gjnielsen@aol.com
William T. Treas, Esq.
wtreas@nielsenlawfirm.com
3838 North Causeway Boulevard, Suite 2850
Metairie, LA 70002

**Attorneys for Fidelity National Insurance Company, Fidelity National Property and Casualty Company**

MCCRANIE, SISTRUNK, ANZELMO, HARDY, MAXWELL AND MCDANIEL PC
James C. Rather, Esq.
jrather@mcsalaw.com
Allen V. Davis, Esq.
adavis@mcsalaw.com
195 Greenbriar Blvd., Suite 200
Covington, LA 70433

**Attorneys for Simsol Insurance Services, Inc.**

LARZELERE PICOU WELLS SIMPSON LONERO, LLC
Jay M. Lonero, Esq.
jlonero@lpwsl.com
Christopher R. Pennison, Esq.
cpennison@lpwsl.com
Angie A. Akers, Esq.
aakers@lpwsl.com
3850 North Causeway Boulevard, Suite 1100
Metairie, LA 70002

**Attorneys for American National Property And Casualty Company**


LAW OFFICES OF GORDON P. SEROU, JR.
Gordon P. Serou, Jr. Esq.
gps@seroulaw.com
650 Poydras Street
Suite 1420
New Orleans, LA 70130

**Attorneys for American Reliable Insurance Company**


BEST KOEPPEL
Peter S. Koeppel, Esq.
peterklaw@aol.com
Michael L. Martin, Esq.
mmartin@bestkoeppel.com
2030 St. Charles Avenue
New Orleans, LA 70130

**Attorneys for Colonial Claims Corporation**