UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA, *EX REL*.** <br> **BRANCH CONSULTANTS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO:  06-4091-SSV-SS** |
| **ALLSTATE INSURANCE COMPANY, et al** | |

### ORDER GOVERNING CONFIDENTIALITY, ELECTRONIC DISCOVERY AND PRIVILEGE LOGS

The parties were ordered to submit proposed discovery plans.  Rec doc. 277.  They submitted proposals covering the confidentiality of documents, discovery of electronically stored information ("ESI") and production of privilege logs.

### CONFIDENTIALITY ORDER

On January 8, 2010, the defendants submitted a proposed "Consent Order for the Production and Exchange of Information."  Rec. doc. 289 (Exhibit A).  They described it as having two main features: (a) a limitation on the use of discovery material in this litigation; and (b) protection against inadvertent privilege waivers.  The defendants contend that the first feature is required because of the request by the relator, Branch Consultants, LLC ("Branch"), for information about homeowners which the defendants contend is sensitive and personal.  The defendants proposed order divides all information produced in discovery into two categories: (a) confidential; and (b) highly confidential. The proposed order does not apply to information which is in the public domain.  There is no limitation on the filing of "confidential" information in the record.  Such information is not required to be filed under seal.  The proposed order does require that "highly confidential" information be filed under seal.

Branch objects to the treatment of non-public information as confidential. It urges that only information which is truly sensitive should be designated as confidential. Rec. doc. 287 at 8. It contends that if the defendants' proposal is accepted almost nothing will be available to the public and it will be presumed that the case should be hidden from the public view. It describes the defendants' approach as similar to confidential arbitration. Branch also raises the following issues: (a) the time provided by defendants for Branch to challenge a designation of "highly confidential" is too short; (b) the defendants' order does not require a producing party to respond promptly to Branch's challenges to confidentiality designations; and (c) Branch should not be denied the ability to disclose "highly confidential" information to the United States. Rec. doc. 299.

**1.     Should all non-public information be treated as confidential?**

Notwithstanding the fact that the case was filed in 2006, it is at an early stage of discovery. The defendants' motion for a protective order limiting discovery and Branch's motion for leave to file a second amended complaint are pending. The parties have filed four motions to compel. Rec. docs. 323, 325, 327 and 328. More motions to compel are anticipated. Until these motions are resolved, including appeals to the District Judge, the scope of discovery is uncertain.

The defendants may be required to produce much information concerning the claims of individual homeowners arising from Hurricane Katrina. Most of these claims were resolved without recourse to litigation. These homeowners have some expectation of privacy regarding the damage to their homes and contents and the expenses incurred by them in the aftermath of Hurricane Katrina. While this expectation of privacy does not rise the level of health records for instance, it is a real issue.

Some of the discovery produced by the defendants may contain information in a form in

which the identity of the insured is not disclosed. In these circumstances, there would be no privacy concern. Until the pending motions are resolved and information is produced, it is not possible to determine how best to address the privacy issue. This factor weighs in favor the defendants' request that all non-public information be treated as confidential at least until the pending motions are resolved and the Court has some experience with what the defendants will produce.

Branch's concern that this will turn the proceeding into a confidential arbitration is overstated. The defendants' proposed order does not require that confidential information or pleadings referring to it be filed under seal. There is no prohibition on using such information in any court proceeding. Rather, such limitations only apply to what is treated as "highly confidential."

The defendants' request that all non-public information be treated as confidential will be granted without prejudice to the right of Branch to request reconsideration after there is a resolution of the pending motions and the parties and the Court have some experience with the documents to be produced by the defendants.

**2.     Procedures for Branch to contest designations.**

In paragraph 11 of the order, the defendants propose the following steps to contest a designation.

    1.     If Branch disputes the designation of any document as "highly confidential," it shall serve within thirty (30) calendar days of receipt of the material (or longer as the parties may agree), a written notice of objection to such designation. Such notice shall specify the material or information that Branch believes is not properly designated and shall set forth in detail the reasons why the designation should be

removed.

2. The Producing Party and Branch shall attempt to resolve by agreement the question of whether the document is entitled to highly confidential treatment.

3. If they are unable to agree within thirty (30) calendar days (or later by agreement of the parties) as to whether the document should be designated as "highly confidential," Branch may seek a court order determining whether the document is entitled to such treatment.

4. The Producing Party shall bear the burden of proof on the issue of whether the document or information is entitled to the designation as "highly confidential."

5. The designated materials in question shall continue to be treated as "highly confidential" until the Court acts on the motion.

Rec. doc. 289 (Exhibit A at para. 11).

Branch objects that: (1) because of the large volume of documents to be produced by defendants, 30 days is insufficient time for it to review the "highly confidential" documents and prepare notices of objection; (2) it should not be required to set forth in detail the reasons why the designation should be removed; and (3) once it makes an objection, there is no deadline for the defendants to respond to the objection.

A controversy over whether documents should be treated as "highly confidential" should be resolved as promptly as possible. If there is no deadline, the Court and the parties may be confronted with disputes over the designation of documents on the eve of trial. In normal circumstances 30 days should be sufficient for a party to raise an objection to the designation. If Branch is confronted with a large volume of documents and the parties cannot agree on a longer

period, Branch may file a motion for additional time with a request for expedited consideration.

Branch's objections shall contain the specific reasons why it contends the designation should be removed. Without that, the parties will not be able to satisfy the meet-and-confer requirements of the order and the Local Rules if they are not apprised of these reasons.

The Producing Party will be required to respond to Branch's notice within fourteen (14) calendar days of receipt. Its response shall specify the bases for its confidentiality designation.

If they are unable to agree within fourteen (14) calendar days (or later by agreement of the parties) as to whether the document should be designated as "highly confidential," Branch may seek a court order determining whether the document is entitled to such treatment.

With these changes, paragraph 11 shall provide as follows:

> If any party disputes any Producing Party's designation of any document or information as Highly Confidential Information, the disputing party shall serve, within thirty (30) calendar days of receipt of the material (or longer as the parties may agree), a written notice of objection to such designation upon the Producing Party, with copies to every other party. Such notice shall specify the material or information that the objecting party believes is not properly designated and shall set forth in detail the reasons why the designation should be removed.
>
> The Producing Party shall respond to such notice within fourteen (14) calendar days (or longer as the parties may agree) and in that response specify the bases for its confidentiality designation(s).
>
> The Producing Party and objecting parties shall attempt to resolve by agreement the question of whether, or on what terms, the document or information is entitled to highly confidential treatment. If the parties are unable to agree within fourteen (14) days (or later by agreement of the parties) of the Producing Party's response as to whether, and on what terms, the document or information should be designated as Highly Confidential Information, the objecting party may seek a court order determining whether, or on what terms, the document or information is entitled to highly confidential treatment. The Producing Party shall bear the burden of proof on the issue of whether the document or information is entitled to the designation as "Highly Confidential Information."
>
> The designated materials in question shall continue to be treated as Highly

Confidential Information subject to the terms of this Order until the Court acts on the motion.

3. **May the United States be shown highly confidential information?**

Branch is proceeding on behalf of the United States which has declined to intervene. In Rockwell International Corp. v. United States, 549 U.S. 457, 127 S.Ct. 1397, 1404, 167 L.Ed.2d 190 (2007), the United States initially declined to intervene. Seven years after the *qui tam* action was filed, it changed its position and intervened. Branch may discover information which may persuade the United States to change its position and intervene. Branch will not be barred from disclosing any information produced by the defendants to the United States, provided that the United States agrees to be bound by the terms of the confidentiality order.

5. **Conclusion.**

The defendants' request for entry of a "consent order for the production and exchange of information" (Rec. doc. 289 (Exhibit A)) will be granted in part. The defendants' proposed order with the changes described herein will be entered.

**PROTOCOL FOR ELECTRONIC DISCOVERY**

Branch objects to the defendants' requested proposed ESI order. Rec. doc. 289 (Exhibit C).[1] It contends that ESI should be produced in its native format to permit efficient searches and organization of documents produced in the litigation.[2] Rec. doc. 287 at 7. The defendants respond

---

[1] The parties' proposed ESI orders contain provisions for production of privilege logs which is addressed separately.

[2] See The Sedona Conference, "Electronic Discovery and Digital Evidence (2009) ("Sedona-E Discovery"),

Native Format: Electronic documents have an associated file structure defined by the original creating application. This file structure is referred to as the "native format" of the document. Because viewing or searching documents in the native format may require the original application (for example, viewing a Microsoft Word document may require the Microsoft Word application), documents may be converted to a neutral format as part of the record acquisition or archive process. "Static" formats

that:

    a.    Branch has not demonstrated why it needs claim files in native format;

    b.    Its request to produce all documents as ESI is tremendously expensive and burdensome because: (i) every document will have to be produced in hard copy to preserve the integrity of the original; and (ii) the software used by the defendants in many cases is not commercially available;

    c.    It is more efficient to produce initially the documents in hard copy or in an electronic form, for example PDF, that would be searchable and easy to organize; and

    d.    If there are specific documents which Branch requires in native format, for example an Excel spreadsheet, it can request such production.

Rec. doc. 298. Branch objects that:

    a.    The defendants' proposed order presumes that searchable and sortable databases with information on flood claims will be produced as non-searchable, non-sortable individual pages.

    b.    It does not require the defendants to respond to requests that ESI be produced in its native format within a specified period of time, and places the burden on Branch to demonstrate a particularized need for ESI in its native format.

    c.    It presumes that information stored on backup tapes is not discoverable without an explanation as to why such information is on the backup tapes and what burden is associated with accessing the information.

Rec. doc. 299. Branch submitted a proposed order. Id. (Exhibit 3). Fidelity contends that the issue of discovery of ESI should be deferred until after it is determined whether Branch will be permitted discovery beyond the properties identified in the first amended complaint. Rec. doc. 300.

---

(often called "imaged formats"), such as TIFF or PDF, are designed to retain an image of the document as it would look viewed in the original creating application but do not allow metadata to be viewed or the document information to be manipulated. In the conversion to static format, the metadata can be processed, preserved and electronically associated with the static format file. However, with technology advancements, tools and applications are becoming increasingly available to allow viewing and searching of documents in their native format, while still preserving all metadata.

Id. at 693-94.

1. **<u>Native format and Sedona Principle 12</u>.**

The Federal Rules of Civil Procedure and comments on whether parties should be required to produce ESI in native format demonstrate that there is no bright line rule. Fed. R. Civ. P. 34(b)(2)(E) provides that:

> Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> \* \* \*
>
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> (iii) A party need not produce the same electronically stored information in more than one form.

<u>Id</u>. The Advisory Committee's Notes state:

> The form of production is more important to the exchange of electronically stored information than of hard-copy materials, although a party might specify hard copy as the requested form. Specification of the desired form or forms may facilitate the orderly, efficient, and cost-effective discovery of electronically stored information. The rule recognizes that different forms of production may be appropriate for different types of electronically stored information.

Fed. Rule Civ. P. 34(b) Advisory Committee's Note, 2006 amendment. "In the process of preparing the new Rules governing ESI, the Advisory Committee rejected proposals to mandate any particular form of production and did not take a position on the need to produce metadata." Sedona-E Discovery at 263.

Regarding the metadata found within the native format, Sedona-E Discovery states:

> Understanding when metadata is relevant and subject to preservation and production represents one of the biggest challenges in electronic discovery. Sometimes metadata is needed to authenticate a disputed document or to establish facts material to a dispute. . . . In most cases, however, the metadata will have no material evidentiary value. . . . There is also the real danger that information

> recorded by the computer as application metadata may be inaccurate. . . . [T]he proper use of metadata in litigation may be able to provide substantial benefits by facilitating more effective and efficient searching and retrieval of ESI.

Id. at 261. Sedona Principle 12 states:

> Absent party agreement or court order specifying the form or forms of production, production should be made in the form or forms in which the information is ordinarily maintained or in a reasonably usable form, taking into account the need to produce reasonably accessible metadata that will enable the receiving party to have the same ability to access, search, and display the information as the producing party where appropriate or necessary in light of the nature of the information and the needs of the case.

Id. at 264. The comment states that:

> There should be two primary considerations in choosing the form of production: (1) the need for, or probative value of both apparent and hidden metadata; and (2) the extent to which the production of metadata will enhance the functional utility of the electronic information produced and allow the parties to conduct a more cost-effective and efficient review. These considerations should be weighed against the negative aspects associated with each format.

Id. at 265 (brackets omitted). Negative considerations include: (a) where there is a substantial volume and variety of file types, production could become very expensive and burdensome; and (b) there may be a need to review certain metadata for privileged material, which "can substantially impact the speed of production." Id. at 265.

**2.    Rule 30(b)(6) ESI**.

The parties have not presented sufficient information to permit a determination on whether ESI should be produced in native format. Branch shall depose the defendants, pursuant to Rule 30(b)(6), so that the parties can present testimony and other evidence on defendants' record keeping and maintenance of ESI. This discovery shall be limited to that which is required to permit Branch and the defendants to address the application of Sedona Principle 12 to Branch's request for ESI in native format. The discovery may include inquiry into how the defendants provide information to

the United States for the NFIP.

At this point the defendants will not be required to produce the ESI in native format.[3] Once the Rule 30(b)(6) ESI discovery is completed, Branch may move for modification of the order. Any request for modification shall address the issue by types of application for example, word processing, e-mail, spreadsheets and databases.

In the absence of a general modification of the order, the defendants' proposed order permits Branch to request production of native format ESI. Rec. doc. 289 (Exhibit C at 6). This provision of the order will be modified so that in the event of such a request, the producing party shall respond within fourteen calendar days. The burden will remain on Branch to demonstrate a particularized need for ESI in its native format. Branch should relate its need to Sedona Principle 12.

The parties are required to retain native format copies, including associated metadata, of all ESI produced in the litigation and original hard copy documents of all paper discovery produced in the litigation. See paragraph 12 of the defendants' proposed order.

**3.    Defendants' production to the United States.**

Branch requests that any information produced by the defendants which was previously produced to the United States be produced in native format. The defendants shall produce such information in the same format in which the information was previously produced to the United States.

**4.    Information regarding backup tapes.**

The defendants' proposed order states that, "[n]othing in this Order creates an obligation by

---

[3] The defendants' proposed order provides that notwithstanding this limitation, video, animation or audio files will be produced in native format. Branch requested that this be expanded to include electronically stored spreadsheets, databases and claim files. Branch's request to expand this proviso is denied without prejudice to re-urge after the Rule 30(b)(6) depositions.

any party to produce ESI, including any ESI on back-up tapes or other long-term storage media that were created strictly for use as a data back-up medium." Rec. doc. 289 (Exhibit C at 2-3). It also provides that back-up tapes or other long-term storage media that were created strictly for use as a data back-up medium are not discoverable except upon a demonstration of good cause. Id. at 3. Branch requests that the defendants be required to disclose what information is contained on the back-up tapes or other long-term media and explain the burden associated with accessing these tapes or media. The defendants shall provide this information at their Rule 30(b)(6) depositions directed to ESI.

5. **Documents from other litigation.**

    The defendants' proposed order states:

> Notwithstanding anything to the contrary herein, any party which produces documents that were previously produced in any other action or matter may produce such documents in the format in which they were previously produced.

Rec. doc. 289 (Exhibit C at 4). Branch requests that this be changed to:

> To the extent that documents to be produced in this litigation have been produced in a previous action or matter in a format inconsistent with this Order, the Producing Party may propose to the other parties that the production be in the format used in the previous action or matter. If the parties cannot reach agreement on the format for the production of such documents, the Producing Party must seek leave from the Court to produce the documents in the same format as the previous action or matter. The Producing Party shall bear the burden of showing undue burden or expense in producing the documents in a format consistent with this Order.

Rec. doc.299 (Exhibit 3 at 17-18).

    The language sought by the defendants provides for a departure from the general provisions of the proposed order. The language sought by Branch places the burden on the producing party to secure an exception to the general provisions of the order. The language sought by Branch will be employed in the order.

**6.     Cost shifting.**

With regard to cost shifting, the defendants' proposed order provides that:

> All costs associated with production of documents pursuant to this Order and related directly to the properties identified by address in the first amended complaint shall be borne by the Producing Party. However, the Court will apportion the costs of electronic discovery upon a showing of good cause by the party seeking apportionment.

Rec. doc. 289 (Exhibit C at 9). Branch requests that the reference to the properties identified in the first amended complaint be deleted. The issue of whether Branch will be able to amend its complaint has not been resolved. At this time, the scope of discovery has not been determined. The provision on cost shifting will be as follows:

> All costs associated with production of documents pursuant to this Order shall be borne by the Producing Party. However, the Court will apportion the costs of electronic discovery upon a showing of good cause by the party seeking apportionment.

**7.     Conclusion.**

The defendants' request for entry of an "order establishing protocol for electronic discovery" [Rec. doc. 289 (Exhibit C)] will be granted in part. The defendants' proposed order with the changes described herein will be entered.

## PRODUCTION OF PRIVILEGE LOGS

The parties were asked to address in their proposed discovery plans issues about claims that documents were protected from disclosure by the attorney-client privilege or the work-product doctrine. The defendants contend that all parties should timely produce privilege logs in accord with the requirements found in Section F of their proposed order establishing a protocol for electronic discovery. See Rec. doc. 289 (Exhibit C). Branch proposes that the defendants produce privilege logs within twenty days of their production of the claims files. Rec. doc. 287 at 8. It objects to the

defendants' proposed Section F because it does not provide a deadline for the production of privilege logs. Rec. doc. 299 at 8. It submitted its own version of Section F as part of its proposed ESI discovery protocol. Rec. doc. 299 (Exhibit 3).[4] The defendants respond that: (a) Branch did not make any provision for its deadline for the preparation of a privilege log; (b) instead it focused on the defendants' deadline; (c) they do not object to providing privilege logs within twenty calendar days of the production of the documents for the properties in the first amended complaint; and (d) it is premature to evaluate the amount of time required to prepare privilege logs with respect to any properties other than the ones identified in the first amended complaint. Rec. doc. 298.

All parties will be required to produce a privilege log within twenty calendar days from a production from which documents have been withheld. Depending on the volume of documents to be produced as the case proceeds, this may not be sufficient time. Any party may seek a longer time to produce a privilege log. If a longer time is permitted, it is likely that the producing party will be required to prepare privilege logs on a rolling basis.

The defendants propose that the privilege log include the "document numbers corresponding to the first and last page of any withheld or redacted document, if the document has been assigned any such document numbers. . . ." Rec. doc. 289 (Exhibit C at 10). Branch requests the addition of "otherwise the page count. . ." Rec. doc. 299 (Exhibit 3 at 12). It is expected that very few, if any, documents will be produced without Bates numbering. Subject to that caveat, Branch's proposed modification will be incorporated in the order.

Branch requests that the privilege log include a description of the type of document. This

---

[4] Notwithstanding the statement in its proposed discovery plan requesting a twenty day deadline for privilege logs (Rec. doc. 287 at 8), Branch's proposed Section F contains a fourteen day deadline (Rec. doc. 299-Exhibit 3 at 11).

proposed modification will be incorporated in the order. Defendants' request for order for production of privilege logs [Rec. doc. 289 (Exhibit C-Section F)] will be granted. The defendants' proposed order with the changes described herein will be entered.

    IT IS ORDERED that:

1. Defendants' request for entry of a consent order for the production and exchange of information [Rec. doc. 289 (Exhibit A)] is GRANTED in PART and DENIED in PART.

2. Defendants' request for entry of an order establishing protocol for electronic discovery [Rec. doc. 289 (Exhibit C)] is GRANTED in PART and DENIED in PART.

3. **Within fourteen (14) calendar days of the entry of this order**, the parties shall agree on a schedule for the Rule 30(b)(6) depositions of the defendants concerning ESI. If they are unable to agree, they shall notify the court within the same deadline.

4. Defendants' request for order for production of privilege logs [Rec. doc. 289 (Exhibit C-Section F)] is GRANTED in PART and DENIED in PART.

4. The three orders will be entered with the changes described herein.

New Orleans, Louisiana, this 10th day of February, 2010.

                                    **SALLY SHUSHAN**
                                    **United States Magistrate Judge**