UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA *EX REL.*          CIVIL ACTION
BRANCH CONSULTANTS, L.L.C.

VERSUS                                       NO: 06-4091

ALLSTATE INSURANCE. CO., ET AL.              SECTION: R

## ORDER AND REASONS

*Qui tam* plaintiffs move to strike Fidelity's Third-Party Complaint against its policyholders.  (R. Doc. 253).  Because Fidelity's claims do not meet the appropriate standard under the Federal Rules of Civil Procedure and because third-party practice is considerably restricted in False Claims Act actions, the motion is GRANTED.


## I. Background

This case arises out of the aftermath of Hurricane Katrina. The storm struck southern Louisiana and Mississippi in late August of 2005, causing damage in the billions of dollars.  In numerous places, particularly within New Orleans, homes and commercial property were damaged by the wind and rain generated from the hurricane, as well as by flooding that inundated the area after the storm had passed through the region.

1

While insurance against wind and rain is available from private insurance companies, flood insurance generally is not. "It is uneconomical for private insurance companies to provide flood insurance with reasonable terms and conditions to those in flood prone areas." *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998). In 1968, the federal government established the National Flood Insurance Program, which provides flood-insurance coverage "at or below actuarial rates," and payments on these insurance policies are made with federal money. *Id.* The NFIP is in turn administered by the Federal Emergency Management Agency. In 1983, FEMA established a program within the NFIP known as "Write Your Own," which allowed for certain private insurers to issue standard, government-guaranteed flood insurance policies in their own names. *See generally* 44 C.F.R. § 62.23. FEMA drafts the policies and the insurers cannot alter them without governmental approval. *Id.* §§ 61.4(b), 61.13(d); *see also Dwyer v. Fidelity Nat. Prop. & Cas. Co.*, 565 F.3d 284, 285 (5th Cir. 2009). The private companies under WYO act as "fiscal agents" of the United States and are responsible for adjustment, settlement, payment, and defense of claims under the policies. 44 C.F.R. § 62.23(d)-(g). Payments under the policies, however, "ultimately come[] from the United States treasury." *Dwyer*, 565 F.3d at 285.

The damage caused by Hurricane Katrina resulted in a

tremendous number of NFIP claims.  On account of this strain,
FEMA relaxed the requirements for submitting proofs of loss to
claim flood damage.  Specifically, when policyholders did not
dispute the insurance company's adjustment, FEMA waived the
proof-of-loss requirement and allowed the claim to be paid on the
basis of adjuster's reports.  *See Monistere v. State Farm Fire &
Cas. Co.*, 559 F.3d 390, 394-95 (5th Cir. 2009); *Eckstein v.
Fidelity Nat. Prop. & Cas. Ins. Co.*, 07-4567, 2009 WL 1870558, at
*4 (E.D. La. June 29, 2009).

Branch Consultants brought this *qui tam* action on behalf of
the United States government under the False Claims Act.  Branch
accuses certain WYO insurance companies and adjusters that were
involved in the adjustment of NFIP flood claims after Katrina of
fraud in the administration of the flood insurance program.  It
alleges that the circumstances after Katrina gave defendants
complete control over the adjustment and payment of the NFIP
policies.  Specifically, it contends that when defendants
adjusted Hurricane Katrina claims, they systematically and on a
massive scale overstated the amount of flood losses to the
properties they adjusted.  In so doing, defendants allegedly
exaggerated the amount of money that the government should pay
under the individual flood policies, which in turn reduced the
amount that the insurance companies would themselves be obligated
to pay under wind and rain policies.  Stated differently, Branch

asserts that defendants "passed off" the costs of paying for wind damage to the government by fraudulently claiming that the damage was caused by flood.  Because of the expedited claims-handling process that was put into effect after Katrina, the government allegedly subjected these claims to less scrutiny than it would have in more typical circumstances.  Branch alleges that this resulted in the submission of myriad fraudulent insurance claims, which the federal government then paid.  In its First Amended Complaint, Branch provides numerous examples of properties that it alleges were the subject of fraud.  For each, it identifies a corresponding insurance company that allegedly issued the policy covering the property.

Among these insurance companies are Fidelity National Property and Casualty Insurance Company and Fidelity National Insurance Company (collectively "Fidelity").  Fidelity has filed an answer to Branch's complaint, and this answer includes a complaint asserting claims against third parties.[1]  R. Doc. 247. Specifically, Fidelity, acting in its "fiduciary capacity" as a "fiscal agent of the United States," brings claims against certain of its own policyholders for breach of contract and unjust enrichment, as well as the common-law doctrine of payment by mistake.  Fidelity proposes to sue those Fidelity

---

[1] These claims are brought by Fidelity only.  None of the other defendants has brought a similar complaint against its own policyholders or has filed support for Fidelity's.

4

policyholders whose property adjustments Branch put in issue in its complaint against Fidelity.  Fidelity alleges that, if Branch proves that Fidelity overpaid its policyholders, these policyholders improperly received payments that are rightfully the property of the United States government.

Branch contends that Fidelity lacks standing to bring these claims, and that the policyholders cannot be brought into this litigation as parties.  The government has filed a brief supporting Branch's position.  The Court rules as follows.

## II. Discussion

### A. Third-Party Practice

#### 1. Categorization of Fidelity's Claims

As an initial matter, there appears to be confusion as to what Fidelity's claims actually are and under what procedure Fidelity seeks to bring them into this litigation.  In its response to the motion to strike, Fidelity correctly argues that although it labels its claims against the policyholders under the heading "third-party demand" or "third-party complaint," R. Doc. 247 at 1, 20, the Court may construe mislabeled pleadings as if they were correctly designated.  FED. R. CIV. P. 8(d).  Fidelity offers two suggestions as to what procedure and which corresponding Federal Rule of Civil Procedure it seeks to invoke.

*i. Rule 13 Compulsory Counterclaims*

First, Fidelity suggests that its claims are actually compulsory counterclaims that should be governed by Rule 13(a). They are not.  Compulsory counterclaims under Rule 13 are brought "against an opposing party."  Fidelity's view is that the text of Rule 13 allows counterclaims against "opposing parties," and the policyholders are opposing parties — or they will be if the Court allows the claims against them to proceed.

The flaw in this argument is manifest: claims asserted in complaints are *by definition* against opposing parties.  But Rule 13's reference to "opposing parties" does not mean that a counterclaim may be asserted against any non-party on the theory that, once the counterclaim is asserted, the non-party will become an opposing party.  This argument collapses the distinction between counterclaims against "opposing parties" and third-party complaints against "non-parties" that is clearly made by the Federal Rules.  *Compare* FED. R. CIV. P. 13(a)-(b) (discussing counterclaims "against an opposing party"); *with* FED. R. CIV. P. 14(a)(1) (discussing third-party claims against a "a *nonparty*"); *see also* BLACK'S LAW DICTIONARY 402 (9th ed. 2009) (defining "counterclaim" as "[a] claim for relief asserted *against an opposing party* after an original claim has been made, esp., a defendant's claim in opposition to or as a setoff against the plaintiff's claim") (emphasis added); 6 CHARLES ALAN WRIGHT, ET

AL., FEDERAL PRACTICE & PROCEDURE § 1407 (2d ed. 1994 & Supp. 2009).

Although during oral argument Fidelity's counsel was not able to cite any cases in which a court allowed a counterclaim solely against a non-party, Fidelity points to the provision in Rule 13(a)(1)(b) that contemplates that third parties may be brought into the suit as a result of a counterclaim. It is true that a party asserting a counterclaim may attempt to join non-parties to the lawsuit to defend against the counterclaim. FED. R. CIV. P. 13(h); *see also State Nat. Ins. Co. Inc. v. Yates*, 391 F.3d 577, 578 & n.2 (5th Cir. 2004) (noting that defendant counterclaimed against plaintiff as well as non-parties). This does not mean, however, that Fidelity may assert a claim exclusively against non-parties and call it a "counterclaim." A counterclaim, at the very minimum, must be asserted against one party that is already in the lawsuit.

> Rule 13(h) only authorizes the court to join additional persons in order to adjudicate a counterclaim or cross-claim that is already before the court or one that is being asserted at the same time the addition of a nonparty is sought. *This means that a counterclaim or cross-claim may not be directed solely against persons who are not already parties to the original action, but must involve at least one existing party. If it is, neither the counterclaim nor the party to be added will be allowed in the action.*

6 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 1435 (emphasis added); *Greater New Orleans Fair Housing Action Cent. v. Brister*, No. 02-3797, 2005 WL 517338, at *2 (E.D. La. Mar. 1, 2005) ("it is clear that both Rule 13(a) and (b) provide that

counterclaims cannot be sued upon unless at least one person being sued is already a party to the action, i.e. an 'opposing party.'"); *see also F.D.I.C. v. Bathgate*, 27 F.3d 850, 873 n.13 (3d Cir. 1994); *Glynn v. EDO Corp.*, 641 F. Supp. 2d 476, 479 n.3 (D. Md. 2009) (noting that "federal law is clear" that counterclaims cannot be asserted exclusively against non-parties); *CNH Capital Am., LLC v. Se. Aggregate, Inc.*, No. 08-027, 2009 WL 1759572, at *4 (S.D. Ga. June 18, 2009). The policyholders are not yet part of this suit; they are all decidedly non-parties. Accordingly, Fidelity's claims cannot successfully be categorized as counterclaims and are thus not controlled by Rule 13.

### ii. Rule 19 Joinder

Fidelity also suggests that it may file its complaint against the third-party policyholders because they are mandatory parties under Rule 19(a)(1)(B). This, too, appears to be the incorrect rule that governs this procedure. Rule 19 of the Federal Rules of Civil Procedure concerns itself with "required joinder of parties." Joinder of a non-party to an existing litigation as a plaintiff or defendant is not the same as an existing defendant's initiation of entirely new claims against a non-party. As one court explained, "Rule 19 does not provide or support the introduction of a third-party defendant into a

8

lawsuit.  Rather, Rule 19 provides that the court may, under proper circumstances, require the joinder of a non-party as a plaintiff, defendant or involuntary plaintiff.  It does not empower the court to order joinder of a third-party defendant, because that is what Rule 14 is for." *Brooks v. Hickman*, 101 F.R.D. 16, 18 (W.D. Pa. 1983); *see also Dunkin' Donuts USA, Inc. v. Sharif, Inc.*, No. 03-925, 2004 WL 3419629, at *2 (D.N.M. June 3, 2004) ("Rule 19(a) allows for the compulsory joinder of a person as a plaintiff, defendant, or involuntary plaintiff. . . . The language in Rules 19(a) and 20(a) does not encompass the joinder of third party defendants."); *Fields v. Experian Info. Solutions, Inc.*, No. 02-271, 2003 WL 1960010, at *1 (N.D. Miss. Apr. 16, 2003) (Magistrate Judge) ("[N]either Rule 18 nor Rule 19 is the appropriate device by which to implead a third-party defendant.  Only Rule 14(a) contemplates what the defendant hopes to accomplish here — specifically, to implead a separate, third-party defendant who has heretofore been uninvolved in the case."); *Mennen Co v. Atlantic Mut. Ins. Co.*, No. 93-5273, 1996 WL 257147, at *5 (D.N.J. Jan. 29, 1996) ("The language of Rule 19 indicates that joinder of third-party defendants is not encompassed by the rule.  Specifically, Rule 19(a) provides for compulsory joinder of a party as a plaintiff, a defendant or an involuntary plaintiff, but not as a third-party defendant."); 4 MOORE'S FEDERAL PRACTICE § 19.02[5][a]

(distinguishing between Rule 19 joinder and Rule 14 impleader). The section of Fidelity's answer entitled "Third-Party Complaint" does not seek to add the policyholders as plaintiffs, defendants, or involuntary plaintiffs.  It seeks to initiate new claims against these parties who are currently not part of this litigation.  This is the addition of a new arm of this lawsuit and not the mere addition of parties to the existing suit.  In addition, the claims Fidelity asserts are only tangentially related to the fraud claims brought by Branch.

Some other decisions not cited by either party have, however, analyzed the filing of third-party complaints against third-party defendants under Rule 19 without discussion of whether Rule 19 was the appropriate vehicle for such a procedure. *See, e.g., City of Syracuse v. Onondaga County*, 464 F.3d 297, 308-310 (2d Cir. 2006) (allowing joinder of third-party defendant under Rule 19(a)(1) and explicitly declining to engage in Rule 14 analysis).  The Court rejects this interpretation of Rule 19. Rule 19 makes no mention whatsoever of third-party practice or the filing of third-party complaints.  To the extent that the Rule describes how parties may be aligned after joinder, it makes reference only to plaintiffs, defendants, and involuntary plaintiffs, and does not overtly provide for the "joinder" of third-party defendant through an entirely new arm of the lawsuit. Rule 14, in contrast, announces that it controls "third-party

practice," and it details the conditions under which "a defending party may bring in a third party" by filing a third-party complaint.  A defendant may do so only when the nonparty "is or may be liable to [defendant] for all or part of the claim against it."  FED. R. CIV. P. 14(a)(1).  The Court finds it anomalous that a party might accomplish through Rule 19, which contains no reference to third-party practice or the complexities that arise from the filing of third-party complaints, what is explicitly provided for in detail by Rule 14.

Even if Rule 19 did allow Fidelity to file a complaint against a non-party, Fidelity has not met the requirements of that Rule.  It contends that the policyholders are required parties under Rule 19(a)(1)(B), which indicates that a person who can be properly served and joined must be joined as a party if

> that person claims an interest relating to the subject
> of the action and is so situated that disposing of the
> action in the person's absence may: (i) as a practical
> matter impair or impede the person's ability to protect
> the interest; or (ii) leave an existing party subject
> to a substantial risk of incurring double, multiple, or
> otherwise inconsistent obligations because of the
> interest.

At no point have the policyholders claimed an interest related to the subject of this action.  This case is about an alleged fraud committed by a group of insurance companies and adjusters against the government of the United States.  The funds in question, in which the policyholders might have had an interest, have long since been distributed.  Fidelity appears to argue that the

11

policyholders have an interest in not later being subject to some kind of proceeding in which they are asked to return money paid to them.  Assuming this is possible, Fidelity has not shown that the outcome of this suit would have any bearing on whether the policyholders might later be liable for the return of overpayments.

Fidelity contends that its claims against the policyholders are triggered only by a finding of accidental or mistaken overpayments.  By Fidelity's own admission, therefore, the possibility that the policyholders would be asked to return funds does not arise if Branch proves that Fidelity acted with fraudulent scienter, nor does it arise if Branch proves neither overpayment nor fraud.  Fidelity is exclusively concerned with a scenario in which the Court determines that it has overpaid the policyholders, but that it did not do so fraudulently.  It claims that, if such an event comes to pass, the Court will have determined that the policyholders are wrongfully in possession of government funds.  But this argument is premised upon a misunderstanding of what this case is about.  This case is not about overpayment; it is about fraud.  Thus Fidelity's concern, that the Court will make a finding that it overpaid the policyholders separate and apart from any finding that it did so with fraudulent intent, simply lacks any basis.  The Court has no intention of making findings of overpayments unless there is

12

first a finding of scienter.  Furthermore, Fidelity does not even
argue how, in a later recoupment proceeding, the policyholders
would be bound by a finding of innocent overpayment in this
action.  Fidelity simply has not shown that the policyholders
claim an interest in this proceeding that would be impaired by
proceeding without them.

Fidelity further contends that the policyholders have an
interest in being represented by counsel, as they are likely to
be deposed and their financial records subpoenaed as a result of
this suit.  Fidelity has not, however, made clear how being
represented by counsel is an "interest" for the purposes of Rule
19, why the policyholders are unable to protect this interest
themselves by hiring their own counsel, or why bringing a lawsuit
against the policyholders is a proper method of protecting this
interest.

Finally, Fidelity has failed to identify any multiple or
inconsistent obligations that would result if it failed to bring
a third-party complaint against the policyholders.  Again,
Fidelity envisions a scenario in which Branch proves that the
insurance companies overpaid their policyholders, but that they
did not do so fraudulently.  Even if a policyholder had to
disgorge an overpayment at a later time, neither the policyholder
nor Fidelity would be exposed to "inconsistent" obligations.
Inconsistent obligations arise, for example, when an insurance

13

company is held liable to a specific party in one case, and then held liable to a *different* party in a later case, even though both cases involve the same damages under the same insurance policy.  This is not the type of scenario that could arise here.

But as noted, the issue to be determined in this case is whether defendants committed fraud, not whether they simply overpaid their policyholders.  Fidelity's concern that it or the policyholders will somehow be subject to inconsistent obligations regarding overpayment is therefore purely chimerical.  As a leading treatise notes, "[t]he key is whether the possibility of being subject to multiple obligations is real; an unsubstantiated or speculative risk will not satisfy the Rule 19(a) criteria."  7 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 1604; *see also E.E.O.C. v. Brown & Root, Inc.*, 688 F.2d 338, 342 (5th Cir. 1982) (finding insufficient under Rule 19(a) a party's claim "that it will somehow be left facing inconsistent obligations," which was "groundless").

Fidelity therefore cannot avail itself of Rule 19, and its claims are accurately categorized as a third-party complaint, as they were originally labeled.


## 2. Legal Standard

Third-party practice is governed by Rule 14 of the Federal Rules of Civil Procedure.  Rule 14(a)(1) states that "[a]

14

defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." *See also S.E. Mortgage Co. v. Mullins*, 514 F.2d 747, 749 (5th Cir. 1975).  This Rule, in stating that a defending party *may* serve a third-party complaint, is permissive and not mandatory.  In addition, "a third-party complaint is not proper under Rule 14 if the defendant cannot show a basis for the third-party defendant's liability to the defendant (also known as the third-party plaintiff)." *McCain v. Clearview Dodge Sales, Inc.*, 574 F.2d 848, 849-50 (5th Cir. 1978); *see also Martin v. Lafon Nursing Facility of the Holy Family*, No 06-5108, 2007 WL 4163678, at *2 (E.D. La. Nov. 20, 2007).  Liability of the third party must be "dependent" or "in some way derivative" of the outcome of the main claim.  *See United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 750-52 (5th Cir. 1967); *see also Mullins*, 514 F.2d at 749; *Sunrise Dev., Inc. v. Carl E. Woodward, Inc.*, No. 03-2273, 2004 WL 574719, at *2 (E.D. La. Mar. 22, 2004).  Put another way, the third-party defendant "must necessarily be *liable over* to the defendant for all or part of the plaintiff's recovery, or that the defendant must attempt to *pass on* to the third party all or part of the liability asserted against the defendant."  *Joe Grasso*, 380 F.2d at 751 (emphasis in original; quotation marks and internal citations omitted).  This liability includes claims for

15

indemnity, contribution, and subrogation. *Lafon Nursing*, 2007 WL 4163678, at *2.

Impleader of a third-party defendant must fit these requirements of Rule 14. It is not enough that the suit between Fidelity and the third-party defendants would somehow be related to the suit between Branch and Fidelity. This is because "an entirely separate and independent claim cannot be maintained against a third party under Rule 14, even though it does arise out of the same general set of facts as the main claim." *Mullins*, 514 F.2d at 747 (quoting *Joe Grasso*, 380 F.2d at 751); *see also Lafon Nursing*, 2007 WL 4163678, at *2; *Sunrise Dev.*, 2004 WL 574719, at *2. "[I]mpleader [under Rule 14] is available only against persons who are or may be liable to defendant for part or all of plaintiff's claim; it cannot be used as a way of combining all controversies having a common relationship into one action." 6 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 1442 (2d ed. 1994 & Supp. 2009).

Fidelity timely filed its third-party complaint under Rule 14(a)(1), as it filed coterminously with its answer. Motions to strike third-party complaints are allowed by Rule 14(a)(4), which states that any party may move to strike the third-party claim. "The district court has wide discretion in determining whether to strike a third-party complaint." *Bell v. Bolivar County*, 24 F.3d 240 (5th Cir. 1994) (unpublished); *see also McDonald v. Union*

*Carbide Corp.*, 734 F.2d 182, 184 (5th Cir. 1984) (quoting *S. Ry. Co. v. Fox*, 339 F.2d 560, 563 (5th Cir. 1964)); *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 452 (9th Cir. 1983); *Old Republic Ins. Co. v. Concast, Inc.*, 99 F.R.D. 566, 568 (S.D.N.Y. 1983).

### 3. Discussion of Third-Party Practice

Under Rule 14 and the case law interpreting it, Fidelity, in order to bring its third-party complaint, must show that the policyholders are or may somehow be liable to it for all or part of Branch's FCA claims.  Fidelity's claims are not for indemnity or contribution, and it has not explained how the policyholders "[are] or may be liable to [Fidelity] for all or part of the claim against it."

Again, the claims in this case are about fraud.  They are not about negligent or accidental overpayment.  Fidelity at no point argues that the policyholders are liable to it *for the FCA claims*, as opposed to separate, independent claims that are not the proper subject of Rule 14 impleader.  *See Joe Grasso*, 380 F.2d at 751; *see also Mullins*, 514 F.2d at 747; *Lafon Nursing*, 2007 WL 4163678, at *2; *Sunrise Dev.*, 2004 WL 574719, at *2. Although a third-party defendant's liability must be "in some way derivative" of the third-party's liability to the plaintiff, Fidelity acknowledges that the policyholders are liable only if

Fidelity is *not* liable. *Compare Faser v. Sears, Roebuck & Co.*, 674 F.2d 866, 860 (11th Cir. 1982) ("if the defendant has no liability to the plaintiff, then the third party defendant has no liability to the defendant-third party plaintiff"); *with* R. Doc. 269 at 5-6 (noting that Fidelity's concerns are limited to circumstances in which it is not held liable for fraud).

Furthermore, Fidelity asserts a third-party complaint in a different capacity than its capacity as a defendant in this action. Branch sued Fidelity as an insurance company and participant in the WYO program. But Fidelity now brings its third-party complaint as a fiscal agent of the government. In other words, Fidelity has not only failed to demonstrate that the policyholders are liable to Fidelity for Branch's FCA claims. It also brings its third-party complaint as a functionally different party than the one sued by Branch. This is a considerable stretch of the Rule 14 requirements.

But even assuming that Fidelity has satisfied the requirements of Rule 14, the relevant case law establishes that third-party practice is highly restricted in FCA suits. Branch points to the case of *United States ex rel. Public Integrity v. Therapeutic Tech., Inc.*, 895 F. Supp. 294 (S.D. Ala. 1995), in which an FCA defendant, after being sued by the relator, filed a third-party complaint that alleged state-law claims of breach of contract, breach of warranty, and fraud. *Id.* at 295. The court

noted that several other courts "have held that FCA defendants
are precluded as a matter of law from seeking indemnification
from a third-party defendant, and that such claims must be
dismissed." *Id.* at 296.  It also quoted approvingly the
government's rationale that the third-party claims should be
dismissed:

> Allowing the third-party claims to continue during the
> pendency of the FCA case would contravene the rule
> barring indemnification and contribution actions.  It
> would interfere with the government's effort to recover
> for fraud committed by the parties ultimately responsible
> for the submission of [allegedly false] claims . . . and
> would shift the focus of the litigation of fraud to
> allocation of fault, contrary to the purpose of the FCA.

*Id.* at 296.  The court dismissed the third-party claims, noting
that "[t]he fact that *qui tam* defendants lack a right to bring
claims that will have the effect of offsetting FCA liability is
particularly notable."  *Id.* at 297.

Numerous other courts have reached the same conclusion.  For
example, in *Mortgages, Inc. v. U.S. Dist. Ct. for the Dist. of
Nev.*, 934 F.2d 209 (9th Cir. 1991) (per curiam), the Ninth
Circuit was faced with a scenario in which FCA defendants filed a
third-party complaint bringing state-law claims.  The court found
that the FCA "does not speak to the right of contribution or
indemnification," and that nothing in the legislative history
indicated that it might imply one.  *Id.* at 213.  It also found
that there was no reason to create such a right out of federal
common law, because "[w]hen Congress has enacted a comprehensive

19

legislative scheme, including integrated procedures for enforcement, there is a strong presumption that Congress did not intend the courts to supplement the remedies enacted. *Id.* It went on to conclude that "[b]ecause there is no basis in the FCA or federal common law to provide a right to contribution or indemnity in a FCA action, we conclude that there can be no right to assert state law counterclaims that, if prevailed on, would end in the same result."[2] *Id.* at 214. This appears to be the conclusion reached by the courts that have confronted the issue. *See, e.g., United States ex rel. Stephens v. Prahbhu*, No. 92-653, 1994 WL 761237, at *1 (D. Nev. Dec. 14, 1994) (disallowing third-party contractual and fraud-based claims because they would have effect of offsetting FCA defendant's liability); *Israel Discount Ltd. v. Entin*, 951 F.2d 311, 315 n.9 (11th Cir. 1992) (holding that a third-party complaint could have been dismissed "because there is no right to indemnity or contribution under the FCA," but declining to reach the issue because the court below had not addressed it); *United States v. Nardone*, 782 F. Supp. 996, 998-99 (M.D. Pa. 1990) (dismissing third-party claims and holding that

---

[2] The *Mortgages, Inc.* court presumably referred to the third-party complaint as a "counterclaim" because the claims were asserted against the *qui tam* plaintiffs who remained after the government elected to proceed with the suit in their stead. *See Mortgages, Inc.*, 934 F.2d at 210 ("Petitioners are *qui tam* plaintiffs in the FCA action below. They contend that as such, they should not be required to answer the *third-party complaints* filed against them. We agree.") (emphasis added).

"the [FCA] defendant is precluded from seeking indemnification as a matter of law"); *United States v. Kennedy*, 431 F. Supp. 877, 878 (C.D. Cal. 1977) ("If defendants and third party plaintiffs are liable under the [False Claims] Act, they are not entitled to indemnification from the third party defendant, even if it can be proven that he too would have been jointly and severally liable under the False Claims Act."); Claire M. Sylvia, The False Claims Act: Fraud Against the Government § 4.79 (2004 & Supp. 2009) (noting there is no suggestion that Congress intended rights of indemnification and contribution in FCA suits and that such claims would undercut the deterrent purposes of the Act).

Because the FCA is focused upon the deterrence and detection of fraud and not the allocation of fault or damages, the Court finds these cases persuasive.  Fidelity, however, argues that there are exceptions to this rule.  It points to the case of *United States ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 505 F. Supp. 2d 20, 26-27 (D.D.C. 2007), in which the court held that "[t]he unavailability of contribution and indemnification for a defendant under the False Claims Act now seems beyond peradventure," but went on to find certain types of counterclaims that could be brought by FCA defendants.  It noted that "the modern trend does not support a ban on compulsory counterclaims which are based on damages which are 'independent' of the qui tam claim," so long as those claims do not "have the effect of

21

providing for indemnification or contribution." *Id.* at 27

(quoting *United States ex rel. Mikes v. Straus*, 931 F. Supp. 248,

263 (S.D.N.Y. 1996), and *United States ex rel. Madden v. General

Dynamics Corp.*, 4 F.3d 827, 830-31 (9th Cir. 1993)).

Fidelity can find no refuge in *Miller*. *Miller* and the cases

it cites in its discussion of exceptions to the rule focus only

upon compulsory counterclaims. These must be brought because

they would be "lost forever" if they were barred, and such a

result raises "real due process concerns." *Id.* at 26-27. The

case does not focus upon third-party claims. As discussed above,

Fidelity's claims are not counterclaims. Counterclaims under

Rule 13(a) are required when a party has counterclaims that arise

out of the same transaction or occurrence that is the subject

matter of the opposing party's claim and do not require adding a

party over which the court cannot acquire jurisdiction. This

standard is much lower than the standard for third-party claims,

which can only be asserted when the third party may be liable for

all or part of the original claim, and cannot be separate and

independent. Fed. R. Civ. P. 14(a)(1); *see also Joe Grasso*, 380

F.2d at 751; *Mullins*, 514 F.2d at 747; *Lafon Nursing*, 2007 WL

4163678, at *2; *Sunrise Dev.*, 2004 WL 574719, at *2. Fidelity's

claims are not counterclaims, and *Miller* is therefore of no

assistance.

Finally, even if such an action were not barred by Rule 14

and the *Public Integrity* line of case law, allowing Fidelity to file a third-party complaint asserting separate, independent claims would introduce needless complication into a litigation that is already extremely complicated.  The Court would exercise its discretion to strike the third-party claims on this basis alone.

B. *Fidelity's Standing Based on its Status as a Fiscal Agent*

The parties disagree about whether Fidelity has standing to bring this claim in its "fiduciary capacity" as a "fiscal agent" of the United States.  *See* 44 C.F.R. § 62.23(f)-(g).  Because the Court has determined that Fidelity's claims are barred by the requirements of the Federal Rules of Civil Procedure and restrictions on third-party practice in FCA suits, however, this claim need not be analyzed.

## IV. Conclusion

For the foregoing reasons, the Motion to Strike is GRANTED.


IT IS SO ORDERED.


New Orleans, Louisiana, this _____12th_____ day of February, 2010.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE