UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

-----------------------------------------------------------------x
                                                                 :
UNITED STATES OF AMERICA,                                        :
*EX REL.* BRANCH CONSULTANTS, L.L.C.,                            :        Case No.: 06-cv-4091-SSV-SS
                                                                 :
                                        Plaintiff,               :                    Sect.: R
                                                                 :
                        v.                                       :
                                                                 :
ALLSTATE INS. CO., et al.,                                       :
                                                                 :
                                        Defendants.              :
                                                                 :
-----------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THE STANDARD FIRE INSURANCE COMPANY'S MOTION
TO COMPEL PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS "WORK PRODUCT"**

In its opposition brief, Branch completely glosses over the undisputed fact that its entire case against Standard Fire is based upon the "draft" reports that Branch is now withholding from production.  The reports which pertain to Standard Fire were described on the initial and amended privilege logs as:

- "Draft Summary Loss/Recap/Narrative Loss Recap/Narrative" (BRANCH B000366-67);

- "Draft Flood Adjustment Report" (BRANCH B000368-85);

1

- "Draft Wind Adjustment Report" (BRANCH B000386-407);

- "Draft Summary Loss/Recap/Narrative" (BRANCH B002644-45);

- "Draft Flood Adjustment Report" (BRANCH B002646-65); and

- "Draft Wind Adjustment Report" (BRANCH B002666-88).

Exs. A & B to MTC.  Branch's initial two logs did not establish an applicable protection because they do not describe any of these documents as having been prepared at the request of counsel, as having been prepared in anticipation of litigation or as containing its attorney's theory of the case and strategy.  Further, Branch does not dispute that all of these documents were prepared for affirmative use in this litigation—*i.e.,* to be relied on in the complaint, to be provided to the Government as part of Branch's statutory submission of "substantially all the material evidence and information in Branch's possession," 31 U.S.C. § 3730(b)(2), and to be relied on by the Court in its decision on Defendants' motion to dismiss.

Conveniently, Branch filed with its opposition brief a brand new log, produced just the day before to Standard Fire.  *See* Ex. 1 to Opp.  That log now lists every single document as having been "prepared at the request of counsel *for use in* litigation."  *Id.* (emphasis added). Leaving aside reliability issues relating to an after-the-fact privilege log amendment, even Branch's new description highlights the fundamental insufficiency of the work product claim here:  the documents being withheld were prepared by Branch, not its attorney, to function as the centerpiece of this litigation.  The Court's jurisdiction and the scope and merits of Branch's claim depend on the content and reliability of these documents.  Branch sidesteps this issue, ignoring its repeated representations of Branch's principal, on which this Court relied, that "[t]he documentation compiled by myself and others at Branch included dozens of photographs at each site and detailed notations concerning observable losses.  For each property, Branch compiled a

detailed report." 9/14/07 Johnson Decl. (Dkt. # 153-2 at 5) ¶ 12. The documents are Branch's work on which this case is purported to be based; they are not attorney work product prepared in anticipation of litigation and protected from disclosure.

Even if the draft reports do constitute attorney work product, Branch has put the reports in issue and they must be produced. Branch brushes aside this argument, relying on case law that says that a privileged communication is not put in issue "merely because it is relevant." While that may be true, it is beside the point here because the purported work product is not "merely" relevant. Rather, Branch has placed the information in the draft reports "in issue through some affirmative act for [its] own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to [Standard Fire.]" *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) (citation omitted).

Moreover, Standard Fire has demonstrated substantial need and undue hardship. Branch's argument that a litigant cannot demonstrate such need or hardship before taking depositions has no merit here. Unlike the cases upon which Branch relies, Standard Fire is not trying to obtain objective facts contained in a document that might just as easily be uncovered elsewhere. Rather, Standard Fire seeks to uncover reports that contain the basis for the accusations that Branch is an original source of Standard Fire's supposed fraud on the federal government. It is meaningless to say that Standard Fire can depose Branch if Standard Fire cannot cross-examine Branch with the documents that were prepared contemporaneously with Branch's adjustment. Branch's position is ever shifting. If there are inconsistencies in those documents with Branch's position today, Standard Fire has every right to address those inconsistencies to defend against Branch's allegations.

<u>**ARGUMENT**</u>

**I.     Branch Has Not Met Its Burden of Demonstrating the Withheld Documents Are Work Product**

Branch asks the Court to take it at its word that the withheld documents are work product.  Given the circumstances here, that is simply not good enough.

*First*, "work product protections only apply to materials prepared in anticipation of litigation which set 'forth the attorney's theory of the case and [its] litigation strategy.'"  *Kiln Underwriting Ltd. v. Jesuit High Sch. of New Orleans*, Nos. 06-04350, 06-05060, 06-05057, 2008 WL 108787, at *4 (E.D. La. Jan. 9, 2008) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975)).  Branch has not demonstrated that any document being withheld contains its attorneys' theories of the case or its litigation strategy.  And, its prior representations to this Court about the content of the document suggest to the contrary.  *See, e.g.,* 9/14/07 Opp. to Motion to Dismiss (Dkt. No. 153):

> Branch had inspected many of these properties initially, on behalf of homeowners, for purposes of determining the appropriate adjustment on the homeowners insurance policy for wind damage resulting from Hurricane Katrina. . . .  It did not merely take the paper files it had created for business purposes and turn them to another use.  Instead, it returned to the scene to gather additional data for completing flood loss estimates, it canvassed communities inspecting additional homes solely for purposes of this case, it pulled out the dozens of photos it had for each previously-inspected home, ***and it prepared detailed reports for each estimate***.

*Id.* at 16-17 (citation omitted).  It is these very reports that Branch is withholding.  Branch's now revised log <u>**still**</u> does not state that the documents were prepared at the request of counsel in anticipation of litigation or that they contain the mental impressions of attorneys (rather than Branch).  Indeed, Branch's characterization of the documents as being prepared "for use in

litigation" suggests that they were prepared for an affirmative, evidentiary purpose.  By definition, that is not work product.

        ***Second,*** Branch's self-serving declaration stating that documents were prepared at the request of counsel should not be taken at face value.  When read carefully, the declaration does not actually state that every one of the documents on the log was prepared at the request of counsel.  Indeed, the declaration says Branch prepared "several" documents containing Branch's—not counsel's—analysis of certain issues in the litigation, Ex. 1 to Opp. to MTC at ¶ 2, and states how such documents are identified on the log, without listing Bates numbers.  *Id.* ¶ 4.  Moreover, Max Johnson swears under penalty of perjury that the documents "were provided to Branch's lawyers and to no one else."  *Id.* ¶ 3.  Not true.  Branch's counsel represented to Standard Fire's counsel that the documents relating to Standard Fire's properties were provided to the Government as were others.  Indeed, Branch argues at length in its opposition brief that it did not waive work product protection by sharing the documents with the Government.[1]

        ***Third***, the history of revisions to the privilege log points to gamesmanship.  The first iteration of Branch's log did not describe any documents as having been prepared at the request of counsel or as containing an attorney's mental impressions.  *See* Ex. A to MTC. Following a meet and confer during which Standard Fire suggested that the log should identify the basis for the work product assertion, Branch revised the log to indicate that <u>some</u> of the documents had been prepared at the request of counsel (while saying nothing about attorney's mental impressions), while others do not include that description.  *See* Ex. B to MTC.  ***After*** Standard Fire filed its motion to compel flagging the issue, a new version of the log appeared

---

[1]     Because the purported "joint prosecutorial privilege" is the subject of another, fully-briefed motion to compel, Standard Fire refers the Court to such briefing rather than reargue that issue herein.

with Branch's opposition papers, now asserting that, in fact, every single document had been prepared at the request of counsel (yet still says nothing about attorney's mental impressions). Branch does not account for this discrepancy in its brief.

## II.     Branch Has Failed to Rebut Standard Fire's Argument That Branch Put the Adjustments in the Draft Reports "In Issue"

Branch pays short shrift to Standard Fire's contention that Branch has put the adjustments in the draft reports "in issue."  Indeed, Branch does not actually address Standard Fire's argument head on, and for good reason.  The Fifth Circuit has held that "[t]he great weight of authority" holds that a party waives privilege when a litigant "'place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.'"  *Conkling*, 883 F.2d at 434 (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).  Under the test set out in *Hearn,* an implied waiver of privilege occurs when: (1) assertion of the privilege was a result of some affirmative act, such as filing suit by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would deny the opposing party access to information vital to his defense.  *See Hearn*, 68 F.R.D. at 581.  "The at-issue implied waiver applies where the privilege holder makes assertions, the truth of which can only be assessed by examination of otherwise protected communications."  *Blue Lake Forest Prods., Inc. v. United States*, 75 Fed. Cl. 779, 783 (2007).

That is precisely the circumstance here:  Branch has placed purported work product in issue by filing a False Claims Act lawsuit Branch has repeatedly represented is based upon the adjustments described in the reports being withheld.  Where, as here, a plaintiff injects an issue into the forefront of the litigation and defendants' ability to test plaintiff's allegations by

reviewing the withheld documents is vital to their defense, courts across the country routine

require production. *See, e.g., FDIC v. Wise*, 139 F.R.D. 168, 172 (D. Colo. 1991) (court ordered

production by plaintiff FDIC of privileged regulatory documents where plaintiff's allegations put

in issue the actions, knowledge and beliefs of the regulators and because "defendants' ability to

test these allegations by reviewing the regulatory documents is vital to their defense"); *Landmark*

*Screens, LLC v. Morgan, Lewis & Bockius LLP*, No. C08-02581, 2009 WL 3415375, at *3 (N.D.

Cal. Oct. 21, 2009) (by bringing fraudulent concealment case, plaintiff "waived protection over

communications that demonstrate when and how it learned of the alleged fraud" because

information was vital to defendant's ability to defend on statute of limitations grounds); *United*

*States v. Amlani*, 169 F.3d 1189, 1195-96 (9th Cir. 1999) ("Simply put, [defendant] cannot assert

that certain factors caused him to discharge his attorney and then invoke the attorney-client

privilege to prevent the government from examining the situation further."  Without access to the

sought-after documents, the government "would be forced to rely almost exclusively on

[defendant's] characterization of events.").

        Branch's argument that its disclosure of facts from the draft reports does not

translate into a finding of waiver misses the point.  Branch is apparently selectively disclosing

from its "draft" reports so-called "underlying facts" as Branch deems fit.  What Branch's

adjusters subjectively concluded in their reports goes to the core of this lawsuit.  It would be

manifestly unfair to deprive Standard Fire and other defendants the ability to test Branch's

allegations through these reports, which may reflect discrepancies in the "underlying facts"

Branch is supposedly disclosing.  Branch should not be permitted to itself refer to these reports

in pleadings and motions, responding to discovery and testifying in deposition yet argue that

Defendants cannot see them.

**III.    Contrary to Branch's Protestations, Standard Fire Has Demonstrated Both a "Substantial Need" and "Undue Hardship"**

Branch's entire argument as to why Standard Fire has not demonstrated a "substantial need" or "undue hardship" is that Standard Fire has not taken a single deposition in this case.  While it may be true in other cases that a party can discover the facts in withheld documents by virtue of a deposition or other documents, that simply is not the case here.

For example, with respect to 7732 Edward Street (FAC ¶ 31.a), Branch alleges that there was only $32,000 of flood damage but the genesis of this figure is not even found in Branch's interrogatory response drafted and produced to Standard Fire ***after*** Branch reviewed Standard Fire's file.  *See* Ex. 3 to Branch's 2/11/10 Opp. to MTC, at 5 (without providing Branch's independent calculation, claiming that "[a]n adjustment conducted in accordance with the applicable rules, regulations, and guidelines would show that Katrina caused flood damages of at most $31,825.11 at this property").[2]  Branch argues that it "produced a detailed discussion identifying Standard Fire's adjusting deficiencies and the rules, regulations, and guidelines it violated."  Opp. at 17.  That "detailed discussion," however, was prepared in response to interrogatories in this case ***after*** Standard Fire produced its claim file—indeed the discussion makes comparisons between Branch's adjustment's and Standard Fire's.  While ***Branch*** has had the full benefit of seeing ***Standard Fire's*** detailed flood adjustment reports in order to prepare Branch's "detailed discussion" and criticism of Standard Fire's adjustments, Branch is refusing to produce the equivalent of what Standard Fire produced.  That is simply unfair.  Moreover,

---

[2]    Likewise, with respect to 7568 Horizon Drive (FAC ¶ 31.b), the interrogatory response Branch produced to Standard Fire does not provide Branch's supposed calculation that there was only $31,000 of flood damage at that address.  Ex. 3 to Branch's 2/11/10 Opp. to MTC, at 2 (averring that "[a]n adjustment conducted in accordance with the applicable rules, regulations, and guidelines would show that Katrina caused flood damages of at most $31,306.40 at this property").  Standard Fire did not insure the property listed in Paragraph 31.c.

what Branch knew and when Branch knew it critical to subject matter jurisdiction and the scope of this case.

Standard Fire cannot obtain the substantial equivalent of these documents through any other means.  At bottom, Branch does not want to be required to produce any documents or information that Standard Fire can use to question Branch's "findings."  Standard Fire is entitled to see the "draft" reports to see if they are consistent with what Branch alleged in its complaint and what Branch said in its "detailed discussion."  If the documents contain information inconsistent with Branch's allegations, such documents provide critical rebuttal and impeachment evidence to which Standard Fire must have access.  There is no substitute.  Branch failed to respond to this argument in its opposition.

## IV.    Branch Cannot Have It Both Ways

In its opening memorandum, Standard Fire suggested that if the Court does not compel production of the documents Branch is withholding, the Court should enter an order precluding Branch from using such documents or in any way referencing Branch's adjustments or examinations of the properties to which they relate.  This suggestion is consistent with Standard Fire's argument that it would be manifestly unfair to allow Branch to put its re-adjustments in issue yet not produce all of its adjusting reports—draft or otherwise.  Either Branch should produce its reports or Branch should remove the re-adjustments from issue.

As the United States Supreme Court has held, a party "can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination."  *United States v. Nobles*, 422 U.S. 225, 240 (1975).  In *Nobles*, an investigator for

the defense interviewed eyewitnesses and "preserved the essence of those conversations in a written report." *Id.* at 227.  When the defense called the investigator as a witness at trial, the district court stated that a copy of the report (inspected and edited *in camera*) would have to be submitted to the prosecution at the completion of the investigator's impeachment testimony.  *See id.* at 228.  When defense counsel refused to produce the report, the district court ruled that the investigator would not be allowed to testify about his interviews with the witnesses.  *See id.*  The United States Supreme Court agreed with the district court, concluding that "[t]he investigator's contemporaneous report might provide critical insight into the issues of credibility that the investigator's testimony would raise," *id.* at 232, at that the defense, "by electing to present the investigator as a witness, waived the [work product] privilege with respect to matters covered in his testimony."  *Id.* at 239.

This Court has inherent power to "make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial," including the power to exclude testimony and evidence that would "unfairly prejudice an opposing party."  *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980); *see also Wade v. Mantello*, 333 F.3d 51, 58 (2d Cir. 2003) (right to present relevant evidence is not unlimited).  Here, Branch's use of the draft summaries and reports, and other evidence referencing those documents or investigations from which they arise, would unfairly hinder Standard Fire's ability to present an adequate defense.  Absent production, exclusion of the reports (and any evidence of Branch's adjustments or examinations of the properties to which they relate) would be the only means of ensuring a fair and orderly disposition of this case.

## CONCLUSION

For the reasons set forth herein as well as in Standard Fire's opening memorandum, Standard Fire respectfully requests that the Court grant Standard Fire's motion to compel.

Dated:  March 1, 2010

Respectfully submitted,

PHELPS DUNBAR LLP

/s/ Harry Rosenberg
Harry Rosenberg (11465)
rosenbeh@phelps.com
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone:  (504) 566-1311

SIMPSON THACHER AND BARTLETT LLP
Bryce L. Friedman  (*pro hac vice*)
bfriedman@stblaw.com
425 Lexington Avenue
New York, New York 10017
Telephone:  (212) 455-2000

Deborah L. Stein (*pro hac vice*)
dstein@stblaw.com
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067
Telephone:  (310) 407-7500

**Attorneys for The Standard Fire Insurance Company**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all parties to this suit through counsel by filing into the Court's electronic filing system on this 1st day of March, 2010.

/s/ Harry Rosenberg
_____