UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*EX REL.* BRANCH CONSULTANTS, L.L.C.,<br><br>Plaintiff<br><br>VERSUS<br><br>ALLSTATE INSURANCE COMPANY, et. al.,<br><br>Defendants | CIVIL ACTION NO.: 06-4091<br><br>SECTION: "R" (1)<br><br>JUDGE: VANCE<br><br>MAGISTRATE: SHUSHAN |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER**

Defendants, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), American National Property and Casualty Company ("ANPAC"), American Reliable Insurance Company ("ARIC"), The Standard Fire Insurance Company ("Standard Fire"), Colonial Claims Corporation ("Colonial"), Simsol Insurance Services, Inc. ("Simsol"), Fidelity National Insurance Company, and Fidelity National Property and Casualty Insurance Company (both Fidelity companies are referred to collectively as "Fidelity") submit this memorandum in support of their motion for a protective order, limiting the scope of subpoenas issued to eleven third-parties.[1]

---

[1] Defendants are submitting this Motion to this Court because of its intimate familiarity with the issue and involvement in the discovery process. Branch did the same, filing a Motion for Protective Order (R. Doc. 406) here, seeking to quash subpoenas issued outside of this District. *See also Auto-Owners, Ins. Co. v. Southeast Floating Docks, Inc.*,

1

## BACKGROUND

Plaintiff Branch Consultants, L.L.C. ("Branch") brought this *qui tam* action on behalf of the United States (although the U.S. never joined as a party) against, among others, several "Write-Your-Own" ("WYO") insurance carriers participating in the U.S. Government's National Flood Insurance Program. In its First Amended Complaint ("FAC"), Branch claims that these WYO insurers issued both flood and wind policies on a number of listed properties, and that the insurers fraudulently categorized losses caused by wind as flood losses, payable by the federal government, rather than as wind losses, payable under wind policies issued by the insurers. *See* March 1, 2010 Order, R. Doc No. 417. Branch later sought to amend its complaint to include allegations relating not only to fraudulent "loss shifting" but also to a so-called "inflated-revenue scheme," whereby Branch alleged that defendants included "inflated prices" as well as undamaged items in their flood adjustments in order to increase the amount of fees they earned from the federal government for the adjustment of insureds' flood claims. *Id.* at p. 12.

This Court denied Branch's motion to amend the complaint to include this "inflated revenue scheme" as untimely, unduly prejudicial to Defendants, and for reasons of judicial economy. *Id.* at pp. 18-20. The Court noted that its ruling limiting Branch to its "loss shifting" theory would limit the focus of the case to "those properties where a defendant insurer issued both the flood and homeowners policies," whereas, if the Court had permitted Branch to assert its "inflated revenue" theory, "all properties where the defendant insurers were WYO insurers" would be at issue. *Id.* at p. 17. The Court held that this significant expansion of discovery, which would encompass all NFIP claims processed by Defendants as well as

---

231 F.R.D. 426, 428 (M.D. Fla. 2005) ("a party has standing to move to enforce the court's orders and rules").

discovery required to prove scienter for the alleged scheme, would be unduly prejudicial to Defendants. *Id.* at p. 19.

This Court also limited discovery to the twenty-seven properties identified in the FAC. *See* Jan. 20, 2010 Order, R. Doc. No. 309. The Court specifically stated that "discovery regarding properties other than the twenty-seven is deferred pending further orders." *Id.*

Branch's "loss-shifting scheme" claim against the Defendant Insurers arises from allegations about claims where loss shifting as pled could not possibly have occurred. For example, of the twenty-seven properties listed in the FAC, Liberty Mutual issued both a homeowners' policy and a WYO flood policy on only one property identified in the FAC, 7441 Fieldston Road, New Orleans, Louisiana (the "Fieldston Property"), which property did not involve a covered wind claim due to the insured's fabrication of damage and thus does not fit within the alleged "loss-shifting" scheme.

The second property supposedly pertaining to Liberty Mutual, 13656 N. Cavelier Drive, New Orleans, Louisiana (the "Cavelier Property"), was not insured for wind under a Liberty Mutual policy and likewise does not fit within the alleged "loss-shifting" scheme asserted by Branch. Similarly, Standard Fire, ARIC, ANPAC and Fidelity did not insure any of the properties identified in FAC for wind and thus have no allegations of claims that fit within the alleged "loss-shifting" scheme.

Nevertheless, despite the lack of allegations possibly suggestive of a "loss-shifting scheme" and the Court's order limiting discovery to the properties identified in the FAC, Branch seeks wide ranging discovery from the Defendants of information pertaining to all

Hurricane Katrina claims.[2] And, continuing its march for wide ranging irrelevant discovery violative of the Court's January 20, 2010 Order and beyond the scope of the FAC, on March 8, 2010, Branch recently served eleven subpoenas to third-parties.[3] *See* Exhibits "A-1" through "A-11". The third party subpoenas seek wide ranging voluminous productions in just over two weeks time.

For example, Branch issued a subpoena to Bellmon Adjusters, Inc. ("Bellmon"), an independent adjusting firm which provided adjusting services on one property identified in the FAC, the Fieldston Property, on which the insured fabricated damage. *See* March 8, 2010 Subpoena, attached as Ex. "A-1". Branch's subpoena to Bellmon requests an overly broad, burdensome production within sixteen days on matters unrelated to the one property and well beyond the scope of discovery permitted by this Court in its January and March, 2010 orders. Specifically, the subpoena seeks the following irrelevant or non-property specific information: any and all contracts, agreements, letters of engagement, or similar documents between Bellmon and Liberty Mutual, and/or any other individual, firm, or business known to be associated with services or work performed regarding the Fieldston Property, all e-mail communications between Michael Bellmon and Liberty Mutual between August 23, 2005 and October 1, 2006 relating to the general adjustment of Hurricane Katrina related claims (wind and flood), all pricelists relied upon in the adjustment of the Fieldston Property, all instructions, manuals, guidelines, or similar documents (including communications) provided to Bellmon by Liberty Mutual regarding the

---

[2] In accordance with the Court's January 20, 2010 Order (R. Doc. No. 309), Defendants object to discovery regarding properties other than those identified in the FAC.

[3] The third-parties are Bellmon Adjusters, Inc., Wardlaw Claims Service, Inc., Southwest Business Corporation, Amica Mutual Insurance Company, State Farm Mutual Automobile Insurance Company, Lloyd' America, Inc., Louisiana Citizens Property Insurance Corporation, Sweet Claims Service, Inc., American Catastrophe Claims, LMB Claims Solutions, LLC, and Republic Companies Group, Inc.

155152_3

adjustment (wind and/or flood) of Hurricane Katrina related claims, and all instructions, manuals, guidelines, or similar documents (including communications) provided to Bellmon by Liberty Mutual regarding the adjustment (wind and/or flood) of Hurricane Katrina related claims.[4]  *See id.*

Branch also issued subpoenas to three non-parties with regard to the two Standard Fire properties described in the FAC.  *See* Exhs. "A-2", "A-3", and "A-4".  Branch issued a subpoena to American Catastrophe Claims, an independent adjusting firm.  *See* Exh. "A-3".  It is improper and overly broad for the same reasons that the subpoena to Bellmon is improper.[5]

Branch also served a subpoena on third party Louisiana Citizens Property Insurance Corporation ("Citizens") which exceeds the scope of the allegations within the FAC and requests production of a myriad of irrelevant information including: all contracts between Citizens and its adjusting firms regarding adjustment of Hurricane Katrina claims, all communications between Citizens and certain adjusters and/or adjusting firms, including Colonial, regarding adjustment of Hurricane Katrina wind and/or water damage claims, all communications between Citizens and the WYO Defendants regarding adjustment of Hurricane Katrina wind and/or water damage claims, all pricelists utilized by Citizens in adjustment of certain properties identified in the FAC, and all instructions, manuals, and guidelines (including

---

[4]  Objectionable topics are included in each of the eleven third party subpoenas and are outlined in Exhibit "B" attached.

[5]  Furthermore, Branch's definitions of "You" and "Your", "Standard Fire", and "Republic Fire" are overly broad, vague, and go beyond the scope of the action as pled in the FAC, and as limited by this Court's orders.  Branch also seeks agreements and communications between the subpoenaed parties and adjusting firms and individual adjusters which are not relevant or discoverable.  The subpoenaed parties' communications with Standard Fire are not relevant of discoverable.  Likewise, the subpoenaed parties' pricelists are not relevant or discoverable.  And, finally, the subpoenaed parties' instructions, manuals, and guidelines are not relevant or discoverable.  Standard Fire has the same objections to Branch's subpoenas to Louisiana Citizens Property Insurance Corporation, Exh. "A-2", and Republic Companies Group, Inc., Exh. "A-4".

communications) provided by Citizens to adjusting firms, including Colonial, regarding adjustment of Hurricane Katrina wind and flood claims. *See* Exh. "A-2".

Given the issues cited above, Liberty Mutual's counsel contacted Branch's counsel on behalf of all Defendants and requested that they limit the scope of these subpoenas, but Branch refused to modify its requests. Accordingly, the Defendants file this motion for protective order prior to the due date on the subpoena to protect their interests and the interests of the various third-parties.

## LAW AND ARGUMENT

Federal Rule of Civil Procedure 26(c) states that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. Proc. 26(c). "A facially overbroad subpoena is unduly burdensome" and may be the subject of a protective order. *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003) (quoting *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)). A court also can "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." Fed. R. Civ. Proc. 26(c)(1)(D). In fact, protective orders are appropriate to prevent discovery into irrelevant issues. *See United Steelworkers of America, AFL-CIO v. Allegheny Ludlum Corp.*, 2002 WL 31002836 at *2 (W.D. Pa. May 29, 2002). ); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (using relevance to assess undue burden and explaining "courts have incorporated relevance as a factor when determining motions to quash a subpoena"); *Pinero v. Jackson Hewitt, Inc.*, No. 08-3535, 2009 WL 3031179 (E.D. La. Sept. 16, 2009) (quashing subpoenas, in the court's district, that were overbroad and could not lead to the discovery of admissible evidence and issuing a protective order for subpoenas that were issued in other districts).

While the party to whom a subpoena has been issued ordinarily files motions to quash or modify the subpoena under Rule 45(c)(3), "a party, though not the person to whom a subpoena is directed and not in possession or control of the requested materials, does have standing [to contest a subpoena] if he or she has a personal right or privilege in respect to the subject matter of the subpoena or a sufficient interest in it." *Dimitric v. Texas Workforce Com'n*, No. 07-0247, 2008 WL 2630089 at * 1 (S.D. Tex. June 30, 2008).

Even a cursory review of Branch's subpoenas reveal that they are facially overbroad and seek totally irrelevant information, either of which justifies entry of a protective order. The issue in this case on which Branch is permitted to pursue discovery is its "loss-shifting" scheme, whereby it claims that Defendant Insurers fraudulently shifted payments that should have been made for wind damage to flood, in order to avoid paying for the wind damage claims out of the homeowners' policy they issued. The requests in Branch's third party subpoena go far afield of discovery that is relevant to this claim, are facially overbroad and therefore presumptively unduly burdensome. *See Cmedia*, 216 F.R.D. at 389. For example, Branch's request that Bellmon produce "[a]ny and all contracts, agreements, letters of engagement, or similar documents between [Bellmon] and Liberty Mutual, and/or any other individual, firm, or business known to be associated with services or work performed regarding [the Fieldston Property]" not only seeks proprietary information related to Liberty Mutual's retention of Bellmon, but is not limited in time and scope and would encompass agreements unrelated to the Fieldston Property or the claims at issue in this case. *Chazin v. Lieberman*, 129 F.R.D. 97, 98 (S.D.N.Y. 1990) (a party has standing to move to quash third-party subpoenas that implicate party's confidentiality rights). Branch's request seeking "[a]ll e-mail communications between Michael Bellmon and Liberty Mutual between August 23, 2005 and October 1, 2006

relating to the general adjustment of Hurricane Katrina related claims (wind and flood)" is even broader and more burdensome. That request is not limited to the sole property adjusted by Bellmon at issue in the FAC (the Fieldston Property), and would require burdensome searches of tens of thousands of emails and production of voluminous unrelated discovery, some of which may be proprietary or otherwise privileged.

Although the subpoenas are issued to third-parties, Defendants would bear the cost of review and redaction of the voluminous documents to ensure redaction of proprietary and privileged information. While Defendants would bear this cost even if Branch's subpoenas were limited to the properties identified in the FAC, the cost would be far less than the cost associated with essentially a review of all documents associated with Hurricane Katrina.

As with the above requests, Branch's request for "[a]ll pricelists relied upon in the adjustment of the Properties" reaches beyond the bounds of the FAC, which does not reference price lists. In fact, this Court has expressly ruled that Branch may not pursue its "inflated price" theory which did rest on allegations pertaining to price lists. *See* March 1, 2010 Order, R. Doc No. 417. This request obviously is plainly made in pursuit of that disallowed claim. Moreover, any such price lists are confidential proprietary information owned or controlled by a vendor, which Defendants and the third-parties are not voluntarily permitted to disclose.

Branch's Requests seeking "[a]ll instructions, manuals, guidelines, or similar documents (including communications) provided to [the adjusting companies by the WYO Defendants] regarding the adjustment (wind and/or flood) of Hurricane Katrina related claims", and "[a]ll instructions, manuals, guidelines, or similar documents (including communications) provided by [the WYO insurers] to employees or independent adjusters regarding the adjustment (wind and/or flood) of Hurricane Katrina related claims" are likewise overly broad and unduly

burdensome. The Requests are not limited in time or to the identified properties or the issues in this lawsuit, would require search of tens of thousands of emails and production/review of voluminous, privileged, proprietary and/or unrelated discovery, and requires disclosure of a wide array of documents relating to a myriad of adjusting issues, including, additional living expense claims, personal property claims, civil authority, or deductibles, none of which have anything to do with this case. These Requests are also overly broad given that few, if any, of the identified properties had covered wind claims.

The subpoena to Louisiana Citizens is especially egregious. Citizens neither is named a defendant nor referenced in the FAC. Yet, Branch's grand fishing expedition seeks to require Citizens to produce all manuals, instructions, and guidelines, its price lists, and its communications with insurers and adjusters, without limitation in time or even to the properties identified in the FAC. In short, these Requests are overbroad, burdensome, and irrelevant.

Finally, Branch's subpoenas to the third-parties are objectionable as they fail to allow a reasonable time to comply. *See* Fed. R. Civ. Proc. 45(c)(3)(A)(i). The subpoenas were issued on March 8, 2010, and require production of thousands of documents on March 24, 2010, sixteen days later. Such timeframe will not allow gathering of all responsive material much less time for the third-parties and Defendants to conduct their privilege review prior to production.

Because this Court has previously ordered that discovery in this matter be limited to only the properties and theories asserted in the FAC, Defendants request that this Court enter an order modifying Branch's March 8, 2010 subpoenas to allow discovery related only to those properties. Furthermore, Defendants request that the Court enter an order allowing the third-parties and Defendants a reasonable time to gather, sort and review the requested materials prior to production.

155152_3

**CONCLUSION**

For the foregoing reasons, Defendants requests that the Court grant their motion for a protective order and limit the scope of Branch's subpoenas to third-parties as described in the attached protective order.

Respectfully submitted,

| | |
|---|---|
| BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, LLC | NIELSEN LAW FIRM, LLC |
| /s/ Keith L. Magness<br>Judy Y. Barrasso (2814)<br>jbarrasso@barrassousdin.com<br>John W. Joyce (27525)<br>jjoyce@barrassousdin.com<br>Keith L. Magness (29962)<br>kmagness@barrassousdin.com<br>909 Poydras Street, Suite 2400<br>New Orleans, Louisiana 70112<br>Telephone: (504) 589-9700<br><br>**Attorneys for Liberty Mutual Insurance Company** | /s/ Gerald J. Nielsen<br>Gerald J. Nielsen (17078)<br>gjnielsen@aol.com<br>William T. Treas (26537)<br>wtreas@nielsenlawfirm.com<br>3838 North Causeway Boulevard, Suite 2850<br>Metairie, Louisiana 70002<br>Telephone: (504) 837-2500<br><br>**Attorneys Fidelity National Insurance Company, Fidelity National Property and Casualty Insurance Company** |
| LAW OFFICES OF GORDON P. SEROU, JR., L.L.C. | SUTTON & ALKER, LLC |
| /s/ Gordon P. Serou, Jr.<br>Gordon P. Serou, Jr. (14432)<br>gps@seroulaw.com<br>Poydras Center, Suite 1420<br>650 Poydras Street<br>New Orleans, Louisiana 70130<br>Telephone: (504) 299-3421<br><br>**Attorneys for American Reliable Insurance Company** | /s/ James C. Rather<br>James C. Rather (25839)<br>jrather@sutton-alker.com<br>4080 Lonesome Road, Suite A<br>Mandeville, Louisiana 70448<br>(985) 727-7501<br><br>**Attorneys for Simsol Insurance Services, Inc.** |

155152_3

| | |
|---|---|
| BEST KOEPPEL | LARZELERE PICOU WELLS SIMPSON LONERO, LLC |
| /s/ Peter S. Koeppel<br>Peter S. Koeppel<br>Michael L. Martin<br>2030 St. Charles Ave.<br>New Orleans, Louisiana 70130<br>Telephone:  (504) 598-1000<br>**Attorneys for Colonial Claims Corporation** | /s/ Jay M. Lonero<br>Jay M. Lonero, T.A. (20642)<br>jlonero@lpw-law.com<br>Christopher R. Pennison (22584)<br>cpennison@lpw-law.com<br>Angie A. Akers (26786)<br>aakers@lpw-law.com<br>3850 N. Causeway Boulevard, Ste 1100<br>Metairie, Louisiana 70002<br>Telephone:  (504) 834-6500<br><br>**Attorneys for American National Property And Casualty Company** |

PHELPS DUNBAR LLP

/s/ Harry Rosenberg
Harry Rosenberg (11465)
rosenbeh@phelps.com
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone:  (504) 566-1311

SIMPSON THACHER AND BARTLETT LLP
Bryce L. Friedman  (*pro hac vice*)
bfriedman@stblaw.com
425 Lexington Avenue
New York, New York 10017
Telephone:  (212) 455-2000

Deborah L. Stein (*pro hac vice*)
dstein@stblaw.com
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067
Telephone:  (310) 407-7500

**Attorneys for The Standard Fire Insurance Company** (*erroneously named as St. Paul Travelers Co.*)

11

155152_3

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the above and foregoing pleading has this date been served upon all parties to this suit through counsel by filing into the Court's electronic filing system and, for non-participants, via electronic mail, this 19th day of March, 2010.

                                                    /s/ Keith L. Magness
                                                    KEITH L. MAGNESS

155152_3