UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

---------------------------------------------------------------x
                               :

UNITED STATES OF AMERICA,
*EX REL*. BRANCH CONSULTANTS, L.L.C.,    :     Case No.: 06-cv-4091-SSV-SS
                               :
                   Plaintiff,     :         Sect.: R
                               :
              v.                  :        Judge Vance
                               :
ALLSTATE INS. CO., *et al.*,              :     Magistrate Judge Shushan
                               :
                 Defendants.   :
                               :
---------------------------------------------------------------x

**DEFENDANTS' RESPONSE TO BRANCH CONSULTANTS, L.L.C.'S
OBJECTIONS TO MAGISTRATE JUDGE SHUSHAN'S
ORDER GRANTING IN PART AND DENYING IN PART ITS
<u>MOTION FOR LEAVE TO FILE ITS SECOND AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

<u>PAGE(S)</u>

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND............................................................................................................. 6

    I.    THE FIRST AMENDED COMPLAINT PLEADS A "LOSS SHIFTING SCHEME"
        ONLY................................................................................................................ 6

        A.    In 2007, The Parties Litigated Loss-Shifting In The District Court.
               Branch Did Not Seek To Add Inflated-Revenue To The Case ................. 6

        B.    In 2008, the Parties Litigated Loss-Shifting In The Fifth Circuit.
               Branch Did Not Mention, Or Seek To Add, The Inflated-Revenue
               Scheme To The Case ............................................................................... 7

        C.    In 2009, the Parties Litigated Loss-Shifting In This Court.  Branch
               Did Not Mention Or Seek To Add An Inflated-Revenue Scheme
               To The Case............................................................................................ 8

        D.    Branch Seeks Leave To Amend Because It Learned Its Loss-
               Shifting Allegations Have No Merit ....................................................... 9

        E.    The Motion To Amend .......................................................................... 10

        F.    Judge Shushan's Order.......................................................................... 10

ARGUMENT ............................................................................................................... 12

    I.    STANDARD OF REVIEW: JUDGE SHUSHAN'S ORDER IS SUBJECT TO REVIEW
        UNDER A CLEARLY ERRONEOUS STANDARD....................................................... 12

    II.    JUDGE SHUSHAN APPLIED THE CORRECT LEGAL STANDARD IN EXERCISING
        HER DISCRETION TO DENY LEAVE TO AMEND.................................................... 13

    III.    JUDGE SHUSHAN CORRECTLY FOUND BRANCH'S MOTION TO ADD AN
        INFLATED-REVENUE SCHEME WAS UNTIMELY.................................................... 14

        A.    Judge Shushan Correctly Found Branch Failed To Explain Its
               Delay And Knew All Relevant Facts When It Filed Its Original
               Complaint .............................................................................................. 15

B.  Branch's Proposed Amendment Is Not Timely Merely Because Branch Filed The Motion Before the Court's Deadline For Motions to Amend ................................................................................................ 16

C.  Branch's Proposed Amendment Is Not Timely Simply Because There Is Time Left For Discovery ......................................................... 17

D.  Even if this Court Disregards The Time During Which The Motion To Dismiss Was Pending, Branch's Motion To Amend Was Untimely ................................................................................................ 18

IV.  JUDGE SHUSHAN CORRECTLY FOUND THE PROPOSED AMENDMENT UNDULY PREJUDICIAL TO DEFENDANTS ............................................................ 20

V.  BRANCH'S MOTION TO AMEND ITS COMPLAINT AT THIS STAGE OF THE LITIGATION DEMONSTRATES BAD FAITH AND DILATORY MOTIVE ...................... 23

VI.  BRANCH'S ARGUMENTS ABOUT POTENTIAL PREJUDICE TO THE GOVERNMENT DO NOT JUSTIFY REVERSAL OF JUDGE SHUSHAN'S ORDER ........... 25

CONCLUSION ................................................................................................................. 25

**TABLE OF AUTHORITIES**

**PAGE(S)**

**Cases**

*Allison Engine Co. v. United States ex rel. Sanders,*
   553 U.S. 662 (2008)......................................................................................................... 5

*Barrett v. Indep. Order of Foresters,*
   625 F.2d 73 (5th Cir. 1980)..............................................................14, 15, 20

*Bradley v. Phillips Petroleum Co.,*
   527 F. Supp. 2d 661 (S.D. Tex. 2007) ............................................................. 21

*Daves v. Payless Cashways, Inc.,*
   661 F.2d 1022 (5th Cir. 1981)......................................................................... 13

*Fielding v. Tollaksen,*
   510 F.3d 175 (2d Cir. 2007)...................................................................... 12, 13

*Foman v. Davis,*
   371 U.S. 178 (1962)......................................................................................... 13

*Goughnour v. REM Minn., Inc.,*
   No. 06-1601, 2007 WL 4179354 (D. Minn. Nov. 20, 2007) ............................... 23

*Halbert v. City of Sherman,*
   33 F. 3d 526 (5th Cir. 1994)........................................................................... 17

*Haywood v. Tribeca Lending Corp.,*
   No. 2:06CV108-P-A, 2007 WL 518836 (N.D. Miss. Feb. 14, 2007) ................... 22

*Hindo v. Univ. of Health Scis.,*
   65 F.3d 608 (7th Cir. 1995)....................................................................... 5, 16

*Hodczak v. Latrobe Spec. Steel Co.,*
   No. 08-649, 2010 WL 892205 (W.D. Pa. Mar. 9, 2010) ...................................... 13

*Hughes Aircraft Co. v. United States ex rel. Schumer,*
   520 U.S. 939 (1997)......................................................................................... 18

*Joseph v. Cannon,*
   No. 95-248, 1996 WL 41849 (E.D. La. Feb. 1, 1996).................................12, 16, 17

*Kemp v. Metabolife Int'l, Inc.,*
   No. 00-3513, 2004 WL 2095618 (E.D. La. Sept. 13, 2004).................................. 22

*Las Vegas Ice & Cold Storage Co. v. Far West Bank,*
   893 F.2d 1182 (10th Cir. 1990) ................................................................ 20

*Little v. Liquid Air Corp.,*
   952 F.2d 841 (5th Cir. 1992) .................................................................... 21

*Matter of Southmark Corp.,*
   88 F.3d 311 (5th Cir. 1996) ............................................................... passim

*Mayeaux v. La. Health Serv. & Indem. Co.,*
   376 F.3d 420 (5th Cir. 2004) ................................................................... 21

*Merritt v. Int'l Bhd. of Boilermakers,*
   649 F.2d 1013 (5th Cir. 1981) ................................................................. 12

*Moody v. Callon Petroleum Operating Co.,*
   37 F. Supp. 2d 805 (E.D. La. 1999) .................................................... 12, 13

*Multimin USA, Inc. v. Walco Int'l, Inc.,*
   No. 4:06-CV-260A, 2007 WL 1186559 (N.D. Tex. Apr. 19, 2007) ..................... 22

*Pallottino v. City of Rio Rancho,*
   31 F.3d 1023 (10th Cir. 1994) .......................................................14, 16, 20

*Parish v. Frazier,*
   195 F.3d 761 (5th Cir. 1999) ................................................................... 21

*PYCA Indus., Inc. v. Harrison County Waste Water Mgmt. Dist.,*
   81 F.3d 1412 (5th Cir. 1996) .................................................................. 12

*Ranger Ins. Co. v. Events, Inc.,*
   No. Civ. A 03-2831, 2004 WL 2004545 (E.D. La. Sept. 8, 2004) ...................... 13

*Rockwell Automation, Inc. v. United States,*
   70 Fed. Cl. 114 (Fed. Cl. 2006) ............................................................... 19

*Ross v. Houston Indep. Sch. Dist.,*
   699 F.2d 218 (5th Cir. 1983) ............................................................... 4, 22

*Sharer v. Tandberg, Inc.,*
   No. 1:06cv626, 2007 WL 433152 (E.D. Va. Feb. 2, 2007) ............................. 12

*Shivangi v. Dean Witter Reynolds, Inc.,*
   825 F.2d 885 (5th Cir. 1987) .................................................................. 13

*United States ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.,*
   No. 8:06-cv-40-T-24, 2008 WL 343158 (M.D. Fla. Feb. 5, 2008) ...................... 14

*United States ex rel. Branch Consultants v. Allstate Ins. Co.,*
   560 F.3d 371 (5th Cir. 2009)...................................................................................... 2, 8

*United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.,*
   668 F. Supp. 2d 780 (E.D. La. 2009).......................................................................... 2, 9

*United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.,*
   No. 07-31191, Appellant's Reply Br., 2008 WL 6082657 (5th Cir. June 6,
   2008) ..................................................................................................................................... 8

*United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co., et al.,*
   No. 07-31191, Opening Appellant Br., 2008 WL 6082655 (5th Cir. Mar. 24,
   2008) ..................................................................................................................................... 8

*United States ex rel. Clausen v. Lab. Corp. of Am., Inc.,*
   290 F.3d 1301 (11th Cir. 2002)........................................................................................ 5

*United States ex rel. Doe v. Dow Chem. Co.,*
   343 F.3d 325 (5th Cir. 2003).......................................................................................... 13

*United States ex rel. Franklin v. Pfizer, Inc.,*
   No. 96-1165, 2002 WL 32128635 (D. Mass. Feb. 6, 2002) ................................. 21

*United States ex rel. Hess v. Sanofi-Synthelabo, Inc.,*
   No. 4:05CV570MLM, 2006 WL 1064127 (E.D. Mo. Apr. 21, 2006) ................... 23

*United States ex rel. Joshi v. St. Luke's Hosp., Inc.,*
   441 F.3d 552 (8th Cir. 2006)...................................................................................... 5, 23

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.,*
   360 F.3d 220 (1st Cir. 2004) ............................................................................................ 5

*United States ex rel. Schumer v. Hughes Aircraft Co.,*
   63 F.3d 1512 (9th Cir. 1995).......................................................................................... 18

*United States ex rel. Told v. Interwest Constr. Co., Inc.,*
   505 F. Supp. 2d 1245 (D. Utah 2007).................................................................... 22, 23

*Uviedo v. Steves Sash & Door Co.,*
   738 F.2d 1425 (5th Cir. 1984)........................................................................................ 12

*Western Geophysical Co. v. Adriatic, Inc.,*
   No. CIV A 96-513, 2000 WL 988073 (E.D. La. July 17, 2000)............................ 22

*Wimm v. Jack Eckerd Corp.,*
   3 F.3d 137 (5th Cir. 1993)................................................................................... passim

## **Statutes**

28 U.S.C. § 636(b)(1)(A) ................................................................................................. 12

31 U.S.C. § 3730 ............................................................................................................... 6

31 U.S.C. § 3730(b)(3) .................................................................................................... 25

44 C.F.R., Part 2, Appx. A .............................................................................................. 10

Fed. R. Civ. P. 72(a) ....................................................................................................... 12

Fed. R. Civ. P. 9(b) .................................................................................................3, 8, 9, 10

Defendants The Standard Fire Insurance Company (named as St. Paul Travelers Cos.) ("Standard Fire"), Liberty Mutual Fire Insurance Company, American National Property and Casualty Company ("ANPAC"), American Reliable Insurance Company ("ARIC"), Colonial Claims Corporation, and Simsol Insurance Services, Inc. (collectively, "Defendants"), respectfully submit this response to Branch Consultants, L.L.C.'s ("Branch") objections to Magistrate Judge Shushan's Order granting in part and denying in part Branch's motion to amend its First Amended Complaint ("FAC" or "Complaint"), Dkt. No. 458 ("Obj.").[1]

## PRELIMINARY STATEMENT

Since 2006, this case has revolved exclusively around whether Defendants are liable under the False Claims Act for a "loss-shifting" scheme at 27 properties identified in the FAC. The Fifth Circuit, this Court, Judge Shushan, and the parties have devoted significant resources to years of litigation over the alleged loss-shifting scheme by which WYO Insurers allegedly shifted losses from their homeowners policies to Government-backed flood insurance policies covering the same property. This Court wrote more than 30 pages to support its conclusion that the loss-shifting scheme (not some other scheme) had been publicly disclosed prior to the FAC and that the FAC was based on that disclosure. *See* Dkt. No. 228 at 1-39. Now, after years of litigation, Branch has determined its loss-shifting allegations have no merit and moved to add a so-called "inflated-revenue" scheme to the case. Judge Shushan did not err by denying Branch's motion to amend to assert a new inflated-revenue scheme.

\*   \*   \*

On June 22, 2007, Branch filed the Complaint alleging that Defendants "defrauded the NFIP by misattributing wind damage and other non-flood losses to the flood policies subsidized or underwritten by the Government rather than correctly attributing such

---

[1]      Branch has designated its objections as an "appeal." However, no "appeal" lies from a magistrate judge's decision on a motion to amend. *See* Fed. R. Civ. P. 72(a); *see also* Argument, Section I, below.

losses to causes that are covered by homeowners policies largely underwritten by themselves."
FAC ¶ 17.  The Fifth Circuit, this Court, and Judge Shushan have each separately recognized that
Branch's one-count Complaint alleges False Claims Act liability based on alleged loss-shifting
fraud only.

The Fifth Circuit explained Branch's allegation as follows:  "Branch alleges that
the WYO insurer Defendants defrauded NFIP by misattributing wind damage and other non-
flood losses to the flood policies subsidized or underwritten by the Government rather than
correctly attributing such losses to causes that are covered by homeowners policies largely
underwritten by themselves." *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560
F.3d 371, 375 (5th Cir. 2009) (quotations omitted).  In its October 2009 order denying
Defendants' motion to dismiss, this Court recognized that the same link between flood and
homeowners polices formed the basis for Branch's allegation:

> [D]efendants exaggerated the amount of money that the government should
> pay under the individual flood policies, which in turn reduced the amount
> that the insurance companies would themselves be obligated to pay under
> wind and rain policies.  Stated differently, Branch asserts that defendants
> "passed off" the costs of paying for wind damage to the government by
> fraudulently claiming that the damage was caused by flood.

*United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 668 F. Supp. 2d 780, 786
(E.D. La. 2009).

It has now become obvious to Branch that the FAC's allegations of loss-shifting
false claims have no merit because, among other things, Defendants did not generally issue both
the flood and homeowners policies on the properties identified in the FAC.[2]  Accordingly,

---

[2]   *See, e.g.*, Dkt. Nos. 466 and 495 (ARIC and Standard Fire's motions for summary judgment).  The loss-shifting scheme also does not apply to ANPAC because it did not issue homeowners policies for the properties identified in paragraph 27 of the FAC.  Completely aware of this fact, Branch misrepresents to this Court that ANPAC "admitted" to issuing homeowners policies for four properties identified in paragraph 27 of the FAC.  Obj. at 19 n.19 (citing Dkt. No. 453, Ex. 5).  This is not true.  As Branch and its counsel were aware at the time of authoring footnote 19, the referenced pleading was not filed by ANPAC.

Branch now concludes that its loss-shifting allegations are "not a necessary element," Obj. at 18, of the fraudulent scheme and has sought leave to amend to add what Judge Shushan deemed an "inflated-revenue" scheme.[3]  Order, Dkt. No. 417 at 12.  Judge Shushan observed that Branch's proposed amendment is a material change of the claim pled because the "inflated-revenue" scheme could apply to every flood claim by virtue of the regulation itself and is not, in fact, a reliable indicia of fraud, and does not comply with Rule 9(b).  *See id.* at 15-17.  Judge Shushan did not err by concluding that that the proposed amendment is untimely, prejudicial to Defendants, and would result in great judicial inefficiency.  It also reflects bad faith.

First, Branch claims that it knew of the purported inflated-revenue scheme since this action's inception but offered Judge Shushan no explanation for its three-year delay in filing a motion to add the scheme to the Complaint.  Accordingly, on this basis alone Judge Shushan's denial of leave to amend is not clearly erroneous or contrary to law.  *See, e.g., Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 140-41 (5th Cir. 1993) (affirming district court's denial of leave to amend because plaintiffs knew the facts underlying their new claims when they filed their original complaint nine months earlier and offered no explanation for their delay).

Second, Judge Shushan correctly concluded that Defendants will be subject to unfair surprise and significant prejudice if amendment is allowed.  For more than three years, the

---

The referenced pleading was filed by ANPAC Louisiana Insurance Company—a separately organized, incorporated and licensed insurer that is not named in this action.  The FAC is devoid of any allegations regarding ANPAC Louisiana Insurance Company and/or its relationship with ANPAC, which explains, in part, Branch's motivation for seeking to improperly amend its pleadings years after filing the FAC.  Branch obviously lacks first-hand knowledge because ANPAC did not issue both flood and homeowners policies for the properties described in the FAC.  Branch fails in its attempt to hide this fact through its misrepresentations in footnote 19.  The loss-shifting scheme does not apply to ANPAC.

[3]  Branch represented to the Court and the Government that it is an "original source" of the evidence supporting its allegations of fraud so that it could have standing to bring its claims under the False Claims Act.  Branch claims it has original source status with regard to the loss-shifting scheme at the 27 properties identified in the FAC.  These allegations, however, lack merit—and Branch was never an original source of any alleged fraud.  Realizing this fact, Branch now seeks to amend the Complaint and assert an entirely new fraud and salvage its status as an original source.  This is not "good cause" for amendment.

Complaint has only alleged a loss-shifting scheme. The parties have litigated the issue before six judges and submitted hundreds of pages about the issue. Judge Shushan did not err by concluding that permitting litigation of a new alleged scheme—one that Branch claims it was aware of over three and a half years ago—is plainly prejudicial. *See, e.g., Ross v. Houston Indep. Sch. Dist.*, 699 F.2d 218, 229 (5th Cir. 1983) (affirming denial of amendment and stating "[a]mendment of the pleadings would add new and complex issues to a case already protracted and complicated. . . . [requiring] new discovery, additional hearings, and, likely, more appeals.").

Third, judicial efficiency supports Judge Shushan's decision. Most significantly, if Branch is permitted to amend, this Court will have to start the case over. This imposes significant burden on the Court, and is the epitome of inefficiency given Branch's knowledge of the alleged inflated-revenue scheme years ago. The fact that Branch's motion to amend was filed before discovery was concluded and before the deadline set in the Court's scheduling order for such motions does not change the analysis or conclusion. Judge Shushan correctly applied Fifth Circuit law and the principle of cases like *Wimm*, explaining that the relevant question is whether "Branch acted as soon as the necessity for altering the pleadings became apparent" and not, as Branch claims, simply whether the motion to amend was filed before the Court's deadline for amendments to the pleadings. *See also Matter of Southmark Corp.*, 88 F.3d 311, 315-16 (5th Cir. 1996) (upholding district court's denial of leave to amend based on undue delay, despite the fact that no trial date had been set, defendant had not commenced discovery, and no dispositive motions had been filed).

Fourth, Branch's actions are appropriately viewed as a dilatory tactical maneuver. Branch knew of the inflated-revenue claim over three and a half years ago and offered no reason for sitting on its hands. It sat back and litigated the first-to-file bar and the public disclosure bar

as they relate to the loss-shifting scheme only, without ever raising the inflated-revenue scheme. Branch sat back—like the plaintiffs in *Wimm*—until it realized that summary judgment was imminent and that its allegations were not supported by the facts. Under these circumstances, as in *Wimm*, it is apparent that Branch's requested amendment is a dilatory tactical maneuver. Moreover, under the statutory scheme of the False Claims Act, leave to amend is appropriately denied because a relator's "complaint must be sufficient at the onset" before discovery. *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 560 (8th Cir. 2006).[4]

Lastly, neither of Branch's two last ditch arguments show error by Judge Shushan. Branch argues that it needs to amend to save its case. *See* Obj. at 6 (noting Order has "effect of dismissing the adjuster defendants, as well as a broad swath of Branch's claims"). This is not grounds for amendment. *See, e.g., Hindo v. Univ. of Health Scis.*, 65 F.3d 608, 615 (7th Cir. 1995) ("Seeking to amend one's complaint when it appears that the current one is a sure loser is not unusual; nor is denial of leave to file that amended complaint."). Branch also argues that it needs to amend to protect the Government. Obj. at 19. However, the Government can protect itself. The Government has allegedly been in possession of all material facts in Branch's possession since 2006, it is served with the filings in this case, it has filed "Statements of Interest," and it has appeared before this Court as it sees fit. The Government is perfectly capable of protecting its interests here, and did not support Branch's motion to amend.

---

[4]   *See also United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1313 n.24 (11th Cir. 2002) (affirming dismissal for failure to satisfy 9(b) because "[w]hen a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendants' goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements"); *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 229 (1st Cir. 2004), abrogated on other grounds by *Allison Engine Co. v. United States ex rel Sanders*, 553 U.S. 662 (2008) ("a qui tam relator may not present general allegations in lieu of the details of actual false claims in the hope that such details will emerge through subsequent discovery").

5

## BACKGROUND

**I.     THE FIRST AMENDED COMPLAINT PLEADS A "LOSS SHIFTING SCHEME" ONLY**

Judge Shushan correctly observed that since 2007, Defendants, the Fifth Circuit,

and this Court have read Branch's False Claims Act Complaint the same way—involving a loss-

shifting scheme only. Branch's one-count, single scheme, FAC was filed on June 22, 2007 and

describes Defendants' alleged false claims in a section called "V. THE FALSE CLAIMS." *See*

FAC ¶¶ 14-17. Branch identifies loss-shifting as the solitary fraud as follows:

> Rather than follow in good faith the streamlined procedures that FEMA set
> up, defendants instead systematically adjusted, paid and submitted
> reimbursement claims to NFIP regarding losses that obviously should not
> be fully covered by the flood policies. They did so in massive quantities. In
> other words, defendants defrauded NFIP by misattributing wind damage
> and other non-flood losses to the flood policies subsidized or underwritten
> by the Government rather than correctly attributing such losses to causes
> that are covered by homeowners policies largely underwritten by
> themselves.

*Id.* ¶ 17 (emphasis added). Thus, the only "scheme" Branch alleges is that Defendants passed off

flood losses to the Government by submitting false claims to save themselves payments on

homeowners policies. From 2007 through 2009, despite numerous opportunities and notice of

the Defendants' and Court's construction of the FAC, Branch never moved to amend.

> **A.    In 2007, The Parties Litigated Loss-Shifting In The District Court.  Branch
>        Did Not Seek To Add Inflated-Revenue To The Case**

On June 22, 2007, Branch filed the FAC.  On August 6, 2007, Defendants moved

to dismiss, pursuant to 31 U.S.C. § 3730, because the FAC was based on prior public disclosures

of the same loss-shifting scheme pled by Branch.  In opposing the motion to dismiss, Branch

argued that the loss-shifting scheme was not publicly disclosed and the FAC was not based on

public disclosures. *See* Dkt. No. 153.  Branch did not contend that the FAC alleged a scheme

different than the publicly disclosed loss-shifting scheme.  Branch did not argue that it alleged a

loss-shifting scheme *and* an inflated-revenue scheme.

On August 6, 2007, the *Rigsby* complaint was unsealed. *See United States ex rel. Rigsby v. State Farm Ins. Co.*, No. 1:06-cv-433 (S.D. Miss. filed Apr. 26, 2006), Dkt. No. 25. The Rigsbys alleged that insurance companies, in the course of adjusting Hurricane Katrina claims, "made a corporate decision to misdirect and misallocate claims from those of hurricane coverage (which a company would be required to pay from its reserves or reinsurance) to flood claims that could be submitted and paid directly from the United States Treasury." *See id.*, dkt. no. 2, *Rigsby* Compl. ¶ 33. The Government explained that the Rigsbys' action put it on notice of the alleged loss-shifting scheme and that it had begun an investigation. *Branch* Dkt. No. 148, Ex. 5 at 1-2 ("According to [the Rigsbys], the Defendants falsely classified wind-related storm damages as water-related storm damages, so that the financial responsibility for those damages would be shifted away from private homeowners policies and onto federal flood insurance policies instead. The Government has undertaken diligent investigation of this case since then."). Defendants supplemented their motion to dismiss to argue that *Rigsby*, not the FAC, was the first-filed case alleging a loss-shifting scheme, thereby barring the FAC under the first-to-file bar. *See Branch* Dkt. No. 148. In response, Branch did not contend that the FAC alleged anything but the same loss-shifting as *Rigsby* or file a motion for leave to amend to add an inflated-revenue scheme to the FAC. *See Branch* Dkt. No. 156.

**B.    In 2008, the Parties Litigated Loss-Shifting In The Fifth Circuit.  Branch Did Not Mention, Or Seek To Add, The Inflated-Revenue Scheme To The Case**

After Judge Beer dismissed the FAC as barred by the first-filed *Rigsby*, Branch appealed to the Fifth Circuit. Branch described the "fraud at issue" to the Fifth Circuit as follows: "Defendants abusing their WYO status to have the federal government pay for fraudulent flood claims that improperly set off payments owed on their private wind claims."

*United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, No. 07-31191, Appellant's

Reply Br., 2008 WL 6082657, at *17 (5th Cir. June 6, 2008). Branch did not argue an "inflated-

revenue scheme." When comparing *Branch* to *Rigsby*, the Fifth Circuit explained:

> *Rigsby* specifically alleged that State Farm, in its capacity as a WYO insurer reallocated claims on two Mississippi properties from wind damage to flood damage in a pernicious attempt to shift its costs to the federal fisc. Branch brought identical allegations against State Farm, except it also alleged facts concerning ten properties in neighboring Louisiana.

*Branch Consultants*, 560 F.3d at 378. The Fifth Circuit also explained, "Like *Rigsby*, Branch

alleges that the WYO insurer Defendants 'defrauded NFIP by misattributing wind damage and

other non-flood losses to the flood policies subsidized or underwritten by the Government rather

than correctly attributing such losses to causes that are covered by homeowners policies largely

underwritten by themselves." *Id.* at 375.[5]

### C.    In 2009, the Parties Litigated Loss-Shifting In This Court. Branch Did Not Mention Or Seek To Add An Inflated-Revenue Scheme To The Case

In April 2009, the Fifth Circuit remanded the case to this Court for consideration

of the public disclosure bar and compliance with Rule 9(b) as to all Defendants other than State

Farm and Allstate. On remand, Branch did not seek leave to add an inflated-revenue scheme. In

its October 2009 Order, this Court found only a loss-shifting scheme in the FAC:

> Branch alleges that the circumstances after Katrina gave defendants complete control over the adjustment and payment of the NFIP policies. Specifically, it contends that when defendants adjusted claims arising from Hurricane Katrina, they systematically and on a massive scale overstated the amount of flood losses to the properties they adjusted. In so doing, defendants exaggerated the amount of money that the government should pay under the individual flood policies, which in turn reduced the amount that the insurance companies would themselves be obligated to pay under wind and rain policies. Stated differently, Branch asserts that defendants

---

[5]    The Fifth Circuit did not mention an "inflated-revenue scheme" in the FAC. This is because Branch discussed wind/water fraud (a/k/a "loss-shifting") throughout its briefing in the Fifth Circuit. *See United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins Co., et al.*, No. 07-31191, Opening Appellant Br., 2008 WL 6082655 (5th Cir. Mar. 24, 2008), at *3-6, 8-13, 18-20, 23-49, and 54 (5th Cir. May 23, 2008); *see also* Appellant's Reply Brief, 2008 WL 6082657, at *17, 22 (5th Cir. June 6, 2008).

"passed off" the costs of paying for wind damage to the government by
fraudulently claiming that the damage was caused by flood.

*Branch Consultants*, 668 F. Supp. 2d at 786; *see also* Dkt. No. 278 at 1-2 (same). This Court

devoted over 30 pages of analysis to conclude that the loss-shifting scheme had been publicly

disclosed and that the FAC was based on those disclosures. *See id.*; Dkt. No. 228 at 1-39.

Branch never suggested, and this Court did not find, an "inflated-revenue scheme" in the FAC,

which arguably may have obviated the need for the Court's lengthy public disclosure analysis on

the loss-shifting scheme.

Significantly, in its Rule 9(b) analysis, this Court observed, and relied on,

Branch's assertion that it had "allege[d], contrary to defendants' contention, that the defendants

had wind polices on the listed properties," along with NFIP policies on the same properties.

*Branch Consultants*, 668 F. Supp. at 805. Branch now admits, however, that this allegation "is

untrue." Branch now claims—contrary to the Court's order on the motion to dismiss—that the

First Amended Complaint did not "allege[] that Defendants issued a wind policy on each of the

exemplar properties." Obj. at 18. Branch cannot rewrite what it pled simply because it is now

clear that its original allegations were false. Falsity and lack of merit in a complaint are not

grounds for leave to amend.

### D.    Branch Seeks Leave To Amend Because It Learned Its Loss-Shifting Allegations Have No Merit

The FAC does not present a viable claim of loss-shifting. *See* Dkt. Nos. 466 and

495 (pending motions for summary judgment filed by ARIC and Standard Fire showing that the

undisputed facts establish that ARIC and Standard Fire did not issue both the NFIP flood policy

and wind/homeowners policy for the properties identified in the Complaint—thus, there could be

no loss shifting); *see also* footnote 2, above. As Judge Shushan explained,

Pursuant to the alleged loss-shifting scheme, the focus is on those properties

> where a defendant insurer issued both the flood and the homeowners
> policies. In those circumstances, the WYO insurer had an incentive to shift
> its cost onto the government. In cases where a WYO insurer did not also
> issue the homeowners insurance on the same property, it did not possess an
> incentive to shift its costs onto the government.

Order, Dkt. No. 417 at 17 (internal citation omitted). Accordingly, Judge Shushan found that

there ought to be "no inquiry" into a property where an insurer did not issue both a homeowners

and flood policy. *Id.* at 17, 20. To save its Complaint more than three years after filing, Branch

untimely moved for leave to amend to add a new "inflated-revenue scheme" never before part of

this case.

### E.     The Motion To Amend

After amending its complaint once already in 2007 and litigating the adequacy of

the FAC for over two years before Judges Beer, Vance, and the Fifth Circuit, Branch filed a

motion to amend on December 30, 2009, to add new claims. Branch's proposed amendment

does not merely "clarify" its previous, unproveable allegations of loss-shifting. Instead, Branch

tries to jettison "loss shifting" in favor of a new theory of fraud—that WYO companies receive

3.3% of the amount of a flood loss under federal regulations, which led WYO companies to

inflate losses. *See* 44 C.F.R., Part 2, Appx. A. Branch's suggestion that this scheme is actually

in the FAC "is attempting to have the court construe its fraudulent scheme at a high level of

generality" that fails Rule 9(b)'s particularity requirement. *See* Order, Dkt. No. 417 at 16.

### F.     Judge Shushan's Order

On March 1, 2010, Magistrate Judge Shushan denied Branch's motion for leave to

amend the Complaint to add the inflated-revenue scheme. *Id.* at 20. First, Judge Shushan held

that Branch's proposed amendment was untimely because Branch was aware of the facts

underlying the second fraudulent scheme when it filed the original complaint in August 2006 and

the FAC in June 2007, and Branch had failed to offer any explanation for why it did not seek

leave to amend sooner. *Id.* at 14-15.  In fact, Branch waited a total of ***710 days*** before it ever

alleged the inflated-revenues scheme in this action:

| Dates | Status of Allegations | Number of Days |
|---|---|---|
| August 2, 2006 to June 21, 2007 | Initial complaint on file with no allegations of inflated-revenue scheme | 324 |
| June 22, 2007 | Branch amends complaint but adds no allegations of inflated-revenue scheme | 1 |
| June 23, 2007 to October 16, 2007 | Branch fails to amend to add allegations of inflated-revenue scheme, or claim that FAC alleges inflated-revenue scheme | 116 |
| October 17, 2007 to April 4, 2009 (appeal to Fifth Circuit) | Only window in which Branch lacked ability to amend, but also when Branch knew of the claims it seeks to add to the FAC | (536) |
| April 5, 2009 to December 29, 2009 | Branch fails to seek leave to amend FAC to add allegations of inflated-revenue scheme | 269 |
| December 30, 2009 | Proposed SAC includes allegations of inflated-revenue scheme | |
| **TOTAL DAYS IN WHICH BRANCH FAILED TO PLEAD INFLATED-REVENUE SCHEME** | | ***710*** |

Judge Shushan squarely rejected Branch's contention that the proposed amendment was a mere

"clarification," determining that the "loss-shifting and inflated-revenue motives create two

entirely different schemes." *Id.* at 17.  Judge Shushan also refused to construe Branch's FAC "at

a high level of generality," as Branch had urged her to do, recognizing that a relator in a False

Claims Act suit must plead fraud with particularity. *Id.* at 16.

Second, Judge Shushan ruled that the effect of undue prejudice to Defendants

warranted denial of leave to amend, given that the scope of discovery would drastically expand if

amendment were permitted. *Id.* at 18-19.  Finally, Judge Shushan found that considerations of

judicial economy weighed against granting leave to amend. *Id.* at 20.

## ARGUMENT

I.  **STANDARD OF REVIEW: JUDGE SHUSHAN'S ORDER IS SUBJECT TO REVIEW UNDER A CLEARLY ERRONEOUS STANDARD**

          Branch's motion for leave to amend its Complaint pursuant to Federal Rule of Civil Procedure 15 is a non-dispositive pre-trial matter that was referred to Judge Shushan, Dkt. Nos. 280, 284, and is, thus, reviewed for clear error. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1017 (5th Cir. 1981) (holding that a magistrate's pretrial orders "under § 636(b)(1)(A) are reviewable under the 'clearly erroneous and contrary to law' standard" and "are not subject to a de novo determination"); *PYCA Indus., Inc. v. Harrison County Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 & n.11 (5th Cir. 1996) (holding that a motion for leave to amend is a non-dispositive matter and noting approvingly that district court reviewed the order under "clearly erroneous or contrary to law" standard); *Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007) (motion for leave to amend is a non-dispositive matter and district court reviews magistrate' judge's order for clear error); *Joseph v. Cannon*, No. 95-248, 1996 WL 41849, at *2 n.1 (E.D. La. Feb. 1, 1996) ("The Court reviews the Magistrate Judge's ruling on this nondispositive matter under a clearly erroneous or contrary to law standard."); *Moody v. Callon Petroleum Operating Co.*, 37 F. Supp. 2d 805, 807 (E.D. La. 1999) (district court reviews magistrate's order denying leave to amend under "clearly erroneous or contrary to law" standard).[6]

          Under the clear error standard, a district court should not disturb the magistrate judge's ruling absent a "definite and firm conviction that a mistake has been committed." *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1428 (5th Cir. 1984). This Court need not

---

[6]    *See also Sharer v. Tandberg, Inc.*, No. 1:06cv626, 2007 WL 433152, at *2 (E.D. Va. Feb. 2, 2007) (rejecting argument that Magistrate Judge's denial of motion for leave to amend should be reviewed *de novo*).

decide whether it would have reached a different conclusion than Judge Shushan. *Hodczak v. Latrobe Spec. Steel Co.*, No. 08-649, 2010 WL 892205, at *2 (W.D. Pa. Mar. 9, 2010) ("Under this standard, a reviewing court will not reverse the magistrate judge's determination even if the court might have decided the issue differently."). Rather, Branch, as the party objecting to Judge Shushan's Order, bears the burden of showing that the decision is clearly erroneous or contrary to law. *See, e.g., Ranger Ins. Co. v. Events, Inc.*, No. Civ. A 03-2831, 2004 WL 2004545, at *1 (E.D. La. Sept. 8, 2004). Because Branch cannot meet this standard, it makes a half-hearted request for *de novo* review unsupported by any reasoning or law. A magistrate judge's decision on a motion for leave to amend is subject to clearly erroneous review. *E.g., Fielding*, 510 F.3d at 178; *Moody*, 37 F. Supp. 2d at 807. However, no matter the standard applied, Branch's objections to Judge Shushan's order should be overruled.

## II.     JUDGE SHUSHAN APPLIED THE CORRECT LEGAL STANDARD IN EXERCISING HER DISCRETION TO DENY LEAVE TO AMEND

The decision to grant or deny leave to amend was within Judge Shushan's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Although liberally allowed, . . . leave to amend is not automatic." *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003); *see also Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 891 (5th Cir. 1987) (the "generous standard [of Rule 15(a)] is tempered by the necessary power of a district court to manage a case."); *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1025 (5th Cir. 1981) (recognizing the importance of protecting "a busy district court (from being) imposed upon by the presentation of theories seriatim"). In denying leave to amend, Judge Shushan considered the factors set forth by the Supreme Court in *Foman*, 371 U.S. at 182, and in particular the undue delay and bad faith on the part of Branch, and undue prejudice to Defendants. *See* Order, Dkt. No. 417 at 8-9. In denying leave, Judge Shushan also properly put weight on "(1) an

13

'unexplained delay' following an original complaint, and (2) whether the facts underlying the amended complaint were known to the party when the original complaint was filed." *Southmark*, 88 F.3d at 316 (affirming denial of leave to amend thirteen months after the initial filing because facts underlying new cause of action were known when complaint was filed and movant offered no reasonable explanation for the delay).

## III.   JUDGE SHUSHAN CORRECTLY FOUND BRANCH'S MOTION TO ADD AN INFLATED-REVENUE SCHEME WAS UNTIMELY

Judge Shushan properly concluded that Branch acted with undue delay by seeking leave to add an "inflated-revenue scheme" more than ***three and a half years*** after initiating this action.  Judge Shushan correctly determined that Branch did not act in a timely fashion because (1) an "unexplained delay" followed the FAC and (2) the facts underlying the "inflated-revenue scheme" were available to Branch when it filed the FAC. *Wimm*, 3 F.3d at 140 (affirming denial of leave to amend because "[t]he plaintiffs knew of the facts underlying their [new claim] before th[e] action commenced" but inexplicably delayed in seeking leave to amend); *United States ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*, No. 8:06-cv-40-T-24, 2008 WL 343158, *2 (M.D. Fla. Feb. 5, 2008) (denying amendment because relator waited two years to seek amendment and offered no explanation for the undue delay); *Southmark*, 88 F.3d at 316 (affirming denial of leave to amend because plaintiff sought to add "both a fact of which it had been aware since before it filed its original complaint and a cause of action based on the identical, known facts that underlie its original complaint" and offered "no reasonable explanation for its delay" of eleven months); *Barrett v. Indep. Order of Foresters*, 625 F.2d 73, 75 (5th Cir. 1980) (affirming denial of leave to amend when it was not sought until ten months after the original complaint and there appeared to be no claims which could not have been raised originally); *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (holding

"untimeliness alone [is] a sufficient reason to" deny leave to amend, especially when the party

filing the motion has no adequate explanation for the delay") (citation omitted).

### A.   Judge Shushan Correctly Found Branch Failed To Explain Its Delay And Knew All Relevant Facts When It Filed Its Original Complaint

Judge Shushan did not clearly err or act contrary to law by finding that Branch

unreasonably delayed in attempting to read an "inflated-revenue scheme" into the Complaint.

She explained:

> All of the information required to allege the inflated-revenue scheme was available to Brach when it filed its original complaint. Branch has had the opportunity to employ this information to assert a timely amendment. Until the Court granted the defendants' motion to dismiss on October 17, 2007, there was nothing preventing Branch from seeking to assert the inflated-revenue scheme. After the Fifth Circuit issued its mandate on April 4, 2009, Branch was at liberty to seek leave to amend to assert the scheme. It did not act until after the Court ruled on the remaining issues in the motions to dismiss and the defendants answered. Branch offers no explanation as to what prompted it to be asserted in December 2009 rather than at an earlier time.

Order, Dkt. No. 417, at 15.

Branch also now argues for the first time that its motion to amend was a

"clarif[ication]" in response to some unspecified part of Defendants' answers. Obj. at 9. But if

Branch's amendment were a mere "clarification" of an unstated "inflated-revenue scheme" that

is already hidden in the FAC, it would not have been necessary for Branch to seek leave to

amend and the parties would not be spilling so much ink over the issue. More importantly, the

purported need for such an amendment should have been obvious for years. As Judge Shushan

found, "defendants' characterization of the first amended complaint [as limited to loss-shifting]

is consistent with the characterization by the Fifth Circuit and the District Judge," Order, Dkt.

No. 417 at 15 n.4. If Branch needed to "clarify" the scope of its allegations, it could have and

should have done so years ago. *See Southmark*, 88 F.3d at 315-16; *Barrett*, 625 F.2d at 75;

*Pallottino,* 31 F.3d at 1027 (holding eight month delay too long when amendment was not based on new evidence, but rather presented a new theory that plaintiff "did not choose to advance until after his primary theory had been dismissed"). What really happened is that in the Fall of 2009 Branch learned through the discovery process that its loss-shifting scheme had no merit and therefore it sought leave to essentially file a new case. Denial of leave is entirely appropriate in this circumstance. As the Seventh Circuit aptly noted in another False Claims Act case, "[s]eeking to amend one's complaint when it appears that the current one is a sure loser is not unusual; nor is denial of leave to file that amended complaint." *Hindo,* 65 F.3d at 615.

      Branch relies on this Court's decision *Joseph v. Cannon,* No. 95-248, 1996 WL 41849 (E.D. La. Feb. 1, 1996), to argue that its motion to amend was timely. However, *Joseph* is not analogous to the situation here. First, in *Joseph,* the *pro se* plaintiffs sought to add innocuous factual allegations to their complaint—not entirely new claims of a fraudulent scheme. *Id.* at *1. The magistrate denied the motion to amend because the amendments were "unnecessary and inconsequential." This Court found that "in the absence of prejudice, plaintiff's motion to supplement their allegations should have been 'freely given.'" *Id.* (citations omitted). The situation is different here. Branch is not *pro se* and has been represented by at least three sophisticated law firms. Branch has known about its new claims for three years. Further, Judge Shushan found that Branch's proposed amendment has so much consequence that Defendants will suffer prejudice therefrom. *Joseph* does not suggest Judge Shushan clearly erred here.

    **B.**    **Branch's Proposed Amendment Is Not Timely Merely Because Branch Filed The Motion Before the Court's Deadline For Motions to Amend**

      Judge Shushan correctly rejected Branch's argument that it repeats here—that a motion for leave to amend is timely merely because it is filed before the deadline set in the court's scheduling order for such motions. In *Wimm,* plaintiffs sought leave to amend nine

16

months before the court's deadline for amendment.  3 F.3d at 141.  The Fifth Circuit affirmed the

order denying leave to amend, after plaintiffs cited "no authority which supports the proposition

that the district court was bound to permit all amendments sought before the deadline" and

concluded  "we are not persuaded that that is what the law requires."  *Id.*; *see also Southmark*, 88

F.3d at 315-16 (upholding district court's denial of leave to amend based on undue delay, despite

the fact that no trial date had been set, defendant had not commenced discovery, and no

dispositive motions had been filed).  Judge Shushan correctly applied the principle of cases like

*Wimm* and explained that the relevant question is whether "Branch acted as soon as the necessity

for altering the pleadings became apparent" and not, as Branch claims, simply whether the

motion to amend was filed before the Court's deadline for amendments to the pleadings.

Branch cites no case holding a motion for leave to amend is presumptively timely

if filed within the scheduling order's deadline.  Instead, Branch misinterprets the cases it cites to

make such an argument.  For example, in *Halbert v. City of Sherman*, the Fifth Circuit reversed

because the district court did not provide "justifying reasons" for denying amendment—not, as

Branch contends, because the motion to amend was filed within the deadline.  33 F.3d 526, 530

(5th Cir. 1994).  Likewise, the cases cited by Branch decided by this Court—*Joseph* and

*Mendoza*—did not turn merely on whether the motion to amend was made within the deadline

for amending pleadings.  Rather, this Court actually examined potential reasons for granting or

denying leave to amend—including whether plaintiffs were aware of the additional allegations at

the time of the original complaint.

### C.     Branch's Proposed Amendment Is Not Timely Simply Because There Is Time Left For Discovery

Judge Shushan also correctly rejected Branch's next argument, repeated here—

that a motion for leave to amend is timely merely because there is time left for discovery before

17

trial. In *Wimm*, no formal discovery had taken place and the Fifth Circuit affirmed denial of amendment. 3 F.3d at 138. Likewise, in *Southmark* no trial date had been set; the defendants had not begun discovery; defendants filed their answer only two months earlier, and no dispositive motions had been filed. Yet, the Fifth Circuit affirmed denial of leave to amend based on undue delay. 88 F.3d at 315. These two decisions from the Fifth Circuit confirm that Judge Shushan's denial of leave to amend, even though there is time left in the discovery schedule, was not clearly erroneous or contrary to law.

The best Branch can do in the face of these Fifth Circuit cases finding that the time left for discovery is not dispositive is to attack Judge Shushan's citation to *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512 (9th Cir. 1995), a False Claims Act in which relator's motion for leave to amend was denied after undue delay. First, Branch points out that the Supreme Court vacated the Ninth Circuit's opinion, but fails to mention that it was on grounds having nothing to do with amendment. *See Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939 (1997). More importantly, the distinction that Branch attempts to draw—that discovery in *Hughes* was almost over when leave to amend was denied—is irrelevant because the Fifth Circuit has held it is not erroneous to deny a motion for leave to amend when there is time left for discovery, or even when discovery is just beginning. Accordingly, Judge Shushan's order denying leave to amend was not clearly erroneous merely because there was time left before the discovery cut-off in this case.

### D.   Even if this Court Disregards The Time During Which The Motion To Dismiss Was Pending, Branch's Motion To Amend Was Untimely

Branch cites a number of decisions allowing amendments after longer delays that it perceives to be at issue here. These cases do not suggest error or compel reversal of Judge Shushan's ruling. "Merely proving that other cases allowed longer delays . . . does ***not*** suffice to

demonstrate entitlement to amendment.  Delay must be justified."  *Rockwell Automation, Inc. v. United States*, 70 Fed. Cl. 114, 122 (Fed. Cl. 2006) (citation omitted) (emphasis added); *see Southmark*, 88 F.3d at 315 (explaining that the timing of a denial of leave to amend in another case is not dispositive in the instant case).  The fact that the Court has sometimes allowed amendment does not mean that it was clearly erroneous to deny leave to amend under the unique circumstances presented by this case.  *See Wimm*, 3 F.3d at 142 ("[T]he district court here need not have reached the same result that was reached [in another case] simply because leave to amend was sought before the deadline in both cases.").

Branch attempts to distract the Court from its own lack of diligence by arguing that Judge Shushan's order improperly "faults Branch for not filing the SAC while Defendants' motion to dismiss was pending before this Court from April 15, 2009 through October 18, 2009."  Obj. at 8.  Branch contends that this period of time should "not count" toward the undue delay analysis.  *Id.*  However, Judge Shushan correctly concluded that nothing prevented Branch from seeking leave to add an "inflated-revenue scheme" *prior* to Judge Beer's October 17, 2007 order on the motion to dismiss or *after* the Fifth Circuit issued its mandate in April 2009.  In fact, from the time this action was filed, Branch waited a total of 710 days before it ever brought up or alleged the inflated-revenue scheme in this action.  *See* Background Section I.F., above.

Branch could have sought leave to amend immediately upon remand from the Fifth Circuit, rather than waiting until after the parties had re-argued the motion to dismiss (and the Court issued its decision).  More importantly, Branch cites no authority holding that considering this period of time to calculate the length of delay was clearly erroneous or contrary to law.  Even if the Court were to disregard the time during which the motion to dismiss was pending, Branch still unreasonably delayed in seeking leave to amend (waiting 441 days), given

19

that Judge Shushan found all relevant facts were available to Branch when it filed the original

and first amended complaints in 2006 and 2007.

## IV. JUDGE SHUSHAN CORRECTLY FOUND THE PROPOSED AMENDMENT UNDULY PREJUDICIAL TO DEFENDANTS

Untimeliness alone is sufficient reason to deny leave to amend.[7]  However, Judge

Shushan also correctly found that allowing Branch to file its Second Amended Complaint would

unduly prejudice Defendants because Branch's proposed amendment goes far beyond simply

clarifying allegations or correcting simple mistakes.  Rather, the loss-shifting and inflated-

revenue allegations constitute "two entirely different schemes." Dkt. No. 417 at 17.

> Pursuant to the alleged loss-shifting scheme, the focus is on those properties where a defendant insurer issued both the flood and the homeowners policies.  In those circumstances, the WYO insurer had an incentive to shift its cost onto the government.  In cases where a WYO insurer did not also issue the homeowners insurance on the same property, it did not possess an incentive to shift its costs onto the government.

*Id.*  In contrast, "[w]ith the inflated-revenue scheme, a WYO insurer may be found liable for

overstating a flood loss even though the insurer did not issue a homeowners policy on the

property.  With the loss-shifting scheme, there would be no inquiry into such a property because

the WYO insurer did not issue a homeowners policy on that property." *Id.*  "Pursuant to the

alleged inflated-revenue scheme, all properties where the defendant insurers were WYO insurers

are at issue.  With the addition of the inflated-revenue scheme, there is a significant increase in

the number of properties at issue." *Id.*

---

[7]   *See* Section I, above; *see also, e.g., Barrett,* 625 F.2d at 75 (holding, without considering prejudice, that district court did not abuse its discretion in denying *pro se* plaintiff leave to amend where motion was not filed until nearly ten months after the original complaint and there appeared to be no matters which could not have been raised originally); *Pallottino,* 31 F.3d at 1027 ("We have often found untimeliness alone a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay.") (citation omitted); *Las Vegas Ice & Cold Storage Co. v. Far West Bank,* 893 F.2d 1182, 1185 (10th Cir. 1990) ("Contrary to plaintiff's assertion, prejudice to the opposing party need not also be shown.").

These differences are not, as Branch contends, merely a matter of "motive."
Rather, the amendment seeks to impose an entirely new basis for Branch's claims, radically
expand the scope of the case, and force Defendants to alter their litigation strategy. These are
two completely different cases. The amendment Branch seeks is not "merely clerical or
corrective." *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992) (affirming district
court's denial of a motion for leave to amend where the proposed amendments would have
"established an entirely new factual basis for the plaintiffs' claims"), *reinstated in relevant part*,
37 F.3d 1069, 1074 n.8 (5th Cir. 1994) (*en banc*). As such, Judge Shushan's denial of leave to
amend was not clearly erroneous or contrary to law. *See, e.g., id.*; *Mayeaux v. La. Health Serv.
& Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004) ("[W]hen late tendered amendments involve
new theories of discovery and impose additional discovery requirements, courts [of appeal] are
less likely to find an abuse of discretion due to the prejudice involved.") (citation omitted);
*Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999) (no abuse of discretion in denying leave to
amend where the proposed amendment "would unduly prejudice the defendants by increasing the
delay and by expanding the allegations beyond the scope of the initial complaint").[8]

Branch suggests that the prejudice to Defendants can be cured simply by
extending the time for discovery and pushing back the trial date. In effect, this simply does away
with the prejudice prong of the analysis, and ignores the unfair burden and prejudice Defendants
will suffer from the enlargement of the case. Indeed, in so arguing, Branch misinterprets the law
and the spirit and purpose of the rule against untimely amendment by focusing solely on the

---

[8]    *See also Bradley v. Phillips Petroleum Co.*, 527 F. Supp. 2d 661, 673-74 (S.D. Tex. 2007) (denying leave
to amend where claims could have been discovered earlier and defendants would be prejudiced by
amendment because complex and expensive suit had been pending for two years). Other courts have
rejected this tactic as "too much, too late." *United States ex rel. Franklin v. Pfizer, Inc.*, No. 96-1165, 2002
WL 32128635, at *1 (D. Mass. Feb. 6, 2002) (adding "a sweeping new theory by Relator" would cause
undue prejudice to defendant).

discovery that has *not* yet been done, ignoring the magnitude of time, effort, and resources that have already been put into this litigation by the parties and the Court. This case has been pending for almost four years and has involved significant investments by the parties, three Circuit judges, two district judges, and a magistrate judge—all of whom devoted themselves to a False Claims Act case based on claims allegedly submitted pursuant to a loss-shifting scheme.

If Branch is allowed to amend, the parties cannot simply build on top of their previous efforts, as Branch suggests. Rather, this entire body of work over the last three years will be wasted because it was specific to the First Amended Complaint and its loss-shifting scheme. Branch wants an unfair, prejudicial do-over. "Permitting [Branch] to redefine [its] theories, claims, and factual allegations at this late date would be to require [Defendants] to shoot at a moving target, constantly forging new and different defenses. For [Defendants], such a result would be unreasonable and unfairly prejudicial." *United States ex rel. Told v. Interwest Constr. Co., Inc.*, 505 F. Supp. 2d 1245, 1251 (D. Utah 2007); *see also Ross*, 699 F.2d at 229 (affirming denial of amendment and explaining that "[a]mendment of the pleadings would add new and complex issues to a case already protracted and complicated. It would require new discovery, additional hearings, and, likely, more appeals.").[9]

Further, amendment at this time would not promote judicial efficiency. "[T]he court must not permit plaintiffs to wait until the last minute to ascertain and refine those theories

---

[9]     *Multimin USA, Inc. v. Walco Int'l, Inc.*, No. 4:06-CV-260A, 2007 WL 1186559, *1 (N.D. Tex. Apr. 19, 2007) (denying leave to amend, in part, because it would prejudice defendants by requiring more discovery); *Haywood v. Tribeca Lending Corp.*, No. 2:06CV108-P-A, 2007 WL 518836, at *4 (N.D. Miss. Feb. 14, 2007) (denying leave to amend because "[e]ach time the plaintiff adds a new defendant or a new claim, the entire discovery process begins anew as to that defendant or claim."); *Kemp v. Metabolife Int'l, Inc.*, No. 00-3513, 2004 WL 2095618, *2 (E.D. La. Sept. 13, 2004) (affirming magistrate's denial of leave to amend on clearly erroneous standard and explaining that amendment "would unduly prejudice Defendants who would be required to undergo a new round of extensive discovery and postpone the trial indefinitely"); *Western Geophysical Co. v. Adriatic, Inc.*, No. CIV A 96-513, 2000 WL 988073, at *3 (E.D. La. July 17, 2000) (denying amendment when defendant would be prejudiced, in part, because new depositions would need to be taken and other discovery prepared).

on which they intend to build their case. This practice, if permitted, would waste the parties'
resources, as well as judicial resources, on discovery aimed at ultimately unveiling legal theories
and would unfairly surprise defendants, requiring the court to grant further time for discovery or
continuances." *Told*, 505 F. Supp. 2d at 1250. Starting over is not an efficient use of the Court's
time or resources and augurs in favor of overruling Branch's objections.

       Branch's amendment is also contrary to the False Claims Act statutory scheme
and rules of pleading because neither the Defendants nor the Government were put on notice of
the alleged fraud. *See, e.g., Joshi*, 441 F.3d at 560 (affirming denial of a FCA relator's motion
to amend, in part, because the Government based its decision not to intervene on the allegations
in the original complaint); *Goughnour v. REM Minn., Inc.*, No. 06-1601, 2007 WL 4179354, at
*5 (D. Minn. Nov. 20, 2007) (denying amendment where leave "would be futile and run counter
to the FCA statutory scheme."); *United States ex rel. Hess v. Sanofi-Synthelabo, Inc.*, No.
4:05CV570MLM, 2006 WL 1064127, at *12 (E.D. Mo. Apr. 21, 2006) (denying leave to amend
and holding that a relator's "complaint must be sufficient at the onset" before discovery, as the
relator is obligated to disclose all material evidence and information to the Government); *see
also* footnote 4, above.

## V.   BRANCH'S MOTION TO AMEND ITS COMPLAINT AT THIS STAGE OF THE LITIGATION DEMONSTRATES BAD FAITH AND DILATORY MOTIVE

       Branch's new "inflated-revenue" theory of the case is an obvious attempt to
salvage a meritless pleading. When a party, like Branch, has had access to the facts that form the
new theory sought to be added but has failed to act upon them, the court may infer that the
delaying party is engaging in a dilatory "tactical maneuver[]" in bad faith. *See Wimm*, 3 F.3d at
141. In *Wimm*, the district court denied plaintiffs' motion to amend, finding that it was filed in
bad faith and with dilatory motive because the plaintiffs "knew of the facts underlying their

[new] claim before th[e] action commenced" and "had ample opportunity to investigate their claims and to seek leave to amend their complaint" but delayed in doing so. *Id.* at 139-140. The Fifth Circuit affirmed, holding that the findings of bad faith and dilatory motive were supported by the record and rejecting plaintiffs' claim that the amendment was timely merely because the deadline for amending was eight months away. *Id.* at 141. The Fifth Circuit emphasized that the facts of the new claim were available before plaintiffs initiated the suit, but plaintiffs failed to present the claims until ninth months later, when summary judgment was imminent. *Id.*

Branch's actions are even more egregious than those of the plaintiffs in *Wimm*. First, Judge Shushan found, and Branch does not dispute, that it knew of the allegations it seeks to add for over three years. Second, before both this Court and the Fifth Circuit, Branch argued that its claims of loss-shifting fraud were not barred by prior public disclosures or *Rigsby*, but it never came forward and said it also had alleged a separate inflated-commission theory. Third, Branch had multiple opportunities to seek leave to amend the Complaint to add its inflated-revenue scheme since 2007. Instead, it sat by and let the Fifth Circuit and this Court issue a detailed decision on the second motion to dismiss that only addressed the loss-shifting scheme. Fourth, Branch offered Judge Shushan no reason why it waited until December 30, 2009 to move to amend. Now Branch claims it realized the need to amend for some unspecified reason when Defendants filed their answers in late November 2009—conveniently, this is also after Branch learned that some Defendants had not issued wind policies and the loss-shifting scheme would not hold up on the properties at issue. Thus, like the plaintiffs in *Wimm*, Branch realized that summary judgment was imminent and that its allegations were not supported by the facts. Indeed, it concedes as much in its papers. Obj. at 6 (noting Order has "effect of dismissing the adjuster defendants, as well as a broad swath of Branch's claims"). Only at this point did it seek

24

to amend the FAC and add a new theory of fraud.  This is an obvious tactical maneuver warranting denial of leave to amend.

**VI.    BRANCH'S ARGUMENTS ABOUT POTENTIAL PREJUDICE TO THE GOVERNMENT DO NOT JUSTIFY REVERSAL OF JUDGE SHUSHAN'S ORDER**

Since 2006, the Government has purportedly been in possession of all material facts in Branch's possession.  *See, e.g.*, Dkt. No. 1 ¶ 9; FAC ¶ 9.  Additionally, the Government is served with copies of every filing in this case, including Judge Shushan's orders.  At any point in this litigation, the Government may intervene.  31 U.S.C. § 3730(b)(3).  Further, the Government has filed "Statements of Interest," Dkt. Nos. 36, 71, 163, 167, and has appeared before this Court throughout the case as it sees fit, *see, e.g.*, Dkt. Nos. 64, 176, and 272.  These facts show that the Government is perfectly capable of protecting its interests here.  Branch's desperate plea to amend the Complaint to avoid potential prejudice to the Government—prejudice that the Government has not identified or complained of—should be disregarded.  Moreover, it is not clear that the Government will, in fact, be barred from pursuing claims against Defendants because this case can be dismissed for lack of subject matter jurisdiction.[10]

## CONCLUSION

For the reasons set forth above, Branch's objections should be overruled and Judge Shushan's Order denying Branch's motion for leave to add an "inflated-revenue scheme" to the First Amended Complaint should be affirmed.

---

[10]    *See* Dkt. Nos. 477 and 495 (ARIC's and Standard Fire's motions for summary judgment establishing that Branch is not an original source of any claim and, thus, this court lacks subject matter jurisdiction).

Dated:  April 6, 2010

BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, LLC

/s/ Judy Y. Barrasso
Judy Y. Barrasso (2814)
jbarrasso@barrassousdin.com
John W. Joyce (27525)
jjoyce@barrassousdin.com
LL&E Tower
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone:  (504) 589-9700

**Attorneys for Liberty Mutual Insurance
Company**

Respectfully submitted,

PHELPS DUNBAR LLP

/s/ Harry Rosenberg
Harry Rosenberg (11465)
rosenbeh@phelps.com
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone:  (504) 566-1311

SIMPSON THACHER AND BARTLETT LLP
Bryce L. Friedman (*pro hac vice*)
bfriedman@stblaw.com
425 Lexington Avenue
New York, New York 10017
Telephone:  (212) 455-2000

Deborah L. Stein (*pro hac vice*)
dstein@stblaw.com
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067
Telephone:  (310) 407-7500

**Attorneys for The Standard Fire Insurance
Company (*named as St. Paul Travelers Co.*)**

LAW OFFICES OF GORDON P. SEROU,
JR., L.L.C.

/s/ Gordon P. Serou, Jr.
Gordon P. Serou, Jr. (14432)
gps@seroulaw.com
Poydras Center, Suite 1420
650 Poydras Street
New Orleans, Louisiana 70130
Telephone:  (504) 299-3421

**Attorneys for American Reliable Insurance
Company**

SUTTON & ALKER, LLC

/s/ James C. Rather
James C. Rather (25839)
jrather@mcsalaw.com
4080 Lonesome Road, Suite A
Mandeville, Louisiana 70448
Telephone:  (985) 727-7501

**Attorneys for Simsol Insurance Services, Inc.**

26

BEST KOEPPEL

LARZELERE PICOU WELLS SIMPSON
LONERO, LLC

/s/ Peter S. Koeppel
Peter S. Koeppel
Michael L. Martin
2030 St. Charles Ave.
New Orleans, Louisiana 70130
Telephone:  (504) 598-1000

/s/ Jay M. Lonero
Jay M. Lonero, T.A. (20642)
jlonero@lpw-law.com
Christopher R. Pennison (22584)
cpennison@lpw-law.com
Angie A. Akers (26786)
aakers@lpw-law.com
3850 N. Causeway Boulevard, Ste 1100
Metairie, Louisiana 70002
Telephone:  (504) 834-6500

**Attorneys for Colonial Claims Corporation**

**Attorneys for American National Property
And Casualty Company**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has this date been served upon all parties to this suit through counsel by filing into the Court's electronic filing system on this 6th day of April, 2010.

/s/ Harry Rosenberg
_____