UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*EX REL.* BRANCH CONSULTANTS, L.L.C.,<br><br>      Plaintiff<br><br>VERSUS<br><br>ALLSTATE INSURANCE COMPANY, et. al.,<br><br>      Defendants | CIVIL ACTION NO.: 06-4091<br><br>SECTION: "R" (1)<br><br>JUDGE: VANCE<br><br>MAGISTRATE: SHUSHAN |

**LIBERTY MUTUAL FIRE INSURANCE COMPANY'S<br>MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

    Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") submits the following memorandum in support of its Motion to Compel Discovery. For the reasons set forth below, this Court should order Plaintiff Branch Consultants, LLC ("Branch") to supplement its responses to Liberty Mutual's First Request for Production Nos. 8, 18 and 21, Liberty Mutual's First set of Interrogatories no. 2, 6, 9-11, 13-20 and 24, and Liberty Mutual's Second Set of Interrogatories No. 1.

**I.  BACKGROUND**

    This Court is intimately familiar with the procedural history and facts of this case. Branch has filed this False Claims Act ("FCA") case alleging that various WYO insurers, including Liberty Mutual, improperly shifted damages which should have been attributable to their homeowners insurance policies to flood insurance policies backed by the U.S. Government. *See generally*, First Amended Complaint ("FAC"). On February 2, 2010, Liberty Mutual propounded discovery regarding Branch's allegations concerning the two Liberty Mutual

properties identified in Paragraph 29 of the FAC.  *See* Liberty Mutual's First Interrogatories, First Requests for Production of Documents, and Second Interrogatories, attached hereto Exhs. "1", "2" and "3", respectively.

In its interrogatories and document requests, Liberty Mutual sought the most basic information.  *See* Exh. "1" at Interrogatory Nos. 2, 6, 9-11, 13-20 and 24, Exh. "2" at Request Nos. 2, 8, 18 and 21, and Exh. "3" at Interrogatory No. 1.  For example, Liberty Mutual's interrogatories request that Branch state the facts supporting quoted allegations from the FAC.  *See* Exh. "1" at Nos. 6 and 13-16.  Additionally, Liberty Mutual's discovery seeks identification and production of documents supporting Branch's fraud and loss-shifting allegations.  *See* Exh. "1" at Nos. 2, 17-20 and 24, Exh. "2" at Nos. 8, 18, and 21 and Exh. "3" at No. 1.  Further, Liberty Mutual's discovery seeks identification of the individuals who inspected the Liberty mutual properties at issue, including the date of inspection, and a description of their qualifications to perform such inspections.  *See* Exh. "1" at Nos. 9-11.

On March 3, 2010, Branch provided its responses.  *See* Exh. "4", "5" and "6".  On March 12, 2010, Branch supplemented its responses to Interrogatory Nos. 5, 8, 12, 14, 21 and 22.  *See* Exh. "7".  Rather than state the facts supporting its allegations of loss shifting and/or identify or produce the requested documents, Branch claims Liberty Mutual is "prematurely seeking expert discovery" and asserts the attorney-client and work product privileges.  *See* Exhs. "4" through "7".  On March 16, 2010, undersigned counsel wrote counsel for Branch detailing his perceived deficiencies.  *See* March 16, 2010 email from Keith L. Magness to Ryan Casey, Exh. "8".  During the parties' rule 37.1 conference, counsel for Branch acknowledged that privilege does not apply to facts; however, Branch refused to supplement certain of its responses maintaining its objections.  *See* March 20, 2010 email from Keith Magness to Soren Gisleson,

attached hereto as part of Exh. "8". Furthermore, despite its promise to provide supplemental response to First Interrogatory Nos. 4, 10, 17-19, 22 and 24, Second Interrogatory No. 1, and Requests for Production Nos. 18 and 21 by Wednesday, March 31, 2010,[1] Branch has failed to do so. Accordingly, Liberty Mutual is forced to seek redress in this Court via motion to compel.

## II.    LEGAL STANDARD

The purpose of discovery is to "make a trial less of a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958). With this in mind, Rule 23(b)(1) provides that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *See* Fed. R. Civ. P. 26(b)(1). Should a party fail to receive production of materials that are within the scope of discovery, they may move to compel. *See* Fed. R. Civ. P. 37(a). The party resisting discovery bears the burden of showing that the information sought is clearly irrelevant, privileged, or otherwise not subject to discovery. *In re Santa Fe Int'l Corp.*, 232 F.3d 705, 710 (5th Cir. 2001). Branch cannot meet its burden with regard to Liberty Mutual's requests.

## III.   ARGUMENT

### A.    Branch improperly refuses to specifically identify who has inspected Liberty Mutual's properties, what date the inspections incurred, what qualifications the inspectors possessed, and what pictures, if any, the inspectors took and when.

In its first set of interrogatories to Branch, Liberty Mutual sought identification of all persons who participated in any reexaminations and/or inspections of the Liberty Mutual properties, identification of what dates the reexaminations/inspections took place, and

---

[1]   As noted in undersigned's March 20, 2010 email to counsel for Branch, the original deadline for supplementation by both parties was Friday, March 26, 2010; however, on March 26, the parties agreed to extend this deadline until Wednesday, March 31, 2010.

identification of the individuals' qualifications to adjust or reexamine NFIP claims, including their NFIP training and prior experience adjusting or reexamining NFIP claims. *See* Exh. "1" at Nos. 9-11. Additionally, in its second set of interrogatories, Liberty Mutual sought identification of the persons who took the photographs of the Liberty Mutual properties produced by Branch, including the date the photographs were taken. *See* Exh. "3" at No. 1. In response, Branch stated that "one or more" of the Branch principles (four men) "performed part or all of the various adjustments", took the various pictures, and had received "NFIP training." *See* Exh. "4" at Nos. 9-11, Exh. "6" at No. 1. Branch did not specify who inspected what property, who took what pictures and/or when the inspections were performed or pictures taken. *Id.*

During the parties' Rule 37.1 conference, counsel for Branch refused to specify which of the Branch principles inspected either Liberty Mutual property, much less when the inspection allegedly occurred. *See* Exh. "8". Further, when asked what NFIP training the Branch principles received and when, counsel for Branch refused to respond. *Id.* The stated justification for such refusal: work product and/or attorney-client privilege. *Id.* Undersigned counsel offered to -- and did -- prepare a federal Privacy Act release for each of the Branch principles to sign in order to allow Liberty Mutual to obtain their flood training/certification information directly from FEMA (*see* Exh. "8"); however, as of this motion, Branch has failed to return the completed forms.

As for identification of who took the photographs of the Liberty Mutual properties and when, counsel for Branch refused to supplement its response stating that there were "too many pictures." *Id.* Undersigned counsel then requested production of the uncompressed native format (digital) copies of the pictures, including all metadata, so he could attempt to ascertain both when the photograph was taken and on what device. *Id.* Counsel for Branch stated that he

would check to see if the digital copies were still available, and, if they were, he would produce them; however, as of this motion, Branch has not provided them to undersigned counsel.

None of these interrogatories seek to impose upon confidential communications between Branch and its counsel. Rather, the interrogatories seek basic data (the who, what and when) regarding Branch's claim and the "proof" (photographs and estimates) being submitted in support. Further, the interrogatories seek basic data regarding the qualifications of the individuals responsible for making the subjective determination that Liberty Mutual improperly handled its flood claims. Neither the work product or attorney-client privileges apply to this basic data, and, without such, Liberty Mutual is unable to attack the veracity of Branch's allegations. Accordingly, this Court should overrule Branch's work product and attorney-client privilege objections and require it to supplement its responses to include (1) identification of all persons who participated in any reexaminations and/or inspections of the Liberty Mutual properties, (2) identification of what dates the reexaminations/inspections took place, and (3) identification of the individuals' qualifications to adjust or reexamine NFIP claims, including the persons' NFIP training and prior experience adjusting or reexamining NFIP claims. Furthermore, given the apparent difficulty of identifying both the date Branch's pictures were taken and the specifics of the Branch personnel's NFIP training, this Court should order Branch to produce the uncompressed native format (digital) copies of the pictures, including all metadata, and complete the federal Privacy Act forms provided by undersigned counsel in order to allow Liberty Mutual to obtain their flood training/certification information directly from FEMA.

156666

> **B.    Branch inappropriately asserts privilege over the *facts* supporting its allegations within the FAC and/or contained within the "detailed reports" referenced in Max Johnson's August 14, 2007 Declaration.**

Interrogatory Nos. 6, 13, 14 and 15 seek disclosure of the <u>facts</u> supporting quoted allegations from the FAC.  *See* Exh. "1" at Nos. 6, and 13-15.  Interrogatory No. 16 seeks the <u>facts</u> relating to the two Liberty Mutual properties contained within the "detailed reports" referenced in Paragraph 12 of the August 14, 2007 Declaration of Max Johnson (R. Doc. No. 153-2),[2] Branch's principle.  *Id.* at No. 16.  Branch objects to providing these <u>facts</u> and asserts the attorney-client and/or work product privileges.  *See* Exh. "4" at Nos. 6, 13, 14, 15 and 16.  During the parties' Rule 37.1 conference, counsel for Branch acknowledged the long-standing rule that privilege does not apply to <u>facts</u>; however, despite this recognition, Branch refused to supplement its responses and maintained its objection.  *See* Exh. "8".

In *Upjohn Co. v. United States*, the United States Supreme Court noted that the protection afforded by the attorney-client privilege in discovery applies to *communications* between an attorney and his client, <u>*not facts*</u>.  *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981).  In the words of the Court,

> [T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing.  The client cannot be compelled to answer the question, 'what did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Id.* (italics original).

In Interrogatory Nos. 6, 13, 14 and 15, communications between Branch and its counsel are not at issue.  Rather, Liberty Mutual is merely seeking the disclosure of <u>facts</u> supporting Branch's allegations in the FAC.  For example, Interrogatory No. 13 requests that

---

[2]    A copy of Johnson's August 14, 2007 Declaration is attached as Exhibit "10".

156666

Branch "state all facts supporting [its] allegation that Liberty Mutual adjusted Hurricane Katrina flood claims utilizing FEMA's 'expedited claims handling process'". *See* Exh. "1" at No. 13. Interrogatory No. 14 requests that Branch "state all facts supporting [its] allegation that Liberty Mutual 'defrauded NFIP by misattributing wind damage and other non-flood losses to policies subsidized or underwritten by the Government rather than correctly attributing such losses to causes that were covered by [Liberty Mutual's] homeowners policy. *Id.* at No. 14. These interrogatories seek disclosure of the basic facts supporting Branch's loss-shifting allegations, allegations which, as this Court has acknowledged, are the centerpiece of Branch's case.

Likewise, while Interrogatory No. 16 concerns the "detailed reports" generated by Branch subsequent to its inspection of Liberty Mutual's properties, there is no support for Branch's failure to state the <u>facts</u> regarding Liberty Mutual's properties within its report, even if the report is privilege (which is denied). For example, if Branch's "detailed report" contains Branch's observations/documentation regarding what items Branch believed were damaged by wind as opposed to flood, the height of the flood line, etc., Branch should disclose such.

Branch's work product objection fares no better. First and foremost, Interrogatory Nos. 6, 13, 14 and 15 do not seek production of any written product of Branch. Rather, Interrogatory Nos. 6, 13, 14 and 15 seek identification of facts within Branch's knowledge. Second, although Interrogatory No. 16 concerns written product of Branch, Interrogatory No. 16 does not seek production of any documents. Rather, Interrogatory No. 16 seeks disclosure of the facts within the "detailed reports" which pertain to the two Liberty Mutual properties. Moreover, even if Branch's "detailed reports" were work product -- which they are not -- Branch cannot properly withhold as work product material which forms the basis of its allegations. It is hornbook law that a party cannot use documents as both a sword to bring

156666

a civil action and a shield to protect against their disclosure. Branch has put its adjustments at issue, and Liberty Mutual merely seeks the facts behind them, facts which go to the core of Branch's case against Liberty Mutual.

Branch may argue that its March 12, 2010 supplemental responses remedy any deficiency within its original answers; however, this Court should note that while Branch's supplemental response purports to identify alleged "overpayments" by Liberty Mutual resulting in "grossly inflated" claims being submitted to the NFIP, none of the entries detail what damage Branch believed was caused by wind and/or how the wind damage was "shifted" to the flood insurance policy. *See* Exh. 7. On March 1, 2010, this Court rejected Branch's attempt to amend its complaint and assert an "inflated-revenue" claim. *See* R. Doc. No. 417. Accordingly, this Court should reject any assertion that Branch's supplemental response addressed the point of Liberty Mutual's interrogatories – identification of the facts supporting Branch's loss-shifting claim.

Given Interrogatory Nos. 6, 13, 14, 15 and 16 merely seek the most basic discovery -- disclosure of the <u>facts</u> supporting Branch's allegations within the FAC and/or <u>facts</u> contained within the "detailed reports" written by Branch upon inspection of Liberty Mutual's properties -- this Court should overrule Branch's objections, and require Branch to supplement its responses by stating all facts supporting its allegations, and stating all facts contained within the "detailed reports" referenced in Paragraph 12 of Max Johnson's August 14, 2007 Declaration.[3]

---

[3] In further support of its request that Branch be compelled to disclose the facts supporting its allegations within the FAC, Liberty Mutual adopts the arguments of Defendant American National Property and Casualty Company ("ANPAC") made in its February 9, 2010 motion to compel. *See* R. Doc. No. 348-1, pp. 8-12.

156666

    **C.    Branch improperly refuses to identify relevant documents by bates label number.**

Interrogatory No. 2 requests that Branch identify, by bates label number, all documents it provided to the Government in connection with its disclosure requirements under the FCA. *See* Exh. "1" at No. 2. Interrogatory Nos. 17 through 19 and 24 request that Branch identify, by bates label number, all documents supporting certain quoted allegations within its FAC. *Id.* at Nos. 17-19. Finally, Interrogatory No. 20 requests that Branch identify, by bates label number, all documents and communications it possessed prior to filing of its original complaint regarding the two Liberty Mutual properties.

Interrogatory Nos. 2 and 20 seek to discover information regarding a threshold question under the FCA: Is Branch an original source of its allegations against Liberty Mutual? As Branch's original source status is based upon what it knew at the time it filed suit, not what it knows today after months of discovery, identification of the documents Branch provided the Government and/or possessed prior to filing of the instant suit will provide the best evidence of Branch's pre-suit knowledge. Interrogatory Nos. 17 through 19 and 24 merely seek identification of all documents supporting Branch's factual allegations against Liberty Mutual. Rather than identify its documents, Branch refuses to respond citing attorney-client and work product privileges. *See* Exh. "4" at Nos. 2, 17-20 and 24. Liberty Mutual's entitlement to this information is paramount, and Branch's privilege objections should be set aside. *See United States ex rel Stone v. Rockwell Int'l Corp*, 144 F.R.D. 396, 401 (D. Colo. 1992) (finding that: (i) if plaintiff failed to comply with its disclosure requirements under the FCA, "matters which can be raised by the plaintiff may well be limited to those set out in the Disclosure Statement"; and (2) "threshold standing question relating to original source must be resolved largely on the facts

supporting his claims, rather than what he might know at the time discovery takes place in the *qui tam* suit").

During the parties' Rule 37.1 conference, undersigned counsel inquired how the attorney-client (which applies to communications) and/or work product privilege (which applies to documents created in anticipation of litigation) barred a party from discovering the identity and/or existence of the documents. Counsel for Branch did not answer this question; rather, he stated that all of the documents were "listed on the privilege log." Undersigned counsel then requested that Branch update its privilege log to include a column identifying the property address to which each document pertained. Counsel for Branch refused. *See* Exh. 8, p. 2.

Attached as Exhibit 9 to this memorandum is the February 19, 2010 version of Branch's privilege log. This Court will note that while the log identifies the bates label range, date, author, recipient, description of document, basis of privilege and insurer id, there is no reference to property address. *See* Exh. 9. While Branch identifies fifteen entries as associated with Liberty Mutual (BRANCH_B001685-1735, B_002559-2643, B_003393-3412 and B_003901-3941), none of the entries are linked to 7441 Fieldston Road or 13656 N. Cavelier, the two Liberty Mutual properties at issue. The lack of specificity is compounded by the fact that Branch has yet to produce any report (wind or flood) related to 7441 Fieldston Road.

This Court should not condone such games of cat and mouse. If Branch possesses documents supporting the allegations identified in Interrogatories 17 through 19 and 24, it should identify them by bates label number. Further, if Branch has documents supporting its original source status, it should supplement its responses to Interrogatories 2 and 20 and identify them by bates label number. During the parties' Rule 37.1 conference, counsel for Branch could not provide any basis for assertion of the attorney-client and/or work product privileges to a request

that a party identify documents by bates label number because none exists. Accordingly, this Court should compel Branch to supplement its responses to Interrogatory Nos. 2, 17 through 20 and 24 and identify, by bates label number, all documents it provided to the Government in connection with its disclosure requirements under the FCA, all documents supporting the quoted allegations within its FAC, and all documents and communications it possessed prior to filing of its original complaint regarding the two Liberty Mutual properties.

### D. Branch improperly refuses to produce the relevant documents within its possession supporting its fraud claim.

Request for Production Nos. 18 and 21 seek production of all documents reflecting the amount of time Branch spent making its "observation, examination and measurements" of the Liberty Mutual properties, and the "thousands of dollars in expenses" allegedly incurred by Branch as result of its investigation as noted in the August 14, 2007 Declaration of Max Johnson. *See* Exh. "2" at Nos. 18 and 21. During the parties' Rule 37.1 conference, counsel for Branch stated that he would verify if any documents exist, and, if none did, he would supplement Branch's response to state such. *See* Exh. "8". The deadline for supplementation has passed and undersigned counsel has neither received the relevant documents nor Branch's promised supplementation that no responsive documents exist. Accordingly, this Court should order Branch to either (1) produce the responsive documents, or (2) supplement its discovery responses to indicate that no responsive documents exist.

Request for Production No. 8 seeks production of all documents and communications relating to the Liberty Mutual properties. *See* Exh. "2" at No. 8. In response, Branch claims that "Plaintiff has produced all non-privileged documents in its possession." *See* Exh. "5" at No. 8. During the parties' Rule 37.1 conference, undersigned counsel noted that while Branch produced a single "wind" adjustment report relating to 13656 N. Cavelier, Branch

has not produced a flood report – the central cause of loss being examined in this case. Further, as to 7441 Fieldston Road, undersigned counsel noted that Branch had not produced a single report – *wind or flood* – in support of its claim. *See* Exh. "8". Counsel for Branch acknowledged that it possessed "draft" flood reports relating to both Liberty Mutual properties; however, when undersigned counsel requested that Branch produce the reports, counsel for Branch refused citing work product and/or attorney-client privilege. *Id.*[4] For the reasons stated by Defendant The Standard Fire Insurance Company in its motion to compel (*see* R. Doc. No. 352-1), this Court should order Branch to produce the "draft" flood reports for both Liberty Mutual properties.

    **E.**    **Branch improperly refuses to respond to Liberty Mutual's discovery claiming such seeks "premature disclosure of expert information and testimony."**

In boilerplate fashion, Branch objects to Liberty Mutual's request for facts claiming that Liberty Mutual's interrogatories and requests for production "prematurely [seek] expert discovery." *See* Exh. 4 at Nos. 2, 6, 9-11, 13-20 and 24 and Exh. "5" at Nos. 8, 18 and 21. Branch's objection is baseless. Max Johnson, Branch's principle, has declared that Branch personnel, not third-party experts, performed the reexaminations of Liberty Mutual's properties, generated a "detailed report", and based Branch's FCA action against Liberty Mutual on their findings. *See* August 14, 2007 Declaration of Max Johnson, R. Doc. No. 153-2 at ¶¶ 4, 5, 8, 10, 11 and 12, attached hereto as Exh. "10". As a party, Branch cannot avoid discovery regarding its

---

[4] Interestingly, on page seven of its narrative summary regarding Liberty Mutual's alleged adjusting deficiencies, Branch claims that Liberty Mutual overpaid the 13656 N. Cavelier flood claim by $56,948.20. *See* Exh. "7" at p. 7. Assuming this is true (which it is not), this would mean the proper flood payment was $52,451.80 ($109,400 policy limits paid by Liberty Mutual minus the $56,948.20 "overpayment" identified by Branch); however, in its FAC, Branch claims that the total flood loss at 13656 N. Cavelier was $26,000. *See* FAC at ¶ 29(b). To this day, Branch has refused to produce a single document (the "draft" reports) supporting its allegations.

own employees or principles, who may or may not be experts, but who acquired their knowledge and facts through witnessing and participating in the events that form the basis for the FAC. *See* Advisory Committee Note (b)(4) to Federal Rule of Civil Procedure 26 (stating Rule 26(b)(4) does not address an "expert who is an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.") The facts obtained by Branch during these inspections and noted in the "detailed reports" are central to both Branch's original source status and the allegations within Branch's complaint. For the reasons stated in ANPAC's February 9, 2010 motion to compel (R. Doc. No. 348-1, pp. 16-17), this Court should overrule Branch's "premature expert discovery" objection, and compel Branch to respond to Interrogatory Nos. 2, 6, 9-11, 13-20, and 24 and Request for Production Nos. 8, 18 and 21.

## IV.     CONCLUSION

Liberty Mutual's discovery requests seek the most basic information. For the reasons set forth above, this Court should overrule Branch's misguided assertion of the attorney-client and work product privileges and compel Branch to:

(1) Supplement its responses to Interrogatory Nos. 6, 13, 14, 15 and 16 by stating all facts supporting the quoted allegations within the interrogatories, and stating all facts contained within the "detailed reports" referenced in Paragraph 12 of Max Johnson's August 14, 2007 Declaration;

(2) Supplement its responses to Interrogatory Nos. 2, 17 through 20 and 24 and identify, by bates label number, all documents it provided to the Government in connection with its disclosure requirements under the FCA, all documents supporting the quoted allegations within its FAC, and all documents and communications it possessed prior to filing of its original complaint regarding the two Liberty Mutual properties;

(3) Supplement its responses to Interrogatory Nos. 9 through 11 and identify (a) all persons who participated in any reexaminations and/or inspections of the Liberty Mutual properties, (b) the dates the reexaminations/inspections took place, and (c) the individuals' qualifications to adjust or reexamine NFIP claims, including the

persons' NFIP training and prior experience adjusting or reexamining NFIP claims;

(4)  Produce the uncompressed native format (digital) copies of all photographs of the Liberty Mutual properties identified in Paragraph 29 of the FAC, including all metadata;

(5)  Complete the federal Privacy Act forms provided by counsel for Liberty Mutual in order to allow Liberty Mutual to obtain their flood training/certification information directly from FEMA;

(6)  Supplement its responses to Request for Production Nos. 18 and 21 through production of all documents reflecting the amount of time Branch spent making its "observation, examination and measurements" of the Liberty Mutual properties, and the "thousands of dollars in expenses" allegedly incurred by Branch as result of its investigation as noted in the August 14, 2007 Declaration of Max Johnson; and

(7)  Supplement its response to Request for Production No. 8 through production of all "draft" flood reports relating to the Liberty Mutual properties identified in Paragraph 29 of the FAC.

      Respectfully submitted,

      BARRASSO, USDIN, KUPPERMAN
      FREEMAN & SARVER, LLC

      /s/ Keith L. Magness
      Judy Y. Barrasso, TA (2814)
      jbarrasso@barrassousdin.com
      John W. Joyce (27525)
      jjoyce@barrassousdin.com
      Keith L. Magness (29962)
      kmagness@barrassousdin.com
      909 Poydras Street, 24th Floor
      New Orleans, Louisiana  70112
      Telephone:  (504) 589-9700
      Facsimile:   (504) 589-9701

      Attorneys for defendant,
      Liberty Mutual Fire Insurance Company

## CERTIFICATE OF SERVICE

  I hereby certify that a copy of the above and foregoing pleading has this date been served upon all parties to this suit through counsel by filing into the Court's electronic filing system and, for non-participants, via electronic mail, this 9th day of April, 2010.


                /s/ Keith L. Magness
                KEITH L. MAGNESS

156666