# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, *EX REL.* BRANCH CONSULTANTS, L.L.C., <br> *Plaintiff* <br> v. <br> ALLSTATE INSURANCE COMPANY, et al., <br> *Defendants* | SECTION: "R" (1) <br> Case No. 2:06-cv-4091 <br> **JURY TRIAL DEMANDED** |

### BRANCH CONSULTANTS, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT LIBERTY MUTUAL'S MOTION TO COMPEL

Plaintiff-Relator Branch Consultants, LLC ("Branch") files this Memorandum in Opposition to Defendant Liberty Mutual Fire Insurance Company's ("LM") Motion to Compel Discovery (R. Doc. 510).

**I.   INTRODUCTION**

Branch has provided LM with extremely detailed interrogatory responses, which list all the non-privileged information it can provide. Where Branch is unable to answer an interrogatory due to memory issues (e.g., who took each photograph?), Branch provided the fullest response that it could (that it was one of four individuals). Branch also turned over to LM 7,500+ pages of documents which dwarfs LM's paltry production of a few hundred pages. LM's Motion to Compel is little more than a complete mischaracterization of the extent of Branch's responsiveness, with the hopes that a broad order by this Court will result in the production of the few documents that were withheld and are clearly privileged.

**II.   ARGUMENT**

    **A.   Branch never promised to provide supplemental interrogatories**

LM represents that counsel for Branch "promised to provide supplemental response [sic] to First Interrogatory Nos. 4, 10, 17-19, 22 and 24. Second Interrogatory No. 1, and Requests for Production Nos. 18 and 21[.]" This is simply not the case. Branch's counsel explained to defense counsel that many of the inquiries were simply too burdensome and would be better resolved in a deposition. Branch offered to discuss any supplements with co-counsel but never promised to supplement any of the responses. LM misrepresents Branch's acquiescence to LM's burdensome discovery requests in an attempt to circumvent the fact that it has no legal basis to pursue further discovery against Branch in these areas.

      **B.**      **Branch produced a significant number of documents and gave detailed interrogatory responses, exceeding what is required**

To read LM's motion to compel is to wonder if counsel has even reviewed the documents Branch has produced. Defendants sums up Branch's discovery responses by arguing that "[r]ather than state the facts supporting its allegations of loss shifting and/or identify or produced the requested documents, Branch claims that Liberty Mutual is 'prematurely seeking expert discovery' and asserts the attorney-client and work product privileges." (R. Doc. 510-2 at 2).

      **1.**      **Branch's interrogatory responses**

Regarding LM's first contention, that Branch has not stated the facts in support of its allegations, Branch's interrogatory responses attached a single-spaced eight page document which listed the LM properties at issue, and described each portion of the adjustment that Branch contends was inflated, why Branch contends so, and the amount of the overpayment. (R. Doc. 510-9 at. 8-15). The document also lists each violation of federal regulations Branch contends that LM committed, and Branch's reasons. LM complains that Branch is withholding disclosures of facts related to the inspections and Branch's assessment (R. Doc. 510-2 at 6), but this is simply not the case. Branch's extremely detailed line-by-line analysis of each of LM's properties is more than a full response.

Short of a deposition transcript, there is nothing more Branch could possibly provide. This is more than sufficient to respond to LM's interrogatories on this point, and LM misconstrues the extent of Branch's thoroughness in an attempt to take premature expert discovery and receive privileged information.

In other instances LM is upset that Branch's full answer is not the answer LM wants. For example, LM explains that it "sought identification of the persons who took the photographs of the Liberty Mutual properties produced by Branch[.]" Branch provided 832 color photos in discovery, and explained to Defendants that one of four Branch principals took the photo, and that the exact identity of the person who took each photo cannot be determined. Branch

also explained that if Liberty Mutual had specific questions about any individual photo in particular, it could raise these in a deposition.

An example that sums up LM's Motion is its complaint regarding Branch's response to Interrogatory No. 9, which sought the identity of each person that inspected each of LM's properties. (R. Doc. 510-6 at 6). After asserting objections and privileges, Branch responds that "the following persons performed par or all of the various adjustments, including but not limited to, scoping and pricing evaluations: Max Johnson, Rick Clark, Troy Black, and Tony Hall." (Id. at 7). Branch is not hiding anything, and has told defense counsel countless times that Branch does not recall exactly which of its four members inspected each property. Whereas Branch could have simply answered that it does not recall, it went beyond that to indicate the entire range of persons who may have been involved in the inspection (one or more of four individuals). That might not be the response that LM wants, but it is the most full response Branch can provide.

LM also complains that in response to interrogatories regarding the training of their adjusters, Branch "refused to respond" to "what NFIP training the Branch principles received and when," yet Branch attached resumes for those Branch principles that have them indicating this information.

**2.     Branch's document production**

LM's second position, that Branch has refused to produce documents, is wholly without merit. To date Branch has produced over 7,500 pages in documents to Liberty Mutual. This dwarfs the 446 pages of documents that LM has produced to Branch in this case.[1]

Branch turned over 637 pages of documents labeled "BRANCH_W," which were wind adjustment reports created by Branch for other attorneys in Katrina cases. Branch also turned over 832 photos, bates labeled BPHOTOS. In addition, Branch turned over 5221 pages of documents (bates labeled BRANCH), which are publicly available documents Branch utilized in formulating its analysis (pre-litigation discovery). Another segment of documents, bates labeled "BRANCH_B", consisted of Branch's analyses of Defendant's properties, most of which were produced at the behest of Branch's counsel in anticipation of litigation. Branch produced 1,000 pages of these documents

---

[1] Branch's counsel notes that in his experience he typically receives more document production in a simple homeowner's claim than in this *qui tam* action alleging billions in fraud against U.S. taxpayers. Years into this litigation, LM has produced next to nothing. LM even withholds its catastrophe manual on the basis of "irrelevance" and "trade secret", even though a protective order has been entered. *See* Ex. A.

and withheld 2,900.

Branch withheld certain documents as privileged.  These were adjustment reports that were prepared in anticipation of litigation at the behest of Branch's counsel.  Branch has already listed for LM the facts relating to the overpayment at each of its properties, Branch's internal assessment to assist in this litigation is clearly privileged.

### III.   CONCLUSION

In sum, Branch has produced extremely extensive interrogatory responses and a great number of documents (more than fifteen times what LM has produced).  Branch has responded fully, and Defendant's brief is little more than motions practice for motions practice sake.  Accordingly, Plaintiff requests that the Court deny Liberty Mutual's Motion to Compel Discovery.

DATED:  April 20, 2010                           Respectfully submitted,


HERMAN, HERMAN, KATZ & COTLAR, LLP


By: /s/ Soren E. Gisleson
    Stephen J. Herman (LA #23129)
    sherman@hhkc.com
Soren E. Gisleson (LA #26302)
    sgisleson@hhkc.com
    820 O'Keefe Avenue
New Orleans, Louisiana 70113

*and*

SUSMAN GODFREY LLP

Jonathan Bridges (TX #24028835)
jbridges@SusmanGodfrey.com
901 Main Street, Suite 5100
Dallas, Texas  75202-3775

Tibor L. Nagy, Jr. (NY #4508271)
tnagy@SusmanGodfrey.com
654 Madison Ave., 5th Flr

New York, NY 10065

Matthew R. Berry (WA #37364)
mberry@susmangodfrey.com
1201 Third Avenue, Suite 3800
Seattle, WA 98101

*and*

KANNER & WHITELEY, L.L.C.
Allan Kanner (LA #20580)
a.kanner@kanner-law.com
Conlee S. Whiteley (LA #22678)
M. Ryan Casey (LA # 31092)
701 Camp Street
New Orleans, LA  70130

_____
*Attorneys for Plaintiff/Relator*


## CERTIFICATE OF SERVICE

     I hereby certify that on April 20, 2010, a copy of the foregoing was served upon Defendants via the Court's ECF system and electronic mail..  I further certify that a true and correct copy of the above also was sent via electronic mail (pursuant to agreement) to Assistant United States Attorney, Jay D. Majors.

                                                            /s/ Soren E Gisleson