UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


UNITED STATES OF AMERICA, *EX REL.*   CIVIL ACTION
BRANCH CONSULTANTS, LLC


VERSUS            NO:  06-4091-SSV-SS


ALLSTATE INSURANCE COMPANY, et al

<u>ORDER</u>

MOTIONS OF INSURER DEFENDANTS TO COMPEL DISCOVERY FROM BRANCH (Rec. docs. 323, 325, 328, 348, 350, 352 and 355)

**GRANTED IN PART AND DENIED IN PART**

   The following Insurer Defendants filed motions to compel:  American National Property & Casualty Company ("ANPAC"); American Reliable Insurance Company ("American Reliable"); Fidelity National Property and Casualty Insurance Company ("Fidelity"); and The Standard Fire Insurance Company ("Standard Fire").  The oppositions from Branch Consultants, LLC ("Branch") may be found at Rec. docs. 373 and 401.  The Insurer Defendants filed supplemental memoranda. Rec. docs. 382, 386, 419, 420, 421, 426 and 436.  They seek an order regarding the following:  (1) the disclosure statement submitted to the government by Branch pursuant to 31 U.S.C. 3730(b)(2), and its communications with the government; (2) summaries and reports of wind and flood adjustments prepared by Branch in its investigation of the Insurer Defendants; (3) Branch's communications with the relators in <u>Rigsby</u>; and (4) responses to written discovery.

**I.**  <u>Section 3730(b)(2) Disclosure Statement and Communications with Government.</u>

   Standard Fire contends that Branch should be required to produce its disclosure statement submitted to the government and other communications with the government.  It also contends that

Branch should be required to respond to interrogatories regarding information provided to the government.[1]

A.    **Disclosure Statement.**[2]

The following questions must be addressed: (1) is the disclosure statement protected from production as opinion work-product; (2) did Branch waive work-product protection by providing it to the government; and (3) assuming that all or part of the statement is protected from disclosure as ordinary work-product, have the Insurer Defendants demonstrated a substantial need for it.

The False Claims Act provides that:

(1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. . . .

(2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint . . . shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

(3) The Government may, for good cause shown, move the court for extensions of the time. . . .

(4) Before the expiration of the 60-day period or any extensions obtained under paragraph (3), the Government shall–(A) proceed with the action, in which case the

---

[1] See Rec. doc. 328. American Reliable's first motion to compel (Rec. doc. 352 at 5) and ANPAC's motion to compel (Rec. doc. 348 at 4-7) raise the same issues. The ruling on Standard Fire's motion is applicable to the ANPAC and American Reliable motions.

[2] The following documents were identified by Branch on the latest revision of its privilege log. See Rec. doc. 401(Exhibit 1):

| August 2, 2006 | Branch002957 | Letter re Disclosure Statement. |
| August 2, 2006 | Branch002958-77 | Written Disclosure Statement. |
| June 21, 2007 | Branch002978-3013 | Supplemental Written Disclosure Statement |
| November 29, 2006 | Branch005013-50 | Presentation concerning Branch's claims |

action shall be conducted by the Government; or (B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.

(5) When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

31 U.S.C. § 3730(b).

The courts which have addressed the issue of how the work-product doctrine applies to disclosure statements have reached four different conclusions:

1.    The disclosure statement should be produced in its entirety.

2.    The disclosure statement is not discoverable because the whole statement is opinion work-product.

3.    The disclosure statement is not discoverable because the defendant cannot demonstrate substantial need and undue hardship.

4.    The disclosure statement should be produced with the opinion work-product redacted.

Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, A.B.A., Sec. of Lit. (5th Ed. 2007)(Epstein), pp. 910-13.

Branch relies on United States ex rel. Bagley v. TRW, Inc., 212 F.R.D. 554 (C.D. Ca. 2003), which is the only court to conclude that the disclosure statement is not discoverable because it is opinion work-product.  It reached this conclusion after it conducted an *in camera* inspection of the disclosure statement.  The disclosure statement consisted of:  (1) supporting exhibits; (2) an analysis of the facts and evidence in light of the relevant legal standards; and (3) a narrative of the specific facts and evidence that relator contended were material to his claim.  The supporting exhibits were

3

produced to the defendant, so that was not an issue.  The legal analysis contained in the statement was found to be opinion work-product and was protected from disclosure.  Id. at 563.  The court also found that the narrative of the specific facts and evidence revealed the mental impressions, conclusions, and opinions of the relator's counsel and was therefore opinion work-product.  Id. at 564.

> [C]lassifying disclosure statements as opinion work product-which means they almost never will have to be turned over to the defendant-encourages relators to include everything that might help the government in evaluating the case, secure in the knowledge that whatever is written will not be seen by the defendant.  It also spares the parties the burden and expense of litigating the discoverability of disclosure statements (or portions thereof), and eliminates the need for judicial *in camera* review of proposed redactions. Classifying disclosure statements as opinion work product therefore furthers the purposes of section 3730(b)(2).

212 F.R.D. at 565.

United States ex rel. Stone v. Rockwell International Corp., 144 F.R.D. 396 (D. Colo. 1992), is representative of those decisions which have held that the disclosure statement should be produced in its entirety.[3]  The disclosure statement was reviewed *in camera* and the court satisfied itself that "it contains no mental impressions, conclusions, opinions or legal theories of an attorney."  144 F.R.D. at 401.  It found that the defendant had a substantial need for the disclosure statement and it could not obtain the substantial equivalent by other means.  The court noted that the relator had provided little in the way of discovery and the trial was just four months away.  Id. at 401.  The court found that without the disclosure statement, the defendant could not make the comparison between the facts purportedly revealed by relator as an original source and the facts which may have

---

[3] In Stone the relator filed the *qui tam* action in 1989.  The United States declined to intervene but later reversed course, and, in November 1996 the district court granted the government's intervention.  When the issue arose concerning the production of the disclosure statement, the government was not a party.

previously been available for public consumption.  Id. at 401-02.[4]

In United States ex rel. Yannacopoulos v. General Dynamics, 231 F.R.D. 378 (N.D. Ill. 2005), after an *in camera* inspection, the court found that the purely factual portions of the narrative were not opinion work-product and the portions of the narrative containing conclusions, expressions of opinion, legal theories, and the discussion of inferences to be drawn from the facts were opinion work-product.  Id. at 386.

The issue of whether Branch's disclosure statement is opinion work-product or ordinary work-product will be resolved after an *in camera* inspection.  However, whether it is opinion or ordinary work-product, the Insurer Defendants contend that the protection was waived when the disclosure statement was produced to the government.  Branch was required to produce the disclosure statement to the government before it filed suit.  Most cases hold that compelled disclosure of work-product materials to a government agency does not necessarily waive work-product.  Epstein at 1050-52.  Branch did not waive the work-product protection when it produced the disclosure statement to the government.

Branch also argues that there was no waiver of the work-product protection for the disclosure statement because of the joint-prosecutorial privilege.  In United States ex rel. Purcell v. MWI Corporation, 209 F.R.D. 21 (D.D.C. 2002), the government intervened in the action and asserted that

---

[4]  In United States ex rel. Grand v. Northrop Corp., 811 F.Supp. 333 (S.D. Ohio 1992), the trial judge ordered that: (1) the magistrate judge conduct an *in camera* inspection to determine the portions of the document which constituted material evidence and information; and (2) after redacting the analysis and opinions of counsel, the document was to be produced to the defendant.  Id. at 337.

In United States ex rel. Robinson v. Northrop Corp., 824 F.Supp. 830 (N.D. Ill. 1993), the court found that the disclosure statement "should not contain opinions of an attorney. . ."  Id. at 838.  The court ordered production of the disclosure statement and cited Stone and Grand.  It noted that Stone and Grand made provision for redacting any analysis and opinions of counsel, but the relator in Robinson did not make a request to do so.  Id. at 838-39.

certain documents were covered by the joint-prosecutorial privilege.  The court applied a joint-prosecution privilege to the False Claims Act.

> In FCA cases, the government's intervention still maintains a common interest between the government and the relator and the parties' attorneys may logically choose to share communications and written material as though they are functioning as joint parties.

Id. at 27.  At issue were documents authored by relator's counsel concerning a witness who was to be deposed.  Id. at 22 and 27.[5]  The court specified that its holding did not address FCA cases in which the Government did not intervene.  Id. at 27, n. 6.

In United States ex rel Burroughs v. DeNardi Corp., 167 F.R.D. 680 (S.D. Cal. 1996), the relator contended that the work-product protection for the disclosure statement was not waived when the documents were furnished to the government even though it did not intervene in the FCA action. The court found that the government and the relator had sufficient commonality of interest that they could successfully assert the joint-prosecution privilege and there was no waiver of the work-product protection.  Id. at 686.[6]  The court ordered that the documents be produced for *in camera* review to determine whether they revealed counsel's mental impressions, opinions and theories about the case.  Id. at 684.[7]

The joint-prosecutorial privilege will be applied to this case.  When Branch communicated with the government and provided it with documents, including its disclosure statement, it did not waive work-product protection.

---

[5] There was no discussion about whether the privilege prevented discovery of the relator's disclosure statement.

[6] See also Epstein at 1038-1046 concerning disclosure to a party with a common interest in litigation.

[7] The decision does not indicate whether all or part of the disclosure statement was produced to the defendant after the *in camera* inspection.

Assuming that the *in camera* inspection reveals that all or part of the disclosure statement is ordinary work-product, the burden is on the Insurer Defendants to demonstrate that they have a substantial need for the materials to prepare their case and cannot, without undue hardship, obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A)(ii).  They contend that they have sustained their burden because of the importance of the disclosure statement to whether Branch is an original source.

> Pursuant to 31 U.S.C. § 3730(e)(4):
>
> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions . . ., unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based. . . .

Id.   In U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co., 668 F.Supp.2d 780 (E.D.La.,2009), Chief District Judge Vance stated that:

> Under the FCA bar, a relator is not forbidden from bringing suit based upon a public disclosure if the relator is the original source of the information in its complaint.  In order to qualify for original-source status, a relator must pass a two-part test.  First, the relator must demonstrate that he or she has direct and independent knowledge of the information on which the allegations are based, and second, the relator must demonstrate that he or she has voluntarily provided the information to the government before filing his or her qui tam action.  The allegations in question are those in the relator's complaint, not the allegations that were subject to public disclosure.

Id. at 797 (citations and quotation marks omitted).  The Court found that "Branch's allegation[s], which must be taken as true at the motion-to-dismiss stage," were sufficient and "Branch has both direct and independent knowledge of the information upon which its allegations are based. . . ." Id. at 802-03.

7

However, at trial Branch must demonstrate that <u>when</u> it filed suit it was an original source of the information on which the allegations in the first amended complaint are based. The disclosure statement is one of the most reliable means of determining the information in Branch's possession when it filed suit. <u>See also Stone</u>, 144 F.R.D. at 401-02 ("[W]ithout access to the plaintiff's disclosure statement, the defendant cannot make the critical comparison between the facts purportedly revealed by the plaintiff as an original source and facts which may have previously been available for public consumption.").

Branch argues that the Insurer Defendants can obtain the substantial equivalent by other means, including depositions. Depositions of Branch's representatives are not a reliable means of providing the Insurer Defendants with what Branch knew <u>when</u> it filed suit. More than three and a half years have passed since it filed suit. Through discovery, it received information from the Insurer Defendants regarding the properties identified in the first amended complaint. This discovery makes it more difficult to separate what Branch knew when it filed suit from what it has learned since then. The situation is analogous to those authorities requiring production of statements taken shortly after an accident. <u>See Southern Railway Company, v. Lanham</u>, 403 F.2d 119, 127-28 (5th Cir. 1968). Depositions of Branch's representatives more than three years after suit was filed are not a sufficient substitute for the disclosure statement.[8]

Branch shall produce the letter of August 2, 2006, and the written disclosure statement of

---

[8]  In <u>United States ex rel. Singh v. Bradford Regional Medical Center</u>, 2007 WL 1576406 (W.D. Pa.), and <u>United States ex rel. Hunt v. Merck-Medco Managed Care LLC</u>, 2004 WL 868271 (E.D. Pa.), the relators were not required to produce the disclosure statements. In both cases, the courts determined that the disclosure statements were ordinary or factual work-product. The courts concluded that the defendants did not meet their burden under Fed. R. Civ. P. 26(b)(3). In <u>Singh</u> the court stated that "[u]ntil the depositions are taken and other factual discovery is completed BRMC cannot show that they cannot obtain the substantial equivalent of the Disclosure Statements without undue hardship." 2007 WL 1576406, *3. A similar statement appears in <u>Hunt</u>. 2007 WL 868271, *2. The cases are inapplicable because the original source status was not an issue.

that same date (Branch002957-2977) for *in camera* inspection.  The court will redact any opinion work-product.  It shall also produce any attachments to the disclosure statement or the letter of August 2, 2006.

Branch is not required to produce the June 21, 2007 supplemental written disclosure statement (Branch002978-3013) and November 29, 2006 presentation (Branch 005013-5050).  The Insurer Defendants have not carried their burden under Rule 26(b)(3) for information provided to the government after the filing of the suit.

### B.    Communications with the Government.

Standard Fire contends that Branch should be required to produce its communications with the government, sometimes referring to pre-suit communications.  Rec. doc. 328 at 5 ("Branch should be compelled to produce its pre-suit communications with the Government.").  Elsewhere its memorandum is not so limited.  Rec. doc. 328 at 7 ("Branch's communications with the Government are not protected from disclosure. . . .").  In accord with the ruling on the disclosure statement: (1) the question of whether communications with the government contain opinion work-product or ordinary work-product cannot be resolved without an *in camera* inspection; and (2) protection for work-product was not waived.  For pre-suit communications which are ordinary work-product, the Insurer Defendants have satisfied their burden to obtain production of the communications.  They have not satisfied their burden for post-suit communications.

Branch will be required to produce the pre-suit communications with the government for *in camera* inspection to determine whether they contain opinion work-product.  Branch is not required to produce post-suit communications.  The court will redact any opinion work-product before the documents are produced to the Insurer Defendants.

C.   **Standard Fire's Interrogatory Nos. 2, 3 and 5.**

Standard Fire seeks an order requiring Branch to respond to interrogatory nos. 2, 3 and 5. Interrogatory no. 2 requests that Branch identify by Bates number every document provided to the government in compliance with 31 U.S.C. § 3730(b)(2).  Branch shall supplement its response to interrogatory no 2 with this information.

Interrogatory no. 3 requests that Branch identify each property for which Standard Fire allegedly issued a flood insurance policy that Branch identified to the United States in compliance with 31 U.S.C. § 3730(b)(2).  Branch shall supplement its response to interrogatory no. 3 with this information.

Interrogatory no. 5 requests:

> Identify each and every person Branch talked to about Standard Fire and the adjustment of Hurricane Katrina-related flood insurance and homeowner's insurance claims, and describe what each and every person told Branch, and identify by control or Bates number any document Branch received from such person that relates to Standard Fire.

Rec. doc. 328 (Exhibit B).  Branch shall identity the persons it talked to about Standard Fire and the adjustment of claims.  It shall identify by Bates number the documents received from such persons. If Branch contends that any of the documents are protected from disclosure, it shall prepare a privilege log.  Branch shall provide Standard Fire with a summary of what it was told by each person.  Branch shall supplement its response to interrogatory no. 5.


II.   **Adjustment Reports**.

On December 11, 2009, Standard Fire served interrogatories and a request for production of documents on Branch.  Rec. doc. 328 (Exhibits A and C).  On January 13, 2010, Branch served

responses.  Rec. doc. 328 (Exhibits B and D).  Branch did not produce a privilege log at the time it served its discovery responses.  On January 27, 2010, the parties participated in a L.R. 37.1 conference in which Branch reported that it withheld documents concerning Branch's adjustment of properties because they were prepared in anticipation of litigation.  Rec. doc. 328 (Exhibit G). The first version of Branch's privilege log is dated January 26, 2010 (Rec. doc. 352-Exhibit A); the second is dated February 5, 2010 (Rec. doc. 352-Exhibit B); and the third is dated February 19, 2010 (Rec. doc. 401(Exhibit 1).

In response to all of the categories in the request for production, except for category nos. 15, 16 and 17, Branch stated that, "[s]ubject to . . . its objections, Plaintiff states it will produce all non-privileged documents within its possession, custody, or control responsive to this request, if any." Rec. doc. 328 (Exhibit D).  Branch did not identify documents on the privilege log as responsive to particular categories in the request for production of documents.  Branch does not contend that the documents identified on the privilege are not relevant to the parties' claims and defenses.

A declaration from Max Johnson states that:

At the request of . . . [counsel], and to address both specific and general questions asked by those lawyers, Branch prepared several documents containing an analysis of certain issues in the litigation.

These documents were provided to Branch's lawyers and to no one else.  They were provided to Branch's lawyers for the purpose of obtaining legal advice. . . .

These documents are described on Branch's privilege log as "Draft Summary Loss/Recap/Narrative," "Draft Wind Adjustment Report," "Draft Flood Adjustment Report," "Draft Summary," "Flood Adjustment Analysis per request of Counsel," and "Wind Adjustment Analysis per request of Counsel."

Rec. doc. 401 (Exhibit 1).  Some of these documents were prepared on or before August 2, 2006 when the suit was filed.  Many were prepared after the suit was filed.  The most recent were

11

prepared in June, July and October, 2009.  Id.

Although Mr. Johnson states they were prepared for the purpose of obtaining legal advice, Branch does not contend that they are protected from disclosure by the attorney-client privilege, but instead contends it is work-product doctrine.  Rec. doc. 401 at 19.  There are two issues which must be resolved.  First, was the work-product protection waived because Branch put the documents at issue?  Second, assuming it was not waived, have the Insurer Defendants met their burden under Rule 26(b)(3)?

Branch relies on High Tech Communications, Inc. v. Panasonic Company, 1995 WL 45847 (E.D.La.)(Vance, J.), in which the plaintiff sought damages for violation of the Robinson-Patman Act.  Its president prepared a memo for its attorney that contained a calculation of damages.  The plaintiff objected to production of the memo.  The magistrate judge ordered production, but the Court sustained the plaintiff's objections to the order.

The first issue concerned the application of the attorney-client privilege.  The Court noted that: (a) communications by a client to an attorney were afforded the same protection as communications by an attorney to a client; (b) the privilege existed to protect not only the giving of advice but also the giving of information to the lawyer to enable him to give sound advice; and (c) an otherwise privileged communication is not discoverable merely because it discloses facts relevant to the litigation.  Id. at *4.  The Court rejected the defendant's argument that the memo was subject to disclosure because it contained facts and methodologies that were not privileged.  It also rejected the argument that the attorney-client privilege was waived by asserting claims that put the attorney's advice at issue.  It noted that a communication is not placed in issue merely because it is relevant.  1995 WL 45847, *5.  The court commented that there was no place in the record where

the plaintiff had proffered the memorandum as evidence of its damages.  Id. at *7, n. 2.  It held that:

> [A] party who merely discloses the facts contained in a privileged communication
> has not placed the communication at issue because the privilege was never meant to
> protect against the disclosure of the underlying facts.

Id. at *5.  The matter was remanded for a determination of whether the memorandum was subject

to the attorney-client privilege and the work-product doctrine.  It noted that a document does not

lose its status as work-product merely because it contains factual information.  Id. at *6.  It directed

the Magistrate Judge to determine whether the document was prepared in anticipation of litigation

and if so, it found that the defendant had not satisfied its burden under Rule 26(b)(3).  It noted that

the president could be deposed on the facts underlying the memo and that there would be discovery

of plaintiff's expert on damages.  Id. at *6.

Branch stresses that: (1) the documents described by Mr. Johnson and identified on the

privilege log are not put at issue merely because they contain relevant information; (2) it has not

attempted to prove its claims by disclosing the documents as opposed to facts within the documents;

and (3) the facts underlying the documents are discoverable.

In Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975), the court described a three part test to

determine whether the attorney-client privilege is waived by putting the protected information at

issue:

> The factors common to each exception may be summarized as follows: (1) assertion
> of the privilege was a result of some affirmative act, such as filing suit, by the
> asserting party; (2) through this affirmative act, the asserting party put the protected
> information at issue by making it relevant to the case; and (3) application of the
> privilege would have denied the opposing party access to information vital to his
> defense. Thus, where these three conditions exist, a court should find that the party
> asserting a privilege has impliedly waived it through his own affirmative conduct.

Id. at 581.  In Conkling v. Turner, 883 F.2d 431 (5th Cir. 1989), the Fifth Circuit quoted the

following from <u>Hearn</u> with approval:

> The great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.

<u>Id</u>. at 435 (quotation marks and brackets omitted).  <u>See</u> <u>also</u> <u>Epstein</u> at 509-10.  If a party defends on the basis that it conducted an investigation of the plaintiff's claim and determined that it was unfounded, the party cannot retain work-product protection as to the investigation relied upon.  <u>Id</u>. at 1101.

In <u>FDIC v. Wise</u>, 139 F.R.D. 168 (D. Colo. 1991), the plaintiff alleged in its complaint that federal regulators disapproved of the savings and loan's lending policies and management prior to the transactions at issue in the complaint.  The court found that, "[b]y making such repeated allegations, plaintiff has injected into this controversy the actions, knowledge, and beliefs of the regulators, forcing these issues to the very forefront of the litigation." <u>Id</u>. at 172.  The court applied the three part test in <u>Hearn</u> to conclude that the privileges asserted by the FDIC were waived.  <u>Id</u>. at 171-72.

In the first amended complaint, Branch alleges that:

> Branch is an original source of the information on which this Complaint is based, including any such information that has been publicly disclosed, because Branch, its principals, and its employees have directly and independently discovered this information.  Specifically, <u>Branch discovered the fraud by conducting re-examinations of fraudulently adjusted properties that were damaged by wind and water upon the landfall of Hurricane Katrina</u>.  In many months of conducting these examinations following the hurricane, Branch discovered and documented defendants' scheme. . . .

Rec. doc. 49 at 4(emphasis added).  In <u>U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.</u> 668 F.Supp.2d 780 (E.D.La.,2009), the District Judge described Branch original source allegations

14

as follows:

> Branch's investigation proceeded based on its determination that the WYO companies' adjustments of flood damage for the properties it observed differed from the actual flood damage found by Branch.  And, in the course of its investigation, it unearthed numerous additional facts and considerable information about the alleged fraud. . . .   The facts gathered from Branch's investigation, taken as true, supply ample detail about numerous, specific examples of fraud, with supporting descriptions and identified perpetrators.

Id. at 800 (Emphasis added).

By filing this FCA action and alleging that it is an original source, Branch has taken the affirmative act of putting the reports of the investigations (the adjustment reports) at issue as the basis of the original source allegations.   The repeated allegations concerning the pre-suit investigations put the actions and knowledge of the persons making the investigations at issue.  If the Insurer Defendants are denied access to the reports of the investigations, they will be denied the ability to test the veracity of Branch's allegations supporting its status as an original source.  Branch waived the protection provided by the work-product doctrine for the reports dated on or before August 2, 2006.  There was no waiver for the reports which post-date the filing of the suit.

Even if there was no waiver, the Insurer Defendants contend that they satisfied their burden under Rule 26(b)(3).  As discussed in the ruling regarding the disclosure statement, Branch's pre-suit reexaminations of the properties adjusted by the Insurer Defendants are relevant to the original source issue.  For the same reasons set forth in the ruling on the disclosure statement, the Insurer Defendants have demonstrated a substantial need for the pre-suit documents to prepare their case and they cannot, without undue hardship, obtain their substantial equivalent by other means.  This is not true for the post-suit documents.

Branch shall produce the documents dated on or before August 2, 2006 for *in camera*

inspection.  The court will redact any opinion work-product before the documents are produced to the Insurer Defendants.  See Walker v. County of Contra Costa, 227 F.R.D. 529, 533 (N.D. Cal. 2005) ("[T]he trial judge should not issue a blanket nullification of the privilege but should make findings on a document-by-document basis. . . .").

## III.   Communications with the Relators in the Rigsby.

Branch contends that: (a) the only documents responsive to this request are communications between counsel for Branch and counsel for the relators in Rigsby; (b) the communications are dated after Branch's complaint was unsealed; (c) the relators in the two actions did not communicate with each other; and (d) Branch is not relying on information received from the relators in Rigsby. Branch urges that the communications are protected from disclosure as work-product.  Rec. doc. 373.   Standard Fire contends that: (a) Branch has not produced a privilege log for the communications; and (b) it has not presented any authority that such communications are protected from disclosure.  Rec. doc. 328 at 17-18.

Branch will be required to provide Standard Fire with a privilege log of the documents reflecting the communications between counsel for Branch and counsel for the relators in Rigsby. Standard Fire or any other defendant may file a motion to compel production of the documents identified on the privilege log.  The defendants shall address whether the documents are protected from disclosure because they were shared with a party with a common interest in the litigation or to a non-adversary third party.  See Epstein at 1038-1050.

## IV.   Branch's Responses to Fidelity's Written Discovery.

### A.   Bates Numbering and Fed. R. Civ. P. 34(b)(2)(E)(i).

All documents produced by any party in this litigation shall be Bates numbered.  When

responding to a category within a request for production of documents or when producing business records instead of answering an interrogatory, the producing party shall identify by reference to the Bates numbers the category or interrogatory to which the documents are responsive.  This order applies whether or not the documents are produced as they are kept in the normal course of business. This requirement has retroactive as well as prospective application.[9]

### B.    Fidelity's Interrogatory No. 6.

Interrogatory no. 6 is as follows:

> As to the claims set forth at paragraph 23, including all subparagraphs, of the first amended complaint, identify, specifically, each federal regulation, standard, guidance, rule, or procedure that Branch's "many months" of conducting reexamination revealed was breached by Fidelity.

Rec. doc. 323 (Exhibit 1).[10]  Branch objected on the grounds of:  (a) legal conclusion, (b) overly broad; (c) relevancy; and (d) premature as a contention interrogatory.  In paragraph 23 of the first amended complaint, Branch alleged that Fidelity systematically overstated flood damages to insured properties damaged by Hurricane Katrina.  Rec. doc. 49.  In response to Fidelity's motion to compel, Branch agreed to supplement its response to interrogatory no. 6 with "greater detail on the rules, regulations, and guidelines that were violated."  Rec. doc. 373 at 27-28.  Fidelity reports that Branch stated that all of FEMA's rules are issue.  Rec. doc. 436.  Fidelity contends that response insufficient.

Branch recognized the relevance of the information when it agreed to supplement its response.  Branch's first amended complaint raises issues about whether the Insurer Defendants complied with their obligations under the National Flood Insurance Program ("NFIP").  Rec. doc.

---

[9]  This issue was raised by Fidelity, ANPAC and American Reliable.

[10]  Interrogatory no. 6 is the only issue remaining in Fidelity's first motion to compel.  Rec. doc. 436.

49 at 2.  Branch alleges that: (1) after Hurricane Katrina, FEMA announced an expedited claim handling process for Katrina-related flood claims; and (2) the Insurer Defendants did not follow the "streamlined procedures that FEMA set up."  Id. at 7.  The request that Branch "identify, specifically, each federal regulation, standard, guidance, rule, or procedure" is not too broad.  Rec. doc. 323 (Exhibit 1)(emphasis added).  Fed. R. Civ. P. 33(a)(1)(2) provides that:

> An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

Id.  "As to requests for opinions or contentions that call for the application of law to fact, they can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery."  Fed. Rule Civ. P. 33(b) Advisory Committee's Note, 1970 amendments.  See also 8B Wright, Miller and Marcus, Federal Practice and Procedure §2167 (3rd ed. 2010).  Branch will be required to answer the interrogatory now.  The information is important to the conduct of further discovery.  Branch may timely supplement its response should discovery produce evidence of violations of other federal regulations, standards, guidance, rules, or procedures which are not known to it at this time.  But it must identify those that it is aware of now.


### C.    Fidelity's Request for Production.

Fidelity's second motion to compel seeks an order requiring Branch to respond to category nos. 1, 3-8, 18, 19, 24, 27 and 28 of its request for production of documents.  Rec. doc. 355.

### Fidelity Category no. 1.

Fidelity seeks documents pertaining to the ten properties described in paragraph 23 of the first amended complaint.  It contends that it produced its claims files for the properties and Branch

should be required to do likewise.  Branch reports that it produced all non-privileged documents that relate to the properties.  Rec. doc. 401 at 12.  Branch shall supplement its response to category no. 1 by: (a) stating whether it withheld any documents other than those identified on the privilege log (Rec. doc. 401-Exhibit 1); and (b) providing a supplemental privilege log for any such documents.

Branch also states that it cannot locate the claims files on certain of the Fidelity properties, and does not believe they were produced.  Rec. doc. 401 at 12, n. 3.  Branch shall produce the claims files.  In the alternative, it shall report that, after a diligent and thorough search for the documents, it is unable to find them.

### Fidelity Category no. 3.

Fidelity seeks the relevant qualifications, in particular those related to NFIP, of every person who participated in the examinations of the properties.  Branch identified four persons and produced their resumes to the extent they exist.  No further response is required.

### Fidelity Category no. 4.

Fidelity seeks the documents indicating who issued the homeowner's policy on the properties.  Branch states it produced the non-privileged documents responsive to this request.  It shall supplement its response to category no. 4 by: (a) stating whether it withheld any documents other than those identified on the privilege log (Rec. doc. 401-Exhibit 1); and (b) providing a supplemental privilege log for any such documents.

### Fidelity Category no. 5.

Fidelity seeks any reports that support the idea that Hurricane Katrina's winds inside the City of New Orleans were sufficient to render the properties listed in the first amended complaint constructive losses before the levees breached.  Branch objected on several grounds.  Fidelity urges

that Branch should be required to produce whatever documentation it has that support its contention that the properties were destroyed or ruined before they were damaged by flood. In paragraph 23 of the first amended complaint, Branch alleges for the property at 316-318 North Galvez, "[t]he damage caused by flood waters was incidental and occurred much later than the damage caused by hurricane force winds, which occurred long before the one foot of flood waters entered this dwelling." Rec. doc. 49 at 17. Similar statements were made for other properties identified in paragraph 23. To the extent not already produced, Branch shall produce all documents within its possession, custody or control which support these allegations.

**Fidelity Category no. 6.**

Fidelity seeks documents supporting the allegations that it shifted wind losses to flood policies. Branch states that it produced the non-privileged documents responsive to this requests. It shall supplement its response to this category in the same manner as required for category no. 4.

**Fidelity Category nos. 7 and 8.**

Category no. 7 seeks government reports regarding the handling of Hurricane Katrina claims by WYO carriers. Category no. 8 seeks government reports known to Branch that post-date Hurricane Katrina and support the allegations in the first amended complaint. Branch stated that it produced all non-privileged documents responsive to the categories. It shall supplement its response to category nos 7 and 8 by: (a) stating whether it withheld any documents other than those identified on the privilege log (Rec. doc. 401-Exhibit 1); and (b) providing a supplemental privilege log for any such documents. No further response is required.

**Fidelity Category nos. 18 and 19.**

Fidelity seeks documents, for example marketing materials, that Branch showed to persons

20

who retained it or that Branch used to gain access to properties to conduct reexaminations. Branch objects that the information is not relevant to the parties' claims and defenses. Branch filed a motion for a protective order regarding the issue raised by these categories. Rec. doc. 406. ANPAC's motion to compel is denied without prejudice as to these two categories. They will be resolved on Branch's motion for protective order.

### Fidelity Category nos. 24 and 27.

Fidelity seeks documents and photographs that are relevant to Branch's allegations but were not produced by it in response to other categories. These catch-all categories are improper. No further response is required. However, Branch is reminded of its duty to timely supplement its initial disclosures and responses to discovery requests.

### Fidelity Category no. 28.

Fidelity seeks documents relating to instructions from Branch's principals to the persons who performed the reexaminations. Branch reports that it has no non-privileged documents responsive to this request. Branch shall supplement its response to this category in the same manner as required for category no. 4.

## V.  Branch's Responses to ANPAC's Written Discovery.[11]

### A.  ANPAC Interrogatories.

Branch served responses and supplemental responses to the interrogatories. Rec. doc. 348 (Exhibits 3 and 5). ANPAC seeks further responses to interrogatory nos. 1, 2, 4-6 and 8-21. Rec. doc. 348.

---

[11] American Reliable's second motion to compel joined in ANPAC's motion to compel. Rec. doc. 350 at 2. The rulings on ANPAC's motion to compel are applicable to American Reliable's motion.

**ANPAC Interrogatory no. 1**.

The interrogatory seeks information obtained or reviewed by Branch prior to August 2, 2006 regarding the claims and properties listed in paragraph 27 of the first amended complaint. Branch objected that the information was protected from disclosure. In response to Standard Fire's motions to compel, Branch is required to produce some documents identified on the privilege log (Rec. doc. 401-Exhibit 1) for *in camera* inspection. After any opinion work-product is redacted, the documents will be produced to the Insurer Defendants. No further response is required.

**ANPAC Interrogatory no. 2.**

ANPAC seeks identification of documents provided to the government regarding the claims and properties listed in paragraph 27. Because of the rulings on the disclosure statement and communications with the government, no further response is required.

**ANPAC Interrogatory no. 4.**

ANPAC seeks identification of documents reflecting communications with ANPAC, National Flood Service, Inc. and Simsol regarding the properties listed in paragraph 27. Branch reported that it did not provide any documents to ANPAC, National Flood Service, Inc. and Simsol regarding these properties. No further response is required.

**ANPAC Interrogatory no. 5.**

The interrogatory seeks information obtained or reviewed by Branch prior to August 2, 2006 regarding the allegation in paragraph 3 of the first amended complaint that ANPAC submitted false claims to the government. Because of the rulings on the information disclosed to the government and the reports prepared by Branch for its counsel, no further response is required.

**ANPAC Interrogatory no. 6.**

The interrogatory seeks information obtained or reviewed by Branch prior to August 2, 2006 regarding insurance policies and payments on those policies for the properties listed in paragraph 27 of the first amended complaint.  Branch's response includes the statement that, "it cannot recall every document reviewed but not retained by Branch, and . . . it is possible that Branch also reviewed the homeowner's insurance policy or declarations page, as well as other correspondence between the homeowner and the carrier.  Rec. doc. 348 (Exhibits 5 at 13).  ANPAC contends that Branch refuses to admit that it does not possess certain insurance policies.  One commentator states that, "interrogatories should be answered directly and without evasion in accordance with information that the answering party possesses after due inquiry."  8B Wright, Miller and Marcus, Federal Practice and Procedure §2177 at 80 (3rd ed. 1994).

Branch shall supplement its response to interrogatory no. 5 and state whether or not it reviewed the insurance policies and payments on them for the properties listed in paragraph 27.  If, after a diligent inquiry, it is unable to say whether or not it reviewed this information, it shall so state.

### ANPAC Interrogatory no. 8.

ANPAC seeks information regarding Branch's relationships with law offices, public adjusters and others who performed services related to properties listed in paragraph 27 of the first amended complaint.  Branch identified certain lawyers.  It must supplement its response as to public adjusters or others who performed such services.

### ANPAC Interrogatory no. 9.

ANPAC seeks information regarding Branch's communications with the owners for the properties listed in paragraphs 20 and 27 of first amended complaint.  Branch answered that its

representatives "often had interactions with insureds when examining their properties."  Rec. doc. 348 (Exhibit 5 at 17-18).  ANPAC contends that Branch did not provide the substance of the communications between representatives of Branch and the insured.

For Branch's communications with the owners of the properties listed in paragraph 27 of the first amended complaint, Branch shall provide: (a) the names of the persons; (b) the date or dates of the communications; and (c) a summary of the information obtained from the persons.  Branch is not required to provide such information for the "hundreds of properties" referred to in paragraph 20 of the first amended complaint.

### ANPAC Interrogatory nos. 10 and 11.

ANPAC seeks identification of persons with knowledge regarding the allegation in paragraph 3 of the first amended complaint regarding submission of false claims to the government and documents relating to the allegations.  Branch refers ANPAC to its initial disclosures.  This is not sufficient.  Branch shall supplement its response to interrogatory no. 10 with the names of the individuals with knowledge of the allegations and a statement of each individual's involvement.  The issue of document identification in interrogatory no. 11 will be resolved with ANPAC's request for production of documents.

### ANPAC Interrogatory no. 12.

ANPAC seeks identification of persons Branch contends presented false claims on behalf of ANPAC to the government.  Branch shall supplement its response with the names of the individuals sought in interrogatory no. 12 and a statement of each individual's involvement.

### ANPAC Interrogatory no. 13.

ANPAC seeks identification of persons Branch contends used a false record regarding

properties in paragraph 27 of first amended complaint.  Branch shall supplement its response with the names of the individuals sought in interrogatory no. 13 and a statement of each individual's involvement.

**ANPAC Interrogatory nos. 14, 15 and 20.**

All three interrogatories seek information obtained or reviewed by Branch prior to August 2, 2006.  ANPAC seeks the documents which support the allegations that it: (a) put into effect a fraudulent scheme (no. 14); (b) misattributed wind damage to flood policies (no. 15); and (c) systematically overstated flood damages to insured properties (no. 20).  Because of the rulings on the information disclosed to the government and the reports prepared by Branch for its counsel, no further response is required.

**ANPAC Interrogatory nos. 16 and 17.**

ANPAC seeks identification of documents regarding the reexaminations conducted by Branch of the properties identified in paragraph 27.  Because of the rulings on the information disclosed to the government and the reports prepared by Branch for its counsel, no further response is required.

**ANPAC Interrogatory no. 18.**

ANPAC seeks facts and identification of documents which support the allegations that ANPAC maxed out the insureds' flood policy limits.  Branch identified documents.  No further response is required.

**ANPAC Interrogatory no. 19.**

ANPAC seeks facts and identification of documents which support allegations that ANPAC

issued both flood policies and homeowners policies for properties listed in paragraph 27. Branch identified eight properties where ANPAC was both the flood and wind insurer. No further response is required.

**ANPAC Interrogatory no. 21.**

ANPAC seeks facts and identification of documents which support allegations that substantial damage was caused by wind and wind driven rain and dollar amounts for flood damage for properties listed in paragraph 27 of first amended complaint. Branch identified the properties in paragraph 27 on which it performed wind adjustments. No further response is required.

**B.      ANPAC'S Request for Production of Documents.**

Branch served responses to the request for production of documents. Rec. doc. 348 (Exhibit 4). ANPAC seeks further responses to category nos. 1-9 and 11-33.

**ANPAC Category nos. 1, 6, 8, 13, 15, 21 and 31-33.**

In each of these categories ANPAC requests documents obtained or reviewed by Branch prior to August 2, 2006 regarding various subjects; for example all flood insurance claims for the properties identified in paragraph 27 of the first amended complaint. The categories are relevant to the original-source issue. Branch identified documents and reported that there were documents protected from disclosure. Branch shall supplement its response to these categories by: (a) stating whether it withheld any documents other than those found on the privilege log (Rec. doc. 401-Exhibit 1) as protected from disclosure; and (b) providing a supplemental privilege log for any such documents.

**ANPAC Category nos. 2, 7, 9, 14, 16 and 22**.

In each of these categories ANPAC requests documents obtained or reviewed by Branch

after August 2, 2006.  Branch is not required to provide further responses to these categories.

### ANPAC Category no. 3.

ANPAC seeks documents Branch provided to the government.  This is covered by the ruling on Standard Fire's motion to compel.  No further response is required.

### ANPAC Category nos. 4.

No further response is required.

### ANPAC Category no. 5.

ANPAC seeks documents provided by Branch to ANPAC, National Flood Service, Inc. and Simsol Insurance Services.  Branch responded that it did not provide any documents to them.  No further response is required.

### ANPAC Category no. 11.

Branch's response to category no. 4 is a sufficient response for the information sought in category no. 11.  No further response is required.

### ANPAC Category no. 12.

Branch's objection is sustained.  No further response is required.

### ANPAC Category nos. 17-19 and 23.

Branch reported that some documents responsive to these categories were protected from disclosure.  Branch shall supplement its response to these categories by: (a) stating whether it withheld any documents other than those found on the privilege log as protected from disclosure; and (b) providing a supplemental privilege log for any such documents.

### ANPAC Category no. 20.

No further response is required.

**ANPAC Category nos. 24-29.**

ANPAC requests documents concerning Halpern and Martin, LLC; Melanie Mayer; Mayer & Associates, P.A.; Mayer Group, LLC; Richard J. Fernandez; Law Offices of Richard J. Fernandez; and Richard H. Barker, IV and the properties identified in paragraph 27 of the first amended complaint.  Branch filed a motion for a protective order regarding these categories and other discovery sought by the Insurer Defendants from these persons.  Rec. doc. 406.  ANPAC's motion to compel is denied without prejudice as to these categories.  They will be resolved on Branch's motion for protective order.

**ANPAC Category no. 30.**

On September 14, 2007, Branch filed its response to the motion of the defendants to dismiss. Rec. doc. 153.  Exhibit B to the response was the declaration of Max Johnson.  He testified to examinations, observations and measurements he and others working with Branch made following Hurricane Katrina.  ANPAC seeks the documents supporting the declaration.

Branch's objection that the information is not relevant is overruled.  The documents supporting the statements made by Mr. Johnson in the declaration are relevant to the parties' claims and defenses.  It shall produce the documents responsive to the category.  At this time it is not required to produce any documents prepared by its experts.  To the extent it contends that any responsive documents are protected from disclosure, it shall provide a supplemental privilege log.

IT IS ORDERED that:

1.      The motions of the Insurer Defendants to compel discovery from Branch (Rec. docs. 323, 325, 328, 348, 350, 352 and 355) are GRANTED in PART and DENIED in PART.

28

2.  **Within fourteen (14) calendar days of the entry of this order**, Branch shall produce for *in camera* inspection the following:

    a.  The letter of August 2, 2006 and the written disclosure statement of that same date (Branch002957-2977) and any attachments to the letter or disclosure statement.

    b.  Pre-suit communications with the government.

    c.  The other documents identified in the privilege log (Rec. docs. 401-Exhibit 1) which are dated on or before August 2, 2006**.**

3.  **Within twenty-eight (28) calendar days of the entry of this order**, Branch shall supplement its response to Standard Fire's interrogatory nos. 2, 3 and 5 as provided herein.

4.  **Within twenty-one (21) calendar days of the entry of this order**, Branch shall provide Standard Fire with a privilege log of the documents reflecting the communications between counsel for Branch and counsel for the relators in <u>Rigsby</u>.

5.  All documents produced by <u>any party</u> in this litigation shall be Bates numbered. When responding to a category within a request for production of documents or when producing business records instead of answering an interrogatory, the producing party shall identify by reference to the Bates numbers the category or interrogatory to which the documents are responsive. If a party has not complied with this requirement for documents produced prior to the entry of this order, **it shall do so by within twenty-eight (28) calendar days of its entry**.

6.  **Within twenty-eight (28) calendar days of the entry of this order**, Branch shall supplement its responses to Fidelity interrogatory no. 6 and category nos. 1, 4-8 and 28 as provided herein.

7.    **Within twenty-eight (28) calendar days of the entry of this order**, Branch shall

supplement its responses to ANPAC interrogatory nos. 6, 8-10, 12 and 13 and category nos.

1, 6, 8, 9, 13, 15, 17-19, 21, 23 and 30-33 as provided herein.

New Orleans, Louisiana, this 12th day of May, 2010.

**SALLY SHUSHAN**
**United States Magistrate Judge**
