UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*EX REL.* BRANCH CONSULTANTS, L.L.C., | CIVIL ACTION NO.:  06-4091 |
| Plaintiff | SECTION:  "R" (1) |
| | JUDGE:  VANCE |
| VERSUS | MAGISTRATE:  SHUSHAN |
| ALLSTATE INSURANCE COMPANY, et. al., | |
| Defendants | |

**INSURER DEFENDANTS' RESPONSE TO BRANCH CONSULTANTS, LLC'S MOTION TO REVIEW MAGISTRATE JUDGE'S ORDER GRANTING IN PART AND DISMISSING IN PART BRANCH'S MOTION TO COMPEL DISCOVERY**

Insurer Defendants Liberty Mutual Fire Insurance Company ("Liberty Mutual"), American National Property and Casualty Company ("ANPAC"), American Reliable Insurance Company ("ARIC"), The Standard Fire Insurance Company ("Standard Fire"), and Fidelity National Insurance Company, and Fidelity National Property and Casualty Insurance Company (collectively, "Fidelity") respectfully submit this response to Branch Consultants, LLC's ("Branch") Motion to Review Magistrate Judge's Order granting in Part and Dismissing in Part Branch's Motion to Compel Discovery (R. Doc. No. 563).

## I.    PRELIMINARY STATEMENT

Since 2006, this case has revolved exclusively around whether the Defendants are liable under the False Claims Act for a "loss-shifting" scheme at fifty-seven properties identified

in the First Amended Complaint ("FAC").  Further, in connection with Defendants' motion to dismiss, this Court noted that Branch's alleged original source status gleaned from its examination of the fifty-seven properties specifically identified in the FAC.  *See* R. Doc. No. 228, pp. 30-45.

In recognition of the scope of Branch's claims, Magistrate Shushan properly limited the scope of Branch's discovery to the properties specifically identified in the FAC, and properly discarded Branch's attempt to obtain information related to its recently created "inflated-revenue" scheme.  Based upon its belief that this Court's jurisdiction extends beyond the exemplar properties, and its opinion that its complaint is not limited to the "loss-shifting" scheme, Branch seeks review of Magistrate Shushan's Order granting in part and dismissing in part its motion to compel.  This Court should uphold Magistrate Shushan's Order as her Order was not clearly erroneous, and Branch is not entitled to the relief they seek as a matter of law.

## II.    LAW AND ARGUMENT

### A.    Judge Shushan's Order is subject to review under a clearly erroneous standard.

Branch's motion to compel discovery is a non-dispositive pre-trial matter that was referred to Judge Shushan, and is, thus, reviewed for clear error.  *See* Local Civil Rule 73.1E; 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995); *Bergquist v. FYBX Corp.*, 2003 WL 21599574 (E.D.La. 2003) (Vance, J.) ("Because plaintiff's motion for discovery was a pretrial matter referred to [the Magistrate] pursuant to 28 U.S.C. § 636(b)(1)(A), this Court reviews the Magistrate Judge's decision under a 'clearly erroneous or contrary to law' standard.").  The "clearly erroneous" standard requires that this Court affirm Judge Shushan's Order unless "on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed." *See United States v. United States Gypsum Co.*,

333 U.S. 364, 395 (1948). *See also Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1428 (5th Cir. 1984); *Moody v. Callon Petroleum Operating Co.*, 37 F.Supp.2d 805, 807 (E.D.La. 1999). This Court need not decide whether it would have reached a different conclusion than Judge Shushan. *Hodczak v. Latrobe Spec. Steel Co.*, 2010 WL 892205 at * 2 (W.D. Pa. 2010) ("Under this standard, a reviewing court will not reverse the magistrate judge's determination even if the court might have decided the issue differently."). Rather, Branch, as the party objecting to Judge Shushan's Order, bears the burden of showing that they are entitled to the relief they seek as a matter of law because Judge Shushan's decision is clearly erroneous or contrary to law. *See Ranger Ins. Co. v. Events, Inc.*, 2004 WL 2004545 at * 1 (E.D.La. 2004); *Bergquist*, 2003 WL 21699574.

      **B.**     **Given the circumstances of this case, Judge Shushan's limitation on the scope of Branch's discovery was not clearly erroneous.**

        Under Federal Rule of Civil Procedure 26, a party may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. *See* Fed. R. Civ. P. 26(b)(1). "[T]he determination of whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action." *See* Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note, 2000 amendments.

        On March 1, 2010, Judge Shushan denied Branch's request to add its "inflated-revenue" scheme. *See* R. Doc. No. 417. Accordingly, Branch's claim is limited to the "loss-shifting" scheme plead in the FAC. Further, on March 26, 2010, Judge Shushan recommended that discovery be limited to the exemplar properties for jurisdictional reasons. *See* R. Doc. No. 484. Therefore, considering the circumstances and scope of this case, Judge Shushan's limitation of Branch's discovery to those properties identified in the FAC and to the "loss-shifting" scheme does not constitute clear error.

Branch argues that Judge Shushan's limitation of discovery to the exemplar properties and the "loss-shifting" scheme was clear error because (1) this Court previously found that Branch was an original source as to all properties fitting its alleged fraudulent scheme, and (2) the FAC pleads a single, broad scheme by which Defendants defrauded the government by grossly inflating Hurricane Katrina flood claims.  *See* R. Doc. No. 363-1 at pp. 3-4.[1]  Branch's argument is incorrect on both counts.

First, Branch's summary regarding this Court's ruling on its original source status is wrong.  In considering Branch's original source status for purposes of the Defendants' motion to dismiss, this Court found that Branch's suit is based upon public disclosures.  *See* R. Doc. No. 228, p. 30.  Therefore, to survive Defendants' motion to dismiss, Branch was required to qualify as an original source of its claims.  *Id.*  To qualify as an original source, this Court correctly noted that Branch's must show that its knowledge is "direct and independent", *i.e.* gained by Branch's own efforts rather than learned through the efforts of others.  *Id.* at p. 30-31.

In its opinion, this Court discussed Branch's investigative efforts relating to the fifty-seven properties identified in the FAC.  *Id.*  According to this Court, in contrast to the general public disclosures of wind/water fraud identified by the Defendants in their motion to dismiss, Branch's complaint "describes in detail the results of Branch's examination of fifty-seven properties" and provides specific allegations of fraud regarding "***specific properties***, specific perpetrators, and specific amounts."  *Id.* at pp. 32-33 (emphasis added).  Furthermore,

---

[1]      In support of its argument, Branch incorporates by reference its appeal of Judge Shushan's Order granting in part and denying in part its motion for leave to file the SAC, and it objections to Judge Shushan's Report and Recommendation.  *See* R. Doc. No. 563-1 at note 2.  Accordingly, Defendants incorporate by reference their responses to Branch's appeal of Judge Shushan's Order regarding leave to file the SAC (R. Doc. Nos. 508 and 528), and their response to Branch's objections to Judge Shushan's Report and Recommendation to be filed on May 21, 2010 in accordance with this Court's Order.

158904_4

this Court acknowledged "*the properties listed in the [FAC] . . . are the specific subjects of the allegedly fraudulent claims*." *Id.* at 35 (emphasis added). Considering the alleged information gleaned from Branch's reexaminations of specific WYO-insured properties, this Court found that Branch had direct knowledge of the fraud related to the fifty-seven properties identified in the FAC. *Id.* at p. 40. However, contrary to Branch's assertion, this Court did not find that Branch had direct knowledge of wind/water fraud extending beyond the fifty-seven properties identified in the FAC. *See* R. Doc. No. 228 at pp. 30-45. Accordingly, as Branch's original source status is limited to those properties of which it allegedly had direct knowledge of fraud, *i.e.* the fifty-seven properties identified in the FAC, Judge Shushan's limitation of discovery to the "exemplar" properties was not clear error.

Second, Branch's self-serving characterization of the scope of the FAC defies both the plain language of its pleadings, prior opinions of the Fifth Circuit and this Court, and the requirements of Federal Rule of Civil Procedure 9(b). Citing a portion of the first sentence of Paragraph 3 of the FAC, Branch argues that the FAC pleads a single, broad scheme of fraud. *See* FAC, ¶ 3 ("The defendants have defrauded the Government through a practice of grossly overstating flood damages to insured properties damaged by Hurricane Katrina. . ."). However, Branch fails to acknowledge that in Paragraph 17, it supplied the particularity of how the Defendants carried out the alleged fraud – loss-shifting – in an effort to satisfy Rule 9(b). In Paragraph 17, Branch specifically described the alleged fraud as follows: "In other words, defendants defrauded the NFIP by misattributing wind damage and other non-flood losses to the flood policies subsidized or underwritten by the Government rather than correctly attributing such losses to causes that are covered by homeowners policies largely underwritten by

158904_4

themselves." *Id.* at ¶ 17. Thus, the plain language of the FAC supports a finding that the Defendants' False Claims Act liability is based solely upon alleged loss-shifting.

Furthermore, both the Fifth Circuit and this Court previously acknowledged that Branch's single-count FAC alleges False Claims Act liability based upon alleged loss-shifting fraud only. According to the Fifth Circuit: "Branch alleges that the WYO insurer Defendants defrauded NFIP by misattributing wind damage and other non-flood losses to the flood policies subsidized or underwritten by the Government rather than correctly attributing such losses to causes that are covered by homeowners policies largely underwritten by themselves." *See United States ex rel. Branch Consultants, LLC v. Allstate Ins. Co.*, 560 F.3d 371, 375 (5th Cir. 2009) (quotations omitted). In its October 2009 order denying Defendants' motion to dismiss, this Court recognized that the same link between flood and homeowners policies formed the basis for Branch's allegation:

> [D]efendants exaggerated the amount of money that the government should pay under the individual flood policies, which in turn reduced the amount that the insurance companies would themselves be obligated to pay under wind and rain policies. ***Stated differently, Branch asserts that defendants "passed off" the costs of paying for wind damage to the government by fraudulently claiming that the damage was caused by flood***.

*See* R. Doc. No. 228, pp 3-4 (emphasis added).

Given the plain language of Branch's FAC, and the Fifth Circuit's and this Court's prior acknowledgement that Branch's complaint is based upon alleged loss-shifting, Judge Shushan's limitation of discovery to the "loss-shifting" scheme was not clear error.

158904_4

**C.    Aggregate information regarding Defendants' wind claims, flood claims and reserves is irrelevant, will not lead to the discovery of admissible evidence and will simply serve to inflame the jury.**

Interrogatory Nos. 1, 2 and 4 seek aggregate information regarding the total number and dollar amount of Defendants' wind and flood claims, and the total reserves set by defendants in connection with all Katrina losses:

1.    What are the total number and dollar amount of Covered Flood Claims submitted by You to the Government?

2.    What are the total number and dollar amount of Covered Wind Claims paid by You?

4.    Describe in detail all estimates made by You of the total losses You expected in incur as a result of damage caused by Hurricane Katrina, including, but not limited to reserves set aside by You for Katrina losses, the date each such estimate was prepared and by whom.

*See* R. Doc. No. 563-1, p. 2.  While Branch's current motion provides no insight into the basis for these requests other than a blanket claim of relevancy, in its memorandum in support of its motion to compel, Branch cloaks its request for aggregate information in "*scienter*" discovery. *See* R. Doc. 327-2.  Yet, there is no cogent explanation as to how the aggregate information Branch seeks is relevant to *scienter* or how it will lead to the discovery of admissible evidence. Whether Defendants had twenty-seven or twenty-seven thousand NFIP claims from Hurricane Katrina is not relevant to whether the twenty-seven NFIP claims at issue were in fact knowingly false.   Likewise, whether the Defendants had twenty-seven or twenty-seven thousand homeowners claims from Hurricane Katrina is not relevant to whether the twenty-seven NFIP claims were in fact knowingly false, especially when the Defendants had no covered wind claims on any of the properties identified in the FAC.  Furthermore, how the Defendants complied with their reserving obligations for homeowners' policies *en masse* is simply irrelevant to the falsity of the NFIP claims identified in the FAC.

As this Court stated in the January 20, 2010 hearing, "If there's no fraud, the case is over."  *See* 1/20/10 Hearing Tr., p. 9, R. Doc. No. 327-4).  *Scienter*, as a requirement for liability under the False Claims Act, should be established through the specific details relating to each alleged false claim.  Just as federal courts examine multiple claims under the False Claims Act individually on a claim-by-claim basis to determine whether a relator is an original source, this Court will similarly need to examine whether Branch has proven *scienter* on a claim-by-claim basis.  *See United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 102 (3rd Cir. 2000) ("[I]n applying section (e)(4), it seems clear that each claim in a multi-claim complaint must be treated as if it stood alone.").  Branch's complaint should fall on the falsity of the claims alleged.  Discovery must focus on those claims and those claims alone.

Most likely, Branch seeks these aggregate numbers for the purpose of enflaming the jury with information that is not relevant to the specific claims being presented.  Permitting Branch to address aggregate numbers for flood claims handled by the Defendants has no other purpose than to speculate about the meaning of such statistics.  This would permit Branch to broaden its scheme allegations inappropriately which should, as discussed above, be inextricably tied to the specific false claims alleged by Branch – *i.e.* loss-shifting related to the twenty-seven identified properties.  Aggregate information would allow Branch to imply some different alleged scheme, other than the one of which it purports to be the original source of, to enflame the jury.

As aggregate information regarding Defendants' Defendants' wind and flood claims and loss reserves is irrelevant as to *scienter* and will merely serve as a device to enflame the jury, this Court should uphold Judge Shushan's Order limiting Branch's interrogatories to the exemplar properties.

8

**D.     Information regarding the fees paid to the Defendants for handling of flood claims is irrelevant to Branch's sole theory of fraud – loss-shifting.**

Although this Court previously acknowledged that the gravamen of Branch's FAC is that the Defendants "passed off" the costs of paying for wind damage to the government by shifting wind damage to flood, Interrogatory No. 3 seeks the total dollar amount of fees paid to the Defendants by the Government for servicing of flood claims:

> 3.      What is the total amount of fees paid to You by the Government for servicing the Covered Flood Claims?

*See* R. Doc. No. 563-1, p. 2.  As with the aggregate information, Branch offers no reasonable explanation of why this information has anything to do with its loss-shifting allegations.  Rather, Branch simply asserts that the information "is necessary to determine the *average* revenues and profits Defendants earned by adjusting flood claims as compared to their regular lines of business" (*see* R. Doc. No. 327-2 at p. 4 (emphasis added)), but Branch never explains how the average revenue and profits earned by the Defendants for adjusting flood claims is remotely relevant to its contention that the Defendants knowingly defrauded the Government on the NFIP claims identified in the FAC.  Quite simply, the amount of fees paid to the Insurer Defendants for servicing flood claims only has relevance to the inflated-revenue scheme – a scheme disallowed by this Court.  Accordingly, Judge Shushan's Order denying Branch's request that the Defendants be compelled to answer Interrogatory No. 3 should be upheld.

**III.    CONCLUSION**

For the reasons set forth above, and considering the circumstances and scope of this case, Judge Shushan's limitation of Branch's discovery to those properties identified in the FAC and to the "loss-shifting" scheme does not constitute clear error.  Accordingly this Court

158904_4

should overrule Branch's objections to Judge Shushan's Order granting in part and dismissing in part its motion to compel discovery.

Respectfully submitted,

BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, LLC

/s/ Keith L. Magness
Judy Y. Barrasso (2814)
jbarrasso@barrassousdin.com
John W. Joyce (27525)
jjoyce@barrassousdin.com
Keith L. Magness (29962)
kmagness@barrassousdin.com
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone:  (504) 589-9700

**Attorneys for Liberty Mutual Insurance
Company**

NIELSEN LAW FIRM, LLC

/s/ Gerald J. Nielsen
Gerald J. Nielsen (17078)
gjnielsen@aol.com
William T. Treas (26537)
wtreas@nielsenlawfirm.com
3838 North Causeway Boulevard, Suite 2850
Metairie, Louisiana 70002
Telephone:  (504) 837-2500

**Attorneys Fidelity National Insurance
Company, Fidelity National Property and
Casualty Insurance Company**

LAW OFFICES OF GORDON P. SEROU, JR.,
L.L.C.

/s/ Gordon P. Serou, Jr.
Gordon P. Serou, Jr. (14432)
gps@seroulaw.com
Poydras Center, Suite 1420
650 Poydras Street
New Orleans, Louisiana 70130
Telephone:  (504) 299-3421

**Attorneys for American Reliable Insurance
Company**

LARZELERE PICOU WELLS SIMPSON
LONERO, LLC

/s/ Jay M. Lonero
Jay M. Lonero, T.A. (20642)
jlonero@lpw-law.com
Christopher R. Pennison (22584)
cpennison@lpw-law.com
Angie A. Akers (26786)
aakers@lpw-law.com
3850 N. Causeway Boulevard, Ste 1100
Metairie, Louisiana 70002
Telephone:  (504) 834-6500

**Attorneys for American National Property
And Casualty Company**

158904_4

PHELPS DUNBAR LLP


/s/ Harry Rosenberg
Harry Rosenberg (11465)
rosenbeh@phelps.com
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone:  (504) 566-1311

SIMPSON THACHER AND BARTLETT LLP
Bryce L. Friedman  (*pro hac vice*)
bfriedman@stblaw.com
425 Lexington Avenue
New York, New York 10017
Telephone:  (212) 455-2000

Deborah L. Stein (*pro hac vice*)
dstein@stblaw.com
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067
Telephone:  (310) 407-7500

**Attorneys for The Standard Fire Insurance
Company *(erroneously named as St. Paul
Travelers Co.)***


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has this date been

served upon all parties to this suit through counsel by filing into the Court's electronic filing

system and, for non-participants, via electronic mail, this 18th day of May, 2010.

/s/ Keith L. Magness
KEITH L. MAGNESS

11

158904_4