UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA, *EX REL*.**<br>**BRANCH CONSULTANTS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-4091-SSV-SS** |
| **ALLSTATE INSURANCE COMPANY, et al** | |

**ORDER**

LIBERTY MUTUAL'S MOTION TO COMPEL (Rec. doc. 510)

**GRANTED IN PART AND DENIED IN PART**

One of the Insurer Defendants, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), seeks an order requiring the relator, Branch Consultants, LLC ("Branch"), to supplement discovery responses.

A.  Data regarding Branch's inspections of FAC properties.[1]

Liberty Mutual's interrogatory nos. 9 and 11 are as follows:

> Please identify all persons who participated in any of the reexaminations and inspections of the property listed in Paragraph 29 of the First Amended Complaint on your behalf. In your response, please include reference to the specific property examined/inspected by each person you identify.

> Please state the date the individuals identified in response to Interrogatory No. 9 conducted the examination/reexamination of the properties listed in Paragraph 29 of the First Amended Complaint.

Rec. doc. 510 (Exhibit 1). Branch responded that, "the following persons performed part or all of the various adjustments, including but not limited to, scoping and pricing evaluations: Max Johnson,

---

[1] FAC properties refers to the properties identified by Branch in its first amended complaint (Rec. doc. 49).

Rick Clarke, Troy Black, and Tony Hall." Rec. doc. 510 (Exhibit 4). In its opposition, Branch adds that it does not recall exactly which of the four inspected each property. Rec. doc. 539 at 3. It contends that it provided all the information available to it. Liberty Mutual contends that Branch's allegations should be supported with reports which "log the date of Branch's inspection and who compiled the information," and Branch must have "maintained time records, logs, or calendars detailing who inspected a particular property and when." Rec. doc. 558 at 2.

In category nos. 18 and 21 of its request for production of documents, Liberty Mutual seeks production of all documents reflecting the amount time spent by Branch on the examination of the Liberty Mutual FAC properties and the expenses incurred in the inspections.

The interrogatories and requests are reasonable and clearly seek relevant information. Branch shall supplement its response to interrogatory nos. 9 and 11 and category nos. 18 and 21 by producing any documents which reflect who inspected the Liberty Mutual FAC properties, providing the date and time on which the inspections were made, and by providing the expenses incurred in the inspections. Within the time provided, it shall conduct a diligent search for such documents. If it has no such documents, its supplemental response shall: (1) identify the persons making the search; and (2) state that after conducting a diligent search it was unable to find any such documents which contain such information.

B.   <u>Qualifications</u>.

Liberty Mutual's interrogatory no. 10 is as follows:

> As to each person identified in response to the preceding interrogatory, please describe his/her qualifications to adjust or reexamine NFIP claims, including, in particular, each persons's NFIP-related training, prior experience adjusting or reexamining NFIP claims and NFIP certifications.

Rec. doc. 510 (Exhibit 1). Branch provided Johnson's resume and responded that Johnson, Clark,

2

Black and Hall "have all received NFIP training with Mr. Johnson receiving an NFIP certified number." Rec. doc. 510 (Exhibit 4). Liberty Mutual requests that Branch be ordered to provide signed authorizations to permit Liberty Mutual to obtain their flood training and certification directly from FEMA. Branch shall supplement its response by providing the signed authorizations.

C.  Photographs.

Branch produced more than 800 photographs to Liberty Mutual. It requests that Branch be required to produce the "uncompressed native format (digital) copies of the pictures, including all metadata," so it can ascertain when the photographs were taken and on what device. Rec. doc. 510 at 4. Branch responds that any questions concerning the photos can be resolved in depositions.

Branch shall supplement its response by producing the "uncompressed native format (digital) copies of the pictures, including all metadata" for the photographs.[2] If it has no such copies, its supplemental response shall: (1) identify the persons who made the search for the copies; (2) state that after a diligent search it was unable to find any such copies; and (3) a statement as to why the native files no longer exist.

D.  Facts supporting allegations.

Liberty Mutual's interrogatory no. 6 is as follows:

> Please state all facts supporting your allegation that Liberty Mutual (a) "systematically overstated flood damages to insured properties damaged by Hurricane Katrina and, based on these overstated damages, submitted false claims for payment to NFIP" and (b) "made false statements and false certifications in connection with the submission of these false claims, and it actively concealed these practices from the Government" and identify each person who may testify at deposition or trial in support of such allegations.

---

[2] On February 10, 2010, an order for electronic discovery was issued. It provided that after initial production of ESI in TIFF image file format, "a party must demonstrate a particularized need for production of that ESI in Native Format." Rec. doc. 357 at 6. Liberty Mutual has demonstrated a particularized need for the digital copies of the photographs in Native Format.

3

Rec. doc. 510 (Exhibit 1). Interrogatory nos. 13-15 are similar. They seek facts supporting Branch's allegations that Liberty Mutual: (1) adjusted Hurricane Katrina claims utilizing FEMA's expedited claim handling process (no. 13); (2) defrauded NFIP by misattributing wind damage and other non-flood losses to the flood policies subsidized or underwritten by the Government rather than correctly attributing such losses to causes that are covered by homeowners policies (no. 14); and (3) substantially underpaid for the damage that should have been attributed to wind (no. 15). Id. Branch objected and provided a supplemental response to interrogatory no. 14, but not to interrogatory nos. 6, 13 and 15. Rec. doc. 510 (Exhibits 4 and 7).

The supplemental response to interrogatory no. 14 includes: (1) a description of the adjusting deficiencies for three properties; (2) and the amounts by which Branch contends the flood damages on these properties were inflated. The deficiencies include items that were flooded where Branch contends there were overpayments. For example, with respect to item no. 33 for the property at 12656 N. Cavalier Drive, Branch contends that: (1) Liberty Mutual improperly paid federal funds for plumbing, including the removal and replacement of a shower unit and fixtures; (2) these items were not destroyed by flood water; (3) they only needed to be cleaned; and (4) this resulted in an overpayment. Rec. doc. 510 (Exhibit 7-Attachment at 6). The supplemental response includes items that Branch contends were damaged by wind, but were included in the flood adjustment. For example, item no. 28 is for the replacement of a heat furnace in the attic, which Branch contends was damaged from wind. Id. The supplemental response includes some items which Branch indicates were not subjected to flooding, but it does not indicate whether they were subjected to wind damage. For example, item no. 21 is for the replacement of upper cabinetry. While Branch states that the upper cabinetry was not damaged by flooding, it does not state that it sustained wind damage. Id.

at 5. Liberty Mutual is correct that the supplemental response does not identify the facts supporting Branch's loss-shifting claim. It describes how Branch contends that Liberty Mutual caused the government to overpay the flood claims on the three properties.

Since the 1970 amendment to Fed. R. Civ. P. 33, interrogatories are an appropriate means of obtaining a specification of the facts upon which a claim is based. There is no justification for deferring this inquiry to a later stage of the proceeding. 8B Wright, Miller and Marcus, Federal Practice and Procedure §2167 at 15-25 (3rd ed. 2010).

Branch shall provide supplemental responses to interrogatory nos. 6 and 13-15.

E.   <u>Identification of documents by bates numbers</u>.

In interrogatory no. 2, Liberty Mutual requests that Branch provide the bates numbers for the documents submitted to the government pursuant to 31 U.S.C. § 3730(a). In the May 12, 2010 discovery order, Branch was required to provide this information. Rec. doc. 567 at 10.

In interrogatory nos. 17-19 and 24, Liberty Mutual requests the bates numbers for documents supporting certain allegations. This is similar to the requests for facts supporting the allegations of the amended complaint. Liberty Mutual's request for this information is granted.

In interrogatory no. 20, Liberty Mutual requests identification of the bates numbers of all documents relating to the two Liberty Mutual FAC properties which Branch possessed prior to filing its original complaint. Branch shall supplement its response with this information.

F.   <u>Adjustment reports</u>.

In Max Johnson's declaration of August 14, 2007, he stated that,

> The documentation complied by myself and others at Branch included dozens of photographs at each site and detailed notations concerning observable losses. For each property, Branch complied a detailed report.

Rec. doc. 153 (Exhibit B). Liberty Mutual's interrogatory no. 16 requests the substance of these reports. It argues that the interrogatory seeks facts. Category no. 8 of the request for production of documents seeks documents, including adjustment reports, relating to the Liberty Mutual FAC properties. On May 12, 2010, Branch was required to produce the adjustment reports dated on or before August 2, 2006 for *in camera* inspection. Rec. doc. 567 at 10-16. No further order is required for interrogatory no. 16 or category no. 8.

G.   Expert discovery.

Liberty Mutual's interrogatory no. 2 is as follows:

> Please identify all documents and communications relating to the properties identified in Paragraph 29 of the First Amended Complaint that you identified or provided to the United States of America in connection with your disclosure pursuant to 31 U.S.C. § 3730(b)(2).

Rec. doc. 510 (Exhibit 1). Branch objected that Liberty Mutual was prematurely seeking expert discovery. The issues regarding information provided to the government, pursuant to Section 3730(b)(2), were resolved in the May 12, 2010 discovery order. Rec. doc. 567.

Liberty Mutual raises the same issue for Branch's responses to interrogatory nos. 6, 9-11, 13-20, and 24 and category nos. 8, 18 and 21. These discovery requests were addressed above. No further action is required.

IT IS ORDERED that: (1) Liberty Mutual's motion to compel (Rec. doc. 510) is GRANTED in PART and DENIED in PART; and (2) **within twenty-one (21) calendar days of the entry of the order**, Branch shall supplement its response to Liberty Mutual's discovery as provided herein.

New Orleans, Louisiana, this 2nd day of June, 2010.

**SALLY SHUSHAN**
**United States Magistrate Judge**