# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA, *EX REL*.**<br>**BRANCH CONSULTANTS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-4091-SSV-SS** |
| **ALLSTATE INSURANCE COMPANY, et al** | |

## ORDER

BRANCH'S MOTION FOR PROTECTIVE ORDER (Rec. doc. 406)

**GRANTED IN PART AND DENIED IN PART**

  The relator, Branch Consultants, LLC ("Branch"), seeks a protective order to prevent the Insurer Defendants from obtaining discovery from it and non-parties. It contends that the discovery is not relevant to the parties' claims and defenses and will only serve to annoy, harass, oppress, or impose an undue burden on it. It reports that the Insurer Defendants served dozens of objectionable discovery requests, but cites only examples in its memorandum. Rec. doc. 406 at 2. This order is confined to the particular requests cited by Branch. If it contends that there are other objectionable discovery requests, it may file a further motion after a L.R. 37.1 conference.

  Branch cites the following as objectionable: category nos. 24-29 of ANPAC's request for production of documents (Rec. doc. 348-Exhibit 2 at pp. 14-16); category nos. 1-7 from ANPAC's subpoena duces tecum to Richard Barker (Rec. doc. 406-Exhibit 1); category nos. 15 and 18 of Fidelity's request for production of documents (Rec. doc. 406-Exhibit 2); and category nos. 7 and

15 of Standard Fire's request for production of documents (Rec. doc. 406-Exhibit 3).[1] These discovery requests seek: (1) agreements between Branch and others, including lawyers, for services performed on the properties identified in the first amended complaint ("FAC properties"); (2) bank records for such services; (3) tax records for such services; (4) communications between Branch and others, including lawyers, relating to such services; (5) the same information from Richard Barker for nine of the FAC properties; (6) Branch's agreements with the owners of the FAC properties; (7) marketing material presented by Branch to the persons who retained it; and (8) documents demonstrating Branch's ownership and corporate structure and the persons involved in the matters alleged in the first amended complaint.

Branch's allegations of original source status were determined to be sufficient. United States ex rel. Branch Consultants, LLC v. Allstate Insurance Co., 668 F.Supp.2d 780, 797-803 (E.D. La. 2009). The Insurer Defendants contend that the discovery is relevant to these allegations. They focus on the first part of the test which requires that the relator demonstrate that it has direct and independent knowledge of the information on which the allegations are based. 668 F.Supp.2d at 797. In U.S. ex rel. Regan v. East Texas Medical Center Regional Healthcare System, 384 F.3d 168 (5th Cir. 2004), the Fifth Circuit stated that:

> The plain meaning of the term direct requires knowledge derived from the source without interruption or gained by the relator's own efforts rather than learned second-hand through the efforts of others. The relator's knowledge is considered independent if its not derived from the public disclosures.

Id. at 177 (citations and quotation marks omitted).

In this action, the District Judge stated that:

---

[1] ANPAC refers to American National Property and Casualty Company; Fidelity refers collectively to Fidelity National Property and Casualty Insurance Company and Fidelity National Insurance Company; and Standard Fire refers to The Standard Fire Insurance Company.

> Branch has pleaded facts that establish direct knowledge of the fraud because this knowledge was acquired through the relator's own efforts. The First Amended Complaint describes in detail the results of Branch's examinations of fifty-seven properties. Each description lists the address of the reexamined property, the insurer, a description of the damage, the amount of flood insurance paid, and Branch's determination of the actual amount of flood damage.

668 F.Supp.2d at 797-98 (citations omitted). Information pertaining to any of Branch's examinations of the FAC properties is relevant to the allegation that its knowledge is "direct."

The District Judge also stated that:

> [T]he properties listed in the complaint which Branch alleges that it directly investigated are the specific subjects of the allegedly fraudulent claims. The situation is therefore distinguishable from cases in which the relator relied exclusively upon secondhand information transmitted from other people and at no point directly observed the source of the fraud.

668 F.Supp.2d at 798-99.[2]

Branch contends that the Insurer Defendants's discovery is not relevant under U.S. ex rel. Singh v. Bradford Regional Medical Center, 2007 WL 1576406 (W.D. Pa. 2007). In Singh, four physicians sued a medical center, two physicians and an entity owned by them. They alleged that the defendants presented false claims to the United States for services to patients referred to the medical center in return for kickbacks. The defendants sought to compel information regarding the relators' relationships with entities to which they referred patients contending that the information was relevant to permit them to determine whether the relators had an investment interest in a facility to which they referred patients. The court described the defendants' discovery as an attempt to argue

---

[2] The District Judge described cases involving similar investigations, including United States ex rel. Farmer v. City of Houston, 2005 WL 1155111 (S.D.Tex. 2005), where the relator, a homeowner, conducted her own investigation into defendant's practices after she received an estimate for the material to repair storm damage to her roof which was excessive compared to material used for pre-storm repairs to the roof. The District Judge commented that "Branch's investigation proceeded based on its determination that the WYO companies' adjustments of flood damage for the properties it observed differed from the actual flood damage found by Branch." 668 F.Supp.2d 800.

3

that the relators engaged in the same conduct as the defendants and therefor the relators were either hypocrites or if the relators' relationship was legal then defendants' relationship was legal. The court held that: (1) the issue was the intent of the defendants; (2) the relators' financial relationship with the facility to which they referred patients was not relevant; and (3) the relators' conduct was not an issue. Id. at *3-4. There was no issue of original source status in Singh and therefore it does not provide guidance on whether the Insurer Defendants' discovery is relevant to Branch's allegation that it had direct knowledge of the alleged fraud.

A.  **Discovery beyond the FAC properties.**

ANPAC category no. 24 seeks information for each of the FAC properties and the "hundreds of properties inspected by Branch in various areas in and about south Louisiana as alleged in Paragraph 20 of the first amended complaint which Branch claims were insured under an ANPAC flood policy." Rec. doc. 348 (Exhibit 2).

Branch's motion for a protective order is granted in part and ANPAC category no. 24 is restricted to the FAC properties for the Insurer Defendants. This limitation also applies to: (1) ANPAC category nos. 28 and 29 of ANPAC's request for production of documents (Rec. doc. 348-Exhibit 2); and (2) Standard Fire category no. 7 (Rec. doc. 406-Exhibit 3).

B.  **Information relating to the FAC properties.**

For services provided to or work performed on the FAC properties, ANPAC seeks documents from Branch reflecting: (a) agreements between it or Johnson and attorneys for the insureds;[3] and (b) communications from August 29, 2005 to the present between it or Johnson and the attorneys for the insureds. Rec. doc. 348 (Exhibit 2 - category nos. 24, 28 and 29). In the

---

[3] The attorneys for the insureds are Halpern and Martin, LLC; Melanie Mayer; Mayer & Associates, P.A.; Mayer Group, LLC; Richard J. Fernandez; Law Offices of Richard J. Fernandez; and Richard H. Barker, IV.

4

subpoena to Richard Barker, ANPAC seeks similar information. Rec. doc. 406 (Exhibit 1 - category nos. 1, 2 and 6). Fidelity and Standard Fire also seek the agreements. Rec. doc. 406 (Exhibit 2 - category no. 15 and Exhibit 3 - category no. 7).

These agreements and communications are relevant to Branch's allegation that it had direct knowledge of the alleged fraud. Subject to the limitation described in Part A, Branch's request for a protective order is denied as to (1) ANPAC category nos. 24, 28 and 29; (2) category nos. 1, 2 and 6 in the Barker subpoena; (3) Fidelity category no. 15; and (4) Standard Fire category no. 7.

**C.      Tax and payment records relating to the FAC properties.**

ANPAC seeks documents from Branch reflecting payments for services provided to or work performed on the FAC properties. It also seeks W-4s, I-9s, W-9s, W-2s and 1099s received by Branch from or provided by it to the attorneys for the insureds for services provided to or work performed on the FAC properties. Rec. doc. 348 (Exhibit 2 - category nos. 25-27). In the subpoena to Richard Barker, ANPAC seeks similar information. Rec. doc. 406 (Exhibit 1 - category nos. 3 and 4).

The Insurer Defendants contend that this discovery is directed toward determining exactly which entity other than Branch Max Johnson may have been working for at the time he or others obtained information supporting the allegations in the complaint. They urge that the only way to resolve this is to follow the money trail. The information from the financial and tax records is not reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). In addition, the burden and expense of producing the information outweigh its likely benefit. Fed. R. Civ. P. Rule 26(b)(2)(iii). Branch's motion for a protective order is granted as to ANPAC category nos. 25, 26 and 27 and category nos. 3 and 4 of the Barker subpoena. Defendants are entitled to

5

know if Mr. Johnson was working for other entities at the time he and others obtained the information supporting the allegations in the complaint. Branch shall supply that information for each FAC property.

**D.     Barker's tax records concerning Branch, Johnson and Mayer.**

Category no. 5 of ANPAC's subpoena to Richard Barker is:

Any and all W-4's, I-9's, W-9's, W-2's, and/or 1099's exchanged with or provided to Max Johnson, Branch Consultants, LLC, Melanie Mayer, Mayer & Associates, P.A., Mayer Group, LLC (particularly those associated, working or employed with the specified individuals and companies).

Rec. doc. 406 (Exhibit 1).

In part C above, ANPAC's request for the tax records received by Branch from Melanie Mayer or provided by Branch to Mayer was found not reasonably calculated to lead to the discovery of admissible evidence and the burden and expense of producing the tax records outweighed their likely benefit. The same is true for ANPAC's request for Barker's tax records exchanged with or provided to Johnson, Branch and Mayer. Branch's motion for a protective order is granted as to category no. 5 in the Barker subpoena.

**E.     Barker's communications with Branch, Johnson and Mayer.**

Category no. 7 of ANPAC's subpoena to Richard Barker is:

Any and all communications from August 29, 2005 to the present relating to your association with Max Johnson, Branch Consultants, LLC, Melanie Mayer, Mayer & Associates, P.A., and/or Mayer Group, LLC.

Rec. doc. 406 (Exhibit 1). This category will be limited to communications concerning the FAC properties identified in the subpoena to Barker. Branch's motion for a protective order is granted in part and denied in part as to category no. 7 in the Barker subpoena. Barker shall produce:

Any and all communications from August 29, 2005 to the present relating to your

association with Max Johnson, Branch Consultants, LLC, Melanie Mayer, Mayer & Associates, P.A., and/or Mayer Group, LLC. concerning: (a) 4900 Alsace Street, New Orleans, LA 70129; (b) 4910 Alsace Street, New Orleans, LA 70129; (c) 4920 Alsace Street, New Orleans, LA 70129; (d) 4870 Alsace Street, New Orleans, LA 70129; (e) 109 Lighthouse Point, Slidell, LA 70458; (f) 7641 Endeavors Court, New Orleans, LA 70129; (g) 13710 N. Cavelier Drive, New Orleans, LA 70129; (h) 13661 N. Cavelier Drive, New Orleans, LA 70129; and (i) 7651 Horizon Drive, New Orleans, LA 70129.

F.  **Marketing materials.**

Branch requests a protective order regarding Fidelity's request for documents that Branch used to solicit or induce property owners to retain it after Hurricane Katrina. Rec. doc. 406 (Exhibit 2 - category no. 18). In its second motion to compel, Fidelity sought an order requiring Branch to respond to category nos. 18 and 19 of its request for production of documents. Rec. doc. 355 at 5. Fidelity's second motion to compel was denied without prejudice as to these two categories (Rec. doc. 567) to permit resolution on Branch's motion for protective order.

In category nos. 18 and 19, Fidelity seeks documents, for example marketing materials, that Branch presented to persons who retained it or that Branch used to gain access to properties to conduct reexaminations. Branch objects that the information is not relevant to the parties' claims and defenses. It urges that in Singh discovery into the relators' conduct was prohibited. 2007 WL 1576406 at *3-4. As noted above, Singh does not provide any guidance on whether the Insurer Defendants' discovery is relevant to Branch's allegation that it had direct knowledge of the fraud.[4]

---

[4] The marketing information is relevant because of Branch's role in the litigation. This may be illustrated by comparing this case with United States v. Cabrera-Diaz, 106 F.Supp.2d 234 (D. Puerto Rico 2000), in which the United States filed a FCA action and alleged Medicare fraud. It alleged that an anesthesiologist submitted false Medicare claims. Pursuant to the Medicare regulations, anesthesia services were billed for the continuous actual presence of the anesthesiologist. For billing purposes, the starting time was when the anesthesiologist began to prepare the patient in the operating room and ended when the patient was placed under post-operative care. In Cabrera-Diaz, the operative reports, nursing notes and anesthesia records were compared to the Medicare billing records to reveal that the physician overstated his Medicare billings. All of the records at issue were generated either by the hospital or the defendant physician. Id. at 236-37.

7

A critical element of Branch's claim is its "determination of the actual flood damage" for each of the FAC properties. 668 F.Supp.2d at 797. Branch relies on a comparison of adjustment reports performed by it with those performed by the Insurer Defendants or their agents to establish that the Insurer Defendants overstated the amounts submitted to the United States on the flood claims for the properties identified in the first amended complaint. Branch is its own expert in bringing these allegations. The Insurer Defendants are entitled to information from Branch which would be discoverable from any retained expert. Fed. R. Civ. P. 26(a)(2)(B). Information on what Branch presented to homeowners is relevant. Branch's request for a protective order as to Fidelity category nos. 18 and 19 is denied. The categories are not restricted to the FAC properties.

## G. **Branch's corporate structure.**

In category no. 15 Standard Fire seeks documents sufficient to demonstrate the corporate structure, owners of Branch, and its principals, employees, consultants and managers involved in the matters alleged in the first amended complaint. It contends that this discovery is needed to identify Branch's agents during the post-Katrina time frame and the scope of their employment. It reports that: (1) Johnson testified that after Hurricane Katrina he worked for other adjusting companies and not Branch; and (2) three other persons identified by Branch (Messrs. Black, Clarke and Hall) do not appear to have been agents of Branch during the relevant time period.

Johnson's declaration states that he is the founder and president of Branch. Rec. doc. 478 (Exhibit 4). Branch contends that the Insurer Defendants can inquire into the source of Branch's information at the depositions of Johnson, Black, Clarke and Hall.

The Court rejected the arguments of the Insurer Defendants that Branch's status as a corporation deprived it of the ability to have direct knowledge. 668 F.Supp.2d at 801. The Court

cited the following from <u>Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp</u>., 276 F.3d 1032, 1049 (8th Cir. 2002): "[n]o courts have held that corporations responsible for the discovery of information cannot have 'direct knowledge' because they have to act through agents." This does not bar the Insurer Defendants from inquiring into the status of Johnson, Black and Clarke and Hall. In response to Standard Fire's category no. 15, Branch shall produce all documents, including compensation records, relating to the status of Johnson, Black, Clarke and Hall as agents of Branch for their work on the FAC properties.

**H.     Beth Johnson.**

Branch reports that: (a) Beth Johnson is the wife of Max Johnson; (b) in February 2010, she suffered a debilitating stroke and from which she has not fully recovered; (c) her speech has not recovered; (d) she is under 24-hour care; and (e) she is not able to sit for a deposition. It contends that she was not involved in Branch's operations during the adjustment of the FAC properties. It requests an order precluding the Insurer Defendants from deposing her. The Insurer Defendants report that Branch's articles of organization demonstrate that she is its manager and registered agent. They agree not to seek or schedule the deposition at this time.

Prior to noticing Ms. Johnson's deposition, the Insurer Defendants shall seek leave to depose her. At that time the issue of whether she is physically able to sit for a deposition will be determined and what limitations, if any, will be set for the deposition. At that time Branch may urge that discovery has not demonstrated any need for her deposition.

**I.     Melanie Mayer.**

Branch reports that Ms. Mayer is the daughter of Max Johnson. It contends that the Insurer Defendants seek discovery from her to harass and intimidate Mr. Johnson because: (a) there is an

issue about whether Ms. Mayer was licensed to practice law in Louisiana when she was retained by a homeowner; and (b) she is a defendant in a SEC action. Pursuant to this order, any discovery sought relating to Ms. Mayer is limited to the FAC properties. This order does not treat her any differently from the other attorneys for insureds. There are no discovery requests relating to the license to practice law or SEC issues, so there is no need to address them.

IT IS ORDERED as follows:

1. Branch's motion for a protective order (Rec. doc. 406) is GRANTED in PART and DENIED in PART as provided herein.

2. **Within twenty-one (21) calendar days of the entry of this order** and in accord with terms of the order, Branch shall respond to:

    a. Category nos. 24, 28 and 29 of ANPAC's request for production of documents.

    b. Category nos. 15, 18 and 19 of Fidelity's request for production of documents.

    c. Category nos. 7 and 15 of Standard Fire's request for production of documents.

3. **Within twenty-one (21) calendar days of the entry of this order** and in accord with the terms of the order, Branch shall produce documents reflecting whether Max Johnson was working for other entities at the time he and others obtained information supporting the allegations for each of the FAC properties.

4. **Within twenty-one (21) calendar days of the entry of this order** and in accord with the terms of the order, Richard Barker shall respond to category nos. 1, 2, 6 and 7 of the subpoena served on him by ANPAC.

5.  Leave of court shall be obtained before any defendant notices the deposition of Beth Johnson.

New Orleans, Louisiana, this 7th day of June, 2010.

                                            **SALLY SHUSHAN**
                                      **United States Magistrate Judge**