## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA,                )
*EX REL.* BRANCH CONSULTANTS, L.L.C.,     )
                                          )
       Plaintiff,                     )
                                          )
v.                                        )
                                          )   Case No. 2:06-cv-4091
ALLSTATE INSURANCE COMPANY,               )
LIBERTY MUTUAL FIRE INSURANCE             )
COMPANY, FIDELITY NATIONAL                )
INSURANCE COMPANY, FIDELITY               )   **JURY TRIAL DEMANDED**
NATIONAL PROPERTY AND CASUALTY            )
INSURANCE COMPANY, AMERICAN               )
NATIONAL PROPERTY & CASUALTY              )
COMPANY,  AMERICAN RELIABLE               )
INSURANCE CO. OF SCOTTSDALE,              )
STANDARD FIRE INSURANCE COMPANY,          )
PILOT CATASTROPHE SERVICES, INC.,         )
SIMSOL INSURANCE SERVICES, INC.,          )
COLONIAL CLAIMS CORPORATION, AND          )
JOHN DOES 1-99,                           )
                                          )
       Defendants.                    )
                                          )

## SECOND AMENDED COMPLAINT

1. Individually and on behalf of the United States of America, Plaintiff and *qui tam* relator Branch Consultants, L.L.C. ("Branch") alleges as follows:

### I. NATURE OF THE ACTION

2. Branch brings this action to recover damages, penalties and attorneys' fees for violations of the False Claims Act, 31 U.S.C. §§ 3729-33 ("FCA"), committed by the defendants.

3. The defendants have defrauded the Government through a practice of grossly overstating flood damages to insured properties damaged by Hurricane Katrina and then,

based on those overstated damages, submitting claims for payment on Government-backed flood insurance policies to the National Flood Insurance Program ("NFIP" or "the Program"). By systematically obtaining and submitting false flood insurance claims to NFIP, and by actively concealing these practices from the Government, the defendants have submitted or caused to be submitted to the Government a series of false claims, records, statements, and certifications in violation of the FCA.

4. By these practices, the defendants have put into effect a fraudulent scheme to defraud the Government and thereby reap the profits of the fraud. Although the proceeds of the flood claim payments purportedly go to reimburse defendants for their administrative services and for flood claim payments they have already advanced to the insureds, the gross overstating of flood damages benefits the defendants because it substantially increased the amount of fees that defendants received and the damages that are misattributed to flooding should instead have been attributed to wind or similar causes that are covered by homeowners insurance policies—policies that many of the insurer defendants have typically issued themselves.

5. This scheme is pervasive and has caused the Government to pay hundreds of millions if not billions of dollars in fraudulent flood insurance claims.

## II. THE FALSE CLAIMS ACT

6. The FCA provides that any person who knowingly submits or causes to be submitted a false or fraudulent claim to the Government for payment or approval is liable for three times the amount of the damages sustained by the Government. The same is true when any person uses or causes to be used a false record, certification or statement for this purpose. Liability also attaches when a defendant knowingly seeks payment that

is unwarranted from the Government and/or when false records, statements or certifications are knowingly used or caused to be used to conceal, avoid or decrease an obligation to pay or transmit money to the Government. In addition to damages, the FCA imposes a civil penalty of not less than $5,500 and not more than $11,000 for each violation.

7. The FCA allows any person having information regarding a false or fraudulent claim against the Government to bring a *qui tam* action (as "relator") on behalf of the Government and to share in any recovery. In such cases, the original complaint is served on the Attorney General of the United States and the local United States Attorney, and it is filed under seal for 60 days (without service on the defendants during that period). This procedure enables the Government to (a) conduct its own investigation without the defendant's knowledge and (b) determine whether to join the action as intervenor.

8. Based on these provisions, plaintiff/relator Branch seeks to recover treble damages, civil penalties and other relief arising from the false and fraudulent claims, records, statements and certifications made to the Government in order to obtain payments under NFIP.

### III. PARTIES

9. Plaintiff/relator Branch is a Georgia corporation located at 52 Maple Valley Drive, Villa Rica, GA 30180. Branch brings this action for violations of 31 U.S.C. §§ 3729-33 on behalf of itself and the United States Government pursuant to 31 U.S.C. § 3730(b)(1). Branch has direct, first-hand knowledge of the falsity of the records, statements, certifications and/or claims defendants have presented to the Government and

of their fraudulent scheme.  Branch is an original source of the information on which this Complaint is based, including any such information that has been publicly disclosed, because Branch, its principals, and its employees have directly and independently discovered this information.  Specifically, Branch discovered the fraud by conducting re-examinations of fraudulently adjusted properties that were damaged by wind and water upon the landfall of Hurricane Katrina.  In many months of conducting these examinations following the hurricane, Branch discovered and documented defendants' scheme, as described in detail below.  Prior to filing this action, Branch voluntarily disclosed to the Government the information forming the basis of this Complaint pursuant to 31 U.S.C. §3730(e)(4)(B).

10. Defendant Allstate Insurance Company is a nationwide insurer headquartered at Allstate Plaza, E5, Northbrook, Illinois 60062.  Defendant Liberty Mutual Fire Insurance Company is a nationwide insurer headquartered at 175 Berkeley Street, Boston, Massachusetts 02116.  Defendants Fidelity National Insurance Company and Fidelity National Property And Casualty Insurance Company are nationwide insurers headquartered at 601 Riverside Avenue, Jacksonville, FL 32204.  Defendant American National Property & Casualty Company is a nationwide insurer headquartered at American National Corporate Centre, 1949 E. Sunshine, Springfield, MO 65899.  Defendant American Reliable Insurance Company of Scottsdale, mistakenly named as Scottsdale Insurance Company in the original complaint, is a nationwide insurer headquartered at 8865 East Via de Ventura Suite E200, Scottsdale, AZ 85258. Defendant The Standard Fire Insurance Company, a wholly-owned subsidiary of the Travelers

Insurance Group, is a nationwide insurer headquartered at 1 Tower Square, Hartford, CT 06183.  Collectively, these are the "insurer defendants."

11. Defendant Pilot Catastrophe Services, Inc., is a catastrophe insurance adjusting firm headquartered at 1055 Hillcrest Road, Suite F-1, Mobile, AL 36695.  Defendant Simsol Insurance Services, Inc., is a catastrophe insurance adjusting firm headquartered at 1845 E John Sims Parkway, Niceville, FL 32578.  Defendant Colonial Claims Corporation is a catastrophe insurance adjusting firm headquartered at 2200 Bayshore Blvd., Dunedin, FL 34698.  Collectively, these are the "adjuster defendants."

## IV. JURISDICTION AND VENUE

12. The United States District Court for the Eastern District of Louisiana has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.  Moreover, 31 U.S.C. § 3732(a) specifically confers jurisdiction over FCA actions on federal district courts.  The defendants are subject to personal jurisdiction in this district because each of them has minimum contacts with the forum and can be served here via their registered agents.

13. Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because the defendants can each be found in and/or each transacts business within the district.  Venue is also proper because many of the FCA violations which are the subject of this action occurred within this district.

## V. THE FALSE CLAIMS

14. NFIP makes federally-backed flood insurance available to homeowners, renters, and business owners in flood-prone communities and elsewhere.  Initially, NFIP flood insurance was available only via insurance agents who dealt directly with the

Federal Insurance Administration.   But in 1983 the Federal Emergency Management Agency (FEMA) created the Write-Your-Own ("WYO") Program, which allows a pool of participating property/casualty insurance companies—including the insurer defendants—to write and service NFIP's Standard Flood Insurance Policy in their own names.

15. When a private insurer becomes a WYO insurer, it agrees to what is known as the Financial Assistance/Subsidy Arrangement ("Arrangement") with the Federal Insurance Administration ("FIA"), which administers NFIP.[1]   FIA requires the WYO insurers to adjust flood claims and to settle, pay and defend all claims arising from the flood policies they write. Then, pursuant to the Arrangement, the WYO insurers submit what are effectively reimbursement requests for the flood claims they have paid.  They also receive a fee from FIA for writing and administering the policies, as well as a fee for adjusting and processing claims, the amount of which is based on the amount of the claim.  Nearly all of the flood insurance policies issued in the United States today are written through WYO policies and administered in this way.  The defendants are WYO insurers and their adjusters.  There are approximately 95 WYO insurers operating in the Gulf Coast area.

16. The NFIP policies cover losses to structures and contents due to flooding. They do not cover losses that typical homeowners insurance policies cover, such as losses caused by wind or lightening or fire.

---

[1] In 2004, President Bush signed into law the Flood Insurance Reform Act, reauthorizing the NFIP through 2008. The NFIP is currently managed by the Mitigation Division within FEMA. FEMA is part of the Department of Homeland Security's Emergency Preparedness and Response Directorate. Since August, 2001, FIA has been renamed as the Federal Insurance and Mitigation Administration.

17. In the aftermath of Hurricane Katrina and unprecedented volumes of claims following the 2005 hurricane season, FEMA waived the requirement that insureds file a Proof of Loss in connection with Katrina-related claims under NFIP's Standard Flood Insurance Policy.   Shortly thereafter, FEMA announced an expedited claim handling process for Katrina-related flood claims.   These circumstances, in part, and a host of others, including the absence of effective monitoring or supervision by FEMA, created an opportunity for defendants to take improper advantage of the Program.   Rather than follow in good faith the claim policies and flood adjusting guidelines issued by FEMA, defendants instead systematically adjusted, paid and submitted reimbursement claims to NFIP regarding losses that obviously should not be fully covered by the flood policies. They did so in massive quantities.   For example, defendants defrauded NFIP by misattributing wind damage and other non-flood losses to the flood policies subsidized or underwritten by the Government rather than correctly attributing such losses to causes that are covered by homeowners policies often underwritten by themselves.   Defendants also defrauded NFIP by grossly exaggerating losses by using inflated prices in the adjustments and by including items in the adjustment that did not need to be replaced. Additionally, by overstating flood damages, defendants were able to significantly increase the amount of fees that they received from FIA for processing and adjusting claims.

18. As a result of this fraud, NFIP's average flood claim payment increased from approximately $32,000 or less per claim in 2004 and all preceding years to approximately $100,000 per claim on Hurricane Katrina flood claims.   Having never before exceeded

$1.3 billion in flood claims in single year, current estimates put 2005 NFIP claims at $10 to 30 billion.

19. Branch is an insurance and construction consulting firm that has been retained by numerous insureds to re-examine adjustments done by the WYO insurers' in-house adjusters or other adjuster agencies employed by them following Hurricane Katrina.  The principals and consultants of Branch include experienced adjuster and construction personnel with many decades of construction and construction-estimating experience.  In performing re-examinations, they have found, *inter alia*, the following:

> a.    numerous examples of minimal if any flood damage and obvious wind damage, with a WYO adjustment at or near 100% of the flood policy limits,
>
> b.    buildings with substantial roof and other damage obviously caused by wind, and *a high-water mark only inches off the floor*, with all or most of the damage nonetheless attributed to flood, and
>
> c.    buildings with a substantial amount of flood damage but even more wind damage adjusted at or near flood policy limits with a relatively small portion of the loss attributed to wind.

20. In fact, on nearly all of the hundreds of properties inspected by Branch in various areas in and about southern Louisiana, defendants have maxed out or nearly maxed out the insured's flood policy limits (underwritten by NFIP), irrespective of the actual damage conceivably attributable to flood.   At the same time, defendants substantially underpaid for the damage that should have been attributed to wind (often underwritten by the insurer defendants) on these same claims.[2]

---

[2] In their examinations, Branch gave the defendants the benefit of the doubt in calculating flood damage estimates.   For example, Branch's flood estimates included costs to replace insulation within interior walls of dwellings, despite the fact most interior walls may not have had

## A.      Allstate Insurance Company

21. Allstate systematically overstated flood damages to insured properties damaged by Hurricane Katrina and, based on those overstated damages, submitted false claims for payment to NFIP.  Allstate also made false statements and false certifications in connection with the submission of these false claims, and it actively concealed these practices from the Government.

22. Allstate's fraudulent conduct had not been previously exposed prior to Branch's pre-suit disclosure to the Government.  To this day, Branch remains the sole source of any specific information connecting Allstate to allegations concerning a scheme to overstate flood damages to insured properties damaged by Hurricane Katrina.  But for Branch's disclosure, the Government would not know the essential facts of Allstate's scheme to defraud NFIP.  But for Branch's disclosure and this suit, the Government would remain unaware of anything more than "skeletal allegations" directed at Allstate. *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 379 (5th Cir. 2009).  And even those "skeletal allegations" were raised by a suit that has since been dismissed as to Allstate for lack of any factual basis.  In other words, it was a sham suit as to Allstate.

23. The following examples illustrate Allstate's scheme.  They concern only the coverage of and damage to the dwelling and omit any reference to contents coverage or damages.

a.      13301 Dwyer Blvd., New Orleans, LA 70129 (Allstate Insurance Company, Policy No. 910871981)

---

insulation, since the adjuster may have had to damage the wall to determine whether it contained insulation initially.  In addition, all numbers referenced herein are rounded for convenience.

Home was severely damaged by wind prior to any flooding. Strong winds blew off roof shingles, garage doors, and the rear wall of a home-shop building attachment. Wind-driven rain penetrated in large amounts through the roof sheathing and ventilators, causing extensive damage. Subsequently, flood waters rose to approximately 8 inches in the home, causing some damage (though substantially less than policy limits).

Flood Ins. paid:    $72,000 (policy limits)
Flood damage:      $44,000

b.    7841 Beach Dr., New Orleans, LA  70126 (Allstate Insurance Company, Policy No. unknown)

The flood waters did not appear to enter the dwelling at this property, as there was no visible waterline. At most, there may have been up to one inch of water in the dwelling. Hurricane force winds blew off many shingles, felt and flashing from the roof of this dwelling. Some turbine roof vents and the plumbing jack flashings were blown off, and some of the windows were badly damaged. Wind-driven rain penetrated into the dwelling through the damaged and missing roof.

Flood Ins. paid:    $71,000
Flood damage:      $34,000

c.    112 Lighthouse Point, Slidell, LA 70458 (Allstate Insurance Company, Policy No. 0180114080)

Flood waters eventually rose to only one foot inside this house. However, the flooding was only incidental to the substantial damage to this home. Hurricane-force winds blew most of the roof shingles and some of the soffit and fascia off. Wind-driven rain penetrated these breaches long before the flood waters reached this home. The wind-driven rain caused the ceiling and insulation to get wet and damaged the drywall on the ceilings and walls.

Flood Ins. paid:    $215,000 (policy limits)
Flood damage:      $ 70,000

d.    133 Santa Cruz Ct., Slidell, LA  70458 (Allstate Insurance Company, Policy No. 5114716952-1)

Severe winds and blowing rain caused extensive damage to both floors. The entire roof of the two-story house had to be replaced.

Flood Ins. paid:    $135,000

Flood damage: $ 26,000

e. 11405 South Tanner David Drive, New Orleans, LA 70128 (Allstate Insurance Company, Policy No. 1805714779)

This home was under construction and nearly finished. Severe winds blew the shingles, felt and sheathing off and blew out several windows. Wind driven rain penetrated the damaged roof, the broken windows, damaged fascia and soffits, roof vents and plumbing vents long before flood waters entered the dwelling. Flood water subsequently entered the home with a high-water mark of 3.5 feet.

Flood Ins. paid: $195,000
Flood damage: $ 24,000

f. 1938 France Street, New Orleans, LA 70117 (Allstate Insurance Company, Policy No. unknown)

Roof shingles, felt, roof vents, soffits, fascia and windows were blown away prior to arrival of flood water. The interior and contents were substantially damaged by wind and rain. Flood waters subsequently entered the home, with a high-water mark of 12 inches.

Flood Ins. paid: $50,000
Flood damage: $38,000

g. 5831 Winchester Park Dr., New Orleans, LA 70128 (Allstate Insurance Company, Policy No. 5114299918)

Although water rose as high as 3.5 feet inside the house, most of the damage was caused by wind and wind-driven rain. Roof shingles, sheathing, and felt were blown completely away by severe winds. Plumbing vents, soffits, and fascia were blown off. There was damage to the exterior siding and doors and windows were blown out. The dwelling and contents were severely damaged by wind and rain prior to the arrival of any flood water.

Flood Ins. paid: $125,000
Flood damage: $ 40,000

h. 2619 Clover Street, New Orleans, LA 70122 (Allstate Insurance Company, Policy No. 5114414765)

Many of the Spanish clay tiles, felt and flashing were blown off by the storm. The composition shingles, felt and sheathing were damaged. Some of the turbine roof vents were blown off. The garage and its roof were also badly damaged. Wind-driven rain penetrated the badly damaged and missing roof, the damaged windows, and the soffit and fascia long before any flood waters entered the dwelling.

Flood Ins. paid:      $91,000 (policy limits)
Flood damage:        $62,000

i.      113 Lighthouse Point, Slidell, LA 70458 (Allstate Insurance Company, Policy No. unknown)

Most of the roof shingles were blown completely away by hurricane force winds. A turbine roof vent was blown loose, some of the soffit and fascia was blown off, and some windows were blown out. Wind-driven rain penetrated through the damaged roof, windows and under doors causing the ceiling, drywall, and insulation to get wet long before any flood waters reached the dwelling. The building was left, of necessity, for several weeks without electricity, air conditioning, or human care. The building and contents were then further damaged by rampant mold. Even though flood waters rose to approximately 2 feet inside the house, this was incidental to the substantial damage to the home and its contents by the high winds and wind-driven rain.

Flood Ins. paid:      $222,000
Flood damage:        $ 26,000

j.      13525 Trappers Court, New Orleans, LA 70129 (Allstate Insurance Company, Policy No. unknown)

Even though flood waters rose to approximately 4 feet inside this house, the hurricane force winds and rain had already severely damaged the dwelling. The hurricane blew off much of the roofing shingles, felt and flashing as well as plumbing jack flashings and turbine vents. Windows were blown out and badly damaged by the high winds and blowing debris. The wind-driven rains penetrated the breaches in the "skin" of the house and soaked the interior wall, ceilings and floors. The house was then left, of necessity, for several months without electricity or human care, and the building and contents were further damaged by rampant mold.

Flood Ins. paid:      $108,000
Flood damage:        $ 31,000

k.   5118 Spain St., New Orleans, LA 70126 (Allstate Insurance Company, Policy No. 031410279)

Winds and driving rains severely damaged the house by blowing off the asbestos roof shingles, a door, windows, soffits and fascia.   All substantial damage occurred prior to the arrival of flood waters.  Flood waters rose to approximately 6 feet in the home, causing some damage (though substantially less than policy limits).

Flood Ins. paid:       $100,000 (policy limits)
Flood damage:       $ 28,000

l.   4769 Francisco Verrett Dr., New Orleans, LA 70126 (Allstate Insurance Company, Policy No. 0180153487)

Home was severely damaged by hurricane-force wind prior to any flooding. Winds and driving rain blew away roof shingles, a glass door, and several windows, damaging the interior of the house and contents prior to the flood. Subsequently, flood waters rose to approximately 3 feet in the home, causing some damage (though substantially less than policy limits).

Flood Ins. paid:       $64,000 (policy limits)
Flood damage:       $25,000

m.   4940 Sherwood Drive, New Orleans, LA 70128 (Allstate Insurance Company, Policy No. 0045711453)

Home was severely damaged by wind prior to any flooding. Strong winds blew off roof shingles, doors, windows and exterior siding. Winds even severely damaged the chimney stack, vinyl siding and roof sheathing. Subsequently, flood waters rose to approximately 3.5 feet in the home, causing some damage (though substantially less than policy limits).

Flood Ins. paid:       $92,000 (policy limits)
Flood damage:       $30,000

n.   4537 Viola St., New Orleans, LA 70126 (Allstate Insurance Company, Policy No. 1800744177)

Severe winds destroyed most of the roof shingles and sheathing, as well as the soffit and fascia.   Wind also blew out the windows and one door.   Wind and driving rains severely damaged the house prior to any flooding, including the

home's walls, ceiling and insulation.  Flood waters subsequently reached the home, with a high-water mark of 36 inches.

Flood Ins. paid:     $63,000 (policy limits)
Flood damage:        $37,000

o.      117   Lighthouse   Point,   Slidell,   LA   70458   (Allstate   Insurance Company, Policy No. 0180330817)

Flood waters eventually rose to approximately 2 feet inside this house.  However, the flooding was only incidental to the substantial damage to this home. Hurricane-force winds blew most of the roof shingles and some of the soffit and fascia off.  Wind-driven rain penetrated these breaches long before the flood waters reached this home.  The wind-driven rain caused the ceiling and insulation to get wet and damaged the drywall on the ceilings and walls.

Flood Ins. paid:     $250,000 (policy limits)
Flood damage:        $ 70,000

p.      128 Santa Cruz Ct., Slidell, LA  70458-8805 (Allstate Insurance Company, Policy No. 180464984)

Flood waters eventually rose to approximately 2 feet inside this two-story house. However, the flooding was only incidental to the severe damage to this home. Hurricane-force winds blew a large portion of the roof shingles and some of the soffit and fascia off.  Wind-driven rain penetrated these breaches and caused substantial damage to this home long before the flood waters reached it.

Flood Ins. paid:     $121,000
Flood damage:        $ 30,000

q.      6660 - 6662 Bellaire Drive, New Orleans, LA 70124 (Allstate Insurance Company, Policy No. 180158135)

Much of the roof shingles, felt and flashing were blown away by the hurricane force winds. The soffit and fascia and some windows were badly damaged. Wind-driven rain penetrated the damaged and missing roof, damaged windows and the soffit and fascia long before any flood waters entered the dwelling.  Flood waters eventually rose to approximately 7 feet inside the dwelling, but this flood damage was incidental to the substantial wind damage.

Flood Ins. paid:     $174,000 (policy limits)
Flood damage:        $ 53,000

r.   7442 Horizon Drive, New Orleans, LA 70129 (Allstate Insurance Company, Policy No. unknown)

Even though flood water eventually rose to approximately 4 feet inside this house, this was incidental to the damage caused by the hurricane force winds and wind-driven rain.  Much of the roofing shingles, felt and flashing were blown away by the high winds.  The drip edge, fascia and some windows were also badly damaged by the winds and rain.  Wind-driven rain penetrated the damaged roof and windows long before the arrival of the flood water.  The house was left, of necessity, for several months without electricity or human care.  The interior walls, ceilings, carpeted and tile floors were all severely damaged by the wind-driven rain.  The house and its contents were further damaged by rampant mold.

Flood Ins. paid:   $125,000
Flood damage:    $ 29,000

s.   7501 Horizon Dr., New Orleans, LA  70129 (Allstate Insurance Company, Policy No. unknown)

Although flood waters eventually rose to approximately 4 feet inside this dwelling, this was incidental to the severe damage caused by the hurricane force winds and driving rains, long before the flood waters entered the house.  The high winds blew away most of the roofing shingles, the felt and flashing.  Some turbine vents, plumbing jack flashings as well as some of the windows were blown out or badly damaged.   These breaches allowed the wind-driven rains to enter the dwelling.

Flood Ins. paid:   $100,000 (policy limits)
Flood damage:    $ 38,000

t.   4617 Crowder Blvd., New Orleans, LA 70127 (Allstate Insurance Company, Policy No. 180424886)

Flood waters eventually rose to only approximately 2 feet inside this dwelling.  The damage caused by flood waters was incidental and occurred much later than the damage caused by hurricane force winds, which occurred long before the flood waters entered this dwelling.  The high winds blew away most of the roofing shingles, the felt and flashing. Some turbine vents, plumbing jack flashings as well as some of the windows were blown out or badly damaged. These breaches allowed the wind-driven rains to enter the dwelling and destroy it.

Flood Ins. paid:   $141,000 (policy limits)

Flood damage:         $ 24,000

**B.      Pilot Catastrophe Services**

24. Pilot adjusted the above listed Allstate claim for the property at 4769
Francisco Verrett Dr., New Orleans, LA 70126 (Policy No. 0180153487).     On
information and belief, Pilot adjusted all or most of the above listed claims on behalf of
Allstate.  Branch's information and belief is based on testimony given under oath by an
Allstate corporate representative.  The corporate representative testified that Pilot served
as Allstate's primary adjuster on Hurricane Katrina flood claims and that Allstate paid
Pilot approximately $400 million for Hurricane Katrina work, which shows that Pilot was
more than just a primary provider of adjusters for Allstate but in fact Allstate's exclusive
or near-exclusive provider of adjusters.  In that capacity, Pilot systematically overstated
flood damages to insured properties damaged by Hurricane Katrina.  Pilot knowingly
made false statements and false certifications to the Government in connection with its
adjustments and/or caused the submission of false claims for payment to NFIP.   It
concealed these practices from the Government.  Precisely which claims Pilot adjusted
for Allstate or other WYO insurers is information that is exclusively within the control of
the defendants because the adjuster's employer is generally not listed on any documents
provided to the insured or, on information and belief, any documents provided to the
Government.

**C.      Fidelity National Insurance Company and Fidelity National Property &
          Casualty Company**

25. Fidelity systematically overstated flood damages to insured properties
damaged by Hurricane Katrina and, based on those overstated damages, submitted false

claims for payment to NFIP. Fidelity also made false statements and false certifications in connection with the submission of these false claims, and it actively concealed these practices from the Government. The following examples illustrate Fidelity's scheme. They concern only the coverage of and damage to the dwelling and omit any reference to contents coverage or damages.

a.    316-318 North Galvez, New Orleans, LA 70119 (Fidelity National Insurance Company, Policy No. 17 7700760594)

Flood waters eventually rose to only slightly over 1 foot inside this two-story building. The damage caused by flood waters was incidental and occurred much later than the damage caused by hurricane force winds, which occurred long before the one foot of flood waters entered this dwelling. The high winds blew away most of the roofing shingles, the felt and flashing. Some turbine vents, plumbing jack flashings as well as some of the windows were blown out or badly damaged. These breaches allowed the wind-driven rains to enter the dwelling and destroy it.

Flood Ins. paid:    $141,000
Flood damage:      $ 62,000

b.    9135 W. Judge Perez Drive, Chalmette, LA 70041 (Fidelity National Insurance Company, Policy No. 17 2510058254 01)

Flood waters rose to 3.5 feet inside the building, however, this was incidental to the damage already caused by the hurricane force winds which had lifted the asphalt/gravel-over-metal roof, destroying the integrity and bonding of the asphalt roof, damaging the parapet walls. Most of the plate glass windows were broken by flying debris. Wind-driven rain penetrated the building long before the flood waters entered the building.

Flood Ins. paid:    $275,000 (policy limits)
Flood damage:      $ 57,000

c.    9020 W. Judge Perez Drive, Chalmette, LA 70043 (Fidelity National Insurance Company, Policy No. 17-2510155138-0)

The flat roof of this property was damaged, the plate glass window blew out, one of the exterior doors was blown off, and some of the vinyl siding was blown off all due to hurricane force winds. Wind-driven rain penetrated the roof, windows,

and damaged siding long before any flood water reached the building. The building was left unattended of necessity, and the interior was permanently damaged by rampant mold. Even though flood waters eventually rose to approximately 8 feet inside the building, this was incidental to its substantial destruction from winds prior to the flooding.

Flood Ins. paid:      $250,000 (policy limits)
Flood damage:         $ 44,000

d.    2137 S. Lopez Street, New Orleans, LA 70125 (Fidelity National Insurance Company, Policy No. 17-7700605689-0)

Much of the slate roofing shingles of this 3 story dwelling was blown off.  The felt and flashing were also blown off, as were some turbine roof vents.  Much of the drip edge and the soffit and fascia were also blown off by the driving winds and rain.  Some of the windows were badly damaged.  Hurricane force winds and wind-driven rain penetrated the damaged and missing roof, the damaged windows and the damaged soffit and fascia long before any flood waters entered the building.  Even though flood water eventually rose to approximately 6 feet inside the dwelling, this was incidental to the substantial destruction caused by pounding winds and rain.

Flood Ins. paid:      $127,857.20
Flood damage:         $ 56,000

e.    2701-2703 S. Miro Street, New Orleans, LA 70125 (Fidelity National Insurance Company, Policy No. 99-02128507-2004)

The slate roof tiles were blown away, felt and sheathing were damaged by hurricane force winds.   Windows were blown out, and exterior siding was damaged. Wind-driven rain penetrated the roof, broken windows, siding and damaged plumbing vents. The dwelling was in substantial ruin prior to arrival of any flood water.

Flood Ins. paid:      $25,000
Flood damage:         $14,000

f.    3033 Louisa St., New Orleans, LA 70126 (Fidelity National Insurance Company, Policy No. 17-251001825-01)

Hurricane force winds blew off many shingles, felt and flashing from the roof of this dwelling.  Some turbine roof vents and the plumbing jack flashings were blown off, and some of the windows were badly damaged.  Wind-driven rain penetrated into the dwelling through the damaged and missing roof long before any flood waters entered the dwelling.  Flood waters eventually rose to

approximately 2 feet in this dwelling, but the dwelling was already destroyed by the hurricane force winds.

| | |
|---|---|
| Flood Ins. paid: | $82,000 (policy limits) |
| Flood damage: | $34,000 |

g.    4621 Viola St., New Orleans, LA 70126 (Fidelity National Property & Casualty Insurance, Policy No. 177700529 707 02)

Severe winds destroyed most of the roof shingles and sheathing, as well as the soffit, fascia, and exterior siding. Wind also blew out the windows and one door. Wind and driving rains destroyed the house, including the walls, ceiling and insulation, prior to any flooding. Wind damage left stress cracks in the woodwork around the doors and windows. Flood waters subsequently reached the home, with a high-water mark of 3.5 feet.

| | |
|---|---|
| Flood Ins. paid: | $76,000 (policy limits) |
| Flood damage: | $37,000 |

h.    7607 Vanderkloot Ave., New Orleans, LA 70127-1649 (Fidelity National Property & Casualty, Policy No. 17-2510116994-0)

Severe winds blew off roof shingles, felt, the turbine roof vent, and the soffit and fascia. Several windows were blown out. Wind-driven rain penetrated in and around doors and windows. The house and contents were substantially damaged by wind and wind-driven rain prior to the arrival of any flood water, which rose only to 4 feet inside the dwelling.

| | |
|---|---|
| Flood Ins. paid: | $75,000 |
| Flood damage: | $32,000 |

i.    LLC, 2625 & 2627 General Pershing, New Orleans, LA 70115 (Fidelity National Property & Casualty, Policy No. 17 2510213116 00)

The slate roof tiles were blown off by wind and wind-driven rain. Felt, roof vents, soffit and fascia were blown away by hurricane force winds. Windows and siding were damaged or blown away by the storm. Wind-driven rain penetrated the doors and windows and wood siding, which were damaged by the wind and rain. The building was severely damaged prior to the arrival of any flood waters, which rose to only six inches inside the building.

| | |
|---|---|
| Flood Ins. paid: | $250,000 |
| Flood damage: | $ 72,000 |

j.      109 Lighthouse Point, Slidell, LA 70458 (Fidelity, Policy No. unknown)

Flood waters eventually rose to approximately 48 inches inside the dwelling, however, it was incidental to the damage caused by the winds and wind-driven rain. The hurricane force winds blew away shingles from the roof, some of the sheathing and turbine roof vents were also blown away. Wind-driven rain in sufficient amounts to totally ruin both floors of this 2 story dwelling penetrated the building through the damaged roof and destroyed the interior long before the arrival of any flood waters.

Flood Ins. paid:     $130,000
Flood damage:       $ 27,000

## D.      American National Property & Casualty Company

26. American National Property ("ANPAC") systematically overstated flood damages to insured properties damaged by Hurricane Katrina and, based on those overstated damages, submitted false claims for payment to NFIP. ANPAC also made false statements and false certifications in connection with the submission of these false claims, and it actively concealed these practices from the Government. The following examples illustrate ANPAC's scheme. They concern only the coverage of and damage to the dwelling and omit any reference to contents coverage or damages.

a.      4900 Alsace St., New Orleans, LA 70129 (ANPAC, Policy No. 17-KY24-794-2)

This was a four-plex residential structure that was severely damaged by wind and blowing rain. The roof shingles and sheathing were badly damaged by wind, and most of the windows were blown out. Driving rain penetrated the roof, windows and damaged plumbing vents in amounts sufficient to ruin both floors of the building and its mechanical systems. *There was no flooding by rising waters in any of the four units.*

Flood Ins. paid:     $96,000 (policy limits)
Flood damage:       $0

b.      4910 Alsace St., New Orleans, LA 70129 (ANPAC, Policy No. 99-01660273-2005)

This was a four-plex residential structure that was severely damaged by wind and blowing rain. The roof shingles and sheathing were badly damaged by wind, and most of the windows were blown out. Driving rain penetrated the roof, windows and damaged plumbing vents in amounts sufficient to ruin both floors of the building and its mechanical systems. ***There was no flooding by rising waters in any of the four units.***

Flood ins. paid:      $95,217.93
Flood damage:        $0

c.      4920 Alsace St., New Orleans, LA 70129 (ANPAC, Policy No. 17-KY24-792-6)

This was a four-plex residential structure that was severely damaged by wind and blowing rain. The roof shingles and sheathing were badly damaged by wind, and most of the windows were blown out. Driving rain penetrated the roof, windows and damaged plumbing vents in amounts sufficient to ruin both floors of the building and its mechanical systems. ***There was no flooding by rising waters in any of the four units.***

Flood Ins. paid:      $95,000 (policy limits)
Flood damage:        $0

d.      4870 Alsace St., New Orleans, LA 70129 (ANPAC, Policy No. 99-01660274-2005)

This was a four-plex residential structure that was severely damaged by wind and blowing rain. The roof shingles and sheathing were badly damaged by wind, and most of the windows were blown out. Driving rain penetrated the roof, windows and damaged plumbing vents in amounts sufficient to ruin both floors of the building and its mechanical systems. ***There was no flooding by rising waters in any of the four units.***

Flood Ins. paid:      $95,217.93
Flood damage:        $0

e.      7641 Endeavors Court, New Orleans, LA 70129 (ANPAC, Policy No. unknown)

High winds and wind-driven rain severely damaged this dwelling before flood waters arrived. The roofing shingles, felt and flashing were blown away by the hurricane force winds. Some windows were also blown out. The wind-driven rain was able to penetrate the "skin" of the house and destroy the interior and its contents, prior to the approximately 4 feet of flood water entering the dwelling. The electric system, HVAC system, the sheet rock walls, ceilings, and insulation

were destroyed.  Most of the damage was caused by hurricane force winds and wind-driven rain.  The house was left, of necessity, for several months without electricity, or human care.  The soaked interior, carpeted and tile floors, walls and ceilings were destroyed by the wind-driven rain.  The interior and contents were further damaged by rampant mold.

Flood Ins. paid:      $91,000
Flood damage:        $31,000

f.      13701 N. Cavelier Drive, New Orleans, LA 70129 (ANPAC, Policy No. 99-01423429-2004)

Flood waters rose to approximately 4 feet inside the dwelling, however, this was after the dwelling was severely damaged by hurricane force winds, and wind-driven rain.  The high winds blew away much of the roof's shingles, felt and flashing.  Some turbine vents and plumbing jack flashings were also blown off.  The drip edge, fascia and some of the windows were badly damaged by the high winds.  Wind-driven rain penetrated the badly damaged and missing roof, the damaged windows and fascia long before the flood waters entered the building.  The house was then left, of necessity, for several months without electricity or human care.  The soaked interior, carpeted floors, sheet rock walls and ceiling cladding as well as the electrical and HVAC systems were destroyed by the wind driven rain and the building and contents were further damaged by rampant mold.

Flood Ins. paid:      $110,000
Flood damage:        $ 26,000

g.      13661 N. Cavelier Drive, New Orleans, LA 70129, (ANPAC, Policy No. 9901502352-2004)

Although flood waters eventually rose to approximately 4 feet inside the house, this was incidental to the substantial damage caused by hurricane force winds and wind-driven rain.  Much of the roofing shingles, felt and flashing were blown away.  Some of the windows were damaged by the winds, and some of the turbine vents were also blown off.  These damages allowed the pounding, wind-driven rain to penetrate the house and destroy the interior long before the flood waters entered the building.  The house was then left, of necessity, without electricity or human care for several months.  The soaked interior and contents were further damaged by rampant mold.

Flood Ins. paid:      $70,000
Flood damage:        $38,000

**E.    Simsol Insurance Services, Inc.**

27. Simsol adjusted the above listed ANPAC claim for the property at 4870 Alsace Street, New Orleans, LA 70129 (ANPAC, Policy No. 17-KY24-791-8).   On information and belief, Simsol adjusted several of the above listed claims on behalf of ANPAC and served as one of ANPAC's primary Louisiana adjusters on Hurricane Katrina flood claims.   On information and belief, Simsol is a major adjuster of catastrophe insurance claims in the United States, and it prepared a significant percentage of the Hurricane Katrina flood adjustment reports utilized by the insurer defendants and handled a significant number of the claims identified herein.  In these capacities, Simsol systematically overstated flood damages to insured properties damaged by Hurricane Katrina.   Simsol knowingly made false statements and false certifications to the Government in connection with its adjustments and/or caused the submission of false claims for payment to NFIP.   It concealed these practices from the Government. Precisely which claims Simsol adjusted for ANPAC or other WYO insurers is information that is exclusively within the control of the defendants because the adjuster's employer is generally not listed on any documents provided to the insured or, on information and belief, any documents provided to the Government.

**F.    Liberty Mutual Fire Insurance Company**

28. Liberty Mutual systematically overstated flood damages to insured properties damaged by Hurricane Katrina and, based on those overstated damages, submitted false claims for payment to NFIP.   Liberty Mutual also made false statements and false certifications in connection with the submission of these false claims, and it actively concealed these practices from the Government.   The following examples illustrate

Liberty Mutual's scheme.   They concern only the coverage of and damage to the dwelling and omit any reference to contents coverage or damages.

a.    7441 Fieldstone Road, New Orleans, LA 70126 (Liberty Mutual Insurance, Policy No. 29-47310901-2004)

Although flood waters eventually rose to approximately 4 feet inside the dwelling, this was incidental to the substantial damage by the hurricane force winds which blew away many of the roof shingles and damaged some of the felt and board plank sheathing.  The aluminum patio cover was blown away, a window was blown out a turbine ventilator, some plumbing stack vents, and the soffit and fascias were damaged.  Wind driven rain penetrated the damaged roof, the broken window, the turbine ventilator, and the damaged soffit and fascia long before any flood waters entered the dwelling.  The residence was left, of necessity, for several weeks without electricity, air conditioning or human care.  The soaked interior, electrical system and contents were permanently damaged by rampant mold.

Liberty Mutual aggressively avoided making any payments on the homeowner policy, going so far as to accuse the insured of insurance fraud and requesting law enforcement to arrest him.  Liberty Mutual therefore directed its employees that no payments were to be made on the claim under the homeowners policy, and referred the matter to law enforcement, who arrested the insured on suspected insurance fraud.  Only days later, however, Liberty Mutual paid the insured's flood claim for policy limits.  On information and belief, Liberty Mutual never conducted further investigation of whether the insured's flood claim was legitimate and never disclosed to FEMA its suspicions of fraudulent behavior on the homeowners claim.  All charges against the insured were later dropped due to lack of evidence.

| Flood Ins. paid: | $104,000 (policy limits) |
| Flood damage: | $ 28,000 |

b.    13656 N. Cavelier Drive, New Orleans, LA 70129 (Liberty Mutual Insurance, Policy No. unknown)

Eventually flood waters rose to approximately 4 feet inside this dwelling.  The flood waters were incidental to the severe damage caused by the hurricane winds and wind-driven rain.  Most of the roofing shingles and felt were blown off.  Some of the turbine roof vents and much of the soffit and fascia as well as some windows were badly damaged.  Exterior wall and siding were damaged.  These damages allowed the wind-driven rain to penetrate the "skin" of the house and destroy much of the interior and contents long before any flood waters entered the dwelling.

Flood Ins. paid:      $117,000
Flood damage:        $ 26,000

### G.    American Reliable Insurance Company of Scottsdale

29. American Reliable systematically overstated flood damages to insured properties damaged by Hurricane Katrina and, based on those overstated damages, submitted false claims for payment to NFIP.    American Reliable also made false statements and false certifications in connection with the submission of these false claims, and it actively concealed these practices from the Government.   The following examples illustrate American Reliable's scheme.   They concern only the coverage of and damage to the dwelling and omit any reference to contents coverage or damages.

a.     2705-2707 S. Miro Street, New Orleans, LA 70125 (American Reliable Insurance Company of Scottsdale, Ariz., Policy No. 1961520869)

Flood damage was incidental to the wind-driven rain destruction.   Slate roof tiles, felt, sheathing, plumbing vents, siding and windows were blown away by hurricane force winds.   Rain penetrated the damaged roof, broken windows, and siding.   The house was a total loss prior to any flood waters arriving.   Flood waters ultimately reached only 1 foot.

Flood Ins. paid:      $25,000
Flood damage:        $18,000

b.     3121 Marigny St., New Orleans, LA 70122 (American Reliable Insurance Company of Scottsdale, Ariz., Policy no. 1961526143)

Although flood waters eventually rose to approximately 3 feet inside the house, this was incidental to the substantial damage caused by hurricane force winds and wind-driven rain.   Much of the roofing shingles, felt and flashing were blown away.   Some of the windows were damaged by the winds, and some of the turbine vents were also blown off. These damages allowed the pounding, wind-driven rain to penetrate the house and destroy the interior long before the flood waters entered the building.   The house was then left, of necessity, without electricity or human care for several months.   The soaked interior and contents were further damaged by rampant mold.

Flood Ins. paid:    $72,000
Flood damage:    $33,000

c.    2610 & 2612 Franklin Ave., New Orleans, LA (American Reliable Insurance Company of Scottsdale, Ariz., Policy No. 1961512427)

Although flood waters eventually rose to approximately 4 feet inside the house, this was incidental to the substantial damage caused by hurricane force winds and wind-driven rain. Much of the roofing shingles, felt and flashing were blown away. Some of the windows were damaged by the winds, and some of the turbine vents were also blown off. These damages allowed the pounding, wind-driven rain to penetrate the house and destroy the interior long before the flood waters entered the building. The house was then left, of necessity, without electricity or human care for several months. The soaked interior and contents were further damaged by rampant mold.

Flood Ins. paid:    $97,000
Flood damage:    $60,000

## H.    The Standard Fire Insurance Company ("Standard Fire")

30. Standard Fire systematically overstated flood damages to insured properties damaged by Hurricane Katrina and, based on those overstated damages, submitted false claims for payment to NFIP. Standard Fire also made false statements and false certifications in connection with the submission of these false claims, and it actively concealed these practices from the Government. The following examples illustrate Standard Fire's scheme. They concern only the coverage of and damage to the dwelling and omit any reference to contents coverage or damages.

a.    7732 Edwards Street, New Orleans, LA 70126 (Policy No. 6002031547)

Although flood waters eventually rose to 12 inches in this dwelling, the damage by flooding was incidental to the damage caused by wind and wind-driven rain. The roof shingles were blown off, the soffit and fascia as well as the vinyl siding were damaged by the winds, and the rain penetrated these breaches. The building and contents were permanently damaged prior to any flood waters entering the building.

Flood Ins. paid:     $148,000 (policy limits)
Flood damage:     $ 32,000

b.    7568 Horizon Dr., New Orleans, LA 70129 (Policy No. 6500508939)

Although flood waters eventually rose to approximately 4 feet inside this dwelling, this was incidental to the severe damage caused by the hurricane force winds and driving rains, long before the flood waters entered the house. The high winds blew away most of the roofing shingles, the felt and flashing. Some turbine vents, plumbing jack flashings as well as some of the windows were blown out or badly damaged. These breaches allowed the wind-driven rains to enter the dwelling.

Flood Ins. paid:     $81,000
Flood damage:     $31,000

c.    7311 Beauvoir Ct., New Orleans, LA 70128 (Policy No. unknown)

Although flood waters eventually rose to approximately 3.5 feet inside the house, this was incidental to the damage caused by hurricane force winds and wind-driven rain. Much of the roofing shingles, felt and flashing were blown away. Some of the windows were damaged by the winds, and some of the turbine vents were also blown off. These damages allowed the pounding, wind-driven rain to penetrate the house and destroy the interior long before the flood waters entered the building. The house was then left, of necessity, without electricity or human care for several months. The soaked interior and contents were further damaged by rampant mold.

Flood Ins. paid:     $142,000
Flood damage:     $ 31,000

## I.    Colonial Claims Corporation

31. Colonial adjusted the above listed claims for the properties at 109 Lighthouse Point, Slidell, LA 70458 (Fidelity, Policy No. unknown), 2701-2703 S. Miro Street, New Orleans, LA 70125 (Fidelity National Insurance Company, Policy No. 99-02128507-2004), and 3033 Louisa St., New Orleans, LA 70126 (Fidelity National Insurance Company, Policy No. 87020387972005). On information and belief, Colonial adjusted

several of the above listed claims on behalf of ANPAC and/or Fidelity and served as one of the primary Louisiana adjusters on Hurricane Katrina flood claims for both.   On information and belief, Colonial is a major adjuster of catastrophe insurance claims in the United States, and it prepared a significant percentage of the Hurricane Katrina flood adjustment reports utilized by the insurer defendants and handled a significant number of the claims identified herein.   In these capacities, Colonial systematically overstated flood damages to insured properties damaged by Hurricane Katrina.   Colonial knowingly made false statements and false certifications to the Government in connection with its adjustments and/or caused the submission of false claims for payment to NFIP.   It concealed these practices from the Government.   Precisely which claims Colonial adjusted for ANPAC, Fidelity, or other WYO insurers is information that is exclusively within the control of the defendants because the adjuster's employer is generally not listed on any documents provided to the insured or, on information and belief, any documents provided to the Government.

### VI. FRAUD IN CONNECTION WITH THE WYO NATIONAL FLOOD INSURANCE PROGRAM
### (Count I)

32. Plaintiff/relator Branch realleges and incorporates by reference the allegations made in the preceding paragraphs of this First Amended Complaint.

33. This is a claim for treble damages and forfeitures under the Federal FCA, 31 U.S.C. §§ 3729-33.

34. Through the acts described above and otherwise, each defendant knowingly presented and/or caused to be presented to the Government materially false and

fraudulent claims, records, certifications, and statements, which also omitted material facts, in order to induce payments by the Government under NFIP.

35. Through the acts described above and otherwise, each defendant knowingly made, used and/or caused to be made or used materially false records, certifications and statements, which also omitted material facts, in order to induce the Government to pay false and fraudulent claims under NFIP.

36. The Government, unaware of the falsity of the records, certifications, statements, and claims made, submitted or caused to be submitted by the defendants—or of the defendants' failure to disclose material facts that would have reduced Government obligations—paid for claims which would not have been paid if the truth had been known.

37. By reason of these false records, certifications, statements, omissions, and claims, the Government has been damaged in the amount of at least hundreds of millions of dollars.

## VII.  JURY DEMAND

38. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff/relator Branch demands trial by jury.

## VIII.  PRAYER

39. Plaintiff/relator Branch prays for judgment against each of the defendants as follows:

      a.    that the defendants cease and desist from violating the FCA;

      b.    that the Court enter judgment against the defendants in an amount equal to three times the amount of damages the United States has sustained as a result of the defendants'

actions, as well as a civil penalty against each defendant of $11,000 for each and every violation of 31 U.S.C. § 3729;

c.  that the Court award Branch the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

d.  that the Court award Branch all costs and expenses of this action, including attorneys' fees; and

e.  that the Court award the United States and Branch all such other relief as it deems just and proper.

Respectfully submitted,

SUSMAN GODFREY LLP


By:___/s/ Jonathan Bridges_____
Jonathan Bridges (TX #24028835)
jbridges@SusmanGodfrey.com
901 Main Street, Suite 5100
Dallas, Texas  75202-3775
Telephone:  (214) 754-1900
Fax:  (214) 665-0856

Tibor Nagy (NY #4508271)
tnagy@SusmanGodfrey.com
654 Madison Ave., 5th Flr
New York, NY 10065
Telephone:  (212) 336-8332
Fax:  (212) 336-8340

Matthew R. Berry (WA #37364)
mberry@susmangodfrey.com
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 373-7394
Fax: (206) 516-3883


KANNER & WHITELEY L.L.C.

Allan Kanner (LA #20580)
a.kanner@kanner-law.com
Cynthia St. Amant (LA #24439)
c.stamant@kanner-law.com
701 Camp Street
New Orleans, LA  70130
Telephone (504) 524-5777
Fax: (504) 524-5763


HERMAN, HERMAN, KATZ
  & COTLAR, LLP

Stephen J. Herman (LA #23129
sherman@hhkc.com
Soren E. Gisleson (LA #26302)
sgisleson@hhkc.com
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax: (504) 561-6024

*Attorneys for Plaintiff/Relator*