UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA *EX REL.*** | * | **CASE NO.: 06-4091** |
| **BRANCH CONSULTANTS, L.L.C.** | * | |
| | * | |
| **VERSUS** | * | **SECTION: R** |
| | * | |
| **ALLSTATE INSURANCE CO., ET AL.** | * | **MAG.: 1** |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF BRANCH'S MOTION TO COMPEL PRODUCTION OF NECESSARY 30(b)(6) DEPOSITION WITNESS**

**I.   INTRODUCTION**

Branch files this reply in response to Pilot's Opposition to Branch's Motion to Compel. Rec. docs. 831 and 859. Through self-serving characterizations of Branch's motion, Branch's deposition notice, and the testimony of its own deponent, Pilot attempts to mislead this Court in order to skirt its obligations under Rule 30(b)(6).

**II.   ARGUMENT**

    A.    Adjusting Software: Pilot's "Creative" Solutions to its Admitted Lack of Preparation are Improper and Unworkable under the Federal Rules

Pilot, the adjusting company that adjusted over 10,000 Katrina flood claims, put up an ESI deponent who knew nothing about the software used to adjust those claims. Pilot's proposed solution to the unpreparedness of its deponent, that Branch issue a third party subpoena and go depose "the developer of the program",[1] would result in precisely to sort of time-consuming, costly, and quixotic exercise that the federal rules seek to prevent. Pilot's refusal to provide basic

---

[1] Opp. Brief at 11.

information scoffs at the importance of ESI discovery cooperation recently recognized by the Sedona Conference:

> Discovery disputes have existed since discovery began. But ESI has vastly increased the quantities of available information and the way it can be accessed. With almost all information electronically created and stored, there has been an exponential increase in the amount of information litigants must preserve, search, review, and produce. ESI is often stored in multiple locations, and in forms difficult and expensive to retrieve. These reasons compel increased transparency, communication, and collaborative discovery. The alternative is that litigation will become too expensive and protracted in a way that denies the parties an opportunity to resolve their disputes on the merits. As a result, in other to preserve our legal system, cooperation has become imperative.

*The Case for Cooperation*, 10 SEDONA CONF. J. 339, 340 (2009).

Pilot's contention, that Branch depose third parties to testify as to fields of data that Pilot's own adjusters entered over 10,000 times, falls far short of the goals expressed by the 2009 Sedona Conference. Pilot fails to understand that it has a duty to educate itself on its electronic systems.[2]

Pilot even admits that its witness was not prepared to testify as to certain parts of the adjusting software. As noted in Pilot's Opposition brief:

> At the deposition, Mr. Reid testified that he was not aware of whether Pilot's field adjusters had the ability to customize the MSB software. Reid Depo. 112:23-113:1. Mr. Reid has since researched this question and learned that after a Pilot field adjuster installs the MSB IntegraClaim program, he or she cannot customize the program. Reid Aff., ¶ 8. With this supplemental information, the request for additional information regarding [Category 17(c)] is moot.

---

[2] *See, e.g., Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2008 U.S. Dist. LEXIS 85619 at *7 (W.D. Pa. Oct 23, 2008) (Defendant sanctioned for failure to provide a 30(b)(6) witness where it failed to educate itself on electronic systems. The court observed that under Rule 30(b)(6), "[a] corporation must prepare its selected deponent to adequately testify not only on matters known by the deponent, but also on subjects that the entity should reasonably know.").

Opp. Brief at 13.  Pilot then brazenly argues that its lack of preparation is excused by the submission of a post-deposition affidavit undoubtedly drafted by Pilot's attorneys.  This logic would of course obviate the ability of a party to take *any* discovery pursuant to Rule 30, given the availability of written discovery mechanisms.  Pilot's attempt to cure its unpreparedness with lawyer-drafted testimony is unacceptable.

    B.    Claims Files: Pilot Blatantly Misrepresents Branch's Deposition Notice – Branch Requested Information Regarding Pilot's Access to Claims Files

According to Pilot, "Branch could have included the term 'access' in categories 1 and 2, but it did not."  Opp. Brief at 5.  Then, unbelievably, Pilot drops a footnote admitting that this statement is completely false, and asks the Court to ignore Branch's use of the word access in its deposition notice.  Id. at fn. 7.  Pilot then attempts to justify this admission of arguably sanctionable conduct with a half-hearted foray into the analytical philosophy of language.  Id.

The fact is this: Branch's deposition notice specifically sought "the means by which You store, organize, and retrieve claims files . . .including but not limited to . . . Your capabilities with respect to *accessing, navigating, retrieving, searching*, organizing, and *sorting* Claims File data."  Mot. Compel, Ex. A Topics of Examination at 1(d) and 2(d) *emphasis added*.

Pilot also misrepresents the definitions employed in Plaintiff's Notice of Deposition.  For example, Pilot references Branch's definition of Claim File as information "associated with a particular claim made by an insured under any insurance policy *issued by You* [which is earlier defined as Pilot], including but not limited to federally backed flood insurance policies sold or serviced by You."

What Pilot fails to tell the Court is that Branch's definition of "You" includes Pilot's

12/27/10; 14:44:57;

3

"partners" and "affiliates."  Mot. Compel, Ex. A Definitions and Instructions at 1.  This would certainly include Allstate, for example, whom Pilot was a major partner in the servicing of flood claims.  If it is a rigid, time-consuming, costly debate over semantics that Pilot wants, it fails to succeed even at that.[3]  Throughout its Opposition, Pilot time and time again misleads the Court by replacing "You" with an incorrectly bracketed "[Pilot]".

      C.      Pilot was not Prepared to Testify as to the Format of the Price Data

Pilot dishonestly contends that Branch failed "to directly inquire about the format of the price data," (Opp. Brief at 10).  Pilot then uses this mischaracterization as cover to provide post-deposition lawyer-drafted affidavit testimony that the pricelists are submitted and received in "a secure binary file that is proprietary to MSB."  Id. (citing Reid Aff., ¶ 6).

The fact is, Branch clearly inquired as to the format of the pricelists.  After a series of questions in which Mr. Reid's ignorance of the pricelist formats became evident, Branch asked Mr. Reid point blank, "[a]re you prepared to testify today regarding the electronic format in which information from the adjusting program was sent to MSB?"  Mr. Reid's one-word response: "No."  Mot. Compel at 7.  Pilot was clearly *not* prepared to testify as to the format of the pricelists.

Pilot claims that the Reid affidavit attached to its Opposition Brief is a magnanimous attempt to educate Branch on Pilot's electronic systems where Branch failed to ask the right questions.  But as this example demonstrates, Pilot's characterization that Branch was somehow unprepared is completely false.  The Reid affidavit is nothing more than post-deposition lawyer-drafted testimony

---

[3] Branch also described claims files as including those for "policies sold or *serviced* by You" (emphasis added).  An expansive reading of "serviced" certainly includes the adjusting work done by Pilot.  Pilot's attempts to restrict this definition to regulatory definition at the time of its Opposition of Branch's Motion to Compel are improper.

for a deponent that was completely unprepared to testify on the day of the deposition. Further, as noted in Branch's Motion to Compel, Pilot counsel's attempts to testify on behalf of Mr. Reid resulted in conclusions that were shortly thereafter dismissed by Mr. Reid himself. Pilot's counsel should not be able to testify on behalf of Mr. Reid following the deposition.

### III. CONCLUSION

For the aforementioned reasons, Branch respectfully requests this Court to grant its Motion to Compel against Defendant Pilot.

Date:   December 27, 2010                                    Respectfully submitted,

KANNER & WHITELEY, L.L.C.

**By: /s/ Ryan Casey**
Allan Kanner (LA #20580)
A.kanner@kanner-law.com
Conlee Whiteley (LA #22678)
Ryan Casey (LA #31092)
701 Camp Street
New Orleans, LA 70130

HERMAN HERMAN KATZ & COTLAR
Stephen J. Herman (LA #23129)
Sherman@hhkc.com
Soren E. Gisleson (LA #26302)
820 O'Keefe Avenue
New Orleans, LA 70113

SUSMAN GODFREY L.L.P.
Jonathan Bridges (TX #24028835)
Jbridges@SusmanGodfrey.com
901 Main Street, Suite 5100
Dallas, TX 75202-3775

Tibor Nagy (NY #4508271)
Tnagy@SusmanGodfrey.com
645 Madison Avenue, 5th Floor
New York, NY 10065

Matthew Berry (WA #37364)
Mberry@SusmanGodfrey.com
1201 Third Avenue, Suite 3800
Seattle, WA 98101

*Attorneys for Plaintiff/Relator*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of December, 2010, I electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send a notice of electronic filing to all counsel of record.

**By: /s/ Ryan Casey**
Ryan Casey, Esq.

12/27/10; 14:44:57;

6