UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA *EX REL.*         CIVIL ACTION
BRANCH CONSULTANTS, L.L.C.

VERSUS                                     NO: 06-4091

ALLSTATE INSURANCE. CO., *ET AL.*          SECTION: R(1)


### ORDER AND REASONS

In this False Claims Act case arising out of Hurricane
Katrina, defendants American Reliable Insurance Company, Standard
Fire Insurance Company, Colonial Claims Corporation, Liberty
Mutual Fire Insurance Company, SIMSOL Insurance Services, Inc.,
American National Property & Casualty Company ("ANPAC"), Fidelity
National Insurance Company, and Fidelity National Property and
Casualty Insurance Company ("Fidelity") have filed motions for
summary judgment.  In addition, all of these defendants plus
Allstate Insurance Company and Pilot Catastrophe Services, Inc.
have filed motions to dismiss.  Because the Court lacks
jurisdiction over Branch's claims, defendants' motions are
GRANTED, and this case is DISMISSED.

## I. Introduction

This case arises out of the aftermath of Hurricane Katrina. The storm struck southern Louisiana and Mississippi in late August of 2005, causing damage in the billions of dollars. In numerous places, particularly within New Orleans, homes and commercial property were damaged by the wind and rain generated from the hurricane, as well as by flooding that inundated the area.

Although insurance against wind and rain is available from private insurance companies, flood insurance generally is not. "It is uneconomical for private insurance companies to provide flood insurance with reasonable terms and conditions to those in flood prone areas." *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998). In 1968, the federal government established the National Flood Insurance Program ("NFIP"), which provides flood-insurance coverage "at or below actuarial rates," and payments on these insurance policies are made with federal money. *Id.* The NFIP is in turn administered by the Federal Emergency Management Agency. In 1983, FEMA established a program within the NFIP known as "Write Your Own" ("WYO"), which allowed certain private insurers to issue standard, government-guaranteed flood insurance policies in their own names. *See generally* 44 C.F.R. § 62.23. FEMA drafts the policies and the insurers cannot alter them without governmental approval. *Id.* §§ 61.4(b), 61.13(d); *see*

also *Dwyer v. Fidelity Nat. Prop. & Cas. Co.*, 565 F.3d 284, 285 (5th Cir. 2009).  The private companies under WYO act as "fiscal agents" of the United States and are responsible for adjustment, settlement, payment, and defense of claims under the policies. 44 C.F.R. § 62.23(d)-(g).  Payments under the policies, however, "ultimately come[] from the United States treasury." *Dwyer*, 565 F.3d at 285.

The damage caused by Hurricane Katrina resulted in a tremendous number of NFIP claims.  On account of this strain, FEMA relaxed the requirements for submitting proofs of loss to claim flood damage.  Specifically, when policyholders did not dispute the insurance company's adjustment, FEMA waived the proof-of-loss requirement and allowed the claim to be paid on the basis of adjuster's reports.  *See Monistere v. State Farm Fire & Cas. Co.*, 559 F.3d 390, 394-95 (5th Cir. 2009); *Eckstein v. Fidelity Nat. Prop. & Cas. Ins. Co.*, 07-4567, 2009 WL 1870558, at *4 (E.D. La. June 29, 2009).

Branch Consultants brought this *qui tam* action in 2006 on behalf of the United States government under the False Claims Act ("FCA").  Branch accuses certain WYO insurance companies and adjusters that were involved in the adjustment of NFIP flood claims after Katrina of fraud in the administration of the flood insurance program.  Branch alleges that the circumstances after Katrina gave the defendants complete control over adjustments and

payments under NFIP policies and allowed them to systematically overstate the amount of flood damage sustained by properties covered by NFIP policies.

Specifically, in what the Court has described as the "loss-shifting" claim, Branch alleges that the defendants attributed damages to flooding that should instead have been attributed to wind or wind-driven rain.  This in turn increased the amount of money that the government was obligated to pay under the individual flood policies, and accordingly reduced the amount that insurance companies were obliged to pay under the wind/homeowners policies they allegedly wrote.  Put differently, Branch alleges that defendants shifted the costs of paying for wind damage to the government by fraudulently claiming that the damage was caused by flooding.  The government allegedly subjected these claims to less scrutiny than it would have in typical circumstances because of the expedited claims-handling process that was put in place after Katrina.

In the complaint, Branch provides examples of properties that it alleges were the subject of this fraud.  For each property, Branch identifies the insurance company that allegedly issued the applicable NFIP and wind policies.  Further, Branch alleges the existence of a broad fraudulent scheme extending beyond the exemplar properties.  This scheme allegedly resulted in the submission of myriad fraudulent insurance claims to the

4

government.

The loss-shifting claim was Branch's only theory until it filed its Second Amended Complaint over three years after filing the original complaint.[1]  The Second Amended Complaint added what the Court has described as the "inflated-revenue" claim.  In that claim, the defendants allegedly overstated the amount of flood damage by inflating the prices of the components of their flood adjustments and including items in those adjustments that did not require replacement.  Defendants' incentive to make false claims under this theory was not to avoid paying wind losses, but rather to recover inflated fees, as the fees they recovered under the NFIP were based on the amount of claims paid.  Thus, the insurer's incentive under the inflated-revenue claim was not to pass off losses it would have otherwise sustained, but rather to maximize the fees it was paid for participation in the NFIP program.  When Branch added this claim in the Second Amended Complaint, it added no new exemplar properties.  Nor did Branch alter its allegations concerning the exemplars, *i.e.*, that all or most of the damage to those properties was caused by wind, not flooding.

This case had a substantial procedural history even before Branch filed the Second Amended Complaint.  In October of 2007, the section of this Court previously assigned to this case

---

[1]     R. Docs. 280, 617.

dismissed it entirely.[2]  The Court found that a pending case in
the Southern District of Mississippi included similar FCA claims
against Allstate and then-defendant State Farm Insurance Company.
Because the Mississippi case was filed first, the Court ruled
that this suit was barred under the FCA's "first-to-file" rule.[3]
Branch appealed this decision to the Fifth Circuit, which held
that the first-to-file rule barred only Branch's claims against
State Farm and Allstate.  The Fifth Circuit affirmed the
dismissal of those two defendants, reversed the dismissal of the
other defendants, and remanded the case.[4]

    After remand, the case was reassigned to this Court.  The
defendants then moved to dismiss on the grounds that Branch was
not an "original source" under 31 U.S.C. § 3730(e)(4) and that
Branch failed to plead its claims with sufficient particularity
under Rule 9(b) of the Federal Rules of Civil Procedure.  In

---

[2]     R. Doc. 191.

[3]     31 U.S.C. § 3730(b)(5).  Certain provisions of the
False Claims Act were amended in March of 2010 by the Patient
Protection and Affordable Care Act, Pub. L. No. 111-148, § 10104,
124 Stat. 119, 901-02 (2010).  The Supreme Court has intimated
that the changes do not apply retroactively. *See Graham County
Soil & Water Conservation Dist. v. United States ex rel. Wilson*,
130 S.Ct. 1396, 1400 n.1 (2010).  In addition, the subsections of
§ 3729 of the FCA were reorganized by statute in 2009 as part of
the Fraud Enforcement and Recovery Act of 2009.  *See* Pub. L. No.
111-21, § 4, 123 Stat. 1617, 1621-22 (2009).  Here, unless
otherwise specified, all citations to the provisions of the FCA
are to the pre-2009 version of the statute.

[4]     *United States ex rel. Branch Consultants v. Allstate
Ins. Co.*, 560 F.3d 371, 381 (5th Cir. 2009).

October of 2009, the Court held that, based on the allegations in the First Amended Complaint, Branch had adequately pleaded that it was an original source of its allegations.[5]  The Court also determined that, with respect to most of the defendants, Branch's allegations met the requirements of Fed. R. Civ. P. 9(b).

In December of 2009, Branch moved for leave to file a Second Amended Complaint.[6]  In that complaint, Branch added the inflated-revenue claim and it reinstated Allstate and Pilot as defendants.  On August 13, 2010, following an appeal of the Magistrate Judge's order, the Court granted Branch leave to file the Second Amended Complaint,[7] and Branch filed that complaint the same day.[8]  Before the Court granted Branch leave to file the Second Amended Complaint, the defendants, other than Allstate and Pilot, filed motions for summary judgment directed at Branch's loss-shifting claim.  Additionally, all of the defendants have now filed motions to dismiss Branch's inflated-revenue claim.  Those motions are now before the Court.


**II. Legal Standard**

---

[5]  *United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 668 F.Supp.2d 780 (E.D.La. Oct 19, 2009) (R. Doc. 228).

[6]  R. Doc. 280.

[7]  R. Doc. 615.

[8]  R. Doc. 617.

7

The Court will resolve this case under the FCA's first-to-file and public disclosure jurisdictional bars.  The Court will adjudicate the first-to-file issue under Rule 12(b)(1), which requires dismissal of an action if the court lacks jurisdiction over the subject matter of the plaintiff's claim.  In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts.  *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).  The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists.  *See United States ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 54 (1st Cir. 2009); *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not ordinarily prevent the plaintiff from pursuing the claim in another forum.  *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

As to the public disclosure bar, the Fifth Circuit has held that this jurisdictional issue is intertwined with the merits and is thus a matter for summary judgment.  *United States ex rel.*

8

*Reagan v. East Texas Medical Center Regional Healthcare System*, 384 F.3d 168 (5th Cir. 2004) (quoting *United States ex rel. Laird v. Lockheed Martin Engineering and Science Services Co.*, 336 F.3d 346, 350 (5th Cir. 2003)).  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would 'entitle it to a [partial] directed verdict if the evidence went uncontroverted at trial.'"

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."  *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith for and on Behalf of Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

**III. DISCUSSION**

A.   *Jurisdictional Context under the False Claims Act*

Before proceeding to the disputed issues in this case, it is necessary to have a sense of the statutory context.  The False

Claims Act allows private citizens to bring suit for fraud committed against the government.  If such an action is successful, the private plaintiff, or "relator," may be entitled to claim a portion of the recovery as well as attorney's fees. The FCA thus encourages private citizens to expose frauds against the government.  At the same time, the FCA forecloses actions by individuals who have little knowledge of value, or who are freeloading on an existing suit or making opportunistic use of public knowledge.  Such actions serve little public purpose and may siphon off a portion of the recovery from the government and deserving relators.  In short, the primary goals of the FCA are "(1) promoting citizen involvement in exposing fraud against the government and (2) preventing parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud." *United States ex rel. Reagan v. E. Tex. Med. Cent. Regional Healthcare Sys.*, 384 F.3d 168, 174 (5th Cir. 2004) (quoting *United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d 346, 351 (5th Cir. 2003), *abrogated on other grounds by Rockwell Intern. Corp. v. United States*, 549 U.S. 457, 470-71 (2007)) (internal punctuation omitted).

The False Claims Act attempts to meet these conflicting goals by imposing a series of tests that a relator must meet in order to bring a *qui tam* action.  Unfortunately, this balancing act has created a situation in which *qui tam* actions are commonly

11

held up in seemingly interminable jurisdictional disputes.  As
Branch rightly points out, these delays often prevent even
perfectly legitimate *qui tam* actions from being heard on the
merits for years, during which time evidence grows stale,
witnesses' memories fade, and potential fraud against the
government is not redressed.  Here, defendants have filed dozens
of jurisdictional motions since the case was originally filed in
2006.  In deciding these motions, the Court has had to make
determinations under law that is far from pellucid.  Moreover, as
this litigation has progressed, it has become encumbered with
increasing numbers of claims, complaints, and parties, further
complicating each successive jurisdictional determination.  In
addition, other cases have been filed that are vying for
precedence in the jurisdictional queue.  *See United States ex rel
Rigsby v. State Farm Ins. Co.*, No. 06-433 (S.D. Miss.); *United
States ex rel Denenea v. Allstate Ins. Co.*, No. 07-2795 (E.D.
La.); *United States ex rel Sonnier v. Allstate Ins. Co.*, No. 09-
1038 (M.D. La.).  Nonetheless, the Court cannot shirk
jurisdictional issues, and it has no discretion to proceed in the
absence of jurisdiction.  Thus, the Court has no choice but to
wade into this jurisdictional thicket.

B.   *Jurisdictional Tests*

The FCA contains two jurisdictional restrictions that are

12

presently at issue.  First, defendants Allstate and Pilot argue
that Branch's claims against them should be dismissed under the
first-to-file bar of 31 U.S.C. § 3730(b)(5).  That provision
states: "When a person brings an action under this subsection, no
person other than the Government may intervene or bring a related
action based on the facts underlying the pending action."
Allstate and Pilot assert that the complaint in *United States ex
rel Rigsby v. State Farm Ins. Co.*, No. 06-433 (S.D. Miss. 2006),
trumps Branch's later-filed complaint.

Second, all of the defendants argue that Branch's claims
should be dismissed under the public disclosure bar, which
states:

> No court shall have jurisdiction over an action under this
> section based upon the public disclosure of allegations or
> transactions in a criminal, civil, or administrative
> hearing, in a congressional, administrative, or Government
> Accounting Office report, hearing, audit, or investigation,
> or from the news media, unless the action is brought by the
> Attorney General or the person bringing the action is an
> original source of the information.

31 U.S.C. § 3730(e)(4)(A).  The Court has already ruled that
Branch's loss-shifting claim is based on publicly disclosed
information.  *United States ex rel. Branch Consultants, L.L.C. v.
Allstate Ins. Co.*, 668 F.Supp.2d 780, 795 (E.D.La. 2009).
Further, when a relator's action is even partially based on
publicly disclosed information, the public disclosure bar applies
to the entire action.  *United States ex rel. Fried v. West
Independent School Dist.*, 527 F.3d 439, 442 (5th Cir. 2008);

13

*United States ex rel. Fed. Recovery Servs., Inc. v. E.M.S., Inc.*,
72 F.3d 447, 451 (5th Cir. 1995).  Thus, the Court has
jurisdiction only if Branch is an original source, which is
defined as:

> an individual who has direct and independent knowledge of
> the information on which the allegations are based and has
> voluntarily provided the information to the Government
> before filing an action under this section which is based on
> the information.

*Id.* § 3730(e)(4)(B).  A relator must be an original source of its
own allegations, not of the publicly disclosed allegations.
*Rockwell Intern. Corp. v. United States*, 549 U.S. 457, 471-72
(2007)).  The Court has ruled that Branch adequately pleaded that
it is an original source of its loss-shifting claim,[9] but
defendants now make a factual attack on Branch's original source
status.  Defendants challenge Branch's direct and independent
knowledge of the information underlying its allegations, and they
also argue that Branch did not disclose that information to the
government before filing the action.  Branch must satisfy both of
these elements in order to be considered an original source.
*United States ex rel. Reagan v. East Texas Medical Center
Regional Healthcare System*, 384 F.3d 168, 177 (5th Cir. 2004).

Both the public disclosure bar and the first-to-file bar are
jurisdictional limitations.  The public disclosure bar explicitly

---

[9]    *United States ex rel. Branch Consultants, L.L.C. v.
Allstate Ins. Co.*, 668 F.Supp.2d 780 (E.D.La. Oct 19, 2009) (R.
Doc. 228).

states that no court shall have jurisdiction if the provision applies, § 3730(e)(4)(A), and the Supreme Court has specifically ruled that the provision is jurisdictional in nature. *Rockwell*, 549 U.S. at 467.

The first-to-file bar is also jurisdictional, even though § 3730(b)(5) does not make that explicit. *See Bowles v. Russell*, 551 U.S. 205, 209-10 (2007) (treating a statutory limitation as jurisdictional in accordance with precedent, even though the provision did not specify that it was jurisdictional). In ruling that Branch's allegations against State Farm and Allstate were barred under this rule, the Fifth Circuit specifically and repeatedly stated that the first-to-file bar is a jurisdictional limitation, and it treated this court's ruling as a dismissal for lack of subject matter jurisdiction. *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 376 (5th Cir. 2009). *See also Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 (10th Cir. 2004) (section 3730(b)(5) "is a jurisdictional limit on the courts' power to hear certain duplicative qui tam suits"); *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1186 (9th Cir. 2001) (dismissing later-filed *qui tam* action for lack of jurisdiction); *United States ex rel. Batiste v. SLM Corp.*, No. 08-425, 2010 WL 3786600 at *3 (D.D.C. Sept. 24, 2010) (same); *United States ex rel. Tillson v. Lockheed Martin Energy Systems, Inc.*, No.

15

5:00CV-39-M, 2004 WL 2403114 at *4 (W.D.Ky. Sept. 30, 2004)
("[c]ontrary to [relator's] argument, defenses based upon the
first-to-file rule and the public disclosure bar are challenges
to a court's subject matter jurisdiction"); *United States ex rel.
Ortega v. Columbia Healthcare, Inc.*, 240 F.Supp.2d 8, 11 n.3
(D.D.C. 2003) (every court that has been faced with the question
has held that § 3730(b)(5) is jurisdictional).

If the Court determines at any time that it lacks subject
matter jurisdiction, then it must dismiss the case.  Fed. R. Civ.
P. 12(h)(3).  As discussed *infra*, the Court reaches precisely
that conclusion here.

C.   *Significance of Amended Complaints*

Before applying the jurisdictional bars just described, the
Court must determine which complaint or complaints it should
consider.  The Second Amended Complaint represents Branch's third
complaint in this matter.  Since Branch filed its original
complaint on August 2, 2006, there have been a number of
important events in this case which, according to Branch, should
influence the Court's jurisdictional analysis.  First, the Second
Amended Complaint added a new inflated-revenue claim.  Branch
argues that it is an original source of that claim even if it is
not an original source of the loss-shifting claim.  *See Rockwell*,
549 U.S. at 476 (original source status determined on a claim-by-

16

claim basis).  Additionally, before it filed the First Amended
Complaint, Branch made two supplemental disclosures to the
government.  Branch argues that even if it was not an original
source at the time it filed its original complaint, it became an
original source because of these later disclosures.  Furthermore,
while the *Rigsby* case in Mississippi was pending against Allstate
at the time Branch filed its original complaint, Allstate has
since been voluntarily dismissed in *Rigsby*.  Branch argues that
the first-to-file bar of 31 U.S.C. § 3730(b)(5) applies only when
the first-filed action is still pending.  Because *Rigsby* was no
longer pending against Allstate at the time Branch filed the
Second Amended Complaint, Branch argues that it could once again
name Allstate and Pilot as defendants.  Each of these arguments
requires the Court to consider whether it can acquire
jurisdiction over this matter due to intervening events even if
it lacked jurisdiction when Branch filed the original complaint.

    i.  <u>Statutory Text</u>

    In making this determination, the Court must first look to
the language of the FCA's jurisdictional bars.  The first-to-file
bar and the original source exception to the public disclosure
bar refer specifically to jurisdictional facts that must exist
when an "action," not a complaint, is filed.  Under 31 U.S.C. §
3730(b)(5), a *qui tam* plaintiff may not "bring a related action

17

based on the facts underlying the pending action."  As the Seventh Circuit has noted, "[o]ne 'brings' an action by commencing suit."  *United States ex rel. Chovanec v. Apria Healthcare Group Inc.*, 606 F.3d 361, 362 (7th Cir. 2010). Further, in order to be an original source under 31 U.S.C. § 3730(e)(4)(B), a relator must provide the information on which the allegations are based to the government "before filing an action under this section which is based on the information." Both provisions appear to contemplate that certain requirements must be met at the time a *qui tam* action is filed.  The use of the term "action" in both provisions indicates that the Court should look to the jurisdictional facts that existed at the time the action was filed, as opposed to facts that existed when the relator later filed an amended complaint.

As the Third Circuit has noted, however, the FCA is based on the model of a single-count complaint, and it sometimes uses the term "action" when it likely means "claim."  *United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 101-02 (3d Cir. 2000).  For example, under § 3730(b)(2) and (4), the government may choose to "proceed with the action" or may "decline to take over the action," yet it is commonplace for the government to proceed with only certain claims and not with others.  *Id.* at 102.  But even if "action" can mean "claim" in some contexts, it is perfectly natural to read the first-to-file

bar and the original source provision as imposing certain
requirements that must be met at the time the suit begins.   If
Branch's action was barred under either of these provisions at
the time the original complaint was filed, the Court must dismiss
the case, notwithstanding any amendments.   To demonstrate this,
the Court will first look to broad principles of jurisdiction
before turning to the case law under the FCA.

ii.  General Jurisdictional Principles

     The notion that a court cannot proceed if it lacked
jurisdiction at the time the original complaint was filed is
consistent with the "time-of-filing rule," under which "the
jurisdiction of the Court depends upon the state of things at the
time of the action brought[.]"  *Mollan v. Torrance*, 22 U.S. 537,
539 (1824) (diversity jurisdiction exists if the parties are
diverse when the action was brought, even if diversity is not
maintained throughout the litigation); *see also Grupo Dataflux v.
Atlas Global Group, L.P.*, 541 U.S. 567, 574-75 (2004) (post-
filing change in a partnership's citizenship resulting from
withdrawal of two partners could not cure the defect in diversity
jurisdiction); *In re Katrina Canal Breaches Litigation*, 342
Fed.Appx. 928, 931 (5th Cir. 2009) (in the federal question
context, "while a plaintiff may amend a complaint to cure
inadequate jurisdictional allegations, amendment may not create

19

subject matter jurisdiction when none exists."); *Whitmire v. Victus Ltd.*, 212 F.3d 885, 888 (5th Cir. 2000) (an amendment may "remedy inadequate jurisdictional allegations," but it cannot remedy "defective jurisdictional facts"); *Pressroom Unions-Printers League Income Sec. Fund v. Continental Assur. Co.*, 700 F.2d 889, 893 (2d Cir. 1983) (amendment to add new plaintiff could not create jurisdiction under time-of-filing rule); 3 James Wm. Moore et al., Moore's Federal Practice § 15.14[3], at 15-34 (3d ed. 1999) ("Essentially, a plaintiff may correct the complaint to show that jurisdiction does in fact exist; however, if there is no federal jurisdiction, it may not be created by amendment.").

The general time-of-filing rule is not applied consistently, however, despite its long pedigree. For example, the Supreme Court recognized an exception in *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 827 (1989), to permit a court to acquire jurisdiction by dismissing a dispensable party whose presence spoils diversity. Further, the Fifth Circuit in *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1070 (5th Cir. 1981), allowed an amendment to "relate back" even though the court lacked jurisdiction over the claim in the original complaint. *See also ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 92-96 (1st Cir. 2008) (not applying time-of-filing rule when federal question was added by amendment as of right).

These cases do not counsel departure from the time-of-filing rule here.  First, the *Newman-Green* exception obviously has no application to this case.  Second, although the Fifth Circuit has admittedly made conflicting decisions which it has never reconciled, it has been clear in the FCA context.  Third, a review of the case law under the FCA, starting with the Supreme Court's decision in *Rockwell*, generally supports the time-of-filing rule.

### iii. <u>*Rockwell*</u>

The Supreme Court interpreted the False Claims Act at length in *Rockwell Intern. Corp. v. United States*, 549 U.S. 457 (2007). While the ruling focused on the original source provision, it also made broader jurisdictional statements that are relevant to the FCA as a whole.  In *Rockwell*, the relator brought a *qui tam* action relating to toxic waste disposal at a nuclear weapons plant.  The Supreme Court held that the relator was not an original source of new allegations in the amended complaint just because he was an original source of the allegations in the original complaint.  *Id.* at 473-74.  The Court concluded that the relator, "at a minimum," must be an original source of the claims in the amended complaint.  *Id.* at 473.  But the Court did not suggest that the original complaint becomes irrelevant for jurisdictional purposes once an amended complaint is filed.  To

the contrary, the Court stated that its holding was consistent with "[t]he rule that subject-matter jurisdiction 'depends on the state of things at the time of the action brought.'" *Id.* (quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)).  The Court went on to note: "The state of things and the originally alleged state of things are not synonymous; demonstration that the original allegations were false will defeat jurisdiction."  549 U.S. at 473.  For this proposition, *Rockwell* cited *Anderson v. Watts*, 138 U.S. 694 (1891) and *Morris v. Gilmer*, 129 U.S. 315 (1889).  In *Anderson*, two executors of an estate sued in diversity, but one executor destroyed diversity jurisdiction.  Although he revoked his own executorship, and the other executor amended to name only himself, there was no jurisdiction at the time of filing, so the case was dismissed.  138 U.S. at 708.  Likewise, in *Morris*, the court looked to the plaintiff's citizenship "at the commencement of this suit" to determine whether the court had diversity jurisdiction.  129 U.S. at 328.  *Anderson* and *Morris* are both diversity cases, but the Supreme Court did not hesitate to apply them in the FCA context.  These cases indicate that a court cannot proceed if it lacked jurisdiction at the time the initial complaint was filed.

*Rockwell* goes on to state that jurisdiction is also defeated if a plaintiff amends the complaint to withdraw the allegations upon which the court's jurisdiction is based, "unless they are

replaced by others that establish jurisdiction." 549 U.S. at 473. "Thus," *Rockwell* continues, "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Id.* at 473-74. *Rockwell*, and the cases it cites, make clear that a plaintiff can amend himself or herself out of jurisdiction by withdrawing allegations that appeared in the original complaint. *See Wellness Community-National v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995) (when original complaint alleged federal question and diversity jurisdiction but amended complaint alleged only diversity, court could only have jurisdiction *vel non* in diversity); *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (1985) (court lacked jurisdiction when plaintiff withdrew claims that originally provided jurisdiction). *Rockwell* also appears to acknowledge that a plaintiff may replace allegations over which the Court has jurisdiction with other allegations over which the Court also has jurisdiction. But *Rockwell* does not suggest that a plaintiff can establish jurisdiction by amendment when jurisdiction did not previously exist. Indeed, such a conclusion would be directly contrary to the Court's statement that "demonstration that the original allegations were false will defeat jurisdiction." 549 U.S. at

473.[10]

Further, at one point, the Court observed that limiting the original source requirement to the initial complaint "would leave the relator free to plead a trivial theory of fraud for which he had some direct and independent knowledge and later amend the complaint to include theories copied from the public domain or from materials in the Government's possession."  549 U.S. at 473. Even under a scenario in which a court lacks jurisdiction over claims added by amendment, *Rockwell* assumes that the relator would at least have direct and independent knowledge of the initial, trivial theory of fraud.  Nowhere does *Rockwell* say that a relator may qualify as an original source if he or she lacks such knowledge as to the original complaint.  An amended complaint may force a court to reevaluate its jurisdiction, as in *Rockwell*, but a court will not reach that question if it lacked

---

[10]     When this case reached the Fifth Circuit, the court noted in the background section of its opinion that its "focus is on the allegations in Branch's first amended complaint" and cited *Rockwell* for the proposition that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 375 n.5 (5th Cir. 2009) (citing *Rockwell*, 549 U.S. at 473-74).  The court did not, however, interpret *Rockwell* to hold that a court could acquire jurisdiction by amendment if it lacked jurisdiction at the time the relator originally brought the action.  The court simply was not faced with that issue.

24

jurisdiction from the beginning.[11]

iii. <u>Additional FCA and Related Cases</u>

In numerous FCA cases, the Fifth Circuit and other courts have applied the traditional time-of-filing rule and held that a court must have jurisdiction over the original *qui tam* complaint in order to proceed.  In *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 453 (5th Cir. 1995), for example, the Fifth Circuit held that a relator who was not an original source could not amend the complaint to add a new relator.  The court reached this conclusion by applying the general rule that a party may not "amend to create jurisdiction where none actually existed."  *Id.* (quoting *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 776 (5th Cir. 1986)).  Because the relator "lacked standing to prosecute a claim under the False Claims Act and . . . the district court never had jurisdiction over it," the case had to be dismissed. *Fed. Recovery Servs., Inc.*, 72 F.3d at 448.

---

[11]    In addition, the relator in *Rockwell* argued that even if he was not the original source of claims added by amendment, the government had intervened by the time of the amendment, providing an independent basis for jurisdiction.  The Court responded by stating: "Even assuming that [the relator] was an original source of allegations in his initial complaint, we reject [his] 'intervention' argument."  *Id.* at 477.  The Court did not have to reach the question of whether the relator was the original source of his initial complaint, because his "intervention" argument was flawed in any event.  Nonetheless, *Rockwell* makes clear that a court must have jurisdiction over the allegations in the original *qui tam* complaint in order to have jurisdiction going forward.

Another such case is *United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963 (9th Cir. 1999).  In *Newsham*, the Ninth Circuit looked to the original *qui tam* complaint, rather than the amended complaint, to determine whether the relator had stated claims over which it had subject matter jurisdiction.  *Id.* at 969.  In doing so, the court cited *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376 (9th Cir. 1988), which states: "In determining federal court jurisdiction, we look to the original, rather than to the amended, complaint.  Subject matter jurisdiction must exist as of the time the action is commenced." *Id.* at 1380.  *Newsham* ultimately determined that the court did have jurisdiction over some of the claims alleged in the original complaint.  190 F.3d at 969-970.  The court also ruled that the relator could amend the complaint to add factual details it obtained in discovery, *id.*, but those additional facts did not enter into the jurisdictional discussion.

Likewise, in the first-to-file context, the Tenth Circuit in *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276 (10th Cir. 2004), determined "whether § 3730(b)(5) barred [the relator's] qui tam action by looking at the facts as they existed at the time that action was brought." *Id.* at 1279.  In support of this approach, the Tenth Circuit quoted the Supreme Court's statement in *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957) (quoting *Mollan*

26

*v. Torrance*, 22 U.S. 537, 539 (1824)), that "the jurisdiction of the Court depends upon the state of things at the time of the action brought."  The Tenth Circuit followed the time-of-filing rule, found that a related action was pending at the time the original complaint was filed, and dismissed the case.  390 F.3d at 1279-80.

An analogous non-FCA case is *Summit Office Park, Inc. v. United States Steel Corp.*, 639 F.2d 1278 (5th Cir. Unit A Mar. 1981).  In that case, the plaintiff, an indirect purchaser of certain goods, had no standing to bring an antitrust action due to the intervening Supreme Court decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), which limited standing to direct purchasers.  639 F.2d at 1280.  The plaintiff then sought to amend the complaint to add direct purchasers as new plaintiffs and to change the cause of action in an attempt to conform to the intervening Supreme Court decision.  *Id.* at 1281.  The Fifth Circuit rejected the plaintiff's attempt to amend the complaint, holding that "where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action."  *Id.* at 1282.  Because the plaintiffs lacked standing, there was no proper party available to amend the complaint.  *Id.*  Rather, the case had to be dismissed, and new plaintiffs were free to file a

new action.  *Id.* at 1284.  The first-to-file and "original
source" rules are analogous to standing requirements, so *Summit
Office Park* is very relevant.  The Court may not acquire
jurisdiction by amendment when it lacked jurisdiction over the
original complaint, even if Branch could file a new action.

Additionally, there are a number of reasons why requiring
that the jurisdictional bars be satisfied at the time the action
is brought makes sense in the FCA context.  First, the pre-filing
disclosure requirement of § 3730(e)(4)(B) could not function if a
court could acquire jurisdiction over a *qui tam* complaint through
amendment.  If a court could gain jurisdiction over a *qui tam*
action by amendment, then a relator could neglect to inform the
government of the information upon which the allegations are
based before filing his or her action.  Instead, the relator
could provide that information to the government at a later time,
and then amend the complaint, even in a trivial fashion, to
ensure jurisdiction.  Such a procedure would make the statutory
language requiring disclosure to the government "before filing an
action" meaningless.  As discussed *infra*, courts have taken the
pre-filing disclosure requirement very seriously and have
dismissed relators who fail to meet it.  *See, e.g.*, *United States
v. Bank of Farmington*, 166 F.3d 853, 865-86 (7th Cir. 1999)*,
overruled on other grounds, Glaser v. Wound Care Consultants,
Inc.*, 570 F.3d 907 (7th Cir. 2009).  The Court will follow the

language of the statute and require disclosure before a relator files the action, not merely before amending the complaint.

Furthermore, while the first-to-file bar of 31 U.S.C. § 3730(b)(5) encourages relators to quickly report fraud about which they become aware, problems arise when a relator files without yet having direct and independent knowledge of the information underlying the allegations.  As discussed *infra*, the Fifth Circuit has held that even skeletal allegations can bar other actions under the first-to-file bar in at least some circumstances.  *See United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 379 (5th Cir. 2009).  It would be anomalous if a relator could secure a place in the jurisdictional queue with merely skeletal allegations, only to then file an amended complaint after actually becoming an original source, and thereby trump any meritorious, related actions that were filed in the meantime.  *Cf. United States ex rel. Ortega v. Columbia Healthcare, Inc.*, 240 F.Supp.2d 8, 14 (D.D.C. 2003) (amended complaint could not "relate back" to the date the original complaint was filed in order to jump ahead in line).  Such an approach would shut out deserving relators while rewarding those who bring actions without having direct and independent knowledge of their publicly disclosed allegations.  A relator, under this scenario, could secure first-to-file status before actually conducting the investigation that uncovers direct

and independent information about the fraud.  Requiring jurisdiction at the time the original complaint was filed allows a court to dismiss such an attempt, regardless of later amendments.

Finally, the time-of-filing rule has the advantage of simplicity.  The benefits of a clear-cut rule are apparent in this case, which involves multiple claims, complaints, and defendants, as well as other relators whose complaints have themselves been amended and involve multiple defendants.  *See United States ex rel Rigsby v. State Farm Ins. Co.*, No. 06-433 (S.D. Miss. 2006) (discussed *infra*); *United States ex rel Denenea v. Allstate Ins. Co.*, No. 07-2795 (E.D. La.); *United States ex rel Sonnier v. Allstate Ins. Co.*, No. 09-1038 (M.D. La.).  The Court's jurisdiction may expand or shrink as amendments are made to the complaint, but that jurisdiction must rest upon a solid foundation.  That foundation is the Court's jurisdiction over the original complaint.  Without it, the case cannot proceed.

In determining whether it had jurisdiction over the original complaint, the Court will proceed on a defendant-by-defendant basis.  *See United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371 (5th Cir. 2009) (applying first-to-file rule to defendants separately); *In re Katrina Canal Breaches Litigation*, 342 Fed.Appx. 928 (5th Cir. 2009) (considering jurisdiction over new claims in amended complaint on a defendant-

by-defendant basis).  The Court will consider the first-to-file
bar and then proceed to the public disclosure bar.


D.   *First-to-File Bar*

    i.   <u>Allstate</u>

    Whether there was jurisdiction over Branch's original
complaint against Allstate has already been decided by Judge Beer
and the Fifth Circuit.  *See Branch Consultants, L.L.C. v.
Allstate Ins. Co.*, No. 06-4091, 2007 WL 3118310 (E.D.La. Oct. 17,
2007), *aff'd in part and rev'd in part,* 560 F.3d 371 (5th Cir.
2009).  Allstate relies on the Fifth Circuit's decision to
contest the Court's jurisdiction over Branch's claims.

    After Branch sued Allstate in this litigation on August 2,
2006, Allstate challenged the Court's jurisdiction, asserting
that Branch's claims were barred by the first-to-file rule of 31
U.S.C. § 3730(b)(5).  In particular, Allstate asserted that the
complaint in *United States ex rel Rigsby v. State Farm Ins. Co.*,
No. 06-433 (S.D. Miss. 2006), which was filed before Branch's
original complaint,[12] trumped Branch's complaint and was a bar to
jurisdiction.

    In *Rigsby*, relators Cori and Kerri Rigsby brought suit in
the Southern District of Mississippi under the False Claims Act

---

    [12]   *Rigsby*, R. Doc. 2 (filed April 26, 2006).

against a number of insurance companies, including Allstate.[13]
Their allegations were similar, though not identical, to Branch's
allegations.  The *Rigsby* complaint specified two exemplar
properties in Mississippi, both of which were allegedly insured
by State Farm, a defendant in that case.

On October 17, 2007, Judge Beer dismissed all of the
defendants in this case, including Allstate, on first-to-file
grounds.  *Branch Consultants, L.L.C. v. Allstate Ins. Co.*, No.
06-4091, 2007 WL 3118310 (E.D.La. Oct. 17, 2007).  Branch
appealed that decision.  In the meantime, on March 5, 2008, the
relators in *Rigsby* moved to dismiss their claims against Allstate
without prejudice.[14]  The *Rigsby* court granted that motion on
June 20, 2008.[15]

On appeal, the Fifth Circuit dispositively ruled that the
*Rigsby* complaint barred Branch's later-filed complaint against
Allstate and State Farm and that there was no jurisdiction over
Branch's allegations against those two companies.  *United States
ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371
(5th Cir. 2009).  First, the court ruled that Branch's
allegations against State Farm were barred because they were
based on the same "essential facts" as *Rigsby*.  *Id.* at 378.

---

[13]     *Rigsby*, R. Doc. 2.

[14]     *Rigsby*, R. Doc. 58.

[15]     *Rigsby*, R. Doc. 192.

Branch could not avoid the first-to-file bar by focusing on
additional instances of fraud occurring in different geographic
locations.  *Id.*  The could also rejected Branch's argument that
*Rigsby* does not constitute a first-filed action under §
3730(b)(5) because it does not meet the Fed. R. Civ. P. 9(b)
requirement that fraud must be pleaded with particularity,
holding: "The sufficiency of the *Rigsby* complaint under Rule 9(b)
is a matter for that court to decide in the first instance.
Having alleged at least some detail as to State Farm, we hold
that the *Rigsby* complaint is a 'first-filed' complaint as to
State Farm."  *Id.* at 378 n.10.

The Fifth Circuit then upheld the dismissal of Allstate.
The court's ruling as to Allstate, in full, is as follows:

> For this same reason [as the ruling regarding State Farm],
> we affirm the dismissal of Allstate, named in the *Rigsby*
> complaint.  We recognize that only skeletal allegations are
> raised against Allstate in that case.  We express no opinion
> on the as-yet-unpresented question of whether a dismissal
> for lack of any factual basis or on Rule 9(b) grounds in the
> *Rigsby* case would then permit a suit by Branch or any other
> person with knowledge of facts from suing Allstate without
> facing the first-to-file bar.  In other words, if the
> "first-filed" case is essentially a sham, does it continue
> to be "first" after the court in that case dismisses it?
> The answer to that question should await a case in which it
> is squarely presented.

*Id.* at 379.  The Rigsbys' allegations against Allstate were
indeed skeletal.  The only two exemplar properties specified in
the *Rigsby* complaint were allegedly insured by State Farm.[16]

---

[16]     *Rigsby*, R. Doc. 2, ¶41-53.

Nonetheless, the court ruled that the first-to-file bar applied to Branch's claims against Allstate.  Moreover, the Fifth Circuit was apprised that the Rigsbys had voluntarily dismissed Allstate after Judge Beer's ruling,[17] but the Fifth Circuit nonetheless held that the jurisdictional bar applied.

Branch has not demonstrated that these final jurisdictional rulings do not settle the issue of whether there was jurisdiction over its original complaint against Allstate.  Indeed, a final district court decision, affirmed on appeal, that there was no jurisdiction over Branch's complaint against Allstate, is *res judicata* and cannot be reconsidered by this Court.  "The principles of res judicata apply to questions of jurisdiction as well as to other issues."  *American Surety Co. v. Baldwin*, 287 U.S. 156, 166 (1932).  It is true that a dismissal for lack of subject matter jurisdiction is ordinarily not an adjudication on the merits.  *See* Fed. R. Civ. P. 41(b).  But the judgment of dismissal remains effective to "preclude relitigation of the precise issue of jurisdiction" that led to the dismissal.  18A Wright & Miller, Fed. Prac. & Proc. Juris. § 4436 (2d ed.); *see also Equitable Trust Co. v. Commodity Futures Trading Commission*,

---

[17]    Original Brief of Plaintiff-Appellant at 36, *Branch Consultants, L.L.C. ex rel. United States v. Allstate Insurance Company, et al.*, 560 F.3d 371 (2009) (No. 07-31191), 2008 WL 6082655; Transcript of Oral Argument at 3, *Branch Consultants, L.L.C. ex rel. United States v. Allstate Insurance Company, et al.*, 560 F.3d 371 (2009) (No. 07-31191).

669 F.2d 269, 272 (5th Cir. 1982) (quoting *Segal v. American Telephone & Telegraph Co.*, 606 F.2d 842, 845 (9th Cir. 1979)) (dismissal for lack of subject matter jurisdiction is conclusive as to matters that were "actually litigated and necessarily decided by a valid and final judgment between the parties").

"The test for *res judicata* has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004). Each of these elements is satisfied in this case. First, the parties are identical. Second, the earlier judgment was rendered by a court of competent jurisdiction, as a court has jurisdiction to determine its own jurisdiction. *Martin v. Halliburton*, 618 F.3d 476, 481 (5th Cir. 2010). Third, Judge Beer's judgment dismissing all of the parties was a final judgment,[18] and the Fifth Circuit affirmed that judgment as to Allstate. Fourth, the jurisdictional question is the same - whether jurisdiction over Branch's original complaint against Allstate was barred by the first-filed *Rigsby* action.

For much the same reason, the doctrine of collateral

---

[18]   R. Doc. 192.

estoppel forecloses this Court from reexamining whether there was
jurisdiction when Branch initially sued Allstate.  Collateral
estoppel bars relitigation of an issue when "(1) the issue at
stake is identical to the one involved in the earlier action; (2)
the issue was actually litigated in the prior action; and (3) the
determination of the issue in the prior action was a necessary
part of the judgment in that action."  *Petro-Hunt*, 365 F.3d at
397.  The earlier decision clearly held that the first-to-file
rule barred Branch's original complaint against Allstate.

Furthermore, collateral estoppel extends to issues that must
have been implicitly decided in the prior ruling, though not
explicitly addressed.  *See Yamaha Corp. of America v. United
States*, 961 F.2d 245, 256 (D.C. Cir. 1992).  Although the Fifth
Circuit did not explicitly discuss Allstate's voluntary dismissal
in *Rigsby*, it was well aware of that dismissal and Branch's
arguments about its effects.  The Fifth Circuit implicitly but
necessarily decided that *Rigsby* nonetheless barred Branch's
related action.  Indeed, the Fifth Circuit could not simply
overlook this jurisdictional question.  "[E]very federal
appellate court has a special obligation to 'satisfy itself not
only of its own jurisdiction, but also that of the lower courts
in a cause under review,' even though the parties are prepared to
concede it."  *Bender v. Williamsport Area School Dist.*, 475 U.S.
534, 541 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244

(1934)).  In fulfilling that obligation, appellate courts may have to look to facts that were not available at the time the district court made its jurisdictional determination.  *See, e.g.*, *United States v. Moreno-Morillo*, 334 F.3d 819, 830-31 (9th Cir. 2003) (concluding that there was subject matter jurisdiction on the basis of evidence that existed, but was not before the district court, when the district court made its jurisdictional ruling).  If Allstate's voluntary dismissal in *Rigsby* somehow restored jurisdiction over Branch's claims against Allstate, the Fifth Circuit would have said as much.

Instead, the Fifth Circuit implicitly held that the voluntary dismissal of a first-filed case does not give the Court jurisdiction over a pending, later-filed action.  This holding is consistent with the general rule that a court must have jurisdiction as of the time the original complaint is filed.  It is also consistent with the case law interpreting § 3730(b)(5).  For example, in *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1188 (9th Cir. 2001), a first-filed complaint that was pending at the time the relator brought suit barred the relator's action, even though the first-filed complaint had since been dismissed.  Furthermore, in *United States ex rel. Chovanec v. Apria Healthcare Group Inc.*, 606 F.3d 361 (7th Cir. 2010), the relator brought her action at a time when two other related *qui tam* actions against the defendant were pending.  After the

37

district court dismissed Chovanec's complaint on § 3730(b)(5) grounds, the parties settled the earlier-filed actions.  The Seventh Circuit ruled that the bar against Chovanec's claims remained in effect because the earlier-filed actions had been pending at the time she brought her action.  *Id.* at 362.  The court dismissed Chovanec's complaint without prejudice, but noted that her ability to file a new suit could be impeded by *res judicata*, collateral estoppel, or the public disclosure bar.  *Id.* at 365.  Like Lujan and Chovanec, Branch brought its action against Allstate when a related action was pending, so it is barred by § 3730(b)(5).

The upshot of Branch's argument in favor of jurisdiction is to point out that the Rigsbys' case against Allstate was voluntarily dismissed before Branch filed its amended complaint against Allstate and that the Fifth Circuit has left open the effect of a later-filed suit when the first case is dismissed as a sham.  Branch cannot argue that the voluntary dismissal of Allstate cured the jurisdictional flaw in its original complaint because, as noted, the Fifth Circuit knew of the voluntary dismissal and nonetheless held that there was no jurisdiction. Further, Branch cannot argue that the dismissal frees it to rename Allstate by amendment because the Court cannot have jurisdiction over an amended complaint if it did not have jurisdiction when the original complaint was filed.  Furthermore,

the Fifth Circuit's dictum about what it was not deciding does not solve Branch's jurisdictional dilemma.  The Fifth Circuit simply said that it was not deciding an issue that had not presented itself, *i.e.*, the effect on a later action when the court in the first-filed action decides that the *qui tam* action is "essentially a sham."  *Id.* at 379.  That scenario not only did not occur, but it also could not occur in this case.

Because it has been conclusively determined that there was no jurisdiction over Branch's original complaint against Allstate, there is no jurisdiction over Branch's amended complaint against Allstate.  Thus, Branch's claims against Allstate must be dismissed.

ii.  <u>Pilot</u>

Pilot argues that if Branch's allegations against Allstate are dismissed under the first-to-file rule, then the allegations against Pilot should also be dismissed for the same reason. Pilot, however, was not named in *Rigsby*, and Branch argues that the Fifth Circuit has dispositively ruled that the allegations against Pilot are not barred under § 3730(b)(5).  There is no need to resolve this dispute, because the Court lacks jurisdiction over Branch's claims against Pilot on other grounds. In particular, Branch is not an original source of its allegations against Pilot because it failed to disclose any

39

specific information about Pilot to the government before filing
this action, as discussed *infra*.


E.   *The Pre-Filing Disclosure Requirement*

     Defendants contend that Branch is not an original source of
its allegations, and that the Court therefore lacks jurisdiction
under the public disclosure bar, because Branch failed to meet
the pre-filing disclosure requirement.  Again, the FCA defines an
original source as

> an individual who has direct and independent knowledge of
> the information on which the allegations are based and has
> voluntarily provided the information to the Government
> before filing an action under this section which is based on
> the information.

*Id*. § 3730(e)(4)(B).  Under this provision, a relator must meet a
"two-part test: (1) the relator must demonstrate that he or she
has direct and independent knowledge of the information on which
the allegations are based and (2) the relator must demonstrate
that he or she has voluntarily provided the information to the
Government before filing his or her qui tam action." *United
States ex rel. Reagan v. East Texas Medical Center Regional
Healthcare System*, 384 F.3d 168, 177 (5th Cir. 2004).  A relator
who does not meet the second part of this test is not considered
a "source" of information to the government for original source
purposes.  *United States ex rel. King v. Hillcrest Health Center,
Inc.*, 264 F.3d 1271, 1280-81 (10th Cir. 2001); *United States v.*

*Bank of Farmington*, 166 F.3d 853, 865-86 (7th Cir. 1999),
*overruled on other grounds, Glaser v. Wound Care Consultants,
Inc.*, 570 F.3d 907 (7th Cir. 2009).  As this Court has noted, it
is "undisputed" that a relator must voluntarily provide the
information underlying its allegations to the government before
filing suit.  *United States ex rel. Branch Consultants, L.L.C. v.
Allstate Ins. Co.*, 668 F.Supp.2d 780, 802 (E.D.La. 2009); *see
also Bank of Farmington*, 166 F.3d at 866 (dismissing case because
relator did not meet this requirement); *United States ex rel.
Grant v. Rush-Presbyterian/St. Luke's Medical Center*, No. 99-
06313, 2001 WL 40807 (N.D.Ill. Jan. 16, 2001) (same).  The pre-
filing disclosure requirement is distinct from the requirement of
§ 3730(b)(2) that the relator serve the government with "[a] copy
of the complaint and written disclosure of substantially all
material evidence and information the person possesses[.]"  *King*,
264 F.3d at 1280; *Bank of Farmington*, 166 F.3d at 866; *Grant*,
2001 WL 40807 at *5.

In this case, Branch made its first disclosure to the
government on August 2, 2006, the same day it filed the original
complaint.[19]  Branch's attorney Allan Kanner asserts that he did
not file the complaint until after he discussed the allegations
with Assistant U.S. Attorney Sharon Smith, provided her with a
copy of the complaint and written disclosure statement, and

---

[19]     R. Doc. 686-3, Ex. A.

received confirmation that a copy of the complaint and the
disclosure statement had been delivered to the Department of
Justice in Washington.[20]  Defendants argue that Branch's
disclosure is insufficient under 31 U.S.C. § 3730(e)(4)(B)
because it was made the same day the complaint was filed, but the
Court does not need to reach that issue.  Rather, the Court will
consider whether the contents of Branch's disclosures are
sufficient.

Under 31 U.S.C. § 3730(e)(4)(B), "the information" that the
relator must provide to the government before filing is "the
information on which the allegations are based," about which the
relator must have "direct and independent knowledge."  This
implies that the relator must disclose to the government the
information it relies upon in asserting that it is an original
source.  In *In re Natural Gas Royalties*, 562 F.3d 1032 (10th Cir.
2009), the Tenth Circuit reasoned that allowing a relator to
disclose only a minimal amount of information to the government,
while holding back the information about which it has direct and
independent knowledge, would "hamper the government's ability to
investigate the fraud and would provide no incentive for
individuals to come forward quickly with all relevant information
in their possession."  *Id.* at 1044; *see also King*, 264 F.3d at
1280-81 (quoting *Bank of Farmington*, 166 F.3d at 866) (pre-filing

---

[20]    R. Doc. 793-1.

disclosure requirement "discourage[s] persons with relevant information from remaining silent."). The court in *Natural Gas Royalties* therefore concluded that in establishing his status as an original source, the relator could not rely on information that was not contained in the pre-filing disclosure. 562 F.3d at 1044. This conclusion is consistent with both the text of § 3730(e)(4)(B) and the policies underlying the statute.

Thus, Branch must demonstrate that the information contained in its pre-filing disclosure is sufficient to make it an original source. To be an original source, a relator's knowledge of the information underlying its allegations must be both direct and independent. A relator's knowledge is "direct" when it "derive[s] from the source without interruption or [is gained] by the relator's own efforts rather than learned second-hand through the efforts of others." *United States ex rel. Reagan v. East Texas Medical Center Regional Healthcare System*, 384 F.3d 168, 177 (5th Cir. 2004) (quoting *United States ex rel. Laird v. Lockheed Martin Engineering and Science Services Co.*, 336 F.3d 346, 355 (5th Cir. 2003)). A relator's knowledge is "independent" if it is not derived from the public disclosure. *Reagan*, 384 F.3d at 177.

In making its original source showing, Branch cannot rely on the two supplemental disclosures it made to the government after filing the original complaint but before filing the First Amended

43

Complaint.[21]  Because the Court cannot acquire jurisdiction
because of changed jurisdictional facts, as discussed *supra*, the
Court must look to the disclosures Branch made before it filed
suit.  *See United States ex rel. Duxbury v. Ortho Biotech
Products, L.P.*, 579 F.3d 13, 28 (1st Cir. 2009) (relator was
required to disclose the information underlying his allegations
before filing the original complaint, not the amended complaint).
Although Branch made its first supplemental disclosure when the
complaint was still under seal, and filed the First Amended
Complaint as of right, it could not have satisfied the "before
filing" language by making disclosures after filing the action.
The Supreme Court has strictly enforced similar provisions.  In
*Hallstrom v. Tillamook County*, 493 U.S. 20, 26 (1989), the Court
ruled that the plaintiff failed to meet a requirement of the
Resource Conservation and Recovery Act of 1976, 42 U.S.C. §
6972(b)(1), that it inform the government of its intent to sue at
least 60 days before initiating suit.  Further, the Court held
that the case could not be salvaged by staying it for 60 days,
even if a such stay would result in the "functional equivalent"
of proper disclosure, because that is simply not what the statute
requires.  *Id.*  Similarly, in *McNeil v. United States*, 508 U.S.
106, 113 (1993), the Court dismissed the case when the plaintiff
failed to meet the Federal Tort Claims Act's requirement, 28

---

[21]     R. Docs. 692-2, 692-3.

U.S.C. § 2675(a), that a plaintiff exhaust administrative remedies before instituting an action.  The case had to be dismissed even when the plaintiff later exhausted those remedies before substantial progress was made in the litigation.  *Id.* Likewise, the pre-filing disclosure requirement mandates disclosure before filing the action, and post-filing activity cannot suffice to meet the requirement.  If Branch was not an original source at the time it filed the original complaint because it had not adequately disclosed its allegations to the government, this Court lacks jurisdiction.

Branch's original disclosure was insufficient as to Standard Fire, Liberty Mutual, SIMSOL, and Pilot.[22]  Although Pilot did not raise this issue, the Court must consider its subject matter jurisdiction *sua sponte*.  *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 467 (5th Cir. 2009).  Furthermore, the Court specifically ordered Branch to defend the adequacy of its pre-suit disclosures to the government as to all of the defendants.[23]  Branch was thus on notice that the Court was considering this issue as to every defendant.

Branch's original written disclosure contains absolutely no specific information as to Standard Fire, Liberty Mutual, SIMSOL, or Pilot.  Branch names these defendants in the document's title

---

[22]   R. Doc. 686-3, Ex. A.

[23]   R. Doc. 693.

45

but does not specifically discuss them in the body of the document.[24]   Crucially, Branch's disclosure does not list any specific properties that were insured or adjusted by these defendants.[25]   The Court ruled in October of 2009 that Branch had pleaded facts that established direct and independent knowledge of its allegations, but this ruling was entirely based on the property examinations that Branch described in the complaint. *United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 668 F. Supp. 2d 780, 797-98 (E.D. La. 2009).   The Court noted that Branch's examinations of Katrina-affected properties revealed "a host of 'additional compelling facts' about the alleged fraud."   *Id.* at 800 (quoting *Reagan*, 384 F.3d at 179). Those facts comprise "qualitatively different information than what had already been discovered."   *Id.* (quoting *Fed. Recovery Servs.*, 72 F.3d at 452).   That information consists of "specific properties, specific perpetrators, and specific amounts" of insurance paid and actual damage caused by flooding versus wind. *Id.* at 798.   Branch's original disclosure completely fails to include this information as to Standard Fire, Liberty Mutual,

---

[24]     Specifically, the title of the document names St. Paul Travelers Cos., a company related to Standard Fire.

[25]     Even if Branch's original complaint, which was communicated along with the written disclosure statement, could be considered a disclosure under § 3730(e)(4)(B), that complaint also fails to list exemplar properties for Standard Fire, Liberty Mutual, and Pilot.   R. Doc. 1.

Pilot, or SIMSOL.  The written disclosure does assert that all of
the defendants engaged in loss-shifting fraud, but those
assertions are of the same general nature as the public
disclosures discussed at length in the Court's previous opinion
in this matter.  *Branch*, 668 F. Supp. 2d at 788-95.  Such general
information does not reveal "additional compelling facts,"
*Reagan*, 384 F.3d at 179, nor does it constitute "quantitatively
different information" from what was already publicly disclosed.
*Fed. Recovery Servs.*, 72 F.3d at 452.  Those general statements
do not suffice to make Branch an original source as to those
defendants.

Branch also stated in the disclosure that it had additional
examples of fraud in its files and that the government was
welcome to review those files.  These assertions do not render
Branch's disclosure adequate.  The original source provision
imposes disclosure requirements on the relator, and the
government was under no obligation to comb through Branch's files
to obtain the information upon which Branch's allegations are
based.  *See King*, 264 F.3d at 1281 (relator's attorney's offer to
make his client available for interview did not constitute
disclosure for original source purposes).  Rather, it was
Branch's responsibility to meet its jurisdictional obligations.

Thus, Branch's original written disclosure was plainly
inadequate as to Standard Fire, Liberty Mutual, SIMSOL, and

47

Pilot.  Branch's attorney Allan Kanner also asserts that he spoke with Assistant U.S. Attorney Sharon Stone on the morning of August 2, 2006, before filing the original complaint.[26]  Assuming that an oral disclosure may be sufficient under § 3730(e)(4)(B), *see United States ex rel. Ackley v. International Business Machines Corp.*, 76 F.Supp.2d 654, 667 (D.Md. 1999), Branch has failed to meet its burden of proving that Allan Kanner disclosed sufficient information for Branch to be considered an original source as to these defendants.  Kanner's summary of this conversation is general in nature and does not identify which specific defendants and exemplar properties, if any, were discussed.[27]  Further, Kanner acknowledges that the written disclosure statements cover "most if not all" of the information he shared with Smith.[28]  As discussed, those written statements are inadequate as to Standard Fire, Liberty Mutual, SIMSOL, and Pilot.  Branch has failed to demonstrate that it adequately disclosed its allegations as to these defendants to the government, either orally or in writing, before it filed the original complaint.  Thus, Branch's claims against Standard Fire, Liberty Mutual, SIMSOL, and Pilot must be dismissed.

     Branch's claims against Colonial must also be dismissed

_____

[26]   R. Doc. 793-1.

[27]   *Id.* at ¶5.

[28]   *Id.* at ¶5(c).

under the pre-filing disclosure rule.  Branch did not name
Colonial as a defendant in its original complaint, but added
Colonial in the First Amended Complaint.[29]  Thus, as to Colonial,
Branch can rely on the supplemental disclosures it made to the
government before filing the First Amended Complaint.  Branch's
first two written disclosures to the government do not mention
Colonial at all.[30]  Branch's third disclosure names Colonial in
the title of the document but does not specify any exemplar
properties associated with Colonial or otherwise mention Colonial
in the body of the document.[31]  Nor does Branch indicate that it
made specific oral disclosure about Colonial to the government.
Thus, Branch failed to meet the pre-filing disclosure requirement
of § 3730(e)(4)(B) as to Colonial, and its claims against
Colonial are dismissed.

Fidelity and ANPAC also argue that Branch's pre-filing
disclosures were inadequate as to the claims against them, but
the original written disclosure contains at least some specific
information as to these defendants.  The Court need not resolve
whether that information is sufficient, because Branch is not an
original source of its loss-shifting claim against Fidelity and
ANPAC for other reasons, as discussed *infra*.

---

[29]    R. Doc. 49.

[30]    R. Docs. 686-3, 692-2.

[31]    R. Doc. 692-3.

F.   *Branch's Original Source Status as to the Loss-Shifting Claim*

Branch's original complaint states only a loss-shifting claim, under which the defendants allegedly mischaracterized wind damage as flood damage in order to avoid paying wind losses to homeowners.  If the Court lacks jurisdiction over the loss-shifting claim, it cannot exercise jurisdiction over the inflated-revenue claim that was added in the Second Amended Complaint, as discussed *supra*.[32]  The Court has jurisdiction over the loss-shifting claim only if Branch is an original source of those allegations under 31 U.S.C. § 3730(e)(4)(B).  In their motions for summary judgment, defendants argue that the loss-shifting allegations are impossible, and that Branch is not an original source of those allegations, because they did not write or adjust both wind and flood policies for any of the exemplar properties.  The Court will consider these arguments as they relate to the remaining defendants - Fidelity, American Reliable, and ANPAC.


i.   Fidelity

In its original complaint, Branch alleged that Fidelity

---

[32]     *See also United States ex rel. Ackley v. International Business Machines Corp.*, 76 F.Supp.2d 654, 659 (D.Md. 1999) (in *qui tam* action with ongoing discovery, initial complaint is the most reliable evidence of whether the relator is an original source).

overstated flood damage to two insured properties.[33]  For each

property, Branch alleged that the flood damage was incidental to

the damage caused by wind and wind-driven rain.

Branch now admits, however, that Fidelity did not issue wind

policies for any of the exemplar properties.[34]  This admission is

fatal to Branch's loss-shifting claim against Fidelity.  As the

Court has previously observed, the loss-shifting claim

> requires the WYO insurer to have a wind policy on the
> property that it fraudulently adjusted.  Only when an
> insurer has a wind policy on a particular property may it
> "pass off" its loss by understating the wind damage for
> which it is responsible and exaggerating the flood damage
> for which the government is responsible.  Its incentive
> under this theory is to minimize its own losses and shift
> them to the government.[35]

Branch's contention that it "never alleged that Fidelity

issued the homeowners' policies on the [exemplar] properties"[36]

is plainly disingenuous.  The entire theory of Branch's original

complaint is that the defendants shifted losses from wind to

flood in order to avoid making payments under the wind policies

they allegedly wrote.  For example, in the original complaint,

Branch asserts that "defendants defrauded NFIP by misattributing

---

[33]    R. Doc. 1.  The Court's analysis of the loss-shifting
scheme would be unchanged if it were to look to the First Amended
Complaint or the Second Amended Complaint rather than the
original complaint.

[34]    R. Doc. 631, Ex. 2, No. 1.

[35]    R. Doc. 615 at 9.

[36]    R. Doc. 631, Ex. 2, No. 3.

wind damage and other non-flood losses to the flood policies underwritten by the Government rather than correctly attributing such losses to causes that are covered by their homeowners policies."[37]  Similarly, the original complaint alleges that defendants overstated flood losses and "substantially underpaid for the damage that should have been attributed to wind (underwritten by defendants) on these same claims."[38]  Branch clearly alleged in the original complaint that the defendants, including Fidelity, wrote both wind and flood policies for the exemplar properties.

Branch now admits, however, that Fidelity did not issue both wind and flood policies for the exemplar properties.  Branch argues that "the inflated flood adjustments on the Properties necessarily facilitated underpayments on the wind/homeowners policies on the Properties,"[39] but there is no indication that Fidelity was obliged to cover the losses on those wind/homeowners policies.  Branch has not demonstrated that Fidelity had any incentive to shift other insurers' losses to the government.  The purported exemplars simply do not support Branch's loss-shifting claim against Fidelity.  Branch also argues that it requires more discovery as to its loss-shifting claim before the Court can

---

[37]    R. Doc. 1, §17.

[38]    *Id.* at §20.

[39]    R. Doc. 631, Ex. 2, No. 6.

properly rule on Fidelity's motion, but it has not shown that further discovery will influence this determination. *See Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quoting *C.B. Trucking, Inc. v. Waste Management Inc.*, 137 F.3d 41, 44 (1st Cir. 1998)) (litigant must "set forth a plausible basis for believing that specified facts" that would influence the outcome of the motion "probably exist"). Because Branch admits that Fidelity did not issue both wind and flood policies for any of the exemplar properties, the loss-shifting claim with regard to these properties is fatally flawed.

Without the exemplar properties, Branch cannot be considered an original source of the loss-shifting scheme alleged in the original complaint. The Court's ruling that Branch is an original source as to the loss-shifting scheme was based upon the examples of fraud Branch set out in its complaint. Specifically, the Court held:

> Branch's allegation that defendants engaged in a far-ranging scheme is a natural extension of the specific information asserted in its complaint. Assuming that Branch's allegations are true, the presence of a large number of fraudulent adjustments suggests that there are many more examples of the same conduct — a "scheme," even — that are not listed in the complaint. And because Branch's allegation of a scheme is thus based upon the information about the exemplar properties, it would appear that Branch could be considered the original source of the entire loss-shifting scheme and that the Court is not divested of jurisdiction.[40]

---

[40]   R. Doc. 615 at 38.

It is now evident, however, that Branch's information about the exemplar properties does not add up to loss-shifting fraud. Without the exemplars, Branch is left with the same kind of general allegations of loss-shifting fraud as the allegations contained in numerous public disclosures. *See Branch Consultants*, 668 F.Supp.2d at 788-95, 798 (describing public disclosures). The information Branch collected cannot constitute "additional compelling facts" about the alleged loss-shifting fraud when the properties it examined are clearly not examples of such fraud. *Id.* at 800 (quoting *United States ex rel. Reagan v. East Texas Medical Center Regional Healthcare System*, 384 F.3d 168, 179 (5th Cir. 2004)). Thus, Branch cannot be considered an original source of the loss-shifting scheme it alleges.

The Supreme Court's decision in *Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007), supports this conclusion. In *Rockwell*, a relator alleged that his former employer had submitted false claims to the government arising out of its operation of a nuclear weapons plant. The compensation that the government paid to the plant was partially dependent on its environmental and safety record. *Id.* at 460. As part of its operations, the plant created and stored blocks of toxic pond sludge dubbed "pondcrete." The relator predicted that flaws in a certain piping system used to manufacture the blocks would cause them to disintegrate. *Id.* at 461. After the relator was laid

54

off, the plant discovered that many of the blocks were only partially solid, but concealed that environmental violation from the government. *Id.* The relator later acknowledged that the piping system could produce solid pondcrete and was not defective, but he alleged that a reduction of the cement-to-sludge ratio caused the insolidity problem. *Id.* at 476. Although he did not have direct and independent information supporting his new theory, the relator argued that he was nonetheless an original source based on his information about the "piping system" theory. The Court concluded that the relator's "failed prediction" did not constitute direct and independent knowledge of the information upon which his allegations were based. *Id.* The relator therefore was not an original source. Similarly, in the present case, the information upon which Branch's loss-shifting allegations are based is inaccurate, according to Branch's own admissions. Branch's information about the exemplar properties does not support its loss-shifting claim, just as the *Rockwell* relator's prediction concerning the piping system did not support a pondcrete-related claim. Branch therefore is not an original source of its loss-shifting claim.

The Fourth Circuit's decision in *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337 (4th Cir. 2009), also supports the conclusion that Branch is not an original source of the broader loss-shifting scheme. Vuyyuru alleged that the

55

defendants fraudulently billed the government under Medicare and Medicaid for unnecessary or incomplete procedures. *Id.* at 341. The single patient whom the relator identified by name, however, was not eligible for Medicare or other federal health-assistance programs. Thus, the relator was not an original source of the information upon which his allegations were based. *Id.* at 353. The Fourth Circuit concluded that the relator's "mere suspicion that there must be a false or fraudulent claim lurking around somewhere simply does not carry his burden of proving that he is entitled to original source status." *Id.* In *Vuyyuru*, as in the present case, the only exemplar or exemplars have been disproved, and the relator cannot be considered an original source as to a broader scheme based on mere suspicion or public information.

Because none of Branch's purported examples actually supports its loss-shifting claim, it cannot be considered an original source as to that claim. Branch argues that Fidelity had an incentive to inflate flood losses in order to receive increased fees, but that allegation appeared nowhere in the original complaint. Branch also asserts that Fidelity did issue some wind policies in Louisiana that were in force at the time of Hurricane Katrina. But on summary judgment, Branch must demonstrate that there is a genuine issue of material fact, not merely that its allegations are possible. Branch has not provided any evidence that Fidelity issued both the wind and

flood policies for any properties affected by Hurricane Katrina,
much less that it shifted losses with regard to any such
properties.  Branch's argument that Fidelity may have nonetheless
engaged in loss-shifting is precisely the sort of speculation
that, according to the Fourth Circuit in *Vuyyuru*, does not make a
relator an original source.

Branch's argument that it requires more discovery on the
broader loss-shifting scheme is also unavailing.  None of the
discovery Branch seeks would be relevant to establish that it is
an original source of that broader scheme.  Indeed, the facts
supporting Branch's purported original source status should be
within its own control and should not require discovery.  *See*
*Vuyyuru*, 555 F.3d at 355 (relator did not identify evidence it
might have obtained in discovery relevant to its original source
status, and "such information should be within [the relator's]
own custody and control"); *United States ex rel. Coppock v.*
*Northrop Grumman Corp.*, No. 3:98-cv-2143-D, 2003 WL 22171707 at
*4 (N.D.Tex. Mar. 6, 2003) (same).

Thus, Branch is not an original source of its loss-shifting
claim against Fidelity.  Because the loss-shifting claim is the
only claim stated in the original complaint, the Court lacks
jurisdiction over that complaint, and Branch's claims against

Fidelity must be dismissed.[41]


ii.  <u>American Reliable</u>

As it does with Fidelity, Branch admits that American
Reliable did not insure any of the exemplar properties against
wind damage.[42]  Branch argues that American Reliable had a
separate motivation to understate wind damages to the exemplar
properties.  According to Branch's president Max Johnson,
Louisiana Citizens issued wind policies for the three exemplar
properties.[43]  Branch argues, without explanation, that
"Louisiana Citizens can and did levy assessments on companies
such as [American Reliable] for its deficiencies in paying
Hurricane Katrina wind claims."[44]  Branch also argues that it is

_____

[41]     While the Court has already dismissed Standard Fire,
Liberty Mutual, SIMSOL, and Colonial due to the inadequacy of
Branch's pre-filing disclosure to the government, it is worth
noting that Branch has also admitted that Standard Fire did not
issue both the wind and flood policies for any of its exemplars
(R. Doc. 631, Ex. 1, No. 3), and that Liberty Mutual did not
issue the wind policy for one of its two exemplars (R. Doc. 631,
Ex. 4, No. 1).  Further, Branch does not dispute that SIMSOL
adjusted only the flood policy, not the wind policy, for the
relevant exemplar property.  (R. Doc. 570, Ex. A; R. Doc. 631,
Ex. 5, Nos. 3 and 7.).  Additionally, Branch alleges that
Fidelity wrote the policies for the Colonial exemplar properties,
but as discussed, Fidelity did not write both the wind and flood
policies for any of those properties.

[42]     R. Doc. 541, Ex. 14.

[43]     R. Doc. 541, Ex. 13.

[44]     R. Doc. 541 at 8.

entitled to discovery regarding any assessments that Louisiana Citizens may have levied against American Reliable.

Branch's assertion that American Reliable understated wind damages in order to avoid assessments by Louisiana Citizens states a new theory of fraud that does not appear in original complaint.  As Magistrate Judge Shushan ruled, "[t]he allegation that the Insurer Defendants had an incentive to shift wind losses from Citizens to flood claims to avoid assessments by Citizens is not part of the loss-shifting scheme described in the [complaint]."[45]  Therefore, Branch's "Louisiana Citizens claim" is not properly before the Court.  *See Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990) (claim not alleged in complaint but raised in response to defendants' motions for summary judgment was not properly before court).  Thus, the loss-shifting allegations fail as to American Reliable, and Branch's claims against American Reliable must be dismissed.

### iii. ANPAC

Branch admits that ANPAC did not issue wind policies for any of the exemplar properties.  Rather, Branch asserts that ANPAC Louisiana Insurance Company ("ANPAC Louisiana") issued wind policies for those properties.[46]  ANPAC Louisiana does not appear

---

[45]    R. Doc. 589 at 13.

[46]    R. Doc. 631, ¶37.

in Branch's complaint, and Branch admits that it "did not voluntarily provide information to the government prior to the filing of this lawsuit concerning ANPAC's relationship with ANPAC Louisiana[.]"[47]

Moreover, ANPAC asserts that in 1999, long before Hurricane Katrina, it contracted with third-party vendor National Flood Services ("NFS") to administer the entire claims process for its flood policies, including for the exemplar properties. According to John Wright, an ANPAC representative, NFS was responsible for "(1) supervising and administering the entire claims process; (2) investigating, adjusting, and settling all claims or losses arising under ANPAC's flood policies; and (3) processing all claims for payment/reimbursement by the government."[48]  Wright further asserts that "ANPAC did not provide any direction or instruction to NFS regarding the handling or submission of claims for the [exemplar] properties"[49] and that "ANPAC did not receive any fees or other remuneration based on the dollar amount of the flood claims handled and paid by NFS."[50]  ANPAC also produces a contract between itself and NFS which states the parties are

---

[47]   R. Doc. 631, Ex. 6, No. 36.

[48]   R. Doc. 580, Ex. A, ¶7.

[49]   *Id.* at ¶14.

[50]   *Id.* at ¶16.

"independent contractors"[51] and that claims processing expenses and reimbursement shall be paid to NFS.[52]

Branch suggests that adjustments performed by NFS may have somehow been controlled by ANPAC, but it provides no evidence for this theory. Branch points to a letter to a policyholder written on ANPAC letterhead as evidence that ANPAC was involved in adjusting claims,[53] but the letter does not prove or even imply that conclusion. Rather, the letter merely states that a check made out to the policyholder for a certain amount was enclosed. It is not at all surprising that the insurer rather than the adjuster would communicate this information to the policyholder.

Branch also argues that ANPAC had a duty under the WYO regulations to verify NFS's adjustments. *See* 44 CFR § 62.23(i)(2) ("It is important that the Company's Claims Department verifies the correctness of the coverage interpretations and reasonableness of the payments recommended by the adjusters."); (i)(5) ("It will be the WYO Company's responsibility to try to detect fraud . . . and coordinate its findings with FIA."); (i)(10) ("The WYO Company's claim examiners and managers will supervise the adjustment of flood insurance claims by staff and independent claims adjusters."). But even if

---

[51]    R. Doc. 580, Ex. B., Art. VIII, Sec. H.

[52]    *Id.* at Art. VI, Sec. C.

[53]    R. Doc. 631, Ex. 17.

ANPAC violated these provisions and failed to adequately supervise NFS, Branch does not explain how that demonstrates that ANPAC committed fraud.  Further, Branch's allegations that ANPAC was involved with NFS's adjustments, either directly or through monitoring NFS, do not appear in the complaint or in Branch's pre-filing disclosure to the government.  In fact, NFS does not appear at all in the complaint or the pre-filing disclosure, and Branch has not demonstrated that it is an original source of any information about NFS.

Although a relator need not be an original source of every detail, it must have direct and independent knowledge of the core information underlying its allegations.  In *United States v. New York Medical College*, 252 F.3d 118 (2d Cir. 2001), the Second Circuit ruled that a relator must be the "source of the core information" underlying the allegations.  *Id.* at 121 (citing *United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1159 (2d Cir. 1993)).  The relator in *New York Medical College* did not meet this standard because the core information was uncovered by a third party.  *Id.*

Following *New York Medical College*, the court in *United States ex rel. Smith v. Yale University,* 415 F.Supp.2d 58 (D.Conn. 2006), held that a relator who alleged that the defendants committed Medicare and Medicaid fraud was not an original source of his allegations.  The court stated that

62

"although Relator need not prove that he had direct and independent knowledge of *all* of the information on which the allegations are based, he must show that he had direct and independent knowledge of the *core* information upon which his allegations of fraud are based." *Id.* at 73 (emphasis in original).  Because the relator did not have direct and independent knowledge of the defendants' allegedly fraudulent procedures, *id.* at 80, he was not an original source of his allegations.

Likewise, in *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156 (10th Cir. 1999), the Tenth Circuit held that the relator was not an original source of the Medicare and Medicaid fraud allegations.  While the relator did have direct and independent knowledge of "some allegations," that information was "relatively minor and insignificant." *Id.* at 1163.  The "core information" was uncovered by a third party. *Id.*  The court also noted that the relator alleged not only that the defendants made false claims to the government, but also that the defendants violated numerous ancillary statutes and regulations.  "In comparison to these relatively extensive allegations," the court found, the relator's original information was "relatively weak and informal." *Id.* at 1164.  Thus, the relator was not an original source. *See also In re Natural Gas Royalties*, 562 F.3d 1032, 1046 (10th Cir. 2009) (relator's direct

and independent knowledge must be "substantial" in the context of the allegations in their entirety).

By contrast, in *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 656-57 (D.C. Cir. 1994), the court stated that a relator need only have "direct and independent knowledge of *any* essential element of the underlying fraud transaction." *Id.* at 656-57 (emphasis in original). The court reasoned that a fraud claim consists of the combination of the true state of affairs and the misrepresented state of affairs. A relator will rarely have direct and independent knowledge of the misrepresentation. Thus, the court ruled, such knowledge should not be required. *Id.* at 657. Similarly, this Court has ruled that a relator need not be an original source of the actual false claims made by the defendants to the Government. *United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 668 F.Supp.2d 780, 801 (E.D.La. 2009). That reasoning does not contradict the principle that a relator must be an original source of a certain core of information, such as the basic *modus operandi* of the fraud.

Branch, therefore, must be an original source of the core information underlying its complaint in order for the Court to have jurisdiction. At a minimum, that information must include who committed the fraud and the basic mechanism involved. Without such information, a relator's allegations are mere

speculation.

Branch lacked this essential knowledge as to its evolving loss-shifting claim against ANPAC.  Unbeknownst to Branch, a subsidiary of ANPAC (ANPAC Louisiana) wrote the wind policies for the exemplar properties, and a separate company (NFS) adjusted the flood claims.  Branch's theories about how ANPAC may have nonetheless committed loss-shifting fraud do not appear in the complaint, do not appear in the pre-filing disclosure, and are not supported by evidence, whether directly and independently obtained by Branch or otherwise.

As Branch argues, the Court has ruled that Branch is not required to have to have knowledge of the actual fraudulent claims the defendants allegedly made to the government.  *Branch Consultants*, 668 F.Supp.2d at 801.  For purposes of defendants' facial jurisdictional challenge, the Court ruled that the information Branch gathered in its property examinations was sufficient to raise an inference of potential fraud.  *Id.*  But the summary judgment evidence now shows that NFS, not ANPAC, was responsible for adjusting the flood claims for the exemplar properties.  Branch does not allege that ANPAC conspired or colluded with NFS to produce any false claims.  To the contrary, Branch has specifically stated that it is not alleging any type of "conspiracy or concerted action."[54]  It is not apparent how

---

[54]    R. Doc. 315 at 4.

ANPAC could have caused NFS to present false claims to the government if ANPAC and NFS did not conspire or collude in some way.  Indeed, shifting losses on the exemplar properties from wind damage to flood damage would have required cooperation among ANPAC, ANPAC Louisiana, and NFS.  There would have had to have been some understanding among the companies of how to carry out the plan in order to effectuate a fraudulent scheme in which two different companies fraudulently adjusted different types of losses at the same location on behalf of a third company.  Otherwise, the right hand would not have known what the left hand was doing.  But as noted, Branch does not even mention ANPAC Louisiana or NFS in its complaint, nor does it allege a conspiracy among those entities and ANPAC.  Further, Branch does not plead facts to support a "piercing the corporate veil" theory, and it does not even purport to raise such a theory.  Nor could ANPAC be liable under the FCA for merely knowing of fraud that was committed by other parties.  *See United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 714 (10th Cir. 2006) (citing *United States v. Hibbs*, 568 F.2d 347, 349 (3d Cir. 1977)) (setting out proximate cause standard under the FCA).  Further, Branch does not dispute that no money changed hands between ANPAC and NFS based on the amount of the flood claims.

Moreover, Branch presents no evidence that it was aware that

66

NFS had anything to do with the ANPAC exemplar properties until it received ANPAC's answer on November 23, 2009.  In that answer, ANPAC's seventh defense is that NFS adjusted the flood claims and submitted them to the government.[55]  Information disclosed in civil litigation - such as the information contained in ANPAC's answer - is considered a public disclosure for purposes of 31 U.S.C. § 3730(e)(4).  *Fed. Recovery Servs.*, 72 F.3d at 450.  In response to ANPAC's answer, Branch sought leave to amend the complaint to add an inflated-revenue claim on December 30, 2009.[56]  As the Court has ruled, Branch's inflated-revenue claim is fundamentally different from the loss-shifting claim because it involves a new motivation (increasing fees, as opposed to avoiding losses on wind policies) and a new mechanism (inflating line items on flood claims rather than mischaracterizing wind damage as flood damage).[57]  It is apparent that Branch broadened the scope of its complaint because its original allegations were fatally flawed.

Branch seeks further discovery, but such discovery cannot prove that Branch is an original source of information it lacked when it filed the original complaint.  At that time, Branch did not have direct and independent knowledge of the basic mechanism

---

[55]    R. Doc. 254 at 16-17.

[56]    R. Doc. 280.

[57]    R. Doc. 615 at 16-21.

67

of the alleged fraud and, most importantly, who committed the fraud.  The Court therefore lacks jurisdiction over Branch's loss-shifting claim against ANPAC.  As no other claims against ANPAC appear in the original complaint, Branch's action against ANPAC must be dismissed.

## III. Conclusion

For the foregoing reasons, defendants' motions are GRANTED. Branch's claims against Allstate are DISMISSED WITHOUT PREJUDICE on first-to-file grounds.  The loss-shifting claims against American Reliable, Standard Fire, Colonial, Liberty Mutual, SIMSOL, ANPAC, Fidelity, and Pilot are DISMISSED WITH PREJUDICE because Branch is not an original source of those claims, a determination that is intertwined with the merits and that was decided on summary judgment.  The inflated-revenue claims, added by amendment, are DISMISSED WITHOUT PREJUDICE because the Court lacks jurisdiction over Branch's original complaint.

New Orleans, Louisiana, this ___24th___ day of January, 2011.

_Sarah Vance_
_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE